1  JEFFREY N. POMERANTZ (SBN 143717)
   JEFFREY W. DULBERG (SBN 181200)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, California 90067-4100
   Telephone: 310/277-6910
4  Facsimile:  310/201-0760
   Email:  jpomerantz@pszjlaw.com;
5  jdulberg@pszjlaw.com
   *Counsel to Debtors and Debtors in Possession*

6

7  DAVID L. NEALE (SBN 141225)
   DANIEL H. REISS (SBN 150573)
8  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
9  Los Angeles, California 90067
   Telephone: (310) 229-1234
10 Facsimile: (310) 229-1244
   Email: dln@ lnbyb.com, dhr@ lnbyb.com
   *Counsel to the Official Committee of Unsecured Creditors*

11

12              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
13                  **LOS ANGELES DIVISION**

14 In re                                    Case No.: 2:11-bk-15975-PC
                                            [Jointly Administered with Case No.
15 ☒ SCI REAL ESTATE INVESTMENTS, LLC,     2:11-bk-15987-PC]
   a Virginia limited liability company,
16                                          Chapter 11
   ☒ SECURED CALIFORNIA INVESTMENTS,
17 INC., a California corporation,          **SECOND AMENDED DISCLOSURE
                                            STATEMENT DESCRIBING FIRST
18        Debtors and Debtors-in-Possession. AMENDED JOINT CHAPTER 11 PLAN OF
                                            LIQUIDATION FOR SCI REAL ESTATE
19                                          INVESTMENTS, LLC AND SECURED
                                            CALIFORNIA INVESTMENTS, INC. DATED
20                                          APRIL 19, 2012**

21                                          Disclosure Statement Approval Hearing
                                            Date:      April 25, 2012
22                                          Time:      9:30 a.m.
                                            Place:     Courtroom 1468
23                                                     255 East Temple Street
                                                       Los Angeles, CA  90012
24                                          Judge:     Honorable Peter H. Carroll

25                                          Plan Confirmation Hearing
                                            Date:      June 13, 2012
26                                          Time:      9:30 a.m.
                                            Place:     Courtroom 1468
27                                                     255 East Temple Street
                                                       Los Angeles, CA  90012
28                                          Judge:     Honorable Peter H. Carroll

*PACHULSKI STANG ZIEHL & JONES LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES, CA*

DOCS_LA:248300.19 77002-002

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

## IMPORTANT DATES

Date by which Ballots must be received: **May 30, 2012, at 5:00 p.m. Pacific Time.**
Date by which objections to Confirmation of the Plan must be filed and served: **May 30, 2012.**
Hearing on Confirmation of the Plan: **June 13, 2012, at 9:30 a.m. Pacific Time.**

**11 U.S.C. § 1125(b) PROHIBITS SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN UNLESS A COPY OF THE PLAN, OR A SUMMARY THEREOF, IS ACCOMPANIED OR PRECEDED BY A COPY OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT. THIS PROPOSED DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT, AND, THEREFORE, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT IS NOT INTENDED TO BE, NOR SHOULD IT BE CONSTRUED AS, AN AUTHORIZED SOLICITATION PURSUANT TO 11 U.S.C. § 1125 AND RULE 3017 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. NO SUCH SOLICITATION WILL BE MADE EXCEPT AS AUTHORIZED PURSUANT TO SUCH LAW AND RULES.**

Jeffrey N. Pomerantz
Jeffrey W. Dulberg
PACHULSKI STANG ZIEHL YOUNG JONES & WEINTRAUB LLP
10100 Santa Monica Blvd, Suite 1300
Los Angeles, California 90067
(310) 277-6910

Counsel to Debtors and Debtors in Possession

and

David L. Neale
Daniel H. Reiss
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234

Counsel to the Official Committee of Unsecured Creditors

Dated:  April 25, 2012

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    DISCLAIMER ................................................................................................... 5

III.    SUBSTANTIVE CONSOLIDATION ................................................................ 8

IV.    OVERVIEW OF THE PLAN ............................................................................. 9

V.    BACKGROUND ............................................................................................... 15

　　A.    General Case Background................................................................. 15

　　B.    General Description of the Debtors ................................................. 16

　　C.    The Debtors' Assets ........................................................................ 17

　　D.    The Debtors' Indebtedness ............................................................. 17

VI.    THE DEBTORS' CHAPTER 11 CASES ........................................................ 19

　　A.    Retention of the Debtors' Professionals ........................................ 19

　　B.    Appointment of Committee and Retention of Committee Professionals.................. 19

　　C.    Summary of First Day Orders ........................................................ 19

　　D.    Claims Bar Date .............................................................................. 20

　　E.    Plan Negotiations and Extensions of the Exclusive Periods............ 20

　　F.    Appointment of a Chief Restructuring Officer .............................. 22

　　G.    Settlement Regarding the Duke Note ............................................. 22

VII.    INVESTIGATION AND ANALYSIS OF AVOIDANCE ACTIONS .................... 24

VIII.    THE PLAN OF LIQUIDATION ..................................................................... 24

　　A.    Overview of the Plan ...................................................................... 24

　　B.    Unclassified Claims ........................................................................ 25

　　　　1.    Administrative Claims ......................................................... 25

　　　　　　a.    Allowance of Non-Ordinary Course Administrative Claims.............. 27

　　　　　　b.    Allowance of Ordinary Course Administrative Claims...................... 27

　　　　　　c.    Allowance of Professional Fee Claims.......................... 27

　　　　　　d.    Allowance of Cure Claims............................................ 28

　　　　2.    Priority Tax Claims.............................................................. 28

　　C.    Classified Claims and Interests ...................................................... 30

　　　　1.    Classes of Secured Claims .................................................. 30

　　　　2.    Class of Priority Unsecured Claims .................................... 31

　　　　3.    Class of General Unsecured Claims .................................... 32

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

i

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

|   |   |   |   |   |   |
|---|---|---|---|---|---|
| | 4. | Class of Interest Holders | | | 33 |
| D. | | Executory Contracts and Unexpired Leases | | | 34 |
| | a. | Assumptions | | | 34 |
| | b. | Rejections | | | 34 |
| | c. | Bar Date for Rejection Damage Claims | | | 34 |
| E. | | Means of Effectuating the Plan | | | 34 |
| | 1. | Funding for the Plan, including Exit Financing | | | 34 |
| | 2. | Exit Financing and Trust Assets as Security for Exit Financing | | | 35 |
| | 3. | The Effective Date of the Plan and Conditions Thereto | | | 41 |
| | 4. | Post-Confirmation Management | | | 41 |
| | a. | The Liquidating Debtors | | | 41 |
| | b. | Dissolution of the Committee and Formation of the Post-Confirmation Oversight Committee | | | 42 |
| | c. | The Liquidating Trust and the Liquidating Trustee | | | 43 |
| | | (1) | Creation of the Liquidating Trust | | 43 |
| | | (2) | Appointment of the Liquidating Trustee | | 43 |
| | | (3) | Disbursing Agent | | 46 |
| | | (4) | Transfer of the Assets to the Liquidating Trust | | 46 |
| | | (5) | Sale or Other Disposition of Liquidating Trust Assets | | 46 |
| | | (6) | Investigation and Prosecution of Claims | | 47 |
| | | (7) | Bankruptcy Powers | | 48 |
| | | (8) | Employment and Compensation of Professionals, Reimbursement of Expenses | | 48 |
| | | (9) | Distributions from the Liquidating Trust | | 49 |
| | | | (a) | Minimum Amount of Interim Distributions. | 50 |
| | | | (b) | Failure to Negotiate Checks Distributed by Liquidating Trustee. | 50 |
| | | | (c) | Unclaimed Property. | 51 |
| | | | (d) | Record Date. | 52 |
| | | (10) | Reserve Accounts | | 52 |
| | | (11) | No Action Against the Liquidating Trust Without Bankruptcy Court Approval | | 53 |
| | | (12) | Termination of the Liquidating Trust | | 54 |
| | | (13) | Reports by the Liquidating Debtors and the Liquidating Trustee. | | 54 |
| | | (14) | No Recourse against the Liquidating Trustee or Post-Confirmation Oversight Committee | | 55 |
| | | (15) | Tax Treatment of the Liquidating Trust | | 55 |

|   |   | 5. | Review of and Objections to Expenses, Claims and Interests | 56 |
|   |   | 6. | Effective Date Payments and Distributions to Be Made From the Liquidating Trust | 56 |
|   |   | 7. | Exculpations and Releases | 56 |
|   |   | 8. | Injunctions | 57 |
|   | F. | Other Provisions of the Plan | | 57 |
|   |   | 1. | Changes in Rates Subject to Regulatory Commission Approval | 57 |
|   |   | 2. | Retention of Jurisdiction/Consent to Jurisdiction by Holders and Parties in Interest | 57 |
| IX. | | EFFECT OF CONFIRMATION OF PLAN | | 59 |
|   | A. | Discharge | | 59 |
|   | B. | Vesting of Property in the Liquidating Trust | | 60 |
|   | C. | Modification of Plan | | 60 |
|   | D. | Post-Confirmation Status Report | | 60 |
|   | E. | Post-Confirmation Conversion/Dismissal | | 60 |
|   | F. | Post-Confirmation U.S. Trustee Fees | | 61 |
|   | G. | Confirmation of the Plan Pursuant to Bankruptcy Code § 1129(b) | | 61 |
|   | H. | Final Decree | | 61 |
| X. | | CERTAIN RISK FACTORS TO BE CONSIDERED | | 61 |
|   | A. | Risks that the Debtors Will Have Insufficient Cash for the Plan to Become Effective. | | 62 |
|   | B. | Risk Regarding the Distributions to Be Made to Holders of Allowed Claims | | 62 |
|   | C. | Bankruptcy Risks. | | 62 |
| XI. | VOTING PROCEDURES AND REQUIREMENTS | | | 63 |
|   | A. | Parties in Interest Entitled to Vote | | 63 |
|   | B. | Classes Impaired and Entitled to Vote Under the Plan | | 64 |
|   |   | 1. | Vote Required for Acceptance by Classes of Claims | 64 |
| XII. | CONFIRMATION OF THE PLAN | | | 65 |
|   | A. | Confirmation Hearing | | 65 |
|   | B. | Objections to Confirmation of the Plan | | 65 |
|   | C. | Requirements for Confirmation of the Plan | | 66 |
|   |   | 1. | Acceptance | 66 |
|   |   | 2. | Fair and Equitable Test | 66 |
|   |   |   | a.  Secured Claims | 67 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

iii

|  |  | b. | Unsecured Claims | 67 |
|  |  | c. | Interests | 67 |
|  | 3. | Feasibility | | 68 |
|  | 4. | "Best Interests" Test | | 68 |
| XIII. | FINANCIAL INFORMATION | | | 69 |
| XIV. | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN; LIQUIDATION ANALYSIS | | | 70 |
| XV. | CERTAIN U.S. FEDERAL AND STATE INCOME TAX CONSEQUENCES OF THE PLAN | | | 70 |
|  | A. | Federal Income Tax Consequences to the Creditors | | 71 |
|  | B. | Transfer Taxes | | 72 |
| XVI. | RECOMMENDATION | | | 73 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

iv

# I.

## **INTRODUCTION**

SCI Real Estate Investments, LLC, and Secured California Investments, Inc., as debtors and debtors in possession herein (the "Debtors"), and the Committee, as joint proponents, submit this Second Amended Disclosure Statement in connection with the solicitation of acceptances and rejections with respect to the First Amended Joint Chapter 11 Plan of Liquidation, dated April 19, 2012 (the "Plan"), a copy of which is attached hereto as **Exhibit "1"**.  If you are a creditor who is entitled to vote on the Plan, you are receiving a copy of the Plan in the same envelope as this Second Amended Disclosure Statement.  Capitalized terms used and not otherwise defined herein shall have the same meanings ascribed to them in the Plan.

The purpose of this Disclosure Statement is to set forth information (a) regarding the history of the Debtors, their business, and the Debtors' chapter 11 cases, (b) concerning the Plan and alternatives to the Plan, (c) advising the Holders of Claims and Interests of their rights under the Plan, (d) assisting the Holders of Claims in voting Classes in making an informed judgment regarding whether they should vote to accept or reject the Plan, and (e) assisting the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code, and should be confirmed.

By order entered on or about April 26, 2012, the Bankruptcy Court, after notice and a hearing, approved this Disclosure Statement as containing "adequate information" to permit affected Holders of Claims to make an informed judgment in exercising their right to vote to accept or reject the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT MEAN THAT THE COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN.  No solicitation of votes may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code.  In voting on the Plan, Holders of Claims should not rely on any information relating to the Debtors and their business other than that contained in this Disclosure Statement, the Plan, and all exhibits hereto and thereto.

DOCS_LA:248300.19 77002-002

The Plan that is described in this Disclosure Statement is a liquidating Plan in that all of the Debtors' Assets will be transferred to the Liquidating Trust on the Effective Date. The Plan's objective is for the Liquidating Trustee to liquidate the Liquidating Trust Assets and to distribute the proceeds of the liquidation to the Holders of Allowed Claims as set forth in the Plan in satisfaction of the Debtors' obligations. The Plan provides for the substantive consolidation of the two Debtors into a single entity, divides Holders of Claims and Interests into Classes based on their legal rights and interests, and provides for the treatment of each of those Classes. In general, the Plan provides that the Liquidating Trust will be administered by the Liquidating Trustee under the supervision of the Post-Confirmation Oversight Committee that will be comprised of the members of the Committee who choose to serve. The Liquidating Trustee, the current CRO, William Hoffman with Trigild, will (a) liquidate the Liquidating Trust Assets, including prosecuting Avoidance Actions, for the primary benefit of Holders of Allowed Claims (i.e., Allowed Administrative Claims, Allowed Secured Claims, Allowed Priority Tax Claims, Allowed Priority Unsecured Claims and Allowed General Unsecured Claims) (b) distribute the proceeds of the liquidated Liquidating Trust Assets to the Holders of such Allowed Claims as provided in the Plan; and (c) wind down the affairs of the Estates and of the Liquidating Trust. The Holders of Interests will not receive or retain anything on account of their Interests.

As stated above, the Plan provides for the substantive consolidation of the Debtors and their Estates. Substantive consolidation is the pooling of assets and liabilities of the entities sought to be consolidated. Upon such consolidation, the intercompany claims among the entities are eliminated, and all of the assets of, and all of the claims against, each of the debtor entities are treated as assets of, or claims against, the consolidated entity. Under the Plan, the Debtors and their Estates will be substantively consolidated. The Debtors' assets and claims will be pooled, the Debtors' liabilities satisfied from a common fund, and intercompany Claims between the Debtors eliminated. Distributions to Holders of Allowed General Unsecured Claims against both Debtors will be pro rata from the liquidation proceeds of the consolidated pool of assets.

DOCS_LA:248300.19 77002-002

000008

Only Holders of Allowed Claims under section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Bankruptcy Rule 3018, whose Claims are in those Classes of Claims that are "Impaired" under the Plan are entitled to vote to accept or reject the Plan.  A Class is Impaired if the legal, equitable, or contractual rights of the Claims or Interests in the Class are altered.  Classes of Impaired Claims or Interests that are not entitled to receive or retain any property under the Plan, however, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote on the Plan.  Classes of Claims that are Unimpaired are conclusively presumed to have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote on the Plan.  The following chart summarizes which Classes of Claims and Interests are Impaired, which Classes of Claims are Unimpaired under the Plan and which Classes are entitled to vote.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 1 | Allowed Secured Claims of Collateralized Parties Pursuant to 2009 Pledge and Security Agreements Re Loan and Placement Agreements entered into from 2003 – 2008 | Impaired | Voting |
| Class 2 | Allowed Secured Claims of Collateralized Parties re SCICG Mezzanine Fund I, LLC | Impaired | Voting |
| Class 3 | Allowed Priority Claims for wages under section 507(a)(4) of the Bankruptcy Code of Marc Paul and Robert Robotti | Unimpaired | Deemed to Accept |
| Class 4 | Allowed General Unsecured Claims | Impaired | Voting |
| Class 5 | Membership Interests | Impaired | Deemed to Reject |

If you are a Holder of a Claim in a Class that is entitled to vote to accept or reject the Plan, accompanying this Disclosure Statement is a Ballot for casting your vote(s) on the Plan and a pre-addressed envelope for the return of the Ballot.  BALLOTS FOR ACCEPTANCE OR REJECTION OF THE PLAN ARE BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES LISTED IN THE ABOVE CHART THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  If you are the Holder of a Claim in a Class that is shown above as a voting Class and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

3

(a) did not receive a Ballot, (b) received a damaged or illegible Ballot, (c) lost your Ballot, or if you are a party in interest and have any questions concerning the Disclosure Statement, any of the Exhibits hereto, the Plan, or the voting procedures in respect thereof, please contact the Debtors' counsel: Jeffrey W. Dulberg, Esq., Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, Suite 1300, Los Angeles, California 90067; Telephone: (310) 277-6910; e-mail: jdulberg@pszjlaw.com or counsel to the Committee: David L. Neale, Esq. or Daniel H. Reiss, Esq., Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067; Telephone: (310) 229-1234; e-mail: dln@nbyb.com or dhr@lnbyb.com, respectively.

The Proponents believe that Confirmation of the Plan is in the best interests of Debtors' creditors and the Debtors. Given that there are insufficient resources for the Debtors' to restructure and continue their business, the Proponents believe that no feasible alternatives to the Plan exist. Compared to other alternatives, the Proponents believe that the recoveries under the Plan for Holders of Allowed Claims will be maximized under the circumstances and the administrative cost and delay will be far less than any other alternative. THE DEBTORS AND THE COMMITTEE RECOMMEND THAT THE HOLDERS OF CLAIMS IN ALL CLASSES ENTITLED TO VOTE SUBMIT A VOTE TO ACCEPT THE PLAN.

VOTING ON THE PLAN, BY EACH HOLDER OF A CLAIM ENTITLED TO VOTE, IS IMPORTANT. EACH SUCH CLAIM HOLDER SHOULD READ THIS DISCLOSURE STATEMENT WITH ITS EXHIBITS, INCLUDING THE PLAN, IN ITS ENTIRETY. AFTER CAREFULLY REVIEWING THESE DOCUMENTS, PLEASE FOLLOW THE DIRECTIONS FOR VOTING CONTAINED ON THE BALLOT, AND RETURN THE BALLOT IN THE ENVELOPE PROVIDED. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY MAY 30, 2012, AT 5:00 P.M. PACIFIC TIME (THE "VOTING DEADLINE") AT THE ADDRESS SET FORTH ON YOUR BALLOT AND ON THE ENCLOSED PRE-ADDRESSED ENVELOPE.

DOCS_LA:248300.19 77002-002

000010

Votes cannot be transmitted orally or by e-mail.  Accordingly, you are urged to return your signed and completed Ballot promptly.  Ballots not received by the Voting Deadline and Ballots that are unsigned will not be counted.  Any executed Ballots that are timely received, but that do not indicate either an acceptance or rejection of the Plan, will be deemed to constitute an acceptance of the Plan.

The Bankruptcy Court has scheduled the hearing on Confirmation of the Plan for June 13, 2012, at 9:30 a.m. Pacific Time at the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Courtroom 1468, 255 East Temple Street, Los Angeles, California.  Any objections to Confirmation of the Plan must be in writing and Filed with the Bankruptcy Court, and served so as to be received by 5:00 p.m. Pacific Time on May 30, 2012, upon counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067, Attn: Jeffrey W. Dulberg, and counsel for the Committee, Levene, Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067, Attn.: David L. Neale and Daniel H. Reiss.

## II.

## <u>DISCLAIMER</u>

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN.  PLEASE READ THIS DOCUMENT WITH CARE.  THE PURPOSE OF THE DISCLOSURE STATEMENT IS TO PROVIDE "ADEQUATE INFORMATION" OF A KIND, AND IN SUFFICIENT DETAIL, AS FAR AS IS REASONABLY PRACTICABLE IN LIGHT OF THE NATURE AND HISTORY OF THE DEBTORS AND THE CONDITION OF THE DEBTORS' BOOKS AND RECORDS, THAT WOULD ENABLE A HYPOTHETICAL REASONABLE INVESTOR, TYPICAL OF HOLDERS OF CLAIMS OR INTERESTS OF THE RELEVANT CLASS, TO MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN.  SEE 11 U.S.C. § 1125(a).  UNLESS OTHERWISE INDICATED, THE DATE OF ALL OF THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT IS AS OF APRIL 19, 2012.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000011

FOR THE CONVENIENCE OF CREDITORS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ANY SUMMARY.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.

NO REPRESENTATIONS CONCERNING THE DEBTORS, THEIR FINANCIAL CONDITION, OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY THE DEBTORS, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN, WHICH ARE OTHER THAN AS CONTAINED IN, OR INCLUDED WITH, THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

THE FINANCIAL INFORMATION CONTAINED HEREIN, UNLESS OTHERWISE INDICATED, IS UNAUDITED.  THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACIES.  GREAT EFFORT, HOWEVER, HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS PRESENTED FAIRLY.

PACHULSKI STANG ZIEHL & JONES LLP ("PSZ&J") COMMENCED REPRESENTING THE DEBTORS AND DEBTORS IN POSSESSION IN OR ABOUT NOVEMBER 2008, AS INSOLVENCY COUNSEL.  PSZ&J HAS NOT AT ANY TIME IN THE PAST, NOR DOES IT PRESENTLY, REPRESENT THE DEBTORS IN A GENERAL WAY, OR IN ANY OTHER WAY, OTHER THAN AS SET FORTH ABOVE.  LEVENE, NEALE, BENDER, YOO & BRILL, L.L.P. ("LNBY&B") IS COUNSEL FOR THE COMMITTEE.  LNBY&B HAS NOT AT ANY TIME IN THE PAST REPRESENTED THE DEBTORS.

ON OCTOBER 27, 2011, THE BANKRUPTCY COURT ENTERED AN ORDER APPROVING THE ENGAGEMENT BY THE DEBTORS OF BILL HOFFMAN OF TRIGILD, INCORPORATED AS CHIEF RESTRUCTURING OFFICER ("CRO").  PSZ&J, LNBY&B  AND MR. HOFFMAN HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTORS'

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

6

EMPLOYEES IN CONNECTION WITH PREPARATION OF THIS DISCLOSURE

STATEMENT.  ALTHOUGH PSZ&J, LNBY&B AND MR. HOFFMAN HAVE PERFORMED

CERTAIN LIMITED DUE DILIGENCE IN CONNECTION WITH THE PREPARATION OF

THIS DISCLOSURE STATEMENT, THEY HAVE NOT INDEPENDENTLY VERIFIED ALL OF

THE INFORMATION CONTAINED HEREIN.

ALTHOUGH A COPY OF THE DISCLOSURE STATEMENT HAS BEEN SERVED ON

THE SECURITIES AND EXCHANGE COMMISSION ("SEC") AND THE SEC HAS BEEN

GIVEN AN OPPORTUNITY TO OBJECT TO THE ADEQUACY OF THE DISCLOSURE

STATEMENT, THIS DISCLOSURE STATEMENT HAS NOT BEEN REGISTERED UNDER

THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES

LAWS.  NEITHER THE SEC NOR ANY STATE REGULATORY AUTHORITY HAS PASSED

UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT, THE

EXHIBITS HERETO, OR THE STATEMENTS CONTAINED HEREIN.

THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE

CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE.  ANY TAX ADVICE HEREIN WAS

NOT INTENDED TO BE USED, AND IT CANNOT BE USED, FOR THE PURPOSE OF

AVOIDING ANY TAX PENALTIES THAT MAY BE IMPOSED ON ANY PERSON.  THERE IS

NO LIMITATION IMPOSED ON ANYONE READING THIS DISCLOSURE STATEMENT ON

DISCLOSURE OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION.

NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED OR REFERRED TO IN

PROMOTING, MARKETING OR RECOMMENDING A PARTNERSHIP OR OTHER ENTITY,

INVESTMENT PLAN, OR ARRANGEMENT TO ANY PERSON.  ALL CREDITORS AND/OR

INTEREST HOLDERS SHOULD CONSULT THEIR OWN LEGAL COUNSEL AND/OR

ACCOUNTANT(S) AS TO LEGAL, TAX, AND OTHER MATTERS CONCERNING THEIR

CLAIMS OR INTERESTS.

DOCS_LA:248300.19 77002-002

000013

# III.

## SUBSTANTIVE CONSOLIDATION

The Plan and this Disclosure Statement together serve as a motion by the Proponents seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Estates and all of the debts of the Debtors for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes.  Substantive consolidation will not (i) alter the state of incorporation of the Debtors for purposes of determining applicable law of any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Liquidating Trustee to enforce any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

The Proponents believe that a plan of liquidation that effects substantive consolidation of the Debtors' Estates is appropriate under applicable law and in the best interests of all Holders of Allowed Claims.  The Proponents and their advisors have considered the facts in light of the applicable legal standards and concluded that substantive consolidation is justified insofar as, among other things, creditors likely were not reliant on the separateness of the legal entities and the Debtors were, as far as the world was concerned, one and the same entity.  The Proponents respectfully request that the Court approve substantive consolidation to the extent requested under the Plan and this Disclosure Statement effective as of the Effective Date pursuant to section 105 of the Bankruptcy Code.

If substantive consolidation is ordered as provided in the Plan, then on and after the Effective Date, all Assets and liabilities of the Debtors shall be treated under the Liquidating Trust as though they were merged into the Estate of SCI Real Estate Investments LLC for purposes of treatment of and distributions on Claims.  All duplicative Claims (identical in both amount and subject matter) Filed against both Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors.  All guarantees by one Debtor of the obligations of the other Debtor shall be consolidated so that any Claim against one Debtor and any guarantee thereof by the other Debtor,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

8

as well as any joint and/or several liability of either Debtor with respect to the other Debtor, shall be treated as one collective obligation of the Debtors. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

## IV.

## OVERVIEW OF THE PLAN

The following is a brief overview of the material provisions of the Plan and is qualified in its entirety by reference to the full text of the Plan. For a more detailed description of the terms and provisions of the Plan, see Article VIII below, entitled The Plan of Liquidation.

The Plan designates four Classes of Claims and one Class of Interests, which include all classified Claims against, and Interests in, the Debtors. These Classes take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Interests. The Plan includes releases of various parties.

The Plan also provides for a Liquidating Trust that will acquire, and then liquidate, the assets of the Debtors. On the Effective Date of the Plan, the Liquidating Trust will obtain Exit Financing to pay its obligations under the Plan. The Exit Financing will be secured by first priority security interests and liens covering all assets in the Liquidating Trust. For a more detailed description of the terms and provisions of the Exit Financing, see Article VIII below, entitled The Plan of Liquidation.

The following table (the "Plan Summary Table") summarizes the treatment of Claims and Interests under the Plan with: (a) the Proponents estimate of the amount of Claims in each category or Class that will be finally determined to be Allowed Claims, and (b) a description of the treatment provided for in the Plan for each Class of Claims and Interests. The estimated aggregate amounts of all Allowed Claims in each Class are based on the Proponents' good faith estimates of the aggregate amount of such Claims upon resolution of all such Claims that are Disputed Claims, based on all currently known information. The dollar amounts included in the Plan Summary Table have been estimated by the Proponents as of the date of the Disclosure Statement and do not constitute an admission by the Debtors or the Committee as to the validity or amount of any particular Claim or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

Interest.  The Debtors and the Committee reserve the right to dispute the validity or amount of any

Claim or Interest that has not already been Allowed by the Bankruptcy Court or by agreement of the

parties and nothing in the Plan or this Disclosure Statement shall be a waiver of any of the rights of

the Liquidating Trustee or the Post-Confirmation Oversight Committee to object to any Claim.

## SUMMARY OF CLAIMS AND INTERESTS UNDER THE PLAN

| Class | Claim/Interest | Treatment | Estimated Aggregate Unpaid Amount | Estimated Percentage Recovery on Allowed Claims |
|-------|----------------|-----------|-----------------------------------|-------------------------------------------------|
| n/a | ADMINISTRATIVE CLAIMS: | | | 100% |
| | Pachulski Stang Ziehl & Jones LLP | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. | $150,000 (estimated) | |
| | Levene, Neale, Bender, Yoo & Brill L.L.P. | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. | $150,000 (estimated) | |
| | Thompson & Knight LLP, Debtors' special real estate counsel | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. | $162,000 (estimated) | |
| | Kennerly, Lamishaw & Rossi LLP, Debtor's special corporate counsel[1] | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the Effective Date or as soon as practical thereafter. | $31,000 (estimated) | |
| | Haskell & White LLP, Debtor's | Unless claimant agrees to a different treatment, the Allowed Administrative | | |

---

[1] Although Kennerly, Lamishaw & Rossi LLP ("KLR") was nominally engaged as Debtors' special real estate counsel, as set forth in the Application to retain and employ Thompson & Knight LLP, KLR is actually the Debtors' special corporate counsel.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000016

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

| Class | Claim/Interest | Treatment | Estimated Aggregate Unpaid Amount | Estimated Percentage Recovery on Allowed Claims |
|---|---|---|---|---|
| | accountant | Claim, which is a Professional Fee Claim, will be paid in full on the Effective Date or as soon as practical thereafter. | $25,000 (estimated) | |
| | Trigild, Inc. | Unless claimant agrees to a different treatment, the Allowed Administrative Claim will be paid in full on the Effective Date or as soon as practical thereafter. | $150,000 (estimated) | |
| | Franchise Tax Board | Claim to be paid in full on the Effective Date or as soon as practical thereafter. | Unknown | |
| | Clerk's Office Fees | Claim to be paid in full on the Effective Date or as soon as practical thereafter. | $0 | |
| | Office of the U.S. Trustee Fees | Claim to be paid in full on the Effective Date or as soon as practical thereafter. | $0 | |
| n/a | PRIORITY TAX CLAIMS: | | | 100% |
| | Internal Revenue Service [SCI] | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date. Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 2.2% per annum commencing on the Effective Date, pursuant to IRC § 6621. | $2,400.00 | |
| | Internal Revenue Service [Secured California] | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the | $1,887.29 | |

11

| Class | Claim/Interest | Treatment | Estimated Aggregate Unpaid Amount | Estimated Percentage Recovery on Allowed Claims |
|---|---|---|---|---|
| | | Petition Date.  Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 2.2% per annum commencing on the Effective Date,  pursuant to IRC § 6621. | | |
| | Franchise Tax Board [SCI] | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.  Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.0% per annum commencing on the Effective Date. | $800.00 | |
| | City of Los Angeles [SCI] | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.  Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.2% per annum commencing on the Effective Date. | $232,235.21 | |
| | Employment Development Department [SCI] | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.  Interest shall accrue on the principal balance of the  Allowed Priority Tax Claim at 3.0% | $0.00 [for information only] | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

12

| Class | Claim/Interest | Treatment | Estimated Aggregate Unpaid Amount | Estimated Percentage Recovery on Allowed Claims |
|---|---|---|---|---|
| | | per annum commencing on the Effective Date, pursuant to Section 19521 of the *California Revenue and Taxation Code*. | | |
| 1 | SECURED CLAIMS:<br><br>Collateralized Parties Pursuant to 2009 Pledge and Security Agreements Re Loan and Placement Agreements entered into from 2003 – 2008<br><br>(See Plan Exhibit "C")<br><br>Collateral description = See Plan Exhibit "D"<br><br>Claim Priority = Unknown<br><br>Collateral value = Unknown – to be determined upon disposition of collateral. | Allowed Class 1 Claims will be paid at such time and from the Net Proceeds generated from the disposition of the Collateral securing such Claims. ("Net Proceeds" means gross proceeds less (i) commissions, fees, and costs directly associated with the disposition or collection of such proceeds and (ii) Liquidating Trustee Surcharge Amount. The Liquidating Trustee reserves his right to seek allowance of the Liquidating Trustee Surcharge Amount.) The Liquidating Trustee and the Post-Confirmation Oversight Committee shall have standing to seek disallowance of Class 1 Claims and/or avoidance of some or all Liens or interests securing Class 1 Claims. To the extent that Class 1 Claims are undersecured or wholly unsecured, the unsecured portion of the Claims shall be Class 4 Claims and will receive the treatment for such Claims as set forth below. | Scheduled for $7.44 million (approx.) | 100% (of the Allowed secured portion of the Claim, if any) |
| 2 | SECURED CLAIMS;<br><br>Collateralized Parties re SCICG Mezzanine Fund I, LLC<br><br>(See Plan Exhibit "E")<br><br>Collateral description = See Plan Exhibit "F"<br><br>Claim Priority = Unknown | Allowed Class 2 Claims will be paid at such time and from the Net Proceeds generated from the disposition of the Collateral securing such Claims by the Liquidating Trustee, if any.<br><br>The Liquidating Trustee and the Post-Confirmation Oversight Committee shall have standing to seek disallowance of Class 2 Claims and/or avoidance of some or all Liens or interests securing Class 2 Claims.<br><br>To the extent that Class 2 Claims are undersecured or wholly unsecured, the unsecured portion of the Claims shall be | Scheduled for $10.8 million (approx.) | 100% (of the Allowed secured portion of the Claim, if any) |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

13

| Class | Claim/Interest | Treatment | Estimated Aggregate Unpaid Amount | Estimated Percentage Recovery on Allowed Claims |
|---|---|---|---|---|
| | Collateral value = Unknown – to be determined upon disposition of collateral. | Class 4 Claims and will receive the treatment for such Claims as set forth below.<br><br>As discussed more fully in Section V.D. below, the Debtors believe that the Liens held by Holders of Class 2 Claims are subject to avoidance under Chapter 5 of the Bankruptcy Code.  To avoid such litigation being Filed, a Holder of a Class 2 Claim may elect to surrender its Lien or interest by indicating such surrender on the Ballot.   If a Holder of a Class 2 Claim surrenders its Lien or interest in this manner, its Class 2 Claim shall be reclassified as a Class 4 Claim and such Class 4 Claim will be treated as such for all purposes under the Plan.  The surrender of such Lien or interest shall be effective upon receipt of the Ballot by the Debtors in accordance with the instructions set forth in the Disclosure Statement. | | |
| 3 | Claims for wages under section 507(a)(4) of the Bankruptcy Code of:<br><br><br><br>Marc Paul and Robert Robotti  (SCI only) | Allowed Priority Unsecured Claims shall be paid in full on the later of (1) the Effective Date or as soon as practicable thereafter and (2) if the Priority Unsecured Claim is a Disputed Claim, after such dispute is resolved by agreement of the parties or a Final Order<br><br>The Class 3 Claims are Disputed Claims. | $23,500 total (maximum of<br><br><br><br><br>$11,750 per claimant) | 100% |
| 4 | All Allowed General Unsecured Claims | Interim and final Distributions to the Holders of allowed Class 4 General Unsecured Claims will be made by the Liquidating Trustee as follows:<br><br>(1) On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee will distribute the sums then available (after funding the Reserve Account as set forth below in VI.D.2.c.(10)) to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis.<br><br>(2) If at any time after the Effective Date the | Estimated amount of Allowed General Unsecured Claims is $44.85 million. | Unknown |

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

| Class | Claim/Interest | Treatment | Estimated Aggregate Unpaid Amount | Estimated Percentage Recovery on Allowed Claims |
|---|---|---|---|---|
| | | Liquidating Trustee is holding more than $1,000,000 in Available Cash or at such times as instructed by the Post-Confirmation Oversight Committee (unless such instruction is determined by the Court on motion by the Liquidating Trustee to be unreasonable), the Liquidating Trustee will distribute the Available Cash to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis; and<br><br>(3) Upon the resolution of all Claims and litigation, and the liquidation of all Liquidating Trust Assets, the Liquidating Trustee shall distribute all Cash remaining in the Liquidating Trust by making a final distribution to the Holders of Allowed Class 4 General Unsecured Claims, subject to the provisions of Section VI.C.2.c.(9) of the Plan. | | |
| 5 | All Membership Interests in Debtors | Class 5 Interests will receive and retain no value under the Plan, and all Class 5 Interests will be cancelled on the Effective Date. | $0 | 0% |

**THE TREATMENT AND DISTRIBUTIONS PROVIDED TO HOLDERS OF ALLOWED CLAIMS AND INTERESTS PURSUANT TO THE PLAN ARE IN FULL AND COMPLETE SATISFACTION OF THE ALLOWED CLAIMS AND INTERESTS ON ACCOUNT OF WHICH SUCH TREATMENT IS GIVEN, AND DISTRIBUTIONS ARE MADE.**

## V.

## BACKGROUND

**A.    General Case Background**

On February 11, 2011, the Petition Date, the Debtors Filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.  On May 2, 2011, the

1    Office of the United States Trustee appointed the Committee.  On October 27, 2011, the Court

2    entered and order approving the engagement by the Debtors of Bill Hoffman of Trigild,

3    Incorporated as CRO of the Debtors.

4    **B.      General Description of the Debtors**

5              With a history stretching back to 1994, the Debtors built and maintained a successful

6    business acquiring and syndicating interests in commercial real estate properties, most often on

7    behalf of tenant-in-common and other private investors.  The Debtors do not own any real property

8    directly.  As part of a group of private investors, however, the Debtors have significant cash equity

9    investments in approximately sixty (60) separate limited liability companies (each a "FeeCo" and

10   collectively the "FeeCos").  Each FeeCo owns an interest, as a tenant-in-common, in a real property

11   asset along with other unaffiliated tenant-in-common owners.  The properties in which the FeeCos

12   own an interest (each a "Property" and collectively the "Properties") are described on Exhibit B to

13   the Plan.

14             One of the Debtors is the managing member of each FeeCo.  While the Debtors have a

15   minority equity interest in each of the FeeCos and contractual claims for Dispo Fees upon the

16   Triggering Events as discussed below, neither of the Debtors control the disposition of the

17   Properties.  The Debtors do not manage the Properties nor do they control investment-making

18   decisions for those Properties.  The Debtors, therefore, do not and cannot dictate the timing and

19   exercise of each FeeCo's investment decisions with respect to any potential sale or refinancing of a

20   given Property.

21             The Debtors have historically generated income by syndicating properties on behalf of

22   investors and generating fees at the time of acquisitions and dispositions of the syndicated real

23   estate properties.  Debtors flourished for many years.  After years of serving their investors

24   faithfully, the Debtors were hard hit by the historic downturn in the real estate and credit markets of

25   the latter part of the last decade.  The collapse of these markets prevented the Debtors' investors

26   from monetizing the substantial real estate assets within their portfolio.  Prior to filing the Cases,

27   the Debtors worked for many months to renegotiate their debt with their principal creditors but

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

were unsuccessful.  The Debtors contend that they were compelled to File these Cases to avoid

aggressive collection actions taken by a minority of their creditors that are successors to firms that

historically had financed the Debtors' acquisition activities.

**C.      The Debtors' Assets**

        In addition to their equity investments in approximately sixty (60) FeeCos, as of the Petition

Date, the Debtors' assets included approximately $40 million in deferred Dispo Fees payable to the

Debtors upon the voluntary or involuntary sale of the Properties, including without limitation,

foreclosure proceedings, the maturity of the loans secured by the Properties (whether maturity occurs

by the passage of time, acceleration of debt, or through a refinancing of the existing loans), or upon

other events (collectively, the "Triggering Events").   In addition, the Debtors hold an unsecured

note in the approximate amount of $8.1 million, referred to herein as the "Duke Note", generated by

amounts infused into the Erwin Plaza, aka "Duke Property," in order to protect their private

investors' interests in that property.  As of the date of filing this Disclosure Statement, the Debtors

have approximately $$243,000 Cash on-hand.  On the Effective Date, the Debtors will have at least

the $3,000,000 from the Exit Financing available as well.

**D.      The Debtors' Indebtedness**

        The Debtors' have two groups of claimants who allege that they hold Secured Claims.[2]  One

is the group allegedly holding Claims secured by Collateral pursuant to the 2009 Pledge and Security

Agreements regarding Loan and Placement Agreements entered into from 2003 through 2008.  See

Exhibits C-F to the Plan.  These alleged Claims, in the approximate amount of $7.44 million, to the

extent they become Allowed Secured Claims, comprise Class 1 under the Plan.  The Liquidating

Trustee and the Post-Confirmation Oversight Committee reserve all rights to object to the Claims

and the alleged secured status of the Claims on any basis, including, but not limited to, challenging

the characterization of these "claims" as debt rather than as equity investments and the 2009 Pledge

---

[2] The Debtors and the Committee dispute, or reserve the right to dispute, the amount, validity, and/or priority of all
Secured Claims asserted against the Debtors or either of them and/or their Assets.  The Liquidating Trustee and the Post-
Confirmation Oversight Committee shall have standing and the right to file objections to any Secured Claims on and
after the Effective Date.  Nothing herein will be construed as a waiver of any rights of the Debtors, the Committee, the
Liquidating Trustee or the Post-Confirmation Oversight Committee to dispute the Secured Claims.

17

and Security Agreements as fraudulent conveyances.  The Collateral held by these claimants (assuming that the "claims" are determined to be Allowed Secured Claims) is described in Exhibit D to the Plan.  The value of the Collateral is unknown and will be determined upon the disposition of the Collateral, therefore, it cannot be estimated at this time how much of the amount of these "claims", if they become Allowed Claims, will be unsecured and will, therefore, be treated as Class 4 Claims.

The second group of claimants allege that they are holding Secured Claims in the approximate amount of $10.8 million.  See Exhibit E to the Plan.  These Claims, to the extent that they become Allowed Secured Claims, comprise Class 2 of the Plan.  The Debtors' granted this group of investors the liens against and security interests in their alleged Collateral, described in Exhibit F to the Plan, on December 28, 2010, in an attempt to make the investors whole on amounts previously invested in projects structured by the Debtors.  The value of the Collateral is unknown at this time and will be determined upon its disposition, therefore, it cannot be estimated at this time how much of the amount of these "claims", if they become Allowed Claims, will be unsecured and will, therefore, be treated as Class 4 Claims.  The Liquidating Trustee and the Post-Confirmation Oversight Committee reserve all rights to object to the Claims and the alleged secured status of the Claims on any basis, including, but not limited to, challenging the characterization of these "claims" as debt rather than as equity investments and that the liens and security interests granted are subject to avoidance as preferences and/or fraudulent conveyances under applicable bankruptcy and non-bankruptcy law.

The Administrative Claims held against the Debtors are primarily the fees and expenses of the Professionals.  The estimated unpaid amount of these claims as of the Effective Date of the Plan is $668,000.  The priority claims consist of tax and wage claims in the total approximate amount of $260,000.

The Debtors' principal unsecured creditors are (1) Wells Fargo Bank, NA ("Wells") and First Citizens Bank ("FCB").  Wells has filed proofs of claim with a total face amount of $57.9 million.[3]

---

[3] Wells acquired the assets of Wachovia Bank, including the Debtors' loan portfolio, upon Wachovia's collapse.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

FCB alleges that it holds a General Unsecured Claim in the approximate amount of $18 million.[4] As of the Petition Date, the Debtors estimate that they owed valid General Unsecured Claims in the approximate amount of $44.85 million, excluding the approximate $15.98 million in claims that were filed as Secured Claims but that the Debtors believe may be subject to lien avoidance actions.

## VI.

## THE DEBTORS' CHAPTER 11 CASES

### A.    Retention of the Debtors' Professionals

Prior to the commencement of the Case, the Debtors retained PSZ&J as bankruptcy counsel and KLR as its special corporate counsel.[5] The Bankruptcy Court approved the retention of these Professionals effective as of the Petition Date, pursuant to orders entered on March 29, 2011 [Docket No. 35] and March 30, 2011 [Docket No. 36], respectively. The Debtors have also retained Haskell & White as their accountants, approved by order of the Bankruptcy Court entered May 2, 2011 [Docket No. 45] and Thompson & Knight LLP as their special real estate counsel, approved by order of the Bankruptcy Court entered January 3, 2012 [Docket No. 119].

### B.    Appointment of Committee and Retention of Committee Professionals

On May 2, 2011, the United States Trustee formed the Committee to represent the interests of the Holders of General Unsecured Claims. The three Creditors appointed to the Committee were (a) Mary Greco (b) Howard Simon, and (c) Wells Fargo Bank (as successor by merger to Wachovia Bank). The Committee employed LNBY&B as its bankruptcy counsel, which employment was approved by the Bankruptcy Court by order entered June 10, 2011 [Docket No. 58].

### C.    Summary of First Day Orders

Soon after the commencement of the case, the Bankruptcy Court entered orders  (a) directing joint administration of the Cases [Docket No. 14], and (b) extending time for the Debtors to File their Schedules [Docket No. 17].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

---

[4] FCB acquired the assets of First Regional Bank, including the Debtors' loan portfolio, via FDIC action.
[5] Although KLR was nominally engaged as Debtors' special real estate counsel, as set forth in the Application to retain and employ Thompson & Knight LLP, KLR has actually been acting as the Debtors' special corporate counsel.

19

**D.    Claims Bar Date**

On July 27, 2011, the Court entered its *Order Establishing a Bar Date for Filing Proofs of Claim or Interest Pursuant to 11 U.S.C. §501 Including, but not Limited to, Claims Asserted Pursuant to 11 U.S.C. §503(b)(9)* (the "Bar Date Order") [Docket No. 73].  The Bar Date Order established September 30, 2011 as the last date to File all Claims that arose before the Petition Date except the following: (1) Claims of "governmental units" (as defined in section 101(27) of the Bankruptcy Code); (2) Claims arising from rejection of executory contracts or unexpired leases pursuant to section 365 of the Bankruptcy Code; and (3) Claims arising as the result of transfer avoidance pursuant to chapter 5 of the Bankruptcy Code, which were subject to other bar dates.

**E.    Plan Negotiations and Extensions of the Exclusive Periods**

Throughout the pendency of these Cases, the Debtors continued their diligent prepetition efforts to develop a restructuring plan that would benefit all creditors.  Prior to the appointment of the Committee in May, 2011, the Debtors continued negotiations with their major Creditors, including Wells and FCB, to fashion a plan that would garner the support of these major Creditors while yielding a meaningful recovery for trade and other unsecured creditors.  During this period of time, the Debtors prepared and circulated a plan term sheet, however, no consensus was reached.

As a result of the appointment of the Committee in May, 2011, the Debtors expanded the plan negotiation process to include the Committee.  The Debtors immediately began bringing the Committee "up to speed" so that the Committee could play an active role in finalizing a plan with major creditors.

In order to protect the status quo during this learning period for the Committee and also to give the Debtors an opportunity to negotiate the terms of a consensual plan with the Committee and the other major creditors without the concern that another party would File a plan, on June 9, 2011, the Debtors Filed their first motion (the "First Exclusivity Motion") seeking an order extending by one hundred and twenty (120) days the time periods during which only the Debtors could File a plan and solicit acceptances of that plan [Docket No. 56].  The Debtors and the Committee reached an agreement to extend plan exclusivity for ninety (90) days.  On July 21, 2011, the Court entered an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

order [Docket No. 70] granting the First Exclusivity Motion and extending the exclusive period to

File a plan to September 12, 2011.

During the period following the granting the First Exclusivity Motion, the Committee and

Wells conducted substantial informal discovery by way of document requests relating to the

Debtors' transactions and relationship with Debtors' management.  Due to the extensive nature of

documents requested, provided and reviewed, such investigation was a primary focus for the

Committee and the Debtors' management.  Nonetheless, the Debtors and the Committee, continued

to work cooperatively toward a consensual resolution of the Cases through a chapter 11 plan,

although the definitive terms of a chapter 11 plan were not yet agreed upon.  Therefore, the Debtors

Filed their *Second Motion for Order Pursuant to Section 1121(d) of the Bankruptcy Code Extending

the Time Periods During Which the Debtors Have the Exclusive Right to File a Plan of

Reorganization and to Solicit Acceptances Thereof* [Docket No. 93].   While the Debtors' second

exclusivity motion was pending, the Committee requested, and the Debtors agreed, that further

extensions of plan exclusivity would provide the Committee with the equal opportunity to file a

chapter 11 plan as the Debtors.  On October 13, 2011, the Court entered an Order [Docket No. 101]

providing that only the Debtors or the Committee could File a plan during the exclusive period,

which was extended through December 11, 2011.

Subsequently, the Debtors and the Committee agreed to the principal terms of a liquidating

plan.  The Debtors and the Committee, during this period, also agreed to engage a CRO who would

replace the Debtors' management.  It was also agreed that the CRO would serve as the Liquidating

Trustee under a consensual liquidating chapter 11 plan.  The Debtors and the Committee Filed a

joint motion for approval of the engagement of Trigild for the purpose of providing a CRO (see

Section V. F below).  However, in light of these developments, additional time was necessary to

prepare and File a joint plan of liquidation prior to December 11, 2011.

On December 9, 2011, the Debtors Filed the *Third Motion for Order Pursuant to Section

1121(d) of the Bankruptcy Code Extending the Time Periods During Which the Debtors and the

Committee Have the Exclusive Right to File a Plan of Reorganization and to Solicit Acceptances*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

21

*Thereof* [Docket No. 112]. On January 25, 2012, the Court entered an Order [Docket No. 137] extending the exclusive period for the Debtors or the Committee to File a plan to February 3, 2012.

The Debtors and the Committee continued to work together on the preparation of a liquidating plan for the Debtors and jointly Filed the Plan on February 3, 2012. They filed the First Amended Plan on April 19, 2012.

## F.    Appointment of a Chief Restructuring Officer

As mentioned above, the Committee conducted an investigation of the Debtors' management and subsequently requested that the Debtors agree to the engagement of a CRO. The Committee and the Debtors participated in a series of interviews of potential candidates to serve as CRO and as the Liquidating Trustee under the Plan. At the conclusion of the interviews, the Debtors and the Committee agreed to seek the Bankruptcy Court's approval of the Debtors' engagement of Trigild, Incorporated to provide a CRO for the Debtors and to provide certain Trigild employees to assist the CRO. On October 27, 2011, the Bankruptcy Court entered an Order [Docket No. 104] authorizing the retention of Trigild and the appointment of William Hoffman, the President and Chief Executive Officer of Trigild, as CRO of the Debtors.

## G.    Settlement Regarding the Duke Note

On October 31, 2011, the Debtors Filed the *Motion Pursuant to Bankruptcy Rule 9019(a) for Approval of Settlement Regarding Payment of Disposition Fee and Notes Relating to Erwin Plaza Transaction* (the "Erwin Plaza Motion") [Docket No. 105] seeking approval of a settlement that would liquidate for the benefit of creditors, the Duke Note, one of the Debtors' most valuable Assets which is related to the property located at 2200 West Main Street, in Durham, North Carolina ("Erwin Plaza").[6] The Duke Note resulted from the Debtors' expenditure of a substantial amount of money on Erwin Plaza, in which one of the FeeCos owned an interest, to make up for the loss of a major tenant, conduct repairs, and avoid foreclosure in order to protect their and their private investors' interests in the property.

---

[6] Erwin Plaza was also sometimes commonly referred to as the "Duke Property".

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000028

1    In addition to the Duke Note, SCI Property Management, Inc, an affiliate of the Debtors,

2    pursuant to the Management Agreement dated May 5, 2003, between the owners of Erwin Plaza (the

3    "EP Owners") and SCI Property Management, claimed the right to a Disposition Fee upon the sale

4    of Erwin Plaza.  The EP Owners had agreed to the sale of Erwin Plaza, however disputes arose

5    between the Debtors and the EP Owners regarding the Management Agreement, the sale of Erwin

6    Plaza and the amounts due and owing on account of the Disposition Fee.

7    In order for the sale of Erwin Plaza to proceed to closing – which, considering the current

8    general economic times and the real estate market in particular, was in the best interests of the EP

9    Owners and the Debtors – the EP Owners and the Debtors, with the consent of the Committee,

10   reached a settlement of all of the disputes between them, which settlement was key to the closing of

11   the sale.  The settlement, which was conditioned upon the sale of Erwin Plaza closing pursuant to the

12   terms of the signed Purchase Agreement, would have resulted in payment of the Duke Note in full

13   plus $645,750 of the Disposition Fee,[7] and the exchange of mutual releases between the EP Owners

14   and the Debtors.  Once the settlement was reached, the Debtors filed the Erwin Plaza Motion seeking

15   Bankruptcy Court approval of the settlement.

16   Prior to the lodging of an order and filing of a declaration of non-opposition to the Erwin

17   Plaza Motion, however, the purchaser sought and obtained the agreement of the EP Owners to

18   revised deal terms, including a reduction of the purchase price from approximately $41 million to

19   approximately $37 million.  In order accommodate the sale of Erwin Plaza in accordance with these

20   revised deal terms, the Debtors and the EP Owners agreed to modify the terms of the settlement to

21   provide that the Debtors would waive their right to a Disposition Fee in full.  All other terms of the

22   settlement remained the same, including that, upon the closing of the sale, the Duke Note would be

23   paid and the Debtors would receive their distribution on account of their equity stake in Erwin Plaza.

24   On January 5, 2012, the Debtors Filed the Supplement to the Erwin Plaza Motion [Docket

25   No. 129] seeking the Bankruptcy Court's approval of revised settlement terms.  On January 20,

26

27   _____

[7]    The payment of $645,750 is an amount equal to one-half of the difference between 4% and the commission paid

28   to the outside broker on the transaction (i.e., 50% of the Disposition Fee due under the Management Agreement).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

23

2012, the Bankruptcy Court entered the Order [Docket No. 135] approving the settlement; however, the sale of Erwin Plaza did not proceed to closure and the settlement did not become effective.

## VII.

## INVESTIGATION AND ANALYSIS OF AVOIDANCE ACTIONS

After the Effective Date, the Liquidating Trustee, under the oversight of the Post-Confirmation Oversight Committee, will investigate all possible avoidance actions, including the avoidance actions discussed above regarding the alleged Secured Claims.  THE LIQUIDATING TRUSTEE, WITH THE ADVICE AND CONSENT OF THE POST-CONFIRMATION OVERSIGHT COMMITTEE, WILL MAKE THE DECISION OF WHETHER OR NOT TO PURSUE ANY AVOIDANCE CAUSE OF ACTION.  THIS DECISION WILL BE BASED UPON HIS AND THE POST-CONFIRMATION OVERSIGHT COMMITTEE'S REVIEW OF THE MERITS OF THE VARIOUS CLAIMS AS WELL AS THE COSTS REQUIRED TO PROSECUTE SUCH CLAIMS IN LIGHT OF THE LIMITED RESOURCES AVAILABLE FOR THE DISTRIBUTION TO CREDITORS.  THE LIQUIDATING TRUSTEE MAY SEEK TO RETAIN COUNSEL ON A CONTINGENCY BASIS TO PROSECUTE SOME OR ALL OF SUCH CLAIMS OR MAY DECIDE NOT TO PURSUE SUCH CLAIMS AT ALL.  AS SET FORTH IN THE PLAN, THE LIQUIDATING TRUSTEE, HIS EMPLOYEES, CONTRACTORS, OFFICERS, DIRECTORS, SUCCESSORS, AND ASSIGNS AND THE EMPLOYEES OF THE DEBTOR AND THEIR RESPECTIVE PROFESSIONALS AND REPRESENTATIVES SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE LIQUIDATING TRUSTEE'S GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OF THE FOREGOING CLAIMS.

## VIII.

## THE PLAN OF LIQUIDATION

### A.      Overview of the Plan

The following is a brief summary of the treatment of Claims and Interests under the Plan. The description of the Plan set forth below is a summary only.  To the extent the description below

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000030

1  conflicts with the terms of the Plan, the terms of the Plan shall govern.  Creditors and other parties in

2  interest are urged to review the Plan themselves.

3  **B.**    **Unclassified Claims**

4      Certain types of claims are not placed into voting classes; instead they are unclassified.  They

5  are not considered impaired and they are not entitled vote on the Plan because they are automatically

6  entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponents

7  have <u>not</u> placed the following claims in a class:

8      **1.**    **Administrative Claims**

9      Administrative Claims are Claims for costs or expenses of administering the Cases that are

10 Allowed under section 503(b) of the Bankruptcy Code.  The Bankruptcy Code requires that all

11 Administrative Claims be paid on the Effective Date unless a particular claimant agrees to a different

12 treatment.

13     The following chart lists estimates of certain of the Debtors' known Administrative

14 Claims and their treatment under the Plan:

15

16
| Name | Amount Owed[8] | Treatment |
|---|---|---|
| Pachulski Stang Ziehl & Jones LLP, Debtors' bankruptcy counsel | $150,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. |
| Levene, Neale, Bender, Yoo & Brill L.L.P., Committee's general bankruptcy counsel | $150,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

---

[8] The actual amount of the respective Professional Fee Claims may be higher or lower than the estimate set forth herein. Allowed Professional Fee Claims shall be as ordered by the Bankruptcy Court.

DOCS_LA:248300.19 77002-002

| Name | Amount Owed[8] | Treatment |
|---|---|---|
| Thompson & Knight LLP, Debtors' special real estate counsel | $162,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. |
| Kennerly, Lamishaw & Rossi LLP, Debtor's special corporate counsel[9] | $31,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the Effective Date or as soon as practical thereafter. |
| Haskell & White LLP, Debtor's accountant | $25,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the Effective Date or as soon as practical thereafter. |
| Trigild, Inc. | $150,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim will be paid in full on the Effective Date or as soon as practical thereafter. |
| Franchise Tax Board | unknown | Allowed Administrative Claim that is a tax Claim to be paid in full on the Effective Date or as soon as practical thereafter. |
| Clerk's Office Fees | $0 | Administrative Claim for fees be paid in full on the Effective Date or as soon as practical thereafter. |
| Office of the U.S. Trustee Fees | $0 (estimated) | U.S. Trustee Fees will be paid in full on the Effective Date or as soon as practical thereafter. |

IF NOT PREVIOUSLY ALLOWED, ENTITIES THAT HOLD ADMINISTRATIVE

CLAIMS AND THAT DO NOT TIMELY FILE AND SERVE A MOTION OR APPLICATION

SEEKING PAYMENT IN ACCORDANCE WITH THIS SECTION WILL BE **FOREVER**

**BARRED** FROM ASSERTING THOSE ADMINISTRATIVE CLAIMS AGAINST THE

DEBTORS, THEIR BANKRUPTCY ESTATES, THE LIQUIDATING TRUSTEE OR THE

LIQUIDATING TRUST ASSETS.

---

[9] Although KLR was nominally engaged as Debtors' special real estate counsel, as set forth in the Application to retain and employ Thompson & Knight LLP, KLR is actually the Debtors' special corporate counsel.

26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

000032

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

**a.    Allowance of Non-Ordinary Course Administrative Claims**

Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims will be Allowed Claims only if:

(i)    No later than 60 days after the Effective Date, the Holder of such Non-Ordinary Course Administrative Claim both Files with the Bankruptcy Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim in accordance with applicable Bankruptcy Rules and the Local Bankruptcy Rules and serves the motion on the Liquidating Debtors, the Liquidating Trustee, the Post-Confirmation Oversight Committee and the U.S. Trustee; and

(ii)    an order is entered by the Bankruptcy Court allowing the Non-Ordinary Course Administrative Claim.

**Entities holding Non-Ordinary Course Administrative Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtors, the Liquidating Debtors, the Liquidating Trustee, the Liquidating Trust, the Estates, or their respective property.**

The Liquidating Trustee, Post-Confirmation Oversight Committee, or other party in interest with standing to do so, must File any objection to a Non-Ordinary Course Administrative Claim by no later than sixty (60) days after the deadline to File the Non-Ordinary Course Administrative Claim; provided however, this 60 day deadline may be initially extended for sixty (60) days by the Liquidating Trustee or the Post-Confirmation Oversight Committee by filing with the Bankruptcy Court a notice of such extension, subject to further extension.  Thereafter, the deadline for objection to Non-Ordinary Course Administrative Claims may be further extended only by an order of the Bankruptcy Court.

**b.    Allowance of Ordinary Course Administrative Claims**

Holders of Ordinary Course Administrative Claims shall not be required to File any request for payment of such Claims.

**c.    Allowance of Professional Fee Claims**

Each Holder of a Professional Fee Claim (except for Professional Fee Claims falling under clause (b) of the definition of Professional Fee Claim, which claims are subject to the Non-Ordinary

DOCS_LA:248300.19 77002-002

1  Course Administrative Claims Bar Date) seeking an award by the Bankruptcy Court of

2  compensation for services rendered or reimbursement of expenses incurred through and including

3  the Effective Date must (i) File its Final Fee Application for allowances of compensation for

4  services rendered and reimbursement of expenses incurred through the Effective Date by no later

5  than the sixtieth (60th) day following the Effective Date.  Any objection to such Professionals Fee

6  Claims shall be Filed on or before the date specified in the Final Fee Applications.  All such requests

7  for payment of such Professional Fee Claims will be subject to the authorization and approval of the

8  Bankruptcy Court.

9       **Persons holding Professional Fee Claims who do not timely File and serve a final fee**

10 **application will be forever barred from asserting those Claims against the Debtors, the**

11 **Liquidating Debtors, the Estates, the Liquidating Trustee, or the property of the Liquidating**

12 **Trust.**

13        **d.**     <u>**Allowance of Cure Claims**</u>

14      A Cure Claim shall become an Allowed Cure Claim when the assumption of the affected

15 unexpired lease or executory contract is effective, pursuant to the applicable order of the Bankruptcy

16 Court that addresses the assumption of the applicable unexpired lease or executory contract.

17      **2.**     <u>**Priority Tax Claims**</u>

18      Priority Tax Claims include certain unsecured income, employment and other taxes described

19 by section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each Holder of a

20 Priority Tax Claim receive the present value of such Claim in regular installment payments in Cash

21 (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim;

22 (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not

23 less favorable than the most favored nonpriority Unsecured Claim provided for under the Plan.

24      The following chart lists <u>all</u> of the Debtors' Priority Tax Claims and their treatment under the

25 Plan:[10]

26

27 ─────────────────────

28 [10] The chart below is for informational purposes and is not an admission as to the validity of any particular Claim.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000034

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

| DESCRIPTION | TREATMENT |
|---|---|
| Priority Tax Claim of: Internal Revenue Service [SCI]<br><br>Amount of Claim = $2,400.00 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 2.2% per annum commencing on the Effective Date, pursuant to IRC § 6621. |
| Priority Tax Claim of: Internal Revenue Service [Secured California]<br><br>Amount of Claim = $1,887.29 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 2.2% per annum commencing on the Effective Date,  pursuant to IRC § 6621. |
| Priority Tax Claim of: Franchise Tax Board [SCI]<br><br>Amount of Claim = $800.00 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.0% per annum commencing on the Effective Date. |
| Priority Tax Claim of: City of Los Angeles [SCI]<br><br>Amount of Claim = $232,235.21 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.2% per annum commencing on the Effective Date. |
| Priority Tax Claim of: Employment Development Department [SCI]<br><br>Amount of Claim = $0.00 [for information only] | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.0% per annum commencing on the Effective Date, pursuant to Section 19521 of the *California Revenue and Taxation Code*. |

29

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured Claims are Claims secured by Liens on property belonging to either of the Estates.

The Debtors and the Committee reserve all rights to dispute the amount, validity, and/or priority of all Secured Claims asserted against the Debtors or either of them and property of the Debtors' Estates, which rights are reserved and preserved for, by and on behalf of the Liquidating Trust and the Post-Confirmation Oversight Committee.

The following chart lists the Classes containing the alleged Secured Claim and their treatment under the Plan.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: Collateralized Parties Pursuant to 2009 Pledge and Security Agreements Re Loan and Placement Agreements entered into from 2003 – 2008<br><br>(See Plan Exhibit "C" to the Plan)<br><br>Collateral description = See Plan Exhibit "D" to the Plan<br><br>Claim Priority = Unknown<br><br>Collateral value = Unknown – to be determined upon disposition of Collateral.<br><br>Amount of Claim = Scheduled for $7.44 million (approx.)<br><br>Interest Rate = Allowed Secured Claims shall accrue simple interest at the lower of the contract rate or prime rate plus 1% measured from the Effective Date. | N | Y<br><br>(Creditors with Claims in this Class that are not Disputed Claims are entitled to vote on the Plan) | Allowed Class 1 Claims will be paid at such time and from the Net Proceeds generated from the disposition of the Collateral securing such Claims. ("Net Proceeds" means gross proceeds less (i) commissions, fees, and costs directly associated with the disposition or collection of such proceeds and (ii) Liquidating Trustee Surcharge Amount. The Liquidating Trustee reserves his right to seek allowance of the Liquidating Trustee Surcharge Amount.)<br><br>The Liquidating Trustee and the Post-Confirmation Oversight Committee shall have standing to seek disallowance of Class 1 Claims and/or avoidance of some or all Liens or interests securing Class 1 Claims.<br><br>To the extent that Class 1 Claims are undersecured or wholly unsecured, the unsecured portion of the Claims shall be Class 4 Claims and will receive the treatment for such Claims as set forth below. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

30

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 2 | Secured claim of: Collateralized Parties re SCICG Mezzanine Fund I, LLC<br><br>(See Plan Exhibit "E" to the Plan)<br><br>Collateral description = See Plan Exhibit "F" to the Plan<br><br>Claim Priority = Unknown<br><br>Collateral value = Unknown – to be determined upon disposition of Collateral.<br><br>Amount of Claim = Scheduled for $10.8 million (approx.)<br><br>Interest Rate = Allowed Secured Claims shall accrue simple interest at the lower of the contract rate or the prime rate plus 1% measured from the Effective Date. | N | Y<br><br>(Creditors with Claims in this Class that are not Disputed Claims are entitled to vote on the Plan) | Allowed Class 2 Claims will be paid at such time and from the Net Proceeds generated from the disposition of the Collateral securing such Claims by the Liquidating Trustee, if any.<br><br>The Liquidating Trustee and the Post-Confirmation Oversight Committee shall have standing to seek disallowance of Class 2 Claims and/or avoidance of some or all Liens or interests securing Class 2 Claims.<br><br>To the extent that Class 2 Claims are undersecured or wholly unsecured, the unsecured portion of the Claims shall be Class 4 Claims and will receive the treatment for such Claims as set forth below.<br><br>As set forth in the Disclosure Statement, the Debtors believe that the Liens held by Holders of Class 2 Claims are subject to avoidance under Chapter 5 of the Bankruptcy Code. To avoid such litigation being Filed, a Holder of a Class 2 Claim may elect to surrender its Lien or interest by indicating such surrender on the Ballot. If a Holder of a Class 2 Claim surrenders its Lien or interest in this manner, its Class 2 Claim shall be reclassified as a Class 4 Claim and such Class 4 Claim will be treated as such for all purposes under the Plan. The surrender of such Lien or interest shall be effective upon receipt of the Ballot by the Debtors in accordance with the instructions set forth in the Disclosure Statement. |

### 2.    Class of Priority Unsecured Claims

Certain priority claims that are referred to in sections 507(a)(3), (4), (5), (6), and (7)

Bankruptcy Code are required to be placed in Classes. These Priority Unsecured Claims are entitled

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

to priority treatment as follows: the Bankruptcy Code requires that each Holder of a Priority

Unsecured Claim receive Cash on the Effective Date equal to the allowed amount of such Claim.

However, a Holders of Class 3 Claims may vote to accept deferred Cash payments of a value, as of

the Effective Date, equal to the allowed amount of such Claims.  Except as set forth in the chart

below, the Proponents are not aware of any Priority Unsecured Claims.  The Plan preserves all rights

of the Liquidating Trustee to dispute such Claims and File objections relating to any and all Priority

Unsecured Claims as set forth herein and in the Liquidating Trust Agreement.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 3 | Claims for wages under section 507(a)(4) of the Bankruptcy Code of:<br><br>Marc Paul and Robert Robotti  (SCI only)<br><br>Amount of Claims: $23,500 total (maximum of $11,750 per claimant) | Y | N<br><br>(Creditors with Claims in this Class are not entitled to vote on the Plan) | Allowed Priority Unsecured Claims shall be paid in full on the later of (1) the Effective Date or as soon as practicable thereafter and (2) if the Priority Unsecured Claim is a Disputed Claim, after such dispute is resolved by agreement of the parties or a Final Order<br><br>The Class 3 Claims are Disputed Claims. |

### 3.    Class of General Unsecured Claims

General Unsecured Claims are Claims that are not entitled to priority under section 507(a) of

the Bankruptcy Code.

The Plan preserves all rights of the Liquidating Trustee to dispute and File objections relating

to any and all General Unsecured Claims as set forth herein and in the Liquidating Trust Agreement.

The Plan also preserves all rights of the Liquidating Trustee and the Post-Confirmation Oversight

Committee to File motions requesting that the Bankruptcy Court estimate the amounts of any

contingent, unliquidated or disputed Claim, including, but not limited to, those Claims based on

guaranties of loans as set forth in Claim No. 127 filed by Wells Fargo Bank, N.A., solely in its

capacity as master servicer for various commercial mortgage loan securitizations and not as an

individual creditor.

The following chart identifies the Plan's treatment of General Unsecured Claims:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Claims: All Allowed General Unsecured Claims<br><br>Amount of Claims Estimated Allowed Unsecured Claims of $44.85 million. | N | Y<br><br>(Creditors with Claims in this Class that are not Disputed Claims are entitled to vote on the Plan) | Interim and final Distributions to the Holders of Allowed Class 4 General Unsecured Claims will be made by the Liquidating Trustee as follows:<br><br>(1) On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee will distribute the sums then available (after funding the Reserve Account as set forth below in Section VI.D.2.c.(10)) to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis.<br><br>(2) If at any time after the Effective Date the Liquidating Trustee is holding more than $1,000,000 in Cash in addition to the amounts in the Reserve Account or at such times as instructed by the Post-Confirmation Oversight Committee (unless such instruction is determined by the Court on motion by the Liquidating Trustee to be unreasonable), the Liquidating Trustee will distribute the Available Cash to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis; and<br><br>(3) Upon the resolution of all Claims and litigation, and the liquidation of all Liquidating Trust Assets, the Liquidating Trustee shall distribute the all Cash remaining in the Liquidating Trust by making a final distribution to the Holders of Allowed Class 4 General Unsecured Claims, subject to the provisions of Section VI.C.2.c.(9) of the Plan. |

**4.    Class of Interest Holders**

Interest Holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtors.  The following chart identifies the Plan's treatment of the Class of Interest Holders.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | All Membership Interests in Debtors | Y<br><br>(Interest Holders are not entitled to vote | The membership interests in the Debtors are cancelled. |

33

| | | but are deemed to have rejected the Plan.) | |
|---|---|---|---|

**D.    Executory Contracts and Unexpired Leases**

    **a.    Assumptions**

On the Effective Date, the Liquidating Debtors will be deemed to have assumed any and all executory contracts or unexpired leases which may be in effect that were not previously rejected. The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an Order approving the Debtors' assumption of all such executory contracts and unexpired leases.  The Debtors will File a schedule of proposed Cure Claims and/or a statement that the Debtors are not aware of any Cure Claims due under 11 U.S.C. § 365, not later than seven (7) days before the Confirmation Hearing Date and will serve the schedule on the non-Debtor counterparties to such executor contracts and unexpired leases.

    **b.    Rejections**

The Debtors reserve the right to seek approval of its rejection of any executory contract or unexpired lease prior to the Confirmation Date.  Debtors will File a schedule of contracts and leases to be rejected under the Plan not later than seven (7) days before the Confirmation Hearing Date and will serve the schedule on non-Debtor counterparties to such contracts and leases.

    **c.    Bar Date for Rejection Damage Claims**

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE THIRTY (30) DAYS AFTER THE CONFIRMATION DATE.  Any Claim based on the **rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely Filed.**

**E.    Means of Effectuating the Plan**

    **1.    Funding for the Plan, including Exit Financing**

On the Effective Date, the Liquidating Trust Assets shall be transferred to the Liquidating Trust.  To the extent necessary and subject to the authority set forth in the Liquidating Trust Agreement, the Liquidating Trustee may seek to fund the administration of the Liquidating Trust

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

34

Assets by way of, without limitation, (i) Cash on hand, (ii) proceeds of the Exit Financing, (iii) repayment of the Duke Note, (iv) collection of Dispo Fees earned upon the occurrence of Triggering Events, (v) sales proceeds from the liquidation of Liquidating Trust Assets, (vi) recoveries on claims and causes of action transferred by the Debtors to the Liquidating Trust, and (vii) obtaining additional financing or such other methods of raising capital as is reasonable and customary to facilitate the orderly disposition of the Liquidating Trust Assets for the benefit of the Beneficiaries. The Liquidating Trust shall also be funded by proceeds generated from the collection by the Liquidating Trustee of any Liquidating Trustee Surcharge Amount.

### 2.    **Exit Financing and Trust Assets as Security for Exit Financing**

The CRO has arranged for financing ("Exit Financing") anticipated to be available to the Liquidating Trustee, upon and after the Effective Date, in the form of a revolving line of credit in an amount up to $3,000,000 from Benchmark Bank (the "Exit Lender") of Plano, Texas.  However, no binding commitment or obligation to lend or borrow exists or will exist prior to the Effective Date. The following paragraph and the contents of the Indicative Term Sheet below describe certain material terms and provisions of the Exit Financing, including conditions and requirements which must be met (or waived) before the Exit Lender and Liquidating Trustee are obligated to proceed with the Exit Financing.

The Exit Financing is contingent on approval of the Plan.  More specifically, the Exit Financing will not be available unless and until the Plan (including the Exit Financing described herein and in the Plan) is approved, the Court's order approving the Plan (including the Exit Financing) becomes final and non-appealable, and the Effective Date occurs.  Conversely, the occurrence of the Effective Date following approval of the Plan is contingent on availability of the Exit Financing.  More specifically, if the Exit Financing is not available on the date which would otherwise be the Effective Date, the Effective Date will not occur.  Following is the **Indicative Term Sheet** for the Exit Financing:

| | |
|---|---|
| Date Available: | Effective Date |
| Borrower: | Liquidating Trustee, as Trustee on behalf of the Liquidating Trust |

DOCS_LA:248300.19 77002-002

000041

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

| | |
|---|---|
| Guarantors: | All existing and future direct and indirect subsidiaries of Borrower |
| Exit Lender: | Benchmark Bank |
| Exit Financing Amount and Type: | $3,000,000 revolving credit facility (the "Facility") |
| Use of proceeds: | To satisfy obligations of and support actions taken by the Liquidating Trustee under the Liquidating Trust Agreement and the Plan, including obligations to be paid on and after the Effective Date and actions taken to administer the Liquidating Trust Assets. |
| Collateral and Priority: | The Exit Lender will have first priority security interests and/or liens in and to all of the Liquidating Trust Assets, both as to currently unencumbered Liquidating Trust Assets under Section 364(c)(2) of the Bankruptcy Code and as to currently encumbered Liquidating Trust Assets under Section 364(d) of the Bankruptcy Code.  The security interests and/or liens in favor of the Exit Lender will be first, prior and senior to the holders of all Allowed Claims and Interests, including, without limitation, Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Class 1 – 5 Claims.  The Exit Lender will also have an Allowed Super-Priority Administrative Claim under Section 364(c)(1) of the Bankruptcy Code with priority over any or all Allowed Administrative Claims to further secure repayment of the Facility. |
| Term: | The Facility will have a term of 36 months from the Effective Date. |
| Repayment of Principal and Interest: | Interest will be due and payable monthly on the entire outstanding principal amount.  The Facility will not be subject to scheduled amortization of principal prior to the date that is 36 months after the closing date (the "Maturity Date").  All principal, interest, fees, expenses and other amounts outstanding under the Facility will be due and payable in full on the Maturity Date. |
| Mandatory Prepayments: | Upon the closing of (a) a sale of the Erwin Plaza building ("Erwin Plaza"), (b) a refinancing of the indebtedness secured by a lien on Erwin Plaza or (c) the consummation of any other liquidating event with respect to the interests of the Borrower in Erwin Plaza: |

(i)       the proceeds therefrom shall be disbursed by the escrow agent (or any other person) handling the closing in the following order:

First, the portion of such proceeds necessary to pay the holder of the first lien mortgage or deed of trust against Erwin Plaza, and reasonable and customary closing costs, will be used to pay such first lien indebtedness and closing costs; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

**Second**, the portion of such proceeds necessary to pay the aggregate principal ($8,076,000) and accrued but unpaid interest on the Duke Note (the "Duke Note Proceeds") shall be paid as described in clause (ii) below; and

**Third**, the remainder of such proceeds, if any, shall be transferred to the persons legally entitled thereto, including the owners of Erwin Plaza to the extent legally entitled thereto; and

(ii)   the portion of such proceeds representing the Duke Note Proceeds shall be disbursed by the escrow agent (or any other person) handling the closing in the following order:

**First**, the portion of the Duke Note Proceeds necessary to prepay the Facility in full will be transferred to Exit Lender and used to prepay all principal, interest, fees, expenses and other amounts outstanding under the Facility; and

**Second**, the remainder of the Duke Note proceeds, if any, shall be transferred to the Liquidating Trustee or, if applicable, as otherwise required by the Plan; and

(iii)   upon Exit Lender's receipt of the Duke Note Proceeds from the sale of Erwin Plaza as set forth above, Exit Lender, in its sole and absolute discretion, may:

(x)   terminate the commitment and the remaining term of the Facility at which time all principal, interest, fees, expenses and other amounts outstanding under the Facility shall be due and payable in full;

(y)   institute a borrowing base whereby borrowing will be limited to the lesser of the amount of the borrowing base or the initial amount of the Facility; or

(z)   only if approved by Exit Lender and the Liquidating Trustee, each in its sole and absolute discretion, convert any remaining unpaid principal balance of the Facility to a term loan with scheduled amortization.

Termination By
Liquidating Trustee:   By irrevocable written notice to Exit Lender, Liquidating Trustee, in his sole and absolute discretion, may terminate the commitment and remaining term of the Facility at any time the outstanding balance under the Facility is zero.

Interest and Fees:   The principal amount of all Exit Financing loans will accrue interest at a per annum rate equal to the prime rate of interest published in the

37

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

*Wall Street Journal* plus 1.00%, and the interest rate will float on a daily basis, and be charged on the outstanding drawn amounts;

A one percent (1.00%) Commitment Fee on the full $3,000,000 Facility Amount, is fully earned and payable on the Effective Date; and

On the date that is one (1) year following the Effective Date, and continuing on each anniversary of the Effective Date thereafter while the Facility is outstanding, Liquidating Trustee shall pay to Exit Lender a one percent (1.00%) annual fee on the full Facility Amount of $3,000,000 (subject to adjustment based on any appraisal of Erwin Plaza as set forth below).

Upon an event of default under the Facility, the applicable interest rate will be increased by two percent (2%) per annum, and all amounts outstanding under the Facility will be payable on demand.

Collateral/Security:    The Exit Lender will have first priority security interests and/or liens in and to all of the Liquidating Trust Assets, including but not limited to the following (which were formerly owned by the Debtors prior to the Effective Date):

- All receivables and general intangibles of the Liquidating Trustee, including all deferred fee receivables at any time owed or owing to the Liquidating Trustee and previously owed to SCI Real Estate Investments, LLC and/or Secured California Investments, Inc., including all Dispo Fees
- All promissory notes payable to the Liquidating Trustee, including those promissory notes comprising the Duke Note
- All economic benefits of all equity interests owned by the Liquidating Trustee (formerly owned by the Debtors prior to the Effective Date)
- All Liquidating Trust Assets subject to any prior valid, perfected, and non-avoidable liens or security interests

Exit Financing
Loan Closing Date:    Upon the Effective Date of the Plan, which is the date on which each of the order(s) of the Court approving the Plan (including the Exit Financing) is final and non-appealable; provided that the Exit Financing Loan Closing Date will not occur unless all conditions precedent are satisfied or waived by the Exit Lender, which waiver may be given or withheld in the sole and absolute discretion of the Exit Lender

Conditions Precedent
To Closing:    The Facility will be available subject to the satisfaction of conditions that are customary for financings of this type including, without limitation to the following:

- Execution and delivery by the Liquidating Trustee of loan documentation (including mortgages and other lien and security documents), and of guarantees by the Guarantors, each

38

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

acceptable to the Exit Lender and approved by Exit Lender's legal counsel;

- Receipt by the Exit Lender of additional documents as are customary for transactions of this type or as it may request, all in form and substance acceptable to the Exit Lender and its counsel;

- Exit Lender will receive all financial information, projections, budgets, business plans, cash flows and such other information as the Exit Lender shall reasonably request;

- Receipt by the Exit Lender of all fees required to be paid and all expenses related to the Facility for which invoices have been presented;

- Receipt by the Exit Lender of evidence satisfactory to Exit Lender, in Exit Lender's sole discretion, of the Liquidating Trustee's authority to enter into, and perform all obligations under, the loan documents;

- All filings, recordings (including, without limitation, mortgages and deeds of trust, as applicable) and searches necessary or desirable in connection with the liens and security interests referred to above under "Collateral/Security" shall have been duly made;

- All payment obligations under any existing debtor in possession facility shall have been paid in full and all liens on the Liquidating Trust Assets securing such facility shall have been terminated;

- Receipt of final non-appealable order(s) confirming and approving the Plan and the Exit Financing;

- Court confirmation and approval order(s) shall be acceptable to Exit Lender and shall authorize the Exit Financing;

- Court confirmation and approval order(s) shall be in full force and effect and shall not have been modified, reversed, stayed, or vacated;

- No litigation commenced in the Bankruptcy Court or any other court of competent jurisdiction which, if successful, could have a material adverse effect on the Plan or Facility;

- Completion by the Exit Lender of a business and legal due diligence investigation of the Borrower and its assets and satisfaction of the Exit Lender, in its sole and absolute discretion, with the results thereof in all respects; and

- Any other condition precedent agreed between the parties as necessary and set forth in the loan documents.

| | |
|---|---|
| Additional Loan Requirements: | Semi-Annual financial reporting for the Liquidating Trust and other covenants and conditions that are typical for this type of transaction |
| Appraisal & Commitment | |

39

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

| | |
|---|---|
| Reduction: | Exit Lender retains the right to perform an annual (or, if an event of default has occurred and is continuing, more frequent) appraisal of the Erwin Plaza, a 238,792 sq. ft. building located at 2200 West Main Street, Durham, NC 27705 at the sole expense of the Borrower. The maximum amount available under the Facility will be permanently reduced dollar-for-dollar for the amount of any such appraisal that is less than $28,000,000 and the Borrower shall immediately prepay the principal amount of the loans outstanding under the Facility in excess of such reduced maximum amount, if any.. |
| Expenses: | All expenses of Exit Lender related to this transaction will be paid by Liquidating Trustee; Exit Lender acknowledges receipt of an expense deposit of $25,000 to be applied to such expenses. |
| | Exit Lender shall provide a preliminary budget for its due diligence and legal costs, and agrees to limit such costs to $50,000.00. Provided, the Liquidating Trustee will reserve the right to agree to pay amounts incurred by Exit Lender in excess of $50,000.00 after consultation with the applicable Creditors Committee. |
| Events of Default: | Subject to negotiation but usual and customary for this type of transaction |
| Additional Loan Terms: | To be determined but expected to be usual and customary terms for this type of instrument and transaction |
| Additional Considerations: | While it is not being made a requirement of the Exit Financing, the Exit Lender would request that its subsidiary Benchmark Title, LLC be considered as the preferred title company of choice to close any potential sale of real estate controlled by the Liquidating Trustee so long as Benchmark Title, LLC provides its services at prevailing market rates and on prevailing market terms. |
| No Commitment: | **THE FOREGOING INDICATIVE TERM SHEET AND THE CONTENTS THEREOF DO NOT CONSTITUTE A COMMITMENT OF THE EXIT LENDER. Exit Lender shall be under no commitment or obligation to lend funds until a written loan agreement expressing an intention to be legally committed, is executed by the Liquidating Trustee and the Exit Lender. The Indicative Term Sheet can be withdrawn by the Exit Lender or the prospective Liquidating Trustee without notice. Oral discussions covering the Indicative Term Sheet or any part of it shall not bind or obligate Exit Lender, the prospective Liquidating Trustee or any other person or entity to any agreement unless such agreement is reduced to writing and signed by an authorized representative of Exit Lender, the prospective Liquidating Trustee, or such other person or entity, as applicable. The foregoing Indicative Term Sheet is intended as an outline only and does not purport to summarize all the conditions, covenants, representations, warranties and other provisions which would be contained in final loan documents evidencing the Facility.** |

**3.        The Effective Date of the Plan and Conditions Thereto**

The Effective Date of the Plan shall be the first Business Day after all conditions to the occurrence of the Effective Date have been satisfied or waived.  The following are the conditions to the Effective Date:

(i)        the Court has entered the Confirmation Order, which approves the Exit Financing;

(ii)        no order staying the effectiveness of the Confirmation Order has been entered by the first Business Day after the fifteenth (15th) calendar day after the entry of the Confirmation Order or, if an appeal of the Confirmation Order has been filed before such date and there has been an order staying the effectiveness of the Confirmation Order entered before such date, an order dismissing the appeal has become final and non-appealable or the stay of the Confirmation Order has terminated; and

(iii)        the Exit Financing is available.

**4.        Post-Confirmation Management**

**a.        The Liquidating Debtors**

Upon the occurrence of the Effective Date, the Debtors shall become the Liquidating Debtors.  After the Effective Date, the Liquidating Trustee is authorized to act as management of the Liquidating Debtors and can execute such documents and enter into such transactions as necessary for purposes of consummating the Plan, with the majority consent of the Post-Confirmation Oversight Committee.  If such consent from the Post-Confirmation Oversight Committee is not forthcoming, the Liquidating Trustee and/or Liquidating Debtors may seek an order from the Bankruptcy Court that the consent was unreasonably withheld, and if such an order is obtained, the Liquidating Trustee and/or Liquidating Debtors can proceed to take such action as appropriate to maximize the value of the Liquidating Trust Assets.  Notwithstanding the authority granted to the Liquidating Trustee, the Liquidating Debtors shall be separate and apart from the Liquidating Trust created by the Plan, and release any and all rights, title and interest to the Liquidating Trust Assets.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

000047

**b.**    **Dissolution of the Committee and Formation of the Post-Confirmation Oversight Committee**

On the Effective Date, the Committee will be deemed dissolved and its members will be released and discharged from all further duties and obligations arising from or related to the Cases. On the Effective Date, a Post-Confirmation Oversight Committee shall be appointed, which shall consist of the members of the Committee as of the date of entry of the Confirmation Order. The Post-Confirmation Oversight Committee shall serve without a bond. Except as expressly provided herein and in the Liquidating Trust Agreement, decisions of the Post-Confirmation Oversight Committee shall be made by majority vote of its members. Members of the Post-Confirmation Oversight Committee shall receive reimbursement of actual costs and expenses (but not reimbursement for individual counsel or advisor fees) in connection with their duties as members of the Post-Confirmation Oversight Committee. Any member of the Post-Confirmation Oversight Committee may opt-out of participation in the Post-Confirmation Oversight Committee by providing written notice to the other members of the Post-Confirmation Oversight Committee and counsel for the Liquidating Trustee. A member of the Post-Confirmation Oversight Committee who has chosen to opt-out may be replaced pursuant to the procedures adopted in the by-laws of the Post Confirmation Oversight Committee.

It is anticipated that Levene, Neale, Bender, Yoo & Brill, L.L.P. shall serve as counsel for the Post-Confirmation Oversight Committee, and that Thompson & Knight LLP, Pachulski Stang Ziehl & Jones LLP, Kennerly, Lamishaw & Rossi LLP and Pepper Hamilton LP (and other such counsel as the Liquidating Trustee shall employ with Court approval or with the majority consent of the members of the Post-Confirmation Oversight Committee) shall serve as counsel for the Liquidating Trustee, commencing on the Effective Date.

As soon as practicable after the Effective Date, the Post-Confirmation Oversight Committee shall have the right to adopt and be governed by by-laws that are customary for post-confirmation committees.

DOCS_LA:248300.19 77002-002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

000048

c.    **The Liquidating Trust and the Liquidating Trustee**

(1)    **Creation of the Liquidating Trust**

On the Effective Date and by operation of the Confirmation Order, a Liquidating Trust will be established for the benefit of all Beneficiaries and, to the extent that all Allowed Claims are paid in full with interest, the Holders of Allowed Interests in the Debtors.  The Liquidating Trust Agreement shall be executed by the parties thereto on or before the Effective Date.  The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including Treasury Regulations Section 301.7701-4(d).  The Liquidating Trust will be organized for the purpose of identifying, recovering, preserving, monitoring, liquidating and disposing of the Liquidating Trust Assets in a manner that maximizes the value, which may take into consideration the net present value at a reasonable discount rate, of the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business.  On the Effective Date, the Debtors shall be deemed to have transferred all of the Assets to the Liquidating Trust.  The Liquidating Trust shall identify, recover, preserve, monitor, receive, liquidate and distribute the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement.  The Liquidating Trust is not a successor of either of the Debtors and, except as expressly provided herein, shall not have liability for any Claim, right or action of any third party that is based on any theory of successor liability or similar legal theory or doctrine. To the extent there are any inconsistencies between the Plan and the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

(2)    **Appointment of the Liquidating Trustee**

The initial Liquidating Trustee shall be William Hoffman.  The Liquidating Trustee shall be compensated at his/her customary hourly rate.  The Liquidating Trustee shall administer the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement and shall perform all of the obligations of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall be the authorized representative of the Liquidating Trust.  The Liquidating Trustee shall serve without bond for the duration of the Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided in the Plan and in the Liquidating Trust Agreement. The Liquidating Trustee will also be required to do the following upon the receipt of written

43

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

instruction from the Post-Confirmation Oversight Committee:  (1) commence or continue to prosecute litigation with respect to any claims or causes of action on behalf of the Liquidating Trust; (2) propose, accept or reject any settlement proposals with respect to any claims or causes of action that are Liquidating Trust Assets; (3) propose, accept or reject any settlement proposals with respect to any Claim asserted against the Debtors or the Liquidating Trust Assets whether arising prior to or after the Effective Date; (4) make Distributions in accordance with the terms of the Plan or the Liquidating Trust Agreement if such has not previously been timely made by the Liquidating Trustee; (5) when appropriate, exercise the rights and powers set forth in the Liquidating Trust Agreement; and (6) perform such other reasonable and necessary acts in order to carry out the terms of the Plan, the Liquidating Trust, and/or which are in the best interests of the Beneficiaries if such does not violate any provision of the Plan, the Liquidating Trust Agreement, or applicable law.  If the Liquidating Trustee disagrees with any instruction received by the Post-Confirmation Oversight Committee, then the Liquidating Trustee may seek an order from the Bankruptcy Court that the instruction received was unreasonably given, and if such an order is obtained, authorizing the Liquidating Trustee to take such other action as appropriate to maximize the value of the Liquidating Trust Assets.

The Post-Confirmation Oversight Committee shall have the authority during the term of the Liquidating Trust to seek the removal and/or replacement of the Liquidating Trustee for cause shown to the Bankruptcy Court if, after consultation with the Liquidating Trustee, the matter cannot be resolved short of such action.  In the event that the Liquidating Trustee is terminated by final Bankruptcy Court order, then the Liquidating Trustee and his retained professionals shall be entitled to recover all earned and unpaid fees and expenses through the date of termination.  In addition, the Liquidating Trustee may resign with thirty (30) days prior written notice, provided, however, the Liquidating Trustee shall continue to act as the Liquidating Trustee until such time as the Post-Confirmation Oversight Committee shall find a suitable substitute Liquidating Trustee; provided, however, the Liquidating Trustee shall not continue to serve as the Liquidating Trustee more than one-hundred eighty (180) days after he/she submits his/her written notice of resignation.  If the Post-

DOCS_LA:248300.19 77002-002

000050

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

Confirmation Oversight Committee has not found a suitable replacement for the Liquidating Trustee by the end of the one-hundred eighty (180) day period, the Post-Confirmation Oversight Committee shall perform the duties of the Liquidating Trustee until a suitable replacement can be found.

Annexed to the Plan as Exhibit "G" is a proposed operating budget for administration of the Liquidating Trust prepared for the period from the Effective Date through December 31, 2017, which budget shall be subject to the majority approval of the Post-Confirmation Oversight Committee (the "Initial Post-Confirmation Budget").  Budgets shall be prepared no later than (60) days in advance of the expiration of the end of each calendar year and shall be subject to majority approval of the Post-Confirmation Oversight Committee (the "Successive Post-Confirmation Budgets").  Successive Post-Confirmation Budgets shall cover a forward-looking period of not less than five years or until such earlier time as the Liquidating Trust is anticipated to terminate.  If approval of the budget is not given by from the Post-Confirmation Oversight Committee, the Liquidating Trustee may seek an order from the Bankruptcy Court that the approval was unreasonably withheld, and if such an order is obtained, the Liquidating Trustee can administer the Liquidating Trust in accordance with such Initial Post-Confirmation Budget or such Successive Post-Confirmation Budget.

The Liquidating Trustee shall provide a quarterly written report to the Post-Confirmation Oversight Committee regarding the status of the matters within the responsibility of the Liquidating Trustee on the twentieth (20th) day of the month (or the first Business Day thereafter if such date is on a weekend or legal holiday) following the end of the immediately preceding three calendar month period (each such period being a "quarter", with the first quarter being that period that includes the first three full calendar months following the Effective Date) or at such other intervals and in such form as reasonably requested by the Post-Confirmation Oversight Committee (the "Periodic Trustee Reports").  The Periodic Trustee Reports shall include (i) monthly financial statements/reports generated by the Liquidating Trustee; (ii) such other information as reasonably requested regarding the Initial Post-Confirmation Budget or any Successive Post-Confirmation Budget; (iii) pertinent

45

current or historical financial or operational information; and (iv) such other documents as are appropriate relating to the administration of the Liquidating Trust.

### (3)    Disbursing Agent

The Liquidating Trustee shall act as the Disbursing Agent for purposes of making all distributions provided for under the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall serve in this capacity without bond.

### (4)    Transfer of the Assets to the Liquidating Trust

The Debtors on the Effective Date shall transfer all Assets to the Liquidating Trust.  All Liquidating Trust Assets, which include all rents, profits and proceeds from Liquidating Trust Assets and related rights and claims that may accrue after the Effective Date, shall be held in trust for the benefit of the Beneficiaries, subject to the provisions of the Plan and the Liquidating Trust Agreement.  The Liquidating Debtors and their Estates shall retain no interest in the Assets or the Liquidating Trust Assets.

### (5)    Sale or Other Disposition of Liquidating Trust Assets

Except as otherwise set forth in the Plan or in the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trust may use, acquire, sell or otherwise dispose of Liquidating Trust Assets.  Subject to the approval of the Post-Confirmation Oversight Committee, the Liquidating Trustee shall have the authority to monetize, sell, liquidate or otherwise dispose of all Liquidating Trust Assets without need to obtain approval from the Bankruptcy Court or the United States Trustee.  The Liquidating Trustee shall use reasonable commercial efforts to collect all monies owed to the Liquidating Trust whether based on a contract or any other basis.  If the Liquidating Trustee wishes to settle any Monetary Claim for less than the full face amount of the Monetary Claim or monetize any other Liquidating Trust Asset, such transaction(s) shall be subject to majority approval by the Post-Confirmation Oversight Committee.  Unanimous approval of the Post-Confirmation Oversight Committee is required as a condition to the Liquidating Trustee entering into any transaction or settlement that represents a discount of more than $100,000 or 20% (whichever is less) of the face amount of the Monetary Claim. However, if the Post-Confirmation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

1    Oversight Committee does not give its consent, the Liquidating Trustee may seek a ruling from the

2    Bankruptcy Court that the Post-Confirmation Oversight Committee's consent was unreasonably

3    withheld, and if so, seek Bankruptcy Court approval of the proposed settlement.  Any funds held or

4    received by the Liquidating Trustee shall be maintained in one or more segregated bank accounts

5    maintained to hold funds to be distributed under the Plan.  If the Post-Confirmation Oversight

6    Committee instructs the Liquidating Trustee to File a Litigation Claim, including any action under

7    Chapter 5 of the Bankruptcy Code, and the Liquidating Trustee elects not to do so, the Post-

8    Confirmation Oversight Committee shall have standing to File any such Litigation Claim in the

9    appropriate forum.

10          The Liquidating Trustee, with the consent or upon instruction of a majority of the Post-

11   Confirmation Oversight Committee, may, in accordance with the procedure set forth in the

12   Liquidating Trust Agreement, abandon to the Liquidating Debtors or disclaim any interest in a Trust

13   Asset if it is determined that the Liquidating Trust Asset is burdensome to the Liquidating Trust or

14   that it is of inconsequential value or benefit to the Liquidating Trust.

15                      **(6)**      **Investigation and Prosecution of Claims**

16          All Litigation Claims held by the Liquidating Debtors and their Estates as of the Effective

17   Date shall be, as a matter of law, transferred free and clear of liens and interests, claims and

18   encumbrances to the Liquidating Trust as part of the Liquidating Trust Assets.  The Liquidating

19   Trustee shall have the standing and authority to initiate, prosecute, compromise or otherwise resolve

20   any and all Litigation Claims, either in consultation with or at the instruction of the Post-

21   Confirmation Oversight Committee.  The Bankruptcy Court shall have continuing non-exclusive

22   jurisdiction to hear and determine any litigation commenced with respect to a Litigation Claims.

23          The Liquidating Trustee shall have the duty to investigate all Litigation Claims and

24   determine which, if any, should be prosecuted for the benefit of the Liquidating Trust.  Except as

25   otherwise set forth herein and subject to the approval of the Post-Confirmation Oversight

26   Committee, all Litigation Claims are preserved by the Plan, and the Liquidating Trustee shall have

27   the authority to settle, adjust, retain, enforce or abandon any Litigation Claim as the representative of

28

47

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

the Debtors' Estates under section 1123(b)(3)(B) of the Bankruptcy Code without supervision of, or need for approval by, the Bankruptcy Court.  The Liquidating Trustee shall provide a written description of any proposed settlement, compromise or dismissal of any Litigation Claim (i.e., any right or cause of action) to the Post-Confirmation Oversight Committee for approval.

**(7)**     **Bankruptcy Powers**

The Liquidating Trust shall have, and the Debtors shall be deemed to have preserved, transferred and assigned to the Liquidating Trust on the Effective Date, all of the rights, claims, powers, objections, counterclaims, defenses, setoffs and actions of the Debtors and their Estates under the Bankruptcy Code.  After the Effective Date, all claims, rights and causes of action of the Debtors and their Estates shall be Filed and prosecuted in the name of the Liquidating Trust.  The entry of a final decree in or order closing the Cases or either of them shall not eliminate any claim, right or cause of action, or any counterclaim, defense or objection that existed prior to such final decree or order closing the Cases or either of them, and the Bankruptcy Court shall retain jurisdiction as set forth in Section VI.D.3. of the Plan notwithstanding such final decree or closure of the Cases.

**(8)**     **Employment and Compensation of Professionals, Reimbursement of Expenses**

The Liquidating Trustee and the Post-Confirmation Oversight Committee are authorized to employ attorneys and/or other professionals as appropriate to discharge their duties without need for Bankruptcy Court approval, specifically including the payment of any professional utilized by the CRO/Liquidating Trustee in the drafting of the Plan, Liquidating Trust Agreement and all related documents drafted before the Effective Date relating to the Liquidating Trustee and the Liquidating Trust.  Members of the Post-Confirmation Oversight Committee shall be entitled to reimbursement of out-of-pocket costs incurred in the course of the performance of their duties; however, such reimbursement does not apply to the fees or costs of any professionals retained by any individual member of the Post-Confirmation Oversight Committee.  Professionals employed by the Liquidating Trustee and the Post-Confirmation Oversight Committee shall be compensated based on their customary rates and terms on a monthly basis without need for Court approval of fees and expenses.

DOCS_LA:248300.19 77002-002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

Professionals employed by the Liquidating Trustee and the Post-Confirmation Oversight Committee shall submit monthly bills to both the Liquidating Trustee and the Post-Confirmation Oversight Committee in the ordinary course of the professionals' billing practices.  The Liquidating Trustee and the Post-Confirmation Oversight Committee shall have ten(10) calendar days to object to the payment of the fees and expenses provided in such billings (the "Fee Objection Date").  If no written objection is received by the respective professional(s) by the Fee Objection Date, then such fees shall be paid by the Liquidating Trustee in the full amount requested without need for further review or authorization.

The Bankruptcy Court will retain exclusive jurisdiction to resolve any fee disputes among the Liquidating Trustee, the Post-Confirmation Oversight Committee and retained professionals.

### (9)    Distributions from the Liquidating Trust

Distributions to be made by the Liquidating Trustee on the Effective Date on account of any Allowed Claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Liquidating Trustee under the Plan or the Liquidating Trust Agreement shall be made, after consultation with the Post-Confirmation Oversight Committee, by check drawn on a domestic bank or by wire transfer.  Holders of Allowed Claims shall receive distributions in their order of statutory priority as set forth above in Sections VI.A. and VI.B. of the Plan.

Interim and final distributions to the Holders of Allowed Class 4 General Unsecured Claims will be made by the Liquidating Trustee as follows:

(1) On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee will distribute the sums then available after funding of the Reserve Account, to the Holders of Allowed Class 4 General Unsecured Claims on a Pro Rata basis;

(2) If at any time after the Effective Date, the Liquidating Trustee is holding more than $1,000,000 (one million) in Cash that is not necessary to fund the Reserve Account or at such other times upon instruction of the Post-Confirmation Oversight Committee, the Liquidating Trustee will

49

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

1 distribute the Available Cash to the Holders of Allowed Class 4 General Unsecured Claims on a Pro

2 Rata basis; and

3 (3) Upon the resolution of all objections to Claims, litigation, and the liquidation of all

4 Liquidating Trust Assets, the Liquidating Trustee shall distribute the remaining cash from the

5 Liquidating Trust Assets and the Reserve Account by making a final distribution to the Holders of

6 Allowed Class 4 General Unsecured Claims subject to the provisions of Section VI.C.2.c.(9) in the

7 Plan.

8 Except as otherwise agreed to by the Liquidating Trustee in writing, distributions to be made

9 to Beneficiaries may be delivered by regular mail, postage prepaid, to the address shown in the

10 Schedules Filed with the Bankruptcy Court, as they may from time to time be amended in

11 accordance with Bankruptcy Rule 1009, or, if a different address is stated (a) in a proof of claim duly

12 Filed with the Court or (b) in a written notice of change of address (i) delivered by the Record Date

13 to the Debtors or (ii) thereafter, at least thirty (30) days prior to any Distribution, to the Liquidating

14 Trustee, to such address.  If no address is available either on a proof of claim, on the Schedules or in

15 a written notice delivered in a timely manner to the appropriate party, the Distribution will be

16 deemed to be undeliverable and subject to the provisions below relating to "Unclaimed Property".

17

18 **(a)    Minimum Amount of Interim Distributions.**

19 A Distribution made by the Liquidating Trustee to any individual Beneficiary shall not be

20 less than $25.00, unless such distribution constitutes the final distribution to be made to such

21 Beneficiary under the Plan.

22 **(b)    Failure to Negotiate Checks Distributed by Liquidating Trustee.**

23

24 Checks issued by the Liquidating Trustee to pay Allowed Claims shall be null and void if not

25 negotiated (each, a "Void Check") within one hundred eighty (180) days after the date of issuance

26 thereof (the "Claiming Period").  Requests for reissuance of any check by a Beneficiary to whom

27 such check was originally issued must be received by the Liquidating Trustee prior to the expiration

28 of the Claiming Period.  After the expiration of the Claiming Period, any unclaimed property held on

50

account of such Void Check shall be re-distributed to the remaining Beneficiaries on a pro rata basis based on their relative statutory priority under the Bankruptcy Code. After the expiration of the Claiming Period, the unpaid balance of an Allowed Claim of a Beneficiary to whom the Void Check was sent shall be disallowed, and such Beneficiary shall be forever barred, estopped and enjoined from seeking payment from the Liquidating Trust on account of such Claim.

**(c)      Unclaimed Property.**

Without further Court order, and notwithstanding any federal or state escheat laws to the contrary, unclaimed funds held by the Liquidating Trust in an amount of $10,000 or less on the date that the Liquidating Trust is terminated may be redistributed to the remaining Beneficiaries on a Pro Rata basis based on their relative statutory priority under the Bankruptcy Code, donated to a charity selected by the Post-Confirmation Oversight Committee, or may be used for such other purpose consistent with the Plan and applicable law at the discretion and instruction of the Post-Confirmation Oversight Committee. If a Distribution is returned to the Liquidating Trustee as an undeliverable Distribution or is otherwise deemed to be an undeliverable Distribution, the Liquidating Trustee will not make any further Distribution to the Beneficiary, except as provided below.

If a Distribution to a Beneficiary is returned as undeliverable or a Beneficiary fails to provide the Liquidating Trustee its Federal Tax Identification Number or Social Security Number within forty–five (45) days after the date of the Liquidating Trustee's written request, no further Distributions shall be made to such Beneficiary unless and until the Liquidating Trustee is notified in writing of such Beneficiary's then current address or requested tax identification number. Unclaimed and undeliverable Distributions shall remain in the possession of the Liquidating Trust until such time as a Distribution becomes Distributable. All unclaimed and undeliverable Cash Distributions will be held in unsegregated, noninterest-bearing bank accounts for the benefit of the entities entitled to the Distributions (the "Unclaimed Distributions Reserve"). Any Beneficiary who does not claim in writing the undeliverable or uncashed Distribution within 180 days after the date such Distribution was to be made shall be deemed to have waived all of such Beneficiary's rights and claims with respect to the unpaid balance of its Allowed Claim and such Beneficiary shall be forever barred,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

51

1  estopped and enjoined from seeking payment from the Liquidating Trust on account of its Allowed

2  Claim.  Such unclaimed or undeliverable Distribution shall be transferred from the Unclaimed

3  Distributions Reserve to the applicable bank account for subsequent Distributions according to the

4  Plan.

5        Without further Court order, at such time that all pro rata Distributions have been made to

6  each and all Classes of creditors as required under the Plan, any unclaimed or undeliverable Cash

7  held by the Liquidating Trust in the Unclaimed Distributions Reserve shall be redistributed to all

8  Beneficiaries in accordance with the Plan other than those Beneficiaries whose last Distribution was

9  unclaimed or was undeliverable; however, if such unclaimed or undeliverable Cash is $10,000 or

10  less, in the discretion of the Liquidating Trustee, such may be donated to a charity selected by the

11  Liquidating Trustee and the Post-Confirmation Committee or may be used for such other purpose

12  consistent with the Plan and applicable law.

13        Nothing in the Plan or otherwise requires the Liquidating Trustee to attempt to locate any

14  entity holding an Allowed Claim whose Distribution is undeliverable.

15

16                    **(d)    Record Date.**

17        The record date for purposes of the initial Distributions under the Plan and Liquidating Trust

18  Agreement shall be the date the Bankruptcy Court enters the Confirmation Order.   The Liquidating

19  Trustee will rely on the Schedules and/or register of proofs of claim Filed in the Cases except to the

20  extent a notice of transfer of Claim or Interest or change of address of a Holder has been Filed with

21  the Court prior to the Record Date pursuant to Bankruptcy Rule 3001.

22                    **(10)    Reserve Accounts**

23        The Liquidating Trustee will create one or more Reserve Accounts and, prior to any

24  Distribution to Beneficiaries holding Allowed Class 4 Claims, shall establish a cash reserve in an

25  amount that is agreed by the Post-Confirmation Oversight Committee to be sufficient at any given

26  time for (1) all Disputed Claims; (2) expenses to administer the Liquidating Trust Assets, including

27  all fees, costs and expenses of the Liquidating Trust and the Post-Confirmation Oversight Committee

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

52

and post-confirmation professionals and employees; (3) unpaid Allowed Class 1 and Class 2 Claims, such amounts consisting of and to the extent of the realized Net Proceeds of the Collateral; (4) unpaid Allowed Priority Tax Claims and Allowed Unsecured Priority Claims; and (5) the Unclaimed Distribution Reserve (items (1) – (5) being collectively referred to as the "Reserve Account"). The amount to be deposited in the Disputed Claim Reserve shall be that which is reasonably estimated by the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, to be payable to the Holder of a Disputed Claim on a pro rata basis if such claim ultimately became an Allowed Claim.

The amount in the Disputed Claim Reserve, in the discretion of the Liquidating Trustee after consultation with the Post-Confirmation Oversight Committee, may be adjusted from time to time as Disputed Claims are resolved and distributions are made on account of any Disputed Claim that has become an Allowed Claim in whole or in part. The Disputed Claims Reserve shall be maintained at appropriate funding levels in the reasonable discretion of the Liquidating Plan Trustee until the resolution of all Disputed Claims. No payments of Cash or distributions of other property or other consideration of any kind shall be made on account of any Disputed Claim unless and until such claim becomes an Allowed Claim or is deemed to be such for purposes of Distribution. Upon the allowance of a previously Disputed Claim, the initial Distribution to the Holder of the newly Allowed Claim will be the next Distribution Date for the applicable Class following the date on which the Disputed Claim becomes an Allowed Claim.

### (11)    No Action Against the Liquidating Trust Without Bankruptcy Court Approval

On and after the Effective Date, no action or proceeding may be commenced or continued by any entity in any court or other tribunal, other than the Bankruptcy Court, against the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Oversight Committee, or any of their directors, officers, shareholders, employees, professionals, agents, members or representatives, without the prior approval of the Bankruptcy Court in a final, non-appealable order. On and after the Effective Date, there shall be no act to collect or recover from, or offset against, or to create, perfect or enforce any right, claim, interest or remedy by any entity, against the Liquidating Trust, the Liquidating

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

53

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

Trustee, the Post-Confirmation Oversight Committee, or any of their officers, employees, professionals, agents, members or representatives, without the prior approval of the Bankruptcy Court.  This provision does not require that a defendant in a proceeding filed by the Liquidating Trust or Post-Confirmation Oversight Committee obtain the approval of the Bankruptcy Court to assert any defense or setoff in such proceeding.

### (12)    Termination of the Liquidating Trust

The Liquidating Trust shall be irrevocable and shall have a term of five years from and after the Effective Date, subject to extension as provided herein and the Liquidating Trust Agreement. The Liquidating Trust shall terminate when the Liquidating Trustee has performed all of his/her duties under the Plan and the Liquidating Trust Agreement, including the liquidation and distribution of all Liquidating Trust Assets.  However, if warranted by the facts and circumstances, upon a determination by the Post-Confirmation Oversight Committee that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidation purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term based on facts and circumstances.

### (13)    Reports by the Liquidating Debtors and the Liquidating Trustee

The Liquidating Debtors will provide an accounting to the Liquidating Trustee of all cash on hand and in their attorneys' client trust account as of the date of the entry of the Confirmation Order.

Until the Court enters a final decree, the Liquidating Trustee shall File quarterly status reports with the Court to indicate: (a) the status of the liquidation of the Liquidating Trust Assets, (b) the total amount of Cash received and Distributions made from the Liquidating Trust, (c) the total amount held by the Liquidating Trust in the Reserve Account, (d) a list of all Holders of Unsecured Claims, (e) a list of all Disputed Claims, and (f) a list identifying the total Distributions made to date to each Holder of an Allowed Claim.

The Liquidating Trust shall serve the United States Trustee with any and all documents that it Files with the Bankruptcy Court after the Confirmation Date.  In addition, the Liquidating Trust is responsible for the timely payment of US Trustee Fees incurred pursuant to 28 U.S.C. § 1930 (a)(6). In connection with calculating such fees, the Liquidating Trust shall File with the Bankruptcy Court

54

000060

and serve on the US Trustee a quarterly Post Confirmation Status Report regarding all income and disbursements for each quarter (or portion thereof) the Cases remain open. The Liquidating Trustee shall prepare and distribute any other reports or other information that may be required by the Bankruptcy Court, the Federal Rules and the Local Rules and/or that the Liquidating Trustee determines are necessary or appropriate.

### (14)    No Recourse against the Liquidating Trustee or Post-Confirmation Oversight Committee

No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee, the Post-Confirmation Oversight Committee, or any of their officers, employees, professionals, agents, members or representatives, whether by legal, equitable or other proceedings, by virtue of any law, statute, regulation or otherwise, or by virtue of any indebtedness of the Debtors, the Estates or the Liquidating Trust, it being expressly understood and agreed that all liabilities of the Liquidating Trust shall be enforceable only against, and be satisfied only out of, the Liquidating Trust Assets.

### (15)    Tax Treatment of the Liquidating Trust

For federal income tax purposes, the Liquidating Debtors, the Liquidating Trustee and the Beneficiaries shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d). For federal income tax purposes, the transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer to the Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the assets by the Beneficiaries to the Liquidating Trust. For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the assets held by the Liquidating Trust. Consequently, for federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust (a non-taxable pass-through tax entity) owned by the Beneficiaries. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on the Liquidating Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The Beneficiaries will report on their federal income tax returns and pay any federal income tax liability attributable to such Liquidating Trust's Tax Items. The Liquidating Debtors, the Liquidating Trustee and the Beneficiaries will use consistent valuations of the assets

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

55

transferred to the Liquidating Trust for all federal income tax purposes, such valuations to be determined jointly by the Liquidating Trustee and the Post-Confirmation Oversight Committee.

### 5. Review of and Objections to Expenses, Claims and Interests

Except as otherwise set forth in the Plan, on and after the Effective Date, the Liquidating Trustee and the Post-Confirmation Oversight Committee may review all Claims Filed or deemed Filed and may object to or seek subordination of any Claim Filed or Scheduled in the Cases.  Claims objections must be Filed no later than the first Business Day that is at least one calendar year after the Effective Date, subject to extension of such deadline upon motion Filed with the Bankruptcy Court.

As provided by section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated Disputed Claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over all Claims Filed or asserted against the Debtors' Estates, the Liquidating Trust to resolve objections to Claims following the Confirmation Date.

Nothing contained in the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trust of any rights of setoff or recoupment or of any defense with respect to any Claim.

### 6. Effective Date Payments and Distributions to Be Made From the Liquidating Trust

Distributions required to be made on the Effective Date shall be made by the Liquidating Trustee on the Effective Date or as soon thereafter as practicable, and shall be paid by check drawn on a domestic bank or by wire transfer, at the sole election of the Liquidating Trustee.  After the Effective Date, all distributions shall be made by the Liquidating Trustee.

### 7. Exculpations and Releases

*To the maximum extent permitted by law, neither the Debtors, the Estates, the CRO, Trigild, the Committee, the Exit Lender, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, a "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the related Disclosure Statement, or a*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

56

*contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or Confirmation of the Plan, or the consummation and implementation of the Plan, the Liquidating Trust and the transactions contemplated therein.*

### 8. Injunctions

*As of the Effective Date, the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.*

*Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is or may be discharged are permanently enjoined from taking any of the following actions against the Debtors or their Estates or their property on account of any such claims, debts or liabilities: (1) commencing or continuing, in any manner or in any place, any action or other proceeding; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.*

### F. Other Provisions of the Plan

#### 1. Changes in Rates Subject to Regulatory Commission Approval

The Debtors are not subject to governmental regulatory commission approval of its rates.

#### 2. Retention of Jurisdiction/Consent to Jurisdiction by Holders and Parties in Interest

After the Confirmation Date and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible, and all Holders of Claims and Interests and parties in interest that have notice of the Plan shall be deemed to have consented to such jurisdiction, including for the following purposes:

a.     To resolve any and all disputes regarding the operation and interpretation of the Plan, the Confirmation Order, and/or the Liquidating Trust Agreement;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000063

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

b.      To resolve any and all disputes arising out of or regarding the Exit Financing;

c.      To decide and enter orders and judgments with respect to all motions, claims or causes of action relating to the sale or other disposition of the Liquidating Trust Assets;

d.      To determine and enter orders and judgments with respect to any claims, causes of action held by the Liquidating Trust or settlement of claims or causes of action, notwithstanding that settlements of any Litigation Claims need not be approved by the Court;

e.      To determine and enter orders and judgments with respect to the allowance, classification, or priority of Claims and Interests upon objection by the Liquidating Trustee, the Post-Confirmation Oversight Committee, or by other parties in interest with standing to bring such objection or proceeding;

f.      To determine and enter orders and judgments with respect to the extent, validity and priority of any Lien asserted against the Liquidating Trust Assets;

g.      To hear actions and enter orders and judgments to implement, consummate and enforce the Plan, the Confirmation Order, the Liquidating Trust Agreement, and to determine all matters that may be pending before the Court in the Cases on or before the Effective Date with respect to any person or entity related thereto;

h.      To determine and enter orders and judgments with respect to any request for payment of Administrative Claims;

i.      To hear and determine any motion for surcharge of Collateral by the Liquidating Trustee;

j.      To determine and enter orders and judgments with respect to all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted by the Debtors, the Liquidating Trustee, or the Post-Confirmation Oversight Committee during the pendency of these bankruptcy cases whether before, on, or after the Effective Date;

k.      To determine and enter orders and judgments with respect to such other matters and for such other purposes as may be provided in the Confirmation Order;

58

l.      To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

m.      Except as otherwise provided herein or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any Person of the Plan or the Confirmation Order;

n.      To consider and enter any order or judgment with respect to any action Filed to remove and/or replace the Liquidating Trustee;

o.      To resolve disputes between the Liquidating Trustee and the Post-Confirmation Oversight Committee;

p.      To hear and resolve any action by a third party against the Liquidating Trustee and/or any member of the Post-Confirmation Oversight Committee in their representative capacities arising out of or relating to the Cases, the Plan and/or the Liquidating Trust; and

q.      To enter a final decree closing these Cases.

## IX.

## EFFECT OF CONFIRMATION OF PLAN

A.      **Discharge**

Subject to the provision below, Confirmation shall bind the Debtors, all Holders of Claims, all Holders of Interests, and other parties in interest to the provisions of the Plan whether or not the Claim or Interest of any such Holder is impaired under the Plan and whether or not any such Holder has accepted the Plan.

Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date, to the extent applicable, the Debtors will be discharged from any debt that arose before confirmation of the Plan, and any debt of a kind specified in section 502(g) or 502(i) of the Bankruptcy Code whether or not a proof of claim based on such debt was Filed or deemed Filed under section 501 of the Bankruptcy Code, such claim was allowed under section 502 of the Bankruptcy Code or the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

59

Holder of such Claim accepted the Plan.  Nothing contained herein shall limit the effect of

Confirmation as described in sections 524 and/or 1141 of the Bankruptcy Code, and on the Effective

Date, the Debtors shall be deemed discharged and released to the fullest extent permitted by section

1141 of the Bankruptcy Code.

**B.**    **Vesting of Property in the Liquidating Trust**

All assets of the Debtors shall be transferred to the Liquidating Trust and shall be the

Liquidating Trust Assets.

**C.**    **Modification of Plan**

The Proponents may modify the Plan at any time before Confirmation.  However, the Court

may require a new disclosure statement and/or re-voting on the Plan, unless the modification is non-

material or relates only to the extension of the Effective Date, which modification shall not require a

new disclosure statement and/or re-voting on the Plan.

The Proponents may also seek to modify the Plan at any time after Confirmation only if (1)

the Plan has not been substantially consummated and (2) the Court authorizes the proposed

modifications after notice and a hearing.

**D.**    **Post-Confirmation Status Report**

Within no more than 120 days of the entry of the Confirmation Order, the Liquidating

Trustee shall File a status report with the Bankruptcy Court explaining what progress has been made

toward consummation of the confirmed Plan.  The status report shall be served on the United States

Trustee, the Post-Confirmation Oversight Committee and those parties who have requested special

notice.  Further status reports shall be Filed no more than every 120 days and served on the same

parties.

**E.**    **Post-Confirmation Conversion/Dismissal**

If for any reason the Court orders the Cases converted to chapter 7 cases after the Effective

Date, such conversion will have no impact or effect on the Liquidating Trust or the Liquidating Trust

Assets, including, but not limited to, the liens and security interests given the Exit Lender to secure

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

60

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

the Exit Financing, and the Liquidating Trustee and the Post-Confirmation Oversight Committee

shall continue to perform their duties as set forth in the Liquidating Trust Agreement.

The Confirmation Order may be revoked under very limited circumstances. The Court may

revoke the Confirmation Order if it was procured by fraud and if the party in interest brings an

adversary proceeding to revoke confirmation within 180 days after the entry of the Conformation

Order.

**F.**     **Post-Confirmation U.S. Trustee Fees**

All fees incurred after the Effective Date pursuant to 28 U.S.C. **§** 1930(a)(6) shall be paid by

the Liquidating Trustee from the Liquidating Trust Assets.

**G.**     **Confirmation of the Plan Pursuant to Bankruptcy Code § 1129(b)**

The Proponents request Confirmation of the Plan under section 1129(b) of the Bankruptcy

Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the

Bankruptcy Code.  For a discussion of what the Debtors must demonstrate in order to confirm the

Plan over the rejection of any Impaired Class, see Section XII.C.2 below.  The Proponents reserve

the right to modify the Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy

Code, if necessary.

**H.**     **Final Decree**

Once these Estates have been fully administered as referred to in Bankruptcy Rule 3022, the

Liquidating Debtors, the Liquidating Trustee or the Post-Confirmation Oversight Committee shall

have authority to File a motion with the Bankruptcy Court to obtain a final decree to close the Cases.

**X.**

**CERTAIN RISK FACTORS TO BE CONSIDERED**

Holders of Impaired Claims should read and consider carefully the factors set forth below, as

well as other information set forth in this Disclosure Statement and the documents delivered together

herewith and/or incorporated by reference herein, prior to voting to accept or reject the Plan.

61

**A.    Risks that the Debtors Will Have Insufficient Cash for the Plan to Become Effective.**

The Plan cannot be confirmed by the Bankruptcy Court unless the Debtors have sufficient funds by the Effective Date to pay (or reserve for) all Allowed Administrative Claims and Allowed Priority Claims, unless particular Holders of such Claims agree to a deferred payment of their Claims.  The Proponents believe that at the time of Confirmation the Debtors will have sufficient Cash to satisfy (or reserve for) all such Claims.

**B.    Risk Regarding the Distributions to Be Made to Holders of Allowed Claims**

Because of the nature of the Debtors' Assets and the current state of the real estate market, the Proponents are not able to project the possible recovery by the Holders of Allowed General Unsecured Claims or the timing of Distributions to those Holders.  Further, to the extent any Claims are determined to be Secured Claims, the Proponents are not able to project the value of the Collateral securing those Claims.

**C.    Bankruptcy Risks.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  The Debtor believes that the classification of Claims and Interests under the Plan comply with the requirements set forth in the Bankruptcy Code.  However, there can be no assurance that the Bankruptcy Court would reach the same conclusion.

Even if all Classes of Claims that are entitled to vote accept the Plan, the Plan might not be confirmed by the Bankruptcy Court.  Section 1129 of the Bankruptcy Code sets forth the requirements for Confirmation and requires, among other things, that the Confirmation of a Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors, and that the value of distributions to dissenting creditors and Interest Holders not be less than the value of distributions such creditors and Interest Holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The Proponents believe that the Plan satisfies all the requirements for Confirmation of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000068

# XI.

## VOTING PROCEDURES AND REQUIREMENTS

IT IS IMPORTANT THAT HOLDERS OF CLAIMS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.  All known Holders of Claims entitled to vote on the Plan have been sent a Ballot together with this Disclosure Statement.  Such Holders should read the Ballot carefully and follow the instructions contained therein.  Please use only the Ballot (or Ballots) that accompanies this Disclosure Statement.

FOR YOUR VOTE TO COUNT, YOUR BALLOT MUST BE ACTUALLY RECEIVED NO LATER THAN 5:00 P.M., PACIFIC TIME, ON MAY 30, 2012.

ANY BALLOT THAT IS EXECUTED AND RETURNED BUT THAT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DEEMED AN ACCEPTANCE OF THE PLAN.  IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES OR IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT DEBTORS' COUNSEL: JEFFREY W. DULBERG, PACHULSKI STANG ZIEHL & JONES LLP, 10100 SANTA MONICA BOULEVARD, SUITE 1300, LOS ANGELES, CA 90067; TELEPHONE: (310) 277-6910, EMAIL: JDULBERG@PSZJLAW.COM OR COUNSEL TO THE COMMITTEE: DAVID L. NEALE, ESQ. OR DANIEL H. REISS, ESQ., LEVENE, NEALE, BENDER, YOO & BRILL, L.L.P., 10250 CONSTELLATION BOULEVARD, SUITE 1700, LOS ANGELES, CALIFORNIA 90067; TELEPHONE: (310) 229-1234; E-MAIL: DLN@NBYB.COM OR DHR@LNBYB.COM, RESPECTIVELY.

### A.     Parties in Interest Entitled to Vote

Subject to the provisions of the Order approving this Disclosure Statement, any Holder of a Claim against the Debtors as of the Petition Date, which Claim has not been disallowed by order of the Bankruptcy Court or is not a Disputed Claim (unless the Bankruptcy Court, upon application by such Holder, temporarily allows such Disputed Claim for the limited purpose of voting to accept or reject the Plan), is entitled to vote to accept or reject the Plan if (1) such Claim is Impaired under the Plan and is not in a Class that is deemed to have rejected the Plan pursuant to sections 1126(g) of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000069

Bankruptcy Code, and (2) either (a) such Holder's Claim has been Scheduled by the Debtors (and such Claim is not Scheduled as disputed, contingent, or unliquidated), or (b) such Holder has Filed a proof of claim on or before the Bar Date.  In addition, any Holder of an Interest in the Debtor is not entitled to vote to accept or reject the Plan because Class 5 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  A vote on the Plan may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

**B.**    **Classes Impaired and Entitled to Vote Under the Plan**

The following chart summarizes which Classes of Claims are Impaired and which Classes of Claims are Unimpaired under the Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| Class 1 | Secured Claim of: Collateralized Parties Pursuant to 2009 Pledge and Security Agreements Loan and Placement Agreements entered into from 2003-2008 | Impaired | Voting |
| Class 2 | Secured claim of Collateralized Parties re SCICG Mezzanine Fund I, LLC | Impaired | Voting |
| Class 3 | Priority Wage 11 U.S.C. § 507(a)(4) Claims of Marc Paul and Robert Robotti | Unimpaired | Deemed to Accept |
| Class 4 | General Unsecured Claims | Impaired | Voting |
| Class 5 | Membership Interests | Impaired | Deemed to Reject |

**1.**    **Vote Required for Acceptance by Classes of Claims**

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan, excluding ballots cast by insiders of the debtor.  Thus, acceptance by a Class of Claims occurs only if at least two-thirds in dollar amount and a majority in number of the Holders of such Claims that vote cast their Ballots to accept the Plan.  A Class of Holders of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Ballot Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

64

000070

1  CREDITORS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW

2  THE ORDER APPROVING THE DISCLOSURE STATEMENT, A COPY OF WHICH IS

3  ENCLOSED HEREWITH, FOR A FULL UNDERSTANDING OF VOTING REQUIREMENTS,

4  INCLUDING WITHOUT LIMITATION, USE OF BALLOTS.

5  **XII.**

6  **CONFIRMATION OF THE PLAN**

7  Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

8  **A.    Confirmation Hearing**

9  Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, hold a

10  hearing on confirmation of a plan.  By order of the Bankruptcy Court, the hearing on the

11  Confirmation of the Plan has been scheduled for June 13, 2012 at 9:30 a.m. Pacific Time.  The

12  Confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further

13  notice except for an announcement made at the Confirmation hearing or any adjournment thereof.

14  **B.    Objections to Confirmation of the Plan**

15  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to

16  Confirmation of the Plan.  Any objection to Confirmation of the Plan must be in writing, conform to

17  the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, set forth

18  the name of the objecting party, the nature and amount of the Claim or Interest held or asserted by

19  the objecting party against either of the Debtors, the basis for the objection, and the specific grounds

20  upon which the objection is based.  The objection, together with proof of service thereof, must then

21  be Filed with the Bankruptcy Court, with a copy to chambers, and served upon counsel to the

22  Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los

23  Angeles, California 90067, Attn: Jeffrey W. Dulberg, Esq. and counsel to the Committee, Levene,

24  Neale, Bender, Yoo & Brill, L.L.P., 10250 Constellation Boulevard, Suite 1700, Los Angeles,

25  California 90067, Attn.: David L. Neale, Esq. and Daniel H. Reiss, Esq.

26  Objections to Confirmation of the Plan are governed by Federal Rule of Bankruptcy

27  Procedure 9014.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY AND

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000071

1  PROPERLY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY

2  COURT.

3  **C.    Requirements for Confirmation of the Plan**

4          At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the

5  requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for

6  Confirmation are that the Plan (1) has been accepted by all Impaired Classes of Claims and Interests

7  or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and

8  equitable" as to such Class, (2) is feasible, and (3) is in the "best interests" of Holders of Claims and

9  Interests Impaired under the Plan.

10         **1.     Acceptance**

11         Claims in Classes 1, 2, 4 and 5 are Impaired, the Holders of Claims in those Classes are

12  entitled to vote on the Plan and, therefore, each of the Impaired Classes must accept the Plan in order

13  for the Plan to be confirmed without application of the "fair and equitable test," as described below

14  in section XII.C.2, to such Class.  As stated above, a Class of Claims will have accepted the Plan if

15  the Plan is accepted by at least two-thirds in dollar amount, and a majority in number of the Claims

16  of each such Class (other than any claims of creditors designated under section 1126(e) of the

17  Bankruptcy Code) that have voted to accept or reject the Plan.

18         Interests in Class 5 are Impaired; however, Holders of such Interests will not receive or retain

19  property under the Plan and, therefore, such Class is deemed have rejected the Plan.  Accordingly, in

20  order for the Plan to be confirmed over the rejection of such Class, the "fair and equitable test," as

21  described below in Section XII.C.2, must be applied to such Class..

22         Claims in Classes 3 are Unimpaired by the Plan, and the Holders thereof are conclusively

23  presumed to have accepted the Plan.

24         **2.     Fair and Equitable Test**

25         The Debtors will seek to confirm the Plan notwithstanding the non-acceptance or deemed

26  non-acceptance of the Plan by any Impaired Class of Claims or Interests. To obtain Confirmation

27  under those circumstances, it must be demonstrated to the Bankruptcy Court that the Plan "does not

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

66

discriminate unfairly" and is "fair and equitable" with respect to such dissenting Impaired Class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class, and if no class receives more than it is entitled to for its claims or interests. The Proponents believe that the Plan satisfies this requirement.

The Bankruptcy Code establishes different "fair and equitable" tests for Secured Claims, Unsecured Claims and Interests, as follows:

### a.    <u>Secured Claims</u>

Either the Plan must provide (i) that the Holders of such Allowed Secured Claims retain the liens securing such Claims, whether the property subject to such liens is retained by the Debtors or transferred to another entity, to the extent of the Allowed amount of such Claims, and each Holder of such Allowed Secured Claim receives deferred cash payments totaling at least the Allowed amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such Holder's interest in the Estates' interest in such property; (ii) for the sale of any property that is subject to the liens securing such Allowed Secured Claims, free and clear of such liens, with such liens to attach to the proceeds of such sale; or (iii) for the realization by such Holders of the indubitable equivalent of such Allowed Secured Claims.

### b.    <u>Unsecured Claims</u>

Either (i) each Holder of an Impaired Allowed Unsecured Claim receives or retains under the Plan property of a value equal to the amount of its Allowed Claim, or (ii) the Holders of Allowed Unsecured Claims and Interests that are junior to the Claims of the dissenting Class will not receive any property under the Plan.

### c.    <u>Interests</u>

Either (i) each Holder of an Allowed Interest will receive or retain under the Plan property of a value equal to the greater of (y) the fixed liquidation preference or redemption price, if any, of such Interests; or (z) the value of the Interests, or (ii) the Holders of Interests that are junior to the Interests in the dissenting Class will not receive any property under the Plan.

67

THE PROPONENTS BELIEVE THAT THE PLAN MAY BE CONFIRMED ON A NONCONSENSUAL BASIS (PROVIDED AT LEAST ONE IMPAIRED CLASS OF CLAIMS VOTES TO ACCEPT THE PLAN). ACCORDINGLY, THE PROPONENTS WILL DEMONSTRATE AT THE CONFIRMATION HEARING THAT THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE AS TO ANY NON-ACCEPTING CLASS.

### 3.  Feasibility

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization of a debtor.  The Plan contemplates that all Assets of the Debtors will be transferred to the Liquidating Trust and that ultimately the Liquidating Trustee will dispose of all Liquidating Trust Assets and all proceeds of the Liquidating Trust Assets will be distributed to the Holders of Allowed Claims pursuant to the terms of the Plan. Since no further financial reorganization of the Debtors will be possible, the Proponents believe that the Plan meets the feasibility requirement.  In addition, subject to the discussion of "Risk Factors" set forth above, the Proponents believe that sufficient funds will exist at Confirmation to make all payments required by the Plan to be made on or near the Effective Date.

### 4.  "Best Interests" Test

With respect to each Impaired Class of Claims and Interests, Confirmation of the Plan requires that each Holder of an Impaired Claim or Interest either (a) accepts the Plan, or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  This analysis requires the Bankruptcy Court to determine what the Holders of Allowed Claims and Allowed Interests in each Impaired Class would receive from the liquidation of the Debtors' Assets in the context of a chapter 7 liquidation case.

Most importantly, the Plan provides for an orderly administration of the primary assets of the Estates – the Dispo Fees.  As stated above, approximately $40 million in deferred Dispo Fees are payable upon the occurrence of certain Triggering Events - voluntary or involuntary sale of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

68

Properties, including without limitation, foreclosure proceedings, the maturity of the loans secured by the Properties (whether maturity occurs by the passage of time, acceleration of debt, or through a refinancing of the existing loans), or such other disposition events as specified in the various transaction documents.    It is anticipated that the Dispo Fees will be collected over the next five to seven years.  The Proponents believe that the value to be realized by the Debtors' creditors will be far greater if the Dispo Fees are collected upon the occurrence of the Triggering Events, rather than a sale by a chapter 7 trustee of the Estates' rights to future Dispo Fees to one or more speculators in today's unpredictable real estate derivatives market.

Further, if the Cases were converted to cases under chapter 7, a liquidation under chapter 7 would result in the incurrence of administrative costs in excess of those to be incurred under the Plan because a chapter 7 trustee would likely seek to retain counsel and perhaps other professionals and that are completely unfamiliar with the Debtors' atypical assets and liabilities.  Also, a new time period for the filing of Claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.  Conversion of the Case to a case under chapter 7 and appointment of a trustee for administration of the Estate could also delay liquidation and the prosecution of the Avoidance Actions.  The Liquidating Trustee's familiarity with the Debtors' operations, because he has previously served as the Debtors' CRO, will allow him to complete liquidation of the Assets and distribute the proceeds more efficiently than a chapter 7 trustee, while maximizing the value of the Estates' assets for the benefit of creditors.

## XIII.

## FINANCIAL INFORMATION

Attached hereto as **Exhibit "3"** are financial statements for SCI Real Estate Investments, LLC for the years 2009 and 2010 and attached as **Exhibit "4"** are financial statements for Secured California Investments, Inc. for 2009 and 2010.  Additional information regarding the Debtors' financial performance after the Petition Date is contained in the Debtors' Monthly Operating Reports which are Filed with the Bankruptcy Court.

DOCS_LA:248300.19 77002-002

000075

1

## XIV.

2

## ALTERNATIVES TO CONFIRMATION

3

## AND CONSUMMATION OF THE PLAN; LIQUIDATION ANALYSIS

4    The Proponents have thoroughly evaluated all alternatives to the Plan.  After studying these

5    alternatives, the Proponents have concluded that the Plan is the best alternative, and will maximize

6    recoveries by parties in interest, assuming Confirmation of the Plan.  The Plan provides that the

7    Debtor will obtain Exit Financing to assist with the funding of the Plan and the Liquidating Trust,

8    that all of the Debtors' Assets will be transferred to the Liquidating Trust and for the orderly

9    liquidation of the Liquidating Trust Assets by the Liquidating Trustee, who has served as the

10    Debtors' CRO and as such is familiar with the Debtors' business and Assets.  The Proponents are not

11    aware of any possible reorganization of the Debtors as there are not funds available for such

12    reorganization and the Debtors have been unable to secure any financing.  As discussed above in the

13    Section on the Best Interests of Creditors Test, converting the Cases to chapter 7 liquidating cases

14    would slow the process down and would result in additional fees and expenses having to be paid

15    from the proceeds of such liquidation.  The Proponents, therefore, do not believe that there is any

16    better alternative to the Plan.

17    

## XV.

18    

## CERTAIN U.S. FEDERAL AND STATE INCOME

19    

## TAX CONSEQUENCES OF THE PLAN

20    THE FOLLOWING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED

21    FEDERAL AND STATE INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A

22    SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE

23    FROM, A TAX PROFESSIONAL.  THE SELECTED FEDERAL AND STATE TAX

24    CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND

25    LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX

26    AND, IN SOME CASES, UNCERTAIN.  SUCH TAX CONSEQUENCES MAY ALSO VARY

27    BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED

28    

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

70

1   CLAIM AGAINST OR INTEREST IN THE DEBTORS.  ACCORDINGLY, AS NOTED ABOVE,

2   EACH HOLDER OF AN ALLOWED CLAIM OR INTEREST IS STRONGLY ADVISED TO

3   CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND

4   LOCAL TAX CONSEQUENCES OF THE PLAN.

5        THE DEBTORS DO NOT INTEND TO REQUEST A TAX RULING FROM THE

6   INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT

7   TO ANY OF THE TAX CONSEQUENCES OF THE PLAN.  CONSEQUENTLY, THE

8   INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE

9   WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED

10  HEREIN.

11       During the Cases, some of the Debtors' Assets were liquidated or are in the process of being

12  liquidated, and some of the proceeds of such liquidation have been used to fund the costs of

13  administering the Estates prior to the Effective Date.  The federal and state income tax consequences

14  with respect to the liquidation of these Assets have or will be reflected on the Debtors' federal and/or

15  state income tax returns.  Depending on the Debtors' federal and state income tax classification

16  status, any gains of the Debtors as a result of the liquidation of Assets during the Cases may result in

17  tax liability to the Debtors.

18  **A.    Federal Income Tax Consequences to the Creditors**

19       The character, amount and timing of income, gain or loss the holders of Allowed Claims

20  recognize as a consequence of the Distributions under the Plan will depend upon, among other

21  things, (i) the manner in which the Claim or Interest was acquired, (ii) the length of time the Claim

22  was held, (iii) whether the Claim was acquired at a discount, (iv) whether the Holder of an Allowed

23  Claim has taken a bad debt deduction for the Claim, (v) whether the Holder has previously included

24  accrued but unpaid interest with respect to the Claim, (vi) the Holder's method of tax accounting,

25  (vii) whether the Claim is an installment obligation under the tax laws, and (viii) the type of

26  consideration received or deemed received by the Holder of the Claim in exchange for its Claim.  In

27  addition, in the event interest is paid on the Claim, the Holder may have interest income.  Therefore,

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

71

1   Holders of Allowed Claims should consult their tax advisors for information that may be relevant to

2   their particular situations and circumstances and the particular tax consequences to such Holders as a

3   result thereof.

4          Depending on the nature of the Claim, the Liquidating Trust may be required to file

5   information returns with the appropriate taxing agencies to report payments to the Holders of

6   Allowed Claims.  In order to make Distributions, the Liquidating Trustee will require that Holders of

7   Allowed Claims provide certain federal income taxpayer information, such as the Holder's taxpayer

8   identification number.  Should the Holder fail to do so within forty-five days of the request, the

9   Liquidating Trustee may withhold and bar any Distribution to that Holder, and the other Holders'

10  proportionate shares of the amount to be distributed will be recalculated.

11  **B.**      **Transfer Taxes**

12         Pursuant to section 1146(a) of the Bankruptcy Code, any transfer, or the making or delivery

13  of an instrument of transfer, of real property interests from or by the Debtors or Liquidating Debtors

14  to the Liquidating Trust or Liquidating Trustee or any other person or entity pursuant to the Plan,

15  including, without limitation, the Liquidating Trust Assets, shall not be subject to any document

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:248300.19 77002-002

000078

1  recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real

2  estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the

3  Confirmation Order shall direct the appropriate state or local governmental officials or agents to

4  forego the collection of any such tax or governmental assessment and to accept for filing and

5  recordation any of the foregoing instruments or other documents without the payment of any such

6  tax or governmental assessment.

7

8  ## XVI.

9  ## RECOMMENDATION

10      The Proponents recommend that all creditors receiving a Ballot vote in favor of the Plan.

11  The Proponents believe that the Plan maximizes recoveries to all creditors and, thus, is in their best

12  interests.  The Plan as structured, among other things, allows creditors to obtain distributions in

13  excess of those that would be available if the Debtors were liquidated under chapter 7 of the

14  Bankruptcy Code and minimizes delays in recoveries to all creditors.

15

16  Dated:  April 19, 2012                    **SCI Real Estate Investments, LLC**
                                            Secured California Investments, Inc.

17

18                                          By: _____

19                                              William Hoffman
                                                Chief Restructuring Officer

20

21

22                                          **Official Committee of Unsecured Creditors**

23

24                                          By:_____

25                                              Wells Fargo Bank, NA
                                                Chair of the Official Committee of Unsecured

26                                              Creditors through its authorized representative
                                                Gail E. Tubbs, Vice President

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

1  recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real

2  estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the

3  Confirmation Order shall direct the appropriate state or local governmental officials or agents to

4  forego the collection of any such tax or governmental assessment and to accept for filing and

5  recordation any of the foregoing instruments or other documents without the payment of any such

6  tax or governmental assessment.

## XVI.

## RECOMMENDATION

The Proponents recommend that all creditors receiving a Ballot vote in favor of the Plan. The Proponents believe that the Plan maximizes recoveries to all creditors and, thus, is in their best interests. The Plan as structured, among other things, allows creditors to obtain distributions in excess of those that would be available if the Debtors were liquidated under chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to all creditors.

Dated: April 19, 2012

**SCI Real Estate Investments, LLC**
Secured California Investments, Inc.

By: _____
    William Hoffman
    Chief Restructuring Officer

**Official Committee of Unsecured Creditors**

By: _____
    Wells Fargo Bank, NA
    Chair of the Official Committee of Unsecured
    Creditors through its authorized representative
    Gail E. Tubbs, Vice President

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

73

DOCS_LA:248300.18 77002-002

000080

1  Presented By:

2  PACHULSKI STANG ZIEHL & JONES LLP

3

By:  /s/ Jeffrey W. Dulberg
4         JEFFREY N. POMERANTZ
          JEFFREY W. DULBERG
5         Attorneys for Co-Proponents
          SCI Real Estate Investments, LLC
6         Secured California Investments, Inc.
          Debtors and Debtors in Possession

7

and
8

LEVENE, NEALE, BENDER, YOO
9         & BRILL. L.L.P.

10

By:
11        DAVID L. NEALE
          DANIEL H. REISS
12        Attorneys for Co-Proponent
          Official Committee of Unsecured Creditors

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCS_LA:248300.19 77002-002

000081

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

# EXHIBIT 1

JEFFREY N. POMERANTZ (SBN 143717)
JEFFREY W. DULBERG (SBN 181200)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email:  jpomerantz@pszjlaw.com; jdulberg@pszjlaw.com
*Counsel to Debtors and Debtors in Possession*

DAVID L. NEALE (SBN 141225)
DANIEL H. REISS (SBN 150573)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dln@ lnbyb.com, dhr@ lnbyb.com
*Counsel to the Official Committee of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>☒ SCI REAL ESTATE INVESTMENTS, LLC, a Virginia limited liability company,<br><br>☒ SECURED CALIFORNIA INVESTMENTS, INC., a California corporation,<br><br>       Debtors and Debtors-in-Possession. | Case No. 2:11-bk-15975 PC<br>[Jointly Administered with Case No. 2:11-bk-15987 PC]<br><br>Chapter 11<br><br>**FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED APRIL 19, 2012)**<br><br>**<u>Plan Confirmation Hearing:</u>**<br>Date:      June 13, 2012<br>Time:      9:30 a.m.<br>Place:     Courtroom 1468<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................2
I.  DEFINITIONS.............................................................................................3
II.  CONSTRUCTION.......................................................................................14
III.  SUBSTANTIVE CONSOLIDATION...........................................................15
IV.  GENERAL OVERVIEW OF THE DEBTORS ............................................16
V.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........17
    A.  Unclassified Claims ....................................................................... 17
        1.  Administrative Claims ........................................................ 17
            a.  Allowance of Non-Ordinary Course Administrative Claims.............. 19
            b.  Allowance of Ordinary Course Administrative Claims...................... 20
            c.  Allowance of Professional Fee Claims ............................................. 20
            d.  Allowance of Cure Claims............................................................... 20
        2.  Priority Tax Claims.............................................................. 21
    B.  Classified Claims and Interests ..................................................... 22
        1.  Classes of Secured Claims .................................................. 22
        2.  Class of Priority Unsecured Claims .................................... 25
        3.  Class of General Unsecured Claims .................................... 25
        4.  Class of Interest Holders .................................................... 26
    C.  Means of Effectuating the Plan ..................................................... 27
        1.  Funding for the Plan............................................................ 27
            a.  General............................................................................................. 27
            b.  Exit Financing and Trust Assets as Security for Exit Financing ........ 27
        2.  The Effective Date of the Plan and Conditions Thereto ................ 33
        3.  Post-Confirmation Management ......................................... 33
            a.  The Liquidating Debtors .................................................................. 33
            b.  Dissolution of the Committee and Formation of the Post-Confirmation Oversight Committee ................................... 34
            c.  The Liquidating Trust and the Liquidating Trustee........................... 35
                (1)  Creation of the Liquidating Trust ........................................... 35
                (2)  Appointment of the Liquidating Trustee.............................. 35
                (3)  Disbursing Agent .................................................................. 38
                (4)  Transfer of the Assets to the Liquidating Trust ..................... 38
                (5)  Sale or Other Disposition of Liquidating Trust Assets........... 38

i

|  |  |  | (6) | Investigation and Prosecution of Claims | 39 |
|--|--|--|-----|------|----|
|  |  |  | (7) | Bankruptcy Powers | 40 |
|  |  |  | (8) | Employment and Compensation of Professionals, Reimbursement of Expenses | 40 |
|  |  |  | (9) | Distributions from the Liquidating Trust | 41 |
|  |  |  |  | (a) Minimum Amount of Interim Distributions. | 42 |
|  |  |  |  | (b) Failure to Negotiate Checks Distributed by Liquidating Trustee. | 42 |
|  |  |  |  | (c) Unclaimed Property. | 43 |
|  |  |  |  | (d) Record Date. | 44 |
|  |  |  | (10) | Reserve Accounts | 44 |
|  |  |  | (11) | No Action Against the Liquidating Trust Without Bankruptcy Court Approval | 45 |
|  |  |  | (12) | Termination of the Liquidating Trust | 46 |
|  |  |  | (13) | Reports by the Liquidating Debtors and the Liquidating Trustee | 46 |
|  |  |  | (14) | No Recourse against the Liquidating Trustee or Post-Confirmation Oversight Committee | 47 |
|  |  |  | (15) | Tax Treatment of the Liquidating Trust | 47 |
|  |  | 4. | Review of and Objections to Expenses, Claims and Interests | | 47 |
|  |  | 5. | Effective Date Payments and Distributions to Be Made From the Liquidating Trust | | 48 |
|  |  | 6. | Exculpations and Releases | | 48 |
|  |  | 7. | Injunctions | | 48 |
|  | D. | Other Provisions of the Plan | | | 49 |
|  |  | 1. | Executory Contracts and Unexpired Leases | | 49 |
|  |  |  | a. Assumptions | | 49 |
|  |  |  | b. Rejections | | 50 |
|  |  | 2. | Changes in Rates Subject to Regulatory Commission Approval | | 50 |
|  |  | 3. | Retention of Jurisdiction/Consent to Jurisdiction by Holders and Parties in Interest | | 50 |
|  |  | 4. | Transfer Taxes | | 52 |
| VI. | EFFECT OF CONFIRMATION OF PLAN | | | | 52 |
|  | A. | Discharge | | | 52 |
|  | B. | Vesting of Property in the Liquidating Trust | | | 53 |
|  | C. | Modification of Plan | | | 53 |
|  | D. | Post-Confirmation Status Report | | | 53 |
|  | E. | Post-Confirmation Conversion/Dismissal | | | 54 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

F.   Post-Confirmation U.S. Trustee Fees ................................................................. 54

G.   Confirmation of the Plan Pursuant to Bankruptcy Code § 1129(b) ........................... 54

H.   Final Decree  ........................................................................................... 54

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**INTRODUCTION**

SCI Real Estate Investments, LLC ("SCI") and Secured California Investments, Inc. ("Secured California", and together with SCI, the "Debtors") and Official Committee of Unsecured Creditors (the "Committee"), are co-proponents (the "Proponents") of this Joint Chapter 11 Plan of Liquidation (the "Plan").[1]  The Debtors are the debtors and debtors in possession in the above-captioned administratively consolidated chapter 11 bankruptcy cases that were commenced by the filing of voluntary petitions under chapter 11 of the Bankruptcy Code on February 11, 2011. Chapter 11 allows the Debtors, the creditors, and/or others parties in interest to propose a plan of reorganization.  A plan of reorganization may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the bankruptcy estates, or a combination of both.  For purposes of this Plan, the Debtors' bankruptcy estates are substantively consolidated; in other words, all of the assets of the Debtors will be available to pay all of the liabilities of the Debtors without distinction between the entities.  The Plan is described in the concurrently filed Disclosure Statement Describing the Joint Chapter 11 Plan of Reorganization.

The Plan is a liquidation plan.  In other words, as more fully discussed in the Disclosure Statement and below, (1) on the Effective Date, the Debtors will transfer all of their assets, including, but not limited to, cash, causes of action, and all remaining assets that have not previously been sold or abandoned by the Debtors to a single liquidating trust and (2) the trustee of the Liquidating Trust will, among other things, administer and liquidate the Liquidating Trust Assets, object to claims, as appropriate, and distribute the funds held in the Liquidating Trust to creditors and , if appropriate, equity holders, as set forth herein and in the Liquidating Trust Agreement, a copy of which is attached hereto as Exhibit "A."

The Effective Date of the Plan will be the first Business Day after all of the conditions to the effectiveness of the Plan have been satisfied or waived.[2]  The Debtors, following the Effective Date, will be referred to herein as the "Liquidating Debtors."

---

[1] Capitalized terms not otherwise defined in this Plan shall have the meaning given them in Article II of this Plan.
[2] See Section VI.C.2 herein for a discussion of the conditions to the Effective Date.

DOCS_LA:250513.8 77002-002

# I.

## **DEFINITIONS**

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"Administrative Claim"** means a Claim for administrative costs or expenses that is allowable under Bankruptcy Code §§ 503(b) and 507(a)(2) or 28 U.S.C. § 1930, including, without limitation, (a) Non-Ordinary Course Administrative Claims; (b) Ordinary Course Administrative Claims; (c) Professional Fee Claims; (d) U.S. Trustee Fees, and (e) Cure Claims.

**"Allowed Administrative Claim"** means an Allowed Claim that is an Administrative Claim.

**"Allowed Claim"** or **"Allowed Interest"** means (a) a Claim, as to which no proof of claim has been filed, that is listed in the Schedules (i) in an amount greater than zero and not in an unknown amount and (ii) not designated as disputed, contingent or unliquidated; or (b) a Claim or Interest as to which a timely proof of claim or interest has been filed in a sum certain and (i) no objection or motion to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such claim as set forth in this Plan or order of the Bankruptcy Court, (ii) the Liquidating Trustee and the Holder of the Claim have entered into an agreement as to the priority and amount of the Claim, or (iii) any objection or motion to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement between the Claimant and the Liquidating Trustee or by Final Order of the Bankruptcy Court.

**"Allowed Class Claim"** means an Allowed Claim classified in the specified Class.

**"Allowed Unsecured Priority Claim"** means an Unsecured Priority Claim that is an Allowed Claim.

**"Allowed General Unsecured Claim"** means a General Unsecured Claim that is an Allowed Claim.

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

000088

**"Allowed Priority Tax Claim"** means an Allowed Claim that is a Priority Tax Claim.

**"Allowed Secured Claim"** means a Secured Claim that is an Allowed Claim.

**"Assets"** means all tangible and intangible assets of every kind and nature of the Debtors and their Estates and each of them including "property of the estate" as described in section 541 of the Bankruptcy Code, and all proceeds thereof, existing as of the Effective Date.

**"Available Cash"** means all Cash held by the Liquidating Trust less the amount of Cash necessary for the payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Unsecured Priority Claims, and Allowed Secured Claims, and less the amount of Cash necessary to adequately fund the Reserve Accounts.

**"Avoiding Power Causes of Action"** means causes of action, if any, arising under sections 502(d), 506, 544, 545, 547, 548, 549, 550, 553, and 558 of the Bankruptcy Code, or any fraudulent conveyance, fraudulent transfer or preference laws, or any cause of action arising under, or relating to, any similar state law or federal law that constitutes property of the Estate under section 541 of the Bankruptcy Code, whether or not an action is initiated on or before the Effective Date.

**"Ballot"** means the Ballot for accepting or rejecting the Plan.

**"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, §§ 101 et seq., as now or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

**"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure, as amended from time to time and **"Bankruptcy Rule'"** means each Federal Rule of Bankruptcy Procedure, individually.

**"Beneficiaries"** means the Holders of Allowed Claims who are the beneficiaries of the Liquidating Trust.

**"Business Day"** means any day other than a Saturday, Sunday or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**"Cases"** means the cases under chapter 11 of the Bankruptcy Code commenced by the

4

Debtors and bearing Case Numbers 2:11-bk-15975 PC and 2:11-bk-15987 PC, being jointly administered under Case Number 2:11-bk-15975 PC.

**"Cash"** means legal tender of the United States of America and equivalents including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means any and all Claims, demands, rights, actions, suits, causes of action, third-party claims, counterclaims and crossclaims (including, but not limited to, those matters described herein and in the Disclosure Statement) of, or liabilities or obligations owing to, any of the Debtors or any of the Estates, of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort or otherwise, at law or in equity or under any other theory, that any of the Debtors or any of the Estates have or assert or may have or assert, whether or not brought as of the Effective Date, and which have not been settled or otherwise resolved by Final Order as of the Effective Date, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (2) the right to object to claims or interests, (3) such claims and defenses as fraud, mistake, duress and usury, (4) Avoiding Power Causes of Actions, (5) claims for tax refunds, (6) claims to recover outstanding accounts receivable, (7) such claims and defenses as alter ego, and (8) any other claims that may be asserted against other persons or entities.

**"Claim"** means a "claim" as defined in Bankruptcy Code section 101(5) against one or both of the Debtors.

**"Class"** means a group of Claims or Interests as classified in Article VI hereof.

**"Collateral"** means any property or interest in property of any of the Estates subject to a lien or security interest that is not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable federal and/or state law.

**"Committee"** means the Official Committee of Unsecured Creditors appointed in the Cases by the Office of the U.S. Trustee for the Central District of California.

**"Confirmation"** means the entry of the Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing Date**" means the first date that the hearing regarding to the Confirmation of the Plan is conducted by the Bankruptcy Court.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129.

"**Court**" means the United States Bankruptcy Court for the Central District of California, Los Angeles Division or any other court that exercises proper jurisdiction over the Case.

"**Creditor**" means a Person who holds a Claim against one or more of the Debtors or their Estates.

"**CRO**" means chief restructuring officer William Hoffman of Trigild Incorporated.

"**Cure Claim**" means the right to payment of cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtors, or as otherwise required by section 365(b) of the Bankruptcy Code as a condition of assumption and assignment, so that the Debtors may assume and assign the contract or lease pursuant to sections 365 or 1123(b)(2) of the Bankruptcy Code.

"**Debtors**" means SCI Real Estate Investments, LLC, a Virginia limited liability company and Secured California Investments, Inc., a California corporation.

"**Deficiency Claim**" means the portion of a Claim (or so much thereof as remains unsatisfied after any collateral that secures such Claim has been liquidated or otherwise disposed of, as such unsatisfied amount is determined in accordance with applicable law) to the extent the Claim exceeds the value of the Holder's interest in the respective Estate's interest in the collateral (or remaining collateral, if any, that has not been liquidated or otherwise disposed of) as such value is determined by the Court in accordance with applicable law.  Nothing in this definition shall conclusively determine that a Claim constitutes a Secured Claim.

"**Disallowed Claim**" means a Claim or any portion thereof that (i) has been disallowed by a Final Order or by agreement between the Claimant and the Liquidating Trustee, (ii) is Scheduled as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or Administrative

Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the

Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed

under applicable law or this Plan, (iii) is not Scheduled and as to which no Proof of Claim or

Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court

pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed

timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors

and the Holder thereof, or (v) has been withdrawn by the Holder thereof, subject to a determination

of the right to withdraw such claim unilaterally.

"**Disbursing Agent**" means the Liquidating Trustee.

"**Disclosure Statement**" means the Second Amended Disclosure Statement for the First

Amended Joint Plan of Liquidation, including, without limitation, all exhibits thereto, filed by the

Proponents as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as such

Disclosure Statement may be amended, modified, or supplemented from time to time and which is

distributed contemporaneously herewith in accordance with Bankruptcy Code sections 1125,

1126(b) and Bankruptcy Rule 3018.

"**Dispo Fees**" means the approximate $40 million in deferred acquisition fees and/or other

fees or interests, consideration, or benefits payable to the Debtors upon (a) the voluntary or

involuntary sale of properties in which a limited liability company in which the Debtors or one of

them own an interest, (b) the maturity of loans secured by such properties, or (c) the occurrence of

other specified events.

"**Disputed Claim**" means any Claim that is not an Allowed Claim or a Disallowed Claim;

provided, however, for purposes of voting on the Plan only, a Claim is not a Disputed Claim unless

the Debtors or the Committee have Filed with the Bankruptcy Court a motion objecting to such

Claim by no later than the date the order approving the *Disclosure Statement Describing Joint*

*Chapter 11 Plan of Liquidation for SCI Real Estate Investments, LLC and Secured California*

*Investments, Inc. Dated April 19, 2012* is entered by the Bankruptcy Court.

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"**Disputed Claim Reserve**" means the Cash reserves, established pursuant to Section VI.D.2.c.(10) hereof, for the Liquidating Trust by the Liquidating Trustee in the estimated amount necessary to satisfy all distributions under the Plan on account of Disputed Claims that will be obligations of the Liquidating Trust, if such Disputed Claims become Allowed Claims.  The amount to be deposited in the Disputed Claim Reserve shall be that amount that is reasonably estimated by the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, to be payable to the Holder of a Disputed Claim on a pro rata basis if such claim ultimately became an Allowed Claim.

"**Distribution(s)**" means any transfer under the Plan of Cash or other property or instruments to a Holder of an Allowed Claim.

"**Distribution Date(s)**" means the date(s) selected by the Liquidating Trustee for making Distributions to Holders of Allowed Unsecured Claims in accordance with Section VI.C.2.c.(9) hereof.

"**Duke Note**" means the notes that represent loans made by SCI for the benefit of the Erwin Square, located at 2200 West Main Street, Durham, North Carolina in the total amount of $8,076,000.

"**Effective Date**" means the first Business Day after all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

"**Erwin Plaza Settlement**" means that settlement set forth in the *Motion of Debtors Pursuant to Bankruptcy Rule 9019(a) for Approval of Settlement Regarding Payment of Disposition Fee and Notes Relating to Erwin Plaza Transaction* [Docket No. 105] as supplemented by *Supplement to Motion of Debtors Pursuant to Bankruptcy Rule 9019(a) for Approval of Settlement Regarding Payment of Disposition Fee and Notes Relating to Erwin Plaza Transaction* [Docket No. 129].

"**Estates**" means the estates of the Debtors created upon commencement of the Cases under section 541(a) of the Bankruptcy Code.

"**Exit Financing**" means a revolving line of credit in an amount up to $3,000,000 from

8

Benchmark Bank of Plano, Texas anticipated to be available to the Liquidating Trustee upon and after the Effective Date.  No binding commitment or obligation to lend or borrow exists or will exist prior to the Effective Date.  Please refer to section VIII.E.1 and section VIII.E.2 of the Disclosure Statement for a more detailed explanation of the Exit Financing.

**"Exit Lender"** means Benchmark Bank of Plano, Texas.

**"File" or "Filed"** means filed with the Bankruptcy Court in the Case.

**"Final Fee Applications"** means the final request for payment of Professional Fee Claims.

**"Final Order"** means an order or judgment of the Court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors and the Committee prior to the Effective Date, or the Liquidating Trustee after the Effective Date, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

**"General Unsecured Claim"** or **"Unsecured Claim"** means any Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Unsecured Claim, or a Secured Claim, provided that the definition of Unsecured Claim shall include, without limitation, any and all Deficiency Claims.  For the avoidance of doubt, the term General Unsecured Claim or Unsecured Claim does not include any Interest.

**"Holder"** means the owner of a Claim against either of the Debtors, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

000094

been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than the Confirmation Date.

"**Hoffman**" means William Hoffman of Trigild, the acting CRO for the Debtors appointed in the Cases pursuant to an order of the Bankruptcy Court.

"**Impaired**" means the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest is altered pursuant to the Plan.

"**Initial Distribution Date**" means a Business Day, as determined by the Liquidating Trustee, as soon as practicable after the Effective Date, for the initial Distributions to be made pursuant to this Plan.

"**Interest**" means, with respect to any Debtor, any "equity interest," as such term is defined in Bankruptcy Code § 101(16) and shall include, without limitation, all stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any shares of stock or evidence of equity or interests in the Debtors.

"**Interest Holder(s)**" means the record holder of an Interest.

"**Lien**" has the meaning provided by section 101(37) of the Bankruptcy Code.

"**Liquidating Debtors**" means the Debtors after the Effective Date until the date of their dissolution.

"**Liquidating Trust**" means the certain trust as described in Section VI.C.2.c.(1) hereof, created pursuant to the Plan, Confirmation Order, and Liquidating Trust Agreement, and created for the benefit of Holders of all Allowed Claims.  Except as otherwise expressly provided in the Plan, all of the Assets of each of the Debtors will be transferred to the Liquidating Trust on the Effective Date of the Plan.  The Liquidating Trust will, among other things, resolve all Disputed Claims, continue and conclude the liquidation of Liquidating Trust Assets, including the resolution of Causes of Action, make Distributions to the Holders of Allowed Claims, and pay the expenses of the Liquidating Trust, all as provided in the Plan.

"**Liquidating Trust Agreement**" means the certain Liquidating Trust Agreement by and between each of the Debtors and the Liquidating Trustee to be entered into pursuant to the Plan and

10

the Confirmation Order, substantially in the form of Exhibit "A" attached hereto, as may be amended from time to time.

**"Liquidating Trust Assets"** means any and all Assets of each of the Debtors' Estates, including Cash, Causes of Action, and other personal and real property, all of which shall be transferred or assigned to the Liquidating Trust on the Effective Date of the Plan.

**"Liquidating Trustee"** means William Hoffman of Trigild, Incorporated in his capacity as trustee of the Liquidating Trust and any successor trustee(s) appointed pursuant to the Liquidating Trust Agreement, that has the powers and responsibilities set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement and in such capacity shall act as a liquidator of the Debtors and their assets for the benefit of Holders of Allowed Claims and Allowed Interests. Whenever the Liquidating Trustee is referred to herein, all such references are qualified by the Liquidating Trustee's powers, rights and obligations as set forth in the Liquidating Trust Agreement.

**"Liquidating Trustee Surcharge Amount"** means the amount of any surcharge for expenses of the Liquidating Trustee with respect to the maintenance, preservation and sale or other disposition of any Collateral, which such surcharge is awarded by the Bankruptcy Court or other court of competent jurisdiction.

**"Litigation Claims"** means any and all claims and causes of action, including, but not limited to, Avoiding Power Causes of Action, held by the Debtors or their Estates as of the Effective Date.

**"Local Bankruptcy Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California, effective as of January 3, 2011, as now in effect or hereafter amended.

**"Monetary Claim"** means any claim of the Debtors or the Liquidating Trust for money owed the Debtors or the Liquidating Trust whether based on contract or any other basis.

**"Net Proceeds"** means the proceeds from the sale of Collateral less commissions, fees and costs directly associated with the disposition or collection of such proceeds and less the Liquidating Trustee Surcharge Amount.

11

1    **"Non-Ordinary Course Administrative Claim"** means any Administrative Claim, but

2    excluding Ordinary Course Administrative Claims, 503(b)(9) Claims, Professional Fee Claims, or

3    U.S. Trustee Fees.

4    **"Ordinary Course Administrative Claim"** means a claim for administrative costs or

5    expenses that are allowable under Bankruptcy Code section 503(b) that are incurred in the ordinary

6    course of either of the Debtors' operations, including, but not limited to Postpetition claims of taxing

7    authorities.

8    **"Person"** means any natural person or entity.

9    **"Petition Date"** means February 11, 2011, the date on which both Debtors filed their

10    voluntary petitions for relief commencing the Cases.

11    **"Plan"** means this liquidating plan of reorganization under chapter 11 of the Bankruptcy

12    Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto,

13    either in its present form or as it may be altered, amended, or modified from time to time.

14    **"Post-Confirmation Oversight Committee"** means the committee of Creditors as they shall

15    be constituted and function after the Effective Date in accordance with Section VI.C.2.b. hereof.

16    **"Postpetition"** means the time period commencing on the Petition Date and thereafter

17    through the Effective Date.

18    **"Priority Tax Claim"** means a Claim entitled to priority against the Estate under

19    Bankruptcy Code section 507(a)(8).

20    **"Priority Unsecured Claim"** means a Claim, other than an Administrative Claim or Priority

21    Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

22    **"Professionals"** means those Persons providing advisory or consulting services (i) retained

23    pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or 1106 of

24    the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date

25    pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which

26    compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to sections

27    330 and 503(b)(2) of the Bankruptcy Code.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

**"Professional Fee Claim"** means:

(a)      A claim under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1106 for compensation for professional services rendered or expenses incurred on and after the Petition Date and prior to the Effective Date on behalf of the Estates' or either of them by a Professional duly employed and authorized by an Order of the Bankruptcy Court; or

(b)      A claim under Bankruptcy Code section 503(b)(4) for reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under section 503(b)(3)(D) for making a substantial contribution to the Estate.

**"Proponents"** means, collectively, the Debtors and the Committee.

**"Pro Rata"** means proportionate so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

The Pro Rata ratio or formula is illustrated by the example that follows:

| (a) Amount of consideration distributed to Holder of Allowed Claim = $10 | | (x) Total consideration available for distribution to Holders of Allowed Claims, as applicable, of that Class = $10,000 |
|---|---|---|
| (b) Amount of such Allowed Claim = $100 | = | (y) Amount of all Allowed Claims, as applicable, in that Class or group of Classes = $100,000 |

**"Record Date"** means, for purposes of Distributions under the Plan, the Confirmation Date.

**"Reserve Account(s)"** means the one or more reserve accounts established by the Liquidating Trustee as set forth in Section VI.D.2.c.(10) hereof.

**"Scheduled"** means set forth on the Schedules.

**"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors with the Bankruptcy Court, pursuant to section 521(a) of the Bankruptcy Code, Bankruptcy Rule 1007(b), and the Official Bankruptcy Forms, as may be amended from time to time.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

1    **"SCI"** means SCI Real Estate Investments, LLC.

2    **"Secured California"** means Secured California Investments, Inc.

3    **"Secured Claim"** means a Claim of a Creditor secured by a valid, enforceable and

4    unavoidable lien against property in which at least one of the Estates has an interest, or that is

5    subject to setoff under the Bankruptcy Code, to the extent of the value of such Creditor's interest in

6    the applicable Estate's or Estates' interest in such property or to the extent of the amount subject to

7    setoff, as the case may be.

8    **"Trigild"** means Trigild, Incorporated, the company retained by the Debtors to provide a

9    CRO and additional employees to assist the CRO.

10    **"Unclassified Claim"** means any Claim which is not part of any Class, including

11    Administrative Claims and Priority Tax Claims.

12    **"Unimpaired"** means, when used with reference to a Claim or Interest, a Claim or Interest

13    that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

14    **"U.S. Trustee"** means the Office of the United States Trustee for the Central District of

15    California.

16    **"U.S. Trustee Fees"** means all fees and charges assessed against the applicable Estate by the

17    U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code.

18    ## II.

19    ## CONSTRUCTION

20    The rules of construction in Bankruptcy Code section 102 apply to this Plan.

21    Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing

22    any time period under the Plan.

23    A term that is used in this Plan and that is not defined in this Plan has the meaning attributed

24    to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

25    The definition given to any term or provision in the Plan supersedes and controls any

26    different meaning that may be given to that term or provision in the Disclosure Statement.

27    Whenever it is appropriate from the context, each term, whether stated in the singular or the

28

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

plural, includes both the singular and the plural.

Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

Section captions and headings are used only as convenient references and do not affect this Plan's meaning.

## III.

## SUBSTANTIVE CONSOLIDATION

For purposes of this Plan, the assets, claims and affairs of the Debtors shall be substantively consolidated such that (i) all assets and claims will be pooled, (ii) the liabilities satisfied from a common fund, and (iii) intercompany claims between the Debtors eliminated.  The underlying grounds for this substantively consolidation are set forth in the accompanying Disclosure Statement. The Proponents request that the Court deem this Plan and the Disclosure Statement together as a motion for approval of the substantive consolidation of the Cases, and that the Court's order confirming this Plan provide such findings and rulings as appropriate approving the requested substantive consolidation.

Substantive consolidation of the Debtors' Estates pursuant to this Plan shall not impair or affect any rights or claims which creditors may have directly against any Person other than the Debtors, or create new rights or claims in favor of such creditors against any Person other than the Debtors, including all rights and claims under any agreement entered into prior to the Effective Date.

## IV.

## GENERAL OVERVIEW OF THE DEBTORS

Commencing in 1994, the Debtors conducted a business originating and syndicating commercial real estate properties, most often in the form of private investors holding tenant-in-

15

common interests, commonly referred to as "TICs".  The Debtors contend that the national collapse

in the real estate and credit markets in the last number of years and a lack of liquidity to pay

creditors precipitated the filing of Cases.

The Debtors do not own any real property directly; however, one or both of the Debtors hold

membership interests in numerous limited liability companies (each a "FeeCo" and collectively, the

"FeeCos"), which, in turn, own tenant-in-common interests in most of the approximate sixty (60)

real estate properties described on Exhibit "B" of the Plan (the "Properties") as tenants-in-common

with other unaffiliated tenant-in-common investors (the "TIC Co-Owners").  The Debtors have

historically generated income by syndicating properties on behalf of investors and generating fees at

the time of the properties' acquisitions and dispositions.  The Debtors estimate that, as of the Petition

Date, their assets included approximately $40 million in deferred Dispo Fees payable to the Debtors

upon the voluntary or involuntary sale of the Properties, including without limitation, foreclosure

proceedings, the maturity of the loans secured by the Properties (whether maturity occurs by the

passage of time, acceleration of debt, or through a refinancing of the existing loans), or upon other

events (collectively, the "Triggering Events").

While one or both of the Debtors own (i) membership interests in most of the FeeCos, and

(ii) are entitled to the Dispo Fees upon the Triggering Events, the Debtors do not currently control

the timing of the Triggering Events or possess the unilateral ability to prevent or force a Triggering

Event.  After its appointment on April 27, 2011, the Committee conducted a thorough review of the

Debtors' management before and after the Petition Date and requested that the Debtors agree to the

appointment of a CRO to operate the Debtors for the duration of the Cases.  Accordingly, the

Debtors agreed with the Committee to jointly file a motion seeking to retain Trigild to provide a

CRO and additional Trigild employees to assist the CRO (the "CRO Motion").  The CRO Motion

was approved by the Bankruptcy Court's order entered on October 27, 2011.  Mr. William Hoffman

of Trigild is currently the acting CRO and will serve as the Liquidating Trustee upon the Effective

Date of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## V.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

As required by the Bankruptcy Code, this Plan classifies Claims and Interests in various Classes according to their right to priority. This Plan states whether each Class of Claims or Interests is Impaired or Unimpaired. This Plan provides the treatment each Class of Claims or Interests will receive.

**A.    Unclassified Claims**

Certain types of Claims are not placed into voting Classes; instead they are Unclassified Claims. They are not considered Impaired and the Holders of Unclassified Claims do not vote on the Plan because Unclassified Claims are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponents have not placed the following Claims in a Class:

**1.    Administrative Claims**

Administrative Claims are Claims for costs or expenses of administering the Cases that are Allowed under Bankruptcy Code section 507(a)(2). The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists estimates of certain of the Debtors' known Administrative Claims and their treatment under the Plan:

17

| Name | Amount Owed[3] | Treatment |
|---|---|---|
| Pachulski Stang Ziehl & Jones LLP, Debtors' bankruptcy counsel | $150,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. |
| Levene, Neale, Bender, Yoo & Brill L.L.P., Committee's general bankruptcy counsel | $150,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. |
| Thompson & Knight, Debtors' special real estate counsel | $162,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the later of the (a) Effective Date; and (b) date of entry of order of the Bankruptcy Court approving the Final Fee Application of the claimant. |
| Kennerly, Lamishaw & Rossi LLP, Debtor's special corporate counsel[4] | $31,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the Effective Date or as soon as practical thereafter. |
| Haskell & White LLP, Debtor's accountant | $25,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim, which is a Professional Fee Claim, will be paid in full on the Effective Date or as soon as practical thereafter. |
| Trigild, Inc. | $150,000 (estimated) | Unless claimant agrees to a different treatment, the Allowed Administrative Claim will be paid in full on the Effective Date or as soon as practical thereafter. |

---

[3] The actual amount of the respective Professional Fee Claims may be higher or lower than the estimate set forth herein. Allowed Professional Fee Claims shall be as ordered by the Bankruptcy Court.
[4] Although Kennerly, Lamishaw & Rossi LLP ("KLR") was nominally engaged as Debtors' special real estate counsel, as set forth in the Application to retain and employ Thompson & Knight, KLR is actually the Debtors' special corporate counsel.

18

| Name | Amount Owed[3] | Treatment |
|---|---|---|
| Franchise Tax Board | unknown | Allowed Administrative Claim that is a tax Claim to be paid in full on the Effective Date or as soon as practical thereafter. |
| Clerk's Office Fees | $0 (estimated) | Administrative Claim for fees be paid in full on the Effective Date or as soon as practical thereafter. |
| Office of the U.S. Trustee Fees | $0 (estimated) | U.S. Trustee Fees will be paid in full on the Effective Date or as soon as practical thereafter. |

### a.    Allowance of Non-Ordinary Course Administrative Claims

Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims will be Allowed Claims only if:

(i)    No later than 60 days after the Effective Date, the Holder of such Non-Ordinary Course Administrative Claim both Files with the Bankruptcy Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim in accordance with applicable Bankruptcy Rules and the Local Bankruptcy Rules and serves the motion on the Liquidating Debtors, the Liquidating Trustee, the Post-Confirmation Oversight Committee and the U.S. Trustee; and

(ii)    an order is entered by the Bankruptcy Court allowing the Non-Ordinary Course Administrative Claim.

**Entities holding Non-Ordinary Course Administrative Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtors, the Liquidating Debtors, the Liquidating Trustee, the Liquidating Trust, the Estates, or their respective property.**

The Liquidating Trustee, Post-Confirmation Oversight Committee, or other party in interest with standing to do so, must File any objection to a Non-Ordinary Course Administrative Claim by no later than sixty (60) days after the deadline to File the Non-Ordinary Course Administrative Claim; provided however, this 60 day deadline may be initially extended for sixty (60) days by the Liquidating Trustee or the Post-Confirmation Oversight Committee by filing with the Bankruptcy Court a notice of such extension, subject to further extension. Thereafter, the deadline for objection

19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  to Non-Ordinary Course Administrative Claims may be further extended only by an order of the

2  Bankruptcy Court.

3  **b.    Allowance of Ordinary Course Administrative Claims**

4  Holders of Ordinary Course Administrative Claims shall not be required to File any request

5  for payment of such Claims.

6  **c.    Allowance of Professional Fee Claims**

7  Each Holder of a Professional Fee Claim (except for Professional Fee Claims falling under

8  clause (b) of the definition of Professional Fee Claim, which claims are subject to the Non-Ordinary

9  Course Administrative Claims Bar Date) seeking an award by the Bankruptcy Court of

10  compensation for services rendered or reimbursement of expenses incurred through and including

11  the Effective Date must (i) file its Final Fee Application for allowances of compensation for services

12  rendered and reimbursement of expenses incurred through the Effective Date by no later than the

13  sixtieth (60th) day following the Effective Date.  Any objection to such Professionals Fee Claims

14  shall be filed on or before the date specified in the Final Fee Applications.  All such requests for

15  payment of such Professional Fee Claims will be subject to the authorization and approval of the

16  Bankruptcy Court.

17  **Persons holding Professional Fee Claims who do not timely File and serve a final fee**

18  **application will be forever barred from asserting those Claims against the Debtors, the**

19  **Liquidating Debtors, the Estates, the Liquidating Trustee, or the property of the Liquidating**

20  **Trust.**

21  **d.    Allowance of Cure Claims**

22  A Cure Claim shall become an Allowed Cure Claim when the assumption of the affected

23  unexpired lease or executory contract is effective, pursuant to the applicable order of the Bankruptcy

24  Court that addresses the assumption of the applicable unexpired lease or executory contract.

25  **2.    Priority Tax Claims**

26  Priority Tax Claims include certain unsecured income, employment and other taxes described

27  by section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each Holder of a

28  20

Priority Tax Claim receive the present value of such Claim in regular installment payments in Cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim; (ii) over a period ending not later than five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored nonpriority Unsecured Claim provided for under the Plan.

The following chart lists <u>all</u> of the Debtors' Priority Tax Claims and their treatment under the Plan:[5]

| DESCRIPTION | TREATMENT |
|---|---|
| Priority Tax Claim of:<br>Internal Revenue Service [SCI]<br><br><u>Amount of Claim</u> = $2,400.00 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 2.2% per annum commencing on the Effective Date, pursuant to IRC § 6621. |
| Priority Tax Claim of:<br>Internal Revenue Service [Secured California]<br><br><u>Amount of Claim</u> = $1,887.29 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 2.2% per annum commencing on the Effective Date, pursuant to IRC § 6621. |
| Priority Tax Claim of:<br>Franchise Tax Board [SCI]<br><br><u>Amount of Claim</u> = $800.00 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.<br><br>Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.0% per annum commencing on the Effective Date. |
| Priority Tax Claim of:<br>City of Los Angeles [SCI]<br><br><u>Amount of Claim</u> = $232,235.21 | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date. |

---

[5] The chart below is for informational purposes and is not an admission as to the validity of any particular Claim.

21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| DESCRIPTION | TREATMENT |
|---|---|
| | Interest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.2% per annum commencing on the Effective Date. |
| Priority Tax Claim of: Employment Development Department [SCI]\n\nAmount of Claim = $0.00 [for information only] | Paid in full on or as soon as practicable after the Effective Date (i) if there is no dispute regarding the amount, validity and priority of such claim and (ii) if in the reasonable discretion of the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, sufficient cash is available in the Liquidating Trust to pay the Allowed Priority Tax Claim; but in no event, later than five (5) years after the Petition Date.\n\nInterest shall accrue on the principal balance of the Allowed Priority Tax Claim at 3.0% per annum commencing on the Effective Date, pursuant to section 19521 of the *California Revenue and Taxation Code*. |

**B.    Classified Claims and Interests**

**1.    Classes of Secured Claims**

Secured Claims are Claims secured by Liens on property belonging to either of the Estates.

The Debtors and the Committee reserve all rights to dispute the amount, validity, and/or priority of all Secured Claims asserted against the Debtors or either of them and property of the Debtors' Estates, which rights are reserved and preserved for, by and on behalf of the Liquidating Trust and the Post-Confirmation Oversight Committee.

The following chart lists the Classes containing the alleged Secured Claim and their treatment under the Plan.

22

DOCS_LA:250513.8 77002-002

000107

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of: Collateralized Parties Pursuant to 2009 Pledge and Security Agreements Re Loan and Placement Agreements entered into from 2003 – 2008

(See Exhibit "C")

Collateral description = See Exhibit "D"

Claim Priority = Unknown

Collateral value = Unknown – to be determined upon disposition of Collateral.

Amount of Claim = Scheduled for $7.44 million (approx.)

Interest Rate = Allowed Secured Claims shall accrue simple interest at the lower of the contract rate or prime rate plus 1% measured from the Effective Date. | N | Y

(Creditors with Claims in this Class that are not Disputed Claims are entitled to vote on the Plan) | Allowed Class 1 Claims will be paid at such time and from the Net Proceeds generated from the disposition of the Collateral securing such Claims.  ("Net Proceeds" means gross proceeds less (i) commissions, fees, and costs directly associated with the disposition or collection of such proceeds and (ii) Liquidating Trustee Surcharge Amount.  The Liquidating Trustee reserves his right to seek allowance of the Liquidating Trustee Surcharge Amount.)

The Liquidating Trustee and the Post-Confirmation Oversight Committee shall have standing to seek disallowance of Class 1 Claims and/or avoidance of some or all Liens or interests securing Class 1 Claims.

To the extent that Class 1 Claims are undersecured or wholly unsecured, the unsecured portion of the Claims shall be Class 4 Claims and will receive the treatment for such Claims as set forth below. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of: Collateralized Parties re SCICG Mezzanine Fund I, LLC<br><br>(See Exhibit "E")<br><br>Collateral description = See Exhibit "F"<br><br>Claim Priority = Unknown<br><br>Collateral value = Unknown – to be determined upon disposition of Collateral.<br><br>Amount of Claim = Scheduled for $10.8 million (approx.)<br><br>Interest Rate = Allowed Secured Claims shall accrue simple interest at the lower of the contract rate or the prime rate plus 1% measured from the Effective Date. | N | Y<br><br>(Creditors with Claims in this Class that are not Disputed Claims are entitled to vote on the Plan) | Allowed Class 2 Claims will be paid at such time and from the Net Proceeds generated from the disposition of the Collateral securing such Claims by the Liquidating Trustee, if any.<br><br>The Liquidating Trustee and the Post-Confirmation Oversight Committee shall have standing to seek disallowance of Class 2 Claims and/or avoidance of some or all Liens or interests securing Class 2 Claims.<br><br>To the extent that Class 2 Claims are undersecured or wholly unsecured, the unsecured portion of the Claims shall be Class 4 Claims and will receive the treatment for such Claims as set forth below.<br><br>As set forth in the Disclosure Statement, the Debtors believe that the Liens held by Holders of Class 2 Claims are subject to avoidance under Chapter 5 of the Bankruptcy Code. To avoid such litigation being filed, a Holder of a Class 2 Claim may elect to surrender its Lien or interest by indicating such surrender on the Ballot. If a Holder of a Class 2 Claim surrenders its Lien or interest in this manner, its Class 2 Claim shall be reclassified as a Class 4 Claim and such Class 4 Claim will be treated as such for all purposes under the Plan. The surrender of such Lien or interest shall be effective upon receipt of the Ballot by the Debtors in accordance with the instructions set forth in the Disclosure Statement. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

24

**2.      Class of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in Classes.  These Priority Unsecured Claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each Holder of a Priority Unsecured Claim receive Cash on the Effective Date equal to the allowed amount of such Claim.  However, a Holders of Class 3 Claims may vote to accept deferred Cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claims.  Except as set forth in the chart below, the Proponents are not aware of any Priority Unsecured Claims.  This Plan preserves all rights of the Liquidating Trustee to dispute such Claims and File objections relating to any and all Priority Unsecured Claims as set forth herein and in the Liquidating Trust Agreement.

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|---------------|----------------|-----------|
| 3 | Claims for wages under section 507(a)(4) of the Bankruptcy Code of:<br><br>Marc Paul and Robert Robotti  (SCI only)<br><br>Amount of Claims: $22,500 total (maximum of $11,750 per claimant) | Y | N<br><br>(Creditors with Claims in this Class are <u>not</u> entitled to vote on the Plan) | Allowed Priority Unsecured Claims shall be paid in full on the later of (1) the Effective Date or as soon as practicable thereafter and (2) if the Priority Unsecured Claim is a Disputed Claim, after such dispute is resolved by agreement of the parties or a Final Order<br><br>The Class 3 Claims are Disputed Claims. |

**3.      Class of General Unsecured Claims**

General Unsecured Claims are not entitled to priority under section 507(a) of the Bankruptcy Code.  The following chart identifies the Plan's treatment of General Unsecured Claims:

This Plan preserves all rights of the Liquidating Trustee to dispute and File objections relating to any and all General Unsecured Claims as set forth herein and in the Liquidating Trust Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

25

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Claims: All Allowed General Unsecured Claims  Amount of Claims Estimated Allowed Unsecured Claims of $44.85 million. See Exhibit "B" to the Disclosure Statement regarding Filed and Scheduled Claims. | N | Y  (Creditors with Claims in this Class that are not Disputed Claims are entitled to vote on the Plan) | Interim and final Distributions to the Holders of Allowed Class 4 General Unsecured Claims will be made by the Liquidating Trustee as follows:  (1) On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee will distribute the sums then available (after funding the Reserve Account as set forth below in Section VI.D.2.c.(10)) to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis.  (2) If at any time after the Effective Date the Liquidating Trustee is holding more than $1,000,000 in Available Cash or at such times as instructed by the Post-Confirmation Oversight Committee (unless such instruction is determined by the Court on motion by the Liquidating Trustee to be unreasonable), the Liquidating Trustee will distribute the Available Cash to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis; and  (3) Upon the resolution of all Claims and litigation, and the liquidation of all Liquidating Trust Assets, the Liquidating Trustee shall distribute the all Cash remaining in the Liquidating Trust by making a final distribution to the Holders of Allowed Class 4 General Unsecured Claims, subject to the provisions of Section VI.C.2.c.(9) below. |

**4.      Class of Interest Holders**

Interest Holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtors. The following chart identifies the Plan's treatment of the Class of Interest Holders.

DOCS_LA:250513.8 77002-002

000111

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | All Membership Interests in Debtors | Y<br><br>(Interest Holders are not entitled to vote but are deemed to have rejected the Plan.) | The membership interests in the Debtors are cancelled. |

**C.    Means of Effectuating the Plan**

**1.    Funding for the Plan**

**a.    General**

On the Effective Date, the Liquidating Trust Assets shall be transferred to the Liquidating Trust.  To the extent necessary and subject to the authority set forth in the Liquidating Trust Agreement, the Liquidating Trustee may seek to fund the administration of the Liquidating Trust Assets by way of, without limitation, (i) Cash on hand, (ii) proceeds of the Exit Financing, (iii) repayment of the Duke Note, (iv) collection of Dispo Fees earned upon the occurrence of Triggering Events, (v) sales proceeds from the liquidation of Liquidating Trust Assets, (vi) recoveries on claims and causes of action transferred by the Debtors to the Liquidating Trust, and (vi) obtaining additional financing or such other methods of raising capital as is reasonable and customary to facilitate the orderly disposition of the Liquidating Trust Assets for the benefit of the Beneficiaries.  The Liquidating Trust shall also be funded by proceeds generated from the collection by the Liquidating Trustee of any Liquidating Trustee Surcharge Amount.

**b.    Exit Financing and Trust Assets as Security for Exit Financing**

The CRO has arranged for Exit Financing anticipated to be available to the Liquidating Trustee upon and after the Effective Date, in the form of a revolving line of credit in an amount up to $3,000,000 from Benchmark Bank of Plano, Texas, the Exit Lender.  However, no binding commitment or obligation to lend or borrow exists or will exist prior to the Effective Date.  The following paragraph and the contents of the Indicative Term Sheet below describe certain material terms and provisions of the Exit Financing, including conditions and requirements which must be

27

met (or waived) before the Exit Lender and Liquidating Trustee are obligated to proceed with the Exit Financing.

The Exit Financing is contingent on approval of the Plan. More specifically, the Exit Financing will not be available unless and until the Plan (including the Exit Financing described herein) is approved, the Court's order approving the Plan (including the Exit Financing) becomes final and non-appealable, and the Effective Date occurs. Conversely, the occurrence of the Effective Date following approval of the Plan is contingent on availability of the Exit Financing. More specifically, if the Exit Financing is not available on the date which would otherwise be the Effective Date, the Effective Date will not occur. The Indicative Term Sheet for the Exit Financing is as follows:

| | |
|---|---|
| Date Available: | Effective Date |
| Borrower: | Liquidating Trustee, as Trustee on behalf of the Liquidating Trust |
| Guarantors: | All existing and future direct and indirect subsidiaries of Borrower |
| Exit Lender: | Benchmark Bank |
| Exit Financing Amount and Type: | $3,000,000 revolving credit facility (the "Facility") |
| Use of proceeds: | To satisfy obligations of and support actions taken by the Liquidating Trustee under the Liquidating Trust Agreement and the Plan, including obligations to be paid on and after the Effective Date and actions taken to administer the Liquidating Trust Assets. |
| Collateral and Priority: | The Exit Lender will have first priority security interests and/or liens in and to all of the Liquidating Trust Assets, both as to currently unencumbered Liquidating Trust Assets under Section 364(c)(2) of the Bankruptcy Code and as to currently encumbered Liquidating Trust Assets under Section 364(d) of the Bankruptcy Code. The security interests and/or liens in favor of the Exit Lender will be first, prior and senior to the holders of all Allowed Claims and Interests, including, without limitation, Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Class 1 – 5 Claims. The Exit Lender will also have an Allowed Super-Priority Administrative Claim under Section 364(c)(1) of the Bankruptcy Code with priority over any or all Allowed Administrative Claims to further secure repayment of the Facility. |
| Term: | The Facility will have a term of 36 months from the Effective Date. |
| Repayment | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| of Principal and Interest: | Interest will be due and payable monthly on the entire outstanding principal amount.  The Facility will not be subject to scheduled amortization of principal prior to the date that is 36 months after the closing date (the "<u>Maturity Date</u>").    All principal, interest, fees, expenses and other amounts outstanding under the Facility will be due and payable in full on the Maturity Date. |

Mandatory Prepayments:   Upon the closing of (a) a sale of the Erwin Plaza building ("<u>Erwin Plaza</u>"), (b) a refinancing of the indebtedness secured by a lien on Erwin Plaza or (c) the consummation of any other liquidating event with respect to the interests of the Borrower in Erwin Plaza:

(i)    the proceeds therefrom shall be disbursed by the escrow agent (or any other person) handling the closing in the following order:

**First**, the portion of such proceeds necessary to pay the holder of the first lien mortgage or deed of trust against Erwin Plaza, and reasonable and customary closing costs, will be used to pay such first lien indebtedness and closing costs; and

**Second**, the portion of such proceeds necessary to pay the aggregate principal ($8,076,000) and accrued but unpaid interest on the Duke Note (the "<u>Duke Note Proceeds</u>") shall be paid as described in clause (ii) below; and

**Third**, the remainder of such proceeds, if any, shall be transferred to the persons legally entitled thereto, including the owners of Erwin Plaza to the extent legally entitled thereto; and

(ii)    the portion of such proceeds representing the Duke Note Proceeds shall be disbursed by the escrow agent (or any other person) handling the closing in the following order:

**First**, the portion of the Duke Note Proceeds necessary to prepay the Facility in full will be transferred to Exit Lender and used to prepay all principal, interest, fees, expenses and other amounts outstanding under the Facility; and

**Second**, the remainder of the Duke Note proceeds, if any, shall be transferred to the Liquidating Trustee or, if applicable, as otherwise required by the Plan; and

(iii)    upon Exit Lender's receipt of the Duke Note Proceeds from the sale of Erwin Plaza as set forth above, Exit Lender, in its sole and absolute discretion, may:

29

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(x)    terminate the commitment and the remaining term of the Facility at which time all principal, interest, fees, expenses and other amounts outstanding under the Facility shall be due and payable in full;

(y)    institute a borrowing base whereby borrowing will be limited to the lesser of the amount of the borrowing base or the initial amount of the Facility; or

(z)    only if approved by Exit Lender and the Liquidating Trustee, each in its sole and absolute discretion, convert any remaining unpaid principal balance of the Facility to a term loan with scheduled amortization.

Termination By
Liquidating Trustee:    By irrevocable written notice to Exit Lender, Liquidating Trustee, in his sole and absolute discretion, may terminate the commitment and remaining term of the Facility at any time the outstanding balance under the Facility is zero.

Interest and Fees:    The principal amount of all Exit Financing loans will accrue interest at a per annum rate equal to the prime rate of interest published in the *Wall Street Journal* plus 1.00%, and the interest rate will float on a daily basis, and be charged on the outstanding drawn amounts;

A one percent (1.00%) Commitment Fee on the full $3,000,000 Facility Amount, is fully earned and payable on the Effective Date; and

On the date that is one (1) year following the Effective Date, and continuing on each anniversary of the Effective Date thereafter while the Facility is outstanding, Liquidating Trustee shall pay to Exit Lender a one percent (1.00%) annual fee on the full Facility Amount of $3,000,000 (subject to adjustment based on any appraisal of Erwin Plaza as set forth below).

Upon an event of default under the Facility, the applicable interest rate will be increased by two percent (2%) per annum, and all amounts outstanding under the Facility will be payable on demand.

Collateral/Security:    The Exit Lender will have first priority security interests and/or liens in and to all of the Liquidating Trust Assets, including but not limited to the following (which were formerly owned by the Debtors prior to the Effective Date):
- All receivables and general intangibles of the Liquidating Trustee, including all deferred fee receivables at any time owed or owing to the Liquidating Trustee and previously owed to SCI Real Estate Investments, LLC and/or Secured California Investments, Inc., including all Dispo Fees
- All promissory notes payable to the Liquidating Trustee, including those promissory notes comprising the Duke Note
- All economic benefits of all equity interests owned by the Liquidating Trustee (formerly owned by the Debtors prior to the Effective Date)

30

- All Liquidating Trust Assets subject to any prior valid, perfected, and non-avoidable liens or security interests

**Exit Financing**
**Loan Closing Date:** Upon the Effective Date of the Plan, which is the date on which each of the order(s) of the Court approving the Plan (including the Exit Financing) is final and non-appealable; provided that the Exit Financing Loan Closing Date will not occur unless all conditions precedent are satisfied or waived by the Exit Lender, which waiver may be given or withheld in the sole and absolute discretion of the Exit Lender

**Conditions Precedent To Closing:** The Facility will be available subject to the satisfaction of conditions that are customary for financings of this type including, without limitation to the following:

- Execution and delivery by the Liquidating Trustee of loan documentation (including mortgages and other lien and security documents), and of guarantees by the Guarantors, each acceptable to the Exit Lender and approved by Exit Lender's legal counsel;
- Receipt by the Exit Lender of additional documents as are customary for transactions of this type or as it may request, all in form and substance acceptable to the Exit Lender and its counsel;
- Exit Lender will receive all financial information, projections, budgets, business plans, cash flows and such other information as the Exit Lender shall reasonably request;
- Receipt by the Exit Lender of all fees required to be paid and all expenses related to the Facility for which invoices have been presented;
- Receipt by the Exit Lender of evidence satisfactory to Exit Lender, in Exit Lender's sole discretion, of the Liquidating Trustee's authority to enter into, and perform all obligations under, the loan documents;
- All filings, recordings (including, without limitation, mortgages and deeds of trust, as applicable) and searches necessary or desirable in connection with the liens and security interests referred to above under "Collateral/Security" shall have been duly made;
- All payment obligations under any existing debtor in possession facility shall have been paid in full and all liens on the Liquidating Trust Assets securing such facility shall have been terminated;
- Receipt of final non-appealable order(s) confirming and approving the Plan and the Exit Financing;
- Court confirmation and approval order(s) shall be acceptable to Exit Lender and shall authorize the Exit Financing;
- Court confirmation and approval order(s) shall be in full force and effect and shall not have been modified, reversed, stayed, or vacated;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

31

- No litigation commenced in the Bankruptcy Court or any other court of competent jurisdiction which, if successful, could have a material adverse effect on the Plan or Facility;
- Completion by the Exit Lender of a business and legal due diligence investigation of the Borrower and its assets and satisfaction of the Exit Lender, in its sole and absolute discretion, with the results thereof in all respects; and
- Any other condition precedent agreed between the parties as necessary and set forth in the loan documents.

**Additional Loan Requirements:** Semi-Annual financial reporting for the Liquidating Trust and other covenants and conditions that are typical for this type of transaction

**Appraisal & Commitment Reduction:** Exit Lender retains the right to perform an annual (or, if an event of default has occurred and is continuing, more frequent) appraisal of the Erwin Plaza, a 238,792 sq. ft. building located at 2200 West Main Street, Durham, NC 27705 at the sole expense of the Borrower. The maximum amount available under the Facility will be permanently reduced dollar-for-dollar for the amount of any such appraisal that is less than $28,000,000 and the Borrower shall immediately prepay the principal amount of the loans outstanding under the Facility in excess of such reduced maximum amount, if any.

**Expenses:** All expenses of Exit Lender related to this transaction will be paid by Liquidating Trustee; Exit Lender acknowledges receipt of an expense deposit of $25,000 to be applied to such expenses.

Exit Lender shall provide a preliminary budget for its due diligence and legal costs, and agrees to limit such costs to $50,000.00. Provided, the Liquidating Trustee will reserve the right to agree to pay amounts incurred by Exit Lender in excess of $50,000.00 after consultation with the applicable Creditors Committee.

**Events of Default:** Subject to negotiation but usual and customary for this type of transaction

**Additional Loan Terms:** To be determined but expected to be usual and customary terms for this type of instrument and transaction

**Additional Considerations:** While it is not being made a requirement of the Exit Financing, the Exit Lender would request that its subsidiary Benchmark Title, LLC be considered as the preferred title company of choice to close any potential sale of real estate controlled by the Liquidating Trustee so long as Benchmark Title, LLC provides its services at prevailing market rates and on prevailing market terms.

**No Commitment:** **THE FOREGOING INDICATIVE TERM SHEET AND THE CONTENTS THEREOF DO NOT CONSTITUTE A COMMITMENT OF THE EXIT LENDER. Exit Lender shall be**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32

**under no commitment or obligation to lend funds until a written loan agreement expressing an intention to be legally committed, is executed by the Liquidating Trustee and the Exit Lender. The Indicative Term Sheet can be withdrawn by the Exit Lender or the prospective Liquidating Trustee without notice. Oral discussions covering the Indicative Term Sheet or any part of it shall not bind or obligate Exit Lender, the prospective Liquidating Trustee or any other person or entity to any agreement unless such agreement is reduced to writing and signed by an authorized representative of Exit Lender, the prospective Liquidating Trustee, or such other person or entity, as applicable. The foregoing Indicative Term Sheet is intended as an outline only and does not purport to summarize all the conditions, covenants, representations, warranties and other provisions which would be contained in final loan documents evidencing the Facility.**

**2.       The Effective Date of the Plan and Conditions Thereto**

The Effective Date of the Plan shall be the first Business Day after all conditions to the occurrence of the Effective Date have been satisfied or waived. The following are the conditions to the Effective Date:

(i)       the Court has entered the Confirmation Order, which approves the Exit Financing;

(ii)      no order staying the effectiveness of the Confirmation Order has been entered by the first Business Day after the fifteenth (15th) calendar day after the entry of the Confirmation Order or, if an appeal of the Confirmation Order has been filed before such date and there has been an order staying the effectiveness of the Confirmation Order entered before such date, an order dismissing the appeal has become final and non-appealable or the stay of the Confirmation Order has terminated; and

(iii)     the Exit Financing is available.

**3.       Post-Confirmation Management**

**a.       The Liquidating Debtors**

Upon the occurrence of the Effective Date, the Debtors shall become the Liquidating Debtors. After the Effective Date, the Liquidating Trustee is authorized to act as management of the Liquidating Debtors and can execute such documents and enter into such transactions as necessary for purposes of consummating this Plan, with the majority consent of the Post-Confirmation Oversight Committee. If such consent from the Post-Confirmation Oversight Committee is not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

33

forthcoming, the Liquidating Trustee and/or Liquidating Debtors may seek an order from the

Bankruptcy Court that the consent was unreasonably withheld, and if such an order is obtained, the

Liquidating Trustee and/or Liquidating Debtors can proceed to take such action as appropriate to

maximize the value of the Liquidating Trust Assets.  Notwithstanding the authority granted to the

Liquidating Trustee, the Liquidating Debtors shall be separate and apart from the Liquidating Trust

created by this Plan, and release any and all rights, title and interest to the Liquidating Trust Assets.

**b.**    **Dissolution of the Committee and Formation of the Post-Confirmation Oversight Committee**

On the Effective Date, the Committee will be deemed dissolved and its members will be

released and discharged from all further duties and obligations arising from or related to the Cases.

On the Effective Date, a Post-Confirmation Oversight Committee shall be appointed which shall

consist of the members of the Committee as of the date of entry of the Confirmation Order.  The

Post-Confirmation Oversight Committee shall serve without a bond.  Except as expressly provided

herein and in the Liquidating Trust Agreement, decisions of the Post-Confirmation Oversight

Committee shall be made by majority vote of its members.  Members of the Post-Confirmation

Oversight Committee shall receive reimbursement of actual costs and expenses (but not

reimbursement for individual counsel or advisor fees) in connection with their duties as members of

the Post-Confirmation Oversight Committee.  Any member of the Post-Confirmation Oversight

Committee may opt-out of participation in the Post-Confirmation Oversight Committee by providing

written notice to the other members of the Post-Confirmation Oversight Committee and counsel for

the Liquidating Trustee.

It is anticipated that Levene, Neale, Bender, Yoo & Brill L.L.P. shall serve as counsel for the

Post-Confirmation Oversight Committee, and that Thompson & Knight LLP and Pachulski Stang

Ziehl & Jones LLP (and other such counsel as the Liquidating Trustee shall employ with Court

approval or with the majority consent of the members of the Post-Confirmation Oversight

Committee) shall serve as counsel for the Liquidating Trustee, commencing on the Effective Date.

As soon as practicable after the Effective Date, the Post-Confirmation Oversight Committee

shall have the right to adopt and be governed by by-laws that are customary for post-confirmation

34

committees.

### c.    The Liquidating Trust and the Liquidating Trustee

#### (1)    Creation of the Liquidating Trust

On the Effective Date and by operation of the Confirmation Order, a Liquidating Trust will be established for the benefit of all Beneficiaries and, to the extent that all Allowed Claims are paid in full with interest, the Holders of Allowed Interests in the Debtors.  The Liquidating Trust Agreement shall be executed by the parties thereto on or before the Effective Date.  The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including Treasury Regulations section 301.7701-4(d).  The Liquidating Trust will be organized for the purpose of identifying, recovering, preserving, monitoring, liquidating and disposing of the Liquidating Trust Assets in a manner that maximizes the value, which may take into consideration the net present value at a reasonable discount rate, of the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business.  On the Effective Date, the Debtors shall be deemed to have transferred all of the Assets to the Liquidating Trust.  The Liquidating Trust shall identify, recover, preserve, monitor, receive, liquidate and distribute the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement.  The Liquidating Trust is not a successor of either of the Debtors and, except as expressly provided herein, shall not have liability for any Claim, right or action of any third party that is based on any theory of successor liability or similar legal theory or doctrine. To the extent there are any inconsistencies between the Plan and the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

#### (2)    Appointment of the Liquidating Trustee

The initial Liquidating Trustee shall be Hoffman.  The Liquidating Trustee shall be compensated at his/her customary hourly rate.  The Liquidating Trustee shall administer the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement and shall perform all of the obligations of the Liquidating Trustee under the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall be the authorized representative of the Liquidating Trust.  The Liquidating Trustee shall serve without bond for the duration of the Liquidating Trust, subject to earlier death,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

35

resignation, incapacity or removal as provided herein and in the Liquidating Trust Agreement. The Liquidating Trustee will also be required to do the following upon the receipt of written instruction from the Post-Confirmation Oversight Committee: (1) commence or continue to prosecute litigation with respect to any claims or causes of action on behalf of the Liquidating Trust; (2) propose, accept or reject any settlement proposals with respect to any claims or causes of action that are Liquidating Trust Assets; (3) propose, accept or reject any settlement proposals with respect to any Claim asserted against the Debtors or the Liquidating Trust Assets whether arising prior to or after the Effective Date; (4) make Distributions in accordance with the terms of this Plan or the Liquidating Trust Agreement if such has not previously been timely made by the Liquidating Trustee; (5) when appropriate, exercise the rights and powers set forth in the Liquidating Trust Agreement; and (6) perform such other reasonable and necessary acts in order to carry out the terms of the Plan, the Liquidating Trust, and/or which are in the best interests of the Beneficiaries if such does not violate any provision of the Plan, the Liquidating Trust Agreement, or applicable law. If the Liquidating Trustee disagrees with any instruction received by the Post-Confirmation Oversight Committee, then the Liquidating Trustee may seek an order from the Bankruptcy Court that the instruction received was unreasonably given, and if such an order is obtained, authorizing the Liquidating Trustee to take such other action as appropriate to maximize the value of the Liquidating Trust Assets.

The Post-Confirmation Oversight Committee shall have the authority during the term of the Liquidating Trust to seek the removal and/or replacement of the Liquidating Trustee for cause shown to the Bankruptcy Court if, after consultation with the Liquidating Trustee, the matter cannot be resolved short of such action. In the event that the Liquidating Trustee is terminated by final Bankruptcy Court order, then the Liquidating Trustee and his retained professionals shall be entitled to recover any earned and unpaid fees and expenses through the date of termination. In addition, the Liquidating Trustee may resign with thirty (30) days prior written notice, provided, however, the Liquidating Trustee shall continue to act as the Liquidating Trustee until such time as the Post-Confirmation Oversight Committee shall find a suitable substitute Liquidating Trustee; provided, however, the Liquidating Trustee shall not continue to serve as the Liquidating Trustee more than

36

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

one-hundred eighty (180) days after he/she submits his/her written notice of resignation.  If the Post-Confirmation Oversight Committee has not found a suitable replacement for the Liquidating Trustee by the end of the one-hundred eighty (180) day period, the Post-Confirmation Oversight Committee shall perform the duties of the Liquidating Trustee until a suitable replacement can be found.

Annexed hereto as Exhibit "G" is a proposed operating budget for administration of the Liquidating Trust prepared for the period from the Effective Date through December 31, 2017, which budget shall be subject to the majority approval of the Post-Confirmation Oversight Committee (the "Initial Post-Confirmation Budget").  Budgets shall be prepared no later than (60) days in advance of the expiration of the end of each calendar year and shall be subject to majority approval of the Post-Confirmation Oversight Committee (the "Successive Post-Confirmation Budgets").  Successive Post-Confirmation Budgets shall cover a forward-looking period of not less than five years or until such earlier time as the Liquidating Trust is anticipated to terminate.  If approval of the budget is not given by from the Post-Confirmation Oversight Committee, the Liquidating Trustee may seek an order from the Bankruptcy Court that the approval was unreasonably withheld, and if such an order is obtained, the Liquidating Trustee can administer the Liquidating Trust in accordance with such Initial Post-Confirmation Budget or such Successive Post-Confirmation Budget.

The Liquidating Trustee shall provide a quarterly written report to the Post-Confirmation Oversight Committee regarding the status of the matters within the responsibility of the Liquidating Trustee on the twentieth (20th) day of the month (or the first Business Day thereafter if such date is on a weekend or legal holiday) following the end of the immediately preceding three calendar month period (each such period being a "quarter", with the first quarter being that period that includes the first three full calendar months following the Effective Date) or at such other intervals and in such form as reasonably requested by the Post-Confirmation Oversight Committee (the "Periodic Trustee Reports").  The Periodic Trustee Reports shall include (i) monthly financial statements/reports generated by the Liquidating Trustee; (ii) such other information as reasonably requested regarding the Initial Post-Confirmation Budget or any Successive Post-Confirmation Budget; (iii) pertinent

DOCS_LA:250513.8 77002-002

current or historical financial or operational information; and (iv) such other documents as are appropriate relating to the administration of the Liquidating Trust.

### (3)  Disbursing Agent

The Liquidating Trustee shall act as the Disbursing Agent for purposes of making all distributions provided for under this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall serve in this capacity without bond.

### (4)  Transfer of the Assets to the Liquidating Trust

The Debtors on the Effective Date shall transfer all Assets to the Liquidating Trust.  All Liquidating Trust Assets, which include the Exit Financing, all rents, profits and proceeds from Liquidating Trust Assets and related rights and claims that may accrue after the Effective Date, shall be held in trust for the benefit of the Beneficiaries, subject to the provisions of the Plan and the Liquidating Trust Agreement.  The Liquidating Debtors and their Estates shall retain no interest in the Assets or the Liquidating Trust Assets.

### (5)  Sale or Other Disposition of Liquidating Trust Assets

Except as otherwise set forth herein or in the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trust may use, acquire, sell or otherwise dispose of Liquidating Trust Assets.  Subject to the approval of the Post-Confirmation Oversight Committee, the Liquidating Trustee shall have the authority to monetize, sell, liquidate or otherwise dispose of all Liquidating Trust Assets without need to obtain approval from the Bankruptcy Court or the United States Trustee.  The Liquidating Trustee shall collect all monies owed to the Liquidating Trust whether based on a contract or any other basis.  If the Liquidating Trustee wishes to settle any Monetary Claim for less than the full face amount of the Monetary Claim or monetize any other Trust Asset, such transaction(s) shall be subject to majority approval by the Post-Confirmation Oversight Committee.  Unanimous approval of the Post-Confirmation Oversight Committee is required as a condition to the Liquidating Trustee entering into any transaction or settlement that represents a discount of more than $100,000 or 20% (whichever is less) of the face amount of the Monetary Claim. However, if the Post-Confirmation Oversight Committee does not give its consent,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

38

the Liquidating Trustee may seek a ruling from the Bankruptcy Court that the Post-Confirmation

Oversight Committee's consent was unreasonably withheld, and if so, seek Bankruptcy Court

approval of the proposed settlement.  Any funds held or received by the Liquidating Trustee shall be

maintained in one or more segregated bank accounts maintained to hold funds to be distributed

under this Plan.  If the Post-Confirmation Oversight Committee instructs the Liquidating Trustee to

file a Litigation Claim, including any action under Chapter 5 of the Bankruptcy Code, and the

Liquidating Trustee elects not to do so, the Post-Confirmation Oversight Committee shall have

standing to file any such Litigation Claim in the appropriate forum.

The Liquidating Trustee, with the consent or upon instruction of a majority of the Post-

Confirmation Oversight Committee, may, in accordance with the procedure set forth in the

Liquidating Trust Agreement, abandon to the Liquidating Debtors or disclaim any interest in a Trust

Asset if it is determined that the Trust Asset is burdensome to the Liquidating Trust or that it is of

inconsequential value or benefit to the Liquidating Trust.

### (6)    Investigation and Prosecution of Claims

All Litigation Claims held by the Liquidating Debtors and their Estates as of the Effective

Date shall be, as a matter of law, transferred free and clear of liens and interests, claims and

encumbrances to the Liquidating Trust as part of the Liquidating Trust Assets.  The Liquidating

Trustee shall have the standing and authority to initiate, prosecute, compromise or otherwise resolve

any and all Litigation Claims, either in consultation with or at the instruction of the Post-

Confirmation Oversight Committee.  The Bankruptcy Court shall have continuing non-exclusive

jurisdiction to hear and determine any litigation commenced with respect to a Litigation Claims.

The Liquidating Trustee shall have the duty to investigate all Litigation Claims and

determine which, if any, should be prosecuted for the benefit of the Liquidating Trust.  Except as

otherwise set forth herein and subject to the approval of the Post-Confirmation Oversight

Committee, all Litigation Claims are preserved by the Plan, and the Liquidating Trustee shall have

the authority to settle, adjust, retain, enforce or abandon any Litigation Claim as the representative of

the Debtors' Estates under section 1123(b)(3)(B) of the Bankruptcy Code without supervision of, or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

39

need for approval by, the Bankruptcy Court.  The Liquidating Trustee shall provide a written description of any proposed settlement, compromise or dismissal of any Litigation Claim (i.e., any right or cause of action) to the Post-Confirmation Oversight Committee for approval.

### (7) Bankruptcy Powers

The Liquidating Trust shall have, and the Debtors shall be deemed to have preserved, transferred and assigned to the Liquidating Trust on the Effective Date, all of the rights, claims, powers, objections, counterclaims, defenses, setoffs and actions of the Debtors and their Estates under the Bankruptcy Code.  After the Effective Date, all claims, rights and causes of action of the Debtors and their Estates shall be filed and prosecuted in the name of the Liquidating Trust.  The entry of a final decree in or order closing the Cases or either of them shall not eliminate any claim, right or cause of action, or any counterclaim, defense or objection that existed prior to such final decree or order closing the Cases or either of them, and the Bankruptcy Court shall retain jurisdiction as set forth in Section VI.D.3 hereof notwithstanding such final decree or closure of the Cases.

### (8) Employment and Compensation of Professionals, Reimbursement of Expenses

The Liquidating Trustee and the Post-Confirmation Oversight Committee are authorized to employ attorneys and/or other professionals as appropriate to discharge their duties without need for Bankruptcy Court approval, specifically including the payment of any professional utilized by the CRO/Liquidating Trustee in the drafting of the Plan, Liquidating Trust Agreement and all related documents drafted before the Effective Date relating to the Liquidating Trustee and the Liquidating Trust.  Members of the Post-Confirmation Oversight Committee shall be entitled to reimbursement of out-of-pocket costs incurred in the course of the performance of their duties; however, such reimbursement does not apply to the fees or costs of any professionals retained by any individual member of the Post-Confirmation Oversight Committee.

Professionals employed by the Liquidating Trustee and the Post-Confirmation Oversight Committee shall be compensated based on their customary rates and terms on a monthly basis without need for Court approval of fees and expenses.  Professionals employed by the Liquidating

40

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Trustee and the Post-Confirmation Oversight Committee shall submit monthly bills to both the

2    Liquidating Trustee and the Post-Confirmation Oversight Committee in the ordinary course of the

3    professionals' billing practices.  The Liquidating Trustee and the Post-Confirmation Oversight

4    Committee shall have fifteen (15) calendar days to object to the payment of the fees and expenses

5    provided in such billings (the "Fee Objection Date").  If no written objection is received by the

6    respective professional(s) by the Fee Objection Date, then such fees shall be paid by the Liquidating

7    Trustee in the full amount requested without need for further review or authorization.

8         The Bankruptcy Court will retain exclusive jurisdiction to resolve any fee disputes among the

9    Liquidating Trustee, the Post-Confirmation Oversight Committee and retained professionals.

10                    **(9)    Distributions from the Liquidating Trust**

11         Distributions to be made by the Liquidating Trustee on the Effective Date on account of any

12    Allowed Claim shall be made on the Effective Date or as promptly thereafter as practicable.

13    Distributions to be made by the Liquidating Trustee under the Plan or the Liquidating Trust

14    Agreement shall be made, after consultation with the Post-Confirmation Oversight Committee, by

15    check drawn on a domestic bank or by wire transfer.  Holders of Allowed Claims shall receive

16    distributions in their order of statutory priority as set forth above in Sections VI.A and VI.B.

17         Interim and final distributions to the Holders of Allowed Class 4 General Unsecured Claims

18    will be made by the Liquidating Trustee as follows:

19         (1) On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee

20    will distribute the sums then available after funding of the Reserve Account, to the Holders of

21    Allowed Class 4 General Unsecured Claims on a Pro Rata basis;

22         (2) If at any time after the Effective Date, the Liquidating Trustee is holding more

23    than $1,000,000 (one million) in Cash that is not necessary to fund the Reserve Account or at such

24    other times upon instruction of the Post-Confirmation Oversight Committee, the Liquidating Trustee

25    will distribute the Available Cash to the Holders of Allowed Class 4 General Unsecured Claims on a

26    Pro Rata basis; and

27         (3) Upon the resolution of all objections to Claims, litigation, and the liquidation of

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

41

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

all Liquidating Trust Assets, the Liquidating Trustee shall distribute the remaining cash from the Liquidating Trust Assets and the Reserve Account by making a final distribution to the Holders of Allowed Class 4 General Unsecured Claims subject to the provisions of Section VI.C.2.c.(9) below.

Except as otherwise agreed to by the Liquidating Trustee in writing, distributions to be made to Beneficiaries may be delivered by regular mail, postage prepaid, to the address shown in the Schedules Filed with the Bankruptcy Court, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated (a) in a proof of claim duly filed with the Court or (b) in a written notice of change of address (i) delivered by the Record Date to the Debtors or (ii) thereafter, at least thirty (30) days prior to any Distribution, to the Liquidating Trustee, to such address.  If no address is available either on a proof of claim, on the Schedules or in a written notice delivered in a timely manner to the appropriate party, the Distribution will be deemed to be undeliverable and subject to the provisions below relating to "Unclaimed Property".

(a)    Minimum Amount of Interim Distributions.

A Distribution made by the Liquidating Trustee to any individual Beneficiary shall not be less than $25.00, unless such distribution constitutes the final distribution to be made to such Beneficiary under this Plan.

(b)    Failure to Negotiate Checks Distributed by Liquidating Trustee.

Checks issued by the Liquidating Trustee to pay Allowed Claims shall be null and void if not negotiated (each, a "Void Check") within one hundred eighty (180) days after the date of issuance thereof (the "Claiming Period").  Requests for reissuance of any check by a Beneficiary to whom such check was originally issued must be received by the Liquidating Trustee prior to the expiration of the Claiming Period.  After the expiration of the Claiming Period, any unclaimed property held on account of such Void Check shall be re-distributed to the remaining Beneficiaries on a pro rata basis based on their relative statutory priority under the Bankruptcy Code. After the expiration of the Claiming Period, the unpaid balance of an Allowed Claim of a Beneficiary to whom the Void Check was sent shall be disallowed, and such Beneficiary shall be forever barred, estopped and enjoined from seeking payment from the Liquidating Trust on account of such Claim.

42

(c)    Unclaimed Property.

Without further Court order, and notwithstanding any <u>federal</u> or state escheat laws to the contrary, unclaimed funds held by the Liquidating Trust in an amount of $10,000 or less on the date that the Liquidating Trust is terminated may be redistributed to the remaining Beneficiaries on a <u>Pro Rata</u> basis based on their relative statutory priority under the Bankruptcy Code, donated to a charity selected by the Post-Confirmation Oversight Committee, or may be used for such other purpose consistent with this Plan and applicable law at the discretion and instruction of the Post-Confirmation Oversight Committee. If a Distribution is returned to the Liquidating Trustee as an undeliverable Distribution or is otherwise deemed to be an undeliverable Distribution, the Liquidating Trustee will not make any further Distribution to the Beneficiary, except as provided below.

If a Distribution to a Beneficiary is returned as undeliverable or a Beneficiary fails to provide the Liquidating Trustee its Federal Tax Identification Number or Social Security Number within forty–five (45) days after the date of the Liquidating Trustee's written request, no further Distributions shall be made to such Beneficiary unless and until the Liquidating Trustee is notified in writing of such Beneficiary's then current address or requested tax identification number. Unclaimed and undeliverable Distributions shall remain in the possession of the Liquidating Trust until such time as a Distribution becomes Distributable. All unclaimed and undeliverable Cash Distributions will be held in unsegregated, noninterest-bearing bank accounts for the benefit of the entities entitled to the Distributions (the "<u>Unclaimed Distributions Reserve</u>"). Any Beneficiary who does not claim in writing the undeliverable or uncashed Distribution within 180 days after the date such Distribution was to be made shall be deemed to have waived all of such Beneficiary's rights and claims with respect to the unpaid balance of its Allowed Claim and such Beneficiary shall be forever barred, estopped and enjoined from seeking payment from the Liquidating Trust on account of its Allowed Claim.  Such unclaimed or undeliverable Distribution shall be transferred from the Unclaimed Distributions Reserve to the applicable bank account for subsequent Distributions according to the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

43

1  Without further Court order, at such time that all pro rata Distributions have been made to

2  each and all Classes of creditors as required under the Plan, any unclaimed or undeliverable Cash

3  held by the Liquidating Trust in the Unclaimed Distributions Reserve shall be redistributed to all

4  Beneficiaries in accordance with the Plan other than those Beneficiaries whose last Distribution was

5  unclaimed or was undeliverable; however, if such unclaimed or undeliverable Cash is $10,000 or

6  less, in the discretion of the Liquidating Trustee, such may be donated to a charity selected by the

7  Liquidating Trustee and the Post-Confirmation Committee or may be used for such other purpose

8  consistent with the Plan and applicable law.

9  Nothing herein requires the Liquidating Trustee to attempt to locate any entity holding an

10  Allowed Claim whose Distribution is undeliverable.

11  (d)    Record Date.

12  The record date for purposes of the initial Distributions under the Plan and Liquidating Trust

13  Agreement shall be the date the Bankruptcy Court enters the Confirmation Order.   The Liquidating

14  Trustee will rely on the Schedules and/or register of proofs of claim filed in the Cases except to the

15  extent a notice of transfer of Claim or Interest or change of address of a Holder has been filed with

16  the Court prior to the Record Date pursuant to Bankruptcy Rule 3001.

17  (10)    Reserve Accounts

18  The Liquidating Trustee will create one or more Reserve Accounts and, prior to any

19  Distribution to Beneficiaries holding Allowed Class 4 Claims, shall establish a cash reserve in an

20  amount that is agreed by the Post-Confirmation Oversight Committee to be sufficient at any given

21  time for (1) all Disputed Claims; (2) expenses to administer the Liquidating Trust Assets, including

22  all fees, costs and expenses of the Liquidating Trust and the Post-Confirmation Oversight Committee

23  and post-confirmation professionals and employees; (3) unpaid Allowed Class 1 and Class 2 Claims,

24  such amounts consisting of and to the extent of the realized Net Proceeds of the Collateral; (4)

25  unpaid Allowed Priority Tax Claims and Allowed Unsecured Priority Claims; (5) the Unclaimed

26  Distribution Reserve (items (1) – (5) being collectively referred to as the "Reserve Account").  The

27  amount to be deposited in the Disputed Claim Reserve shall be that which is reasonably estimated by

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

44

the Liquidating Trustee, with the consent of the Post-Confirmation Oversight Committee, to be

payable to the Holder of a Disputed Claim on a <u>pro</u> <u>rata</u> basis if such claim ultimately became an

Allowed Claim.

The amount in the Disputed Claim Reserve, in the discretion of the Liquidating Trustee after

consultation with the Post-Confirmation Oversight Committee, may be adjusted from time to time as

Disputed Claims are resolved and distributions are made on account of any Disputed Claim that has

become an Allowed Claim in whole or in part.  The Disputed Claims Reserve shall be maintained at

appropriate funding levels in the reasonable discretion of the Liquidating Plan Trustee until the

resolution of all Disputed Claims.  No payments of Cash or distributions of other property or other

consideration of any kind shall be made on account of any Disputed Claim unless and until such

claim becomes an Allowed Claim or is deemed to be such for purposes of Distribution.  Upon the

allowance of a previously Disputed Claim, the initial Distribution to the Holder of the newly

Allowed Claim will be the next Distribution Date for the applicable Class following the date on

which the Disputed Claim becomes an Allowed Claim.

### (11)    No Action Against the Liquidating Trust Without Bankruptcy Court Approval

On and after the Effective Date, no action or proceeding may be commenced or continued by

any entity in any court or other tribunal, other than the Bankruptcy Court, against the Liquidating

Trust, the Liquidating Trustee, the Post-Confirmation Oversight Committee, or any of their directors,

officers, shareholders, employees, professionals, agents, members or representatives, without the

prior approval of the Bankruptcy Court in a final, non-appealable order.  On and after the Effective

Date, there shall be no act to collect or recover from, or offset against, or to create, perfect or enforce

any right, claim, interest or remedy by any entity, against the Liquidating Trust, the Liquidating

Trustee, the Post-Confirmation Oversight Committee, or any of their officers, employees,

professionals, agents, members or representatives, without the prior approval of the Bankruptcy

Court.  This provision does not require that a defendant in a proceeding filed by the Liquidating

Trust or Post-Confirmation Oversight Committee obtain the approval of the Bankruptcy Court to

assert any defense or setoff in such proceeding.

45

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(12)    Termination of the Liquidating Trust**

The Liquidating Trust shall be irrevocable and shall have a term of five years from and after the Effective Date, subject to extension as provided herein and the Liquidating Trust Agreement. The Liquidating Trust shall terminate when the Liquidating Trustee has performed all of his/her duties under the Plan and the Liquidating Trust Agreement, including the liquidation and distribution of all Liquidating Trust Assets.  However, if warranted by the facts and circumstances, upon a determination by the Post-Confirmation Oversight Committee that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidation purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term based on facts and circumstances.

**(13)    Reports by the Liquidating Debtors and the Liquidating Trustee**

The Liquidating Debtors will provide an accounting to the Liquidating Trustee of all cash on hand and in their attorneys' client trust account as of the date of the entry of the Confirmation Order.

Until the Court enters a final decree, the Liquidating Trustee shall file quarterly status reports with the Court to indicate: (a) the status of the liquidation of the Liquidating Trust Assets, (b) the total amount of Cash received and Distributions made from the Liquidating Trust, (c) the total amount held by the Liquidating Trust in the Reserve Account, (d) a list of all Holders of Unsecured Claims, (e) a list of all Disputed Claims, and (f) a list identifying the total Distributions made to date to each Holder of an Allowed Claim.

The Liquidating Trust shall serve the United States Trustee with any and all documents that it files with the Bankruptcy Court after the Confirmation Date.  In addition, the Liquidating Trust is responsible for the timely payment of US Trustee Fees incurred pursuant to 28 U.S.C. § 1930(a)(6). In connection with calculating such fees, the Liquidating Trust shall file with the Bankruptcy Court and serve on the US Trustee a quarterly Post Confirmation Status Report regarding all income and disbursements for each quarter (or portion thereof) the Cases remain open.  The Liquidating Trustee shall prepare and distribute any other reports or other information that may be required by the Bankruptcy Court, the Federal Rules and the Local Rules and/or that the Liquidating Trustee determines are necessary or appropriate.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:250513.8 77002-002

000131

### (14)    No Recourse against the Liquidating Trustee or Post-Confirmation Oversight Committee

No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee, the Post-Confirmation Oversight Committee, or any of their officers, employees, professionals, agents, members or representatives, whether by legal, equitable or other proceedings, by virtue of any law, statute, regulation or otherwise, or by virtue of any indebtedness of the Debtors, the Estates or the Liquidating Trust, it being expressly understood and agreed that all liabilities of the Liquidating Trust shall be enforceable only against, and be satisfied only out of, the Liquidating Trust Assets.

### (15)    Tax Treatment of the Liquidating Trust

For federal income tax purposes, the Liquidating Debtors, the Liquidating Trustee and the Beneficiaries shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d). For federal income tax purposes, the transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer to the Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the assets by the Beneficiaries to the Liquidating Trust. For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the assets held by the Liquidating Trust. Consequently, for federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust (a non-taxable pass-through tax entity) owned by the Beneficiaries. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on the Liquidating Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The Beneficiaries will report on their federal income tax returns and pay any federal income tax liability attributable to such Liquidating Trust's Tax Items. The Liquidating Debtors, the Liquidating Trustee and the Beneficiaries will use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes, such valuations to be determined jointly by the Liquidating Trustee and the Post-Confirmation Oversight Committee.

### 4.    Review of and Objections to Expenses, Claims and Interests

Except as otherwise set forth herein, on and after the Effective Date, the Liquidating Trustee and the Post-Confirmation Oversight Committee may review all Claims Filed or deemed Filed and

47

may object to or seek subordination of any Claim Filed or Scheduled in the Cases.  Claims objections must be filed no later than the first Business Day that is at least one calendar year after the Effective Date, subject to extension of such deadline upon petition filed with the Bankruptcy Court by any party in interest.

As provided by section 502(c) of the Bankruptcy Code, the Court may estimate any contingent or unliquidated Disputed Claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over all Claims Filed or asserted against the Debtors' Estates, the Liquidating Trust to resolve objections to Claims following the Confirmation Date.

Nothing contained in the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trust of any rights of setoff or recoupment or of any defense with respect to any Claim.

**5.    Effective Date Payments and Distributions to Be Made From the Liquidating Trust**

Distributions required to be made on the Effective Date shall be made by the Liquidating Trustee on the Effective Date or as soon thereafter as practicable, and shall be paid by check drawn on a domestic bank or by wire transfer, at the sole election of the Liquidating Trustee.  After the Effective Date, all distributions shall be made by the Liquidating Trustee.

**6.    Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtors, the Estates, the CRO, Trigild, the Committee, the Exit Lender, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, a "Released Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of this Plan, the related Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or Confirmation of this Plan, or the consummation and implementation of this Plan, the Liquidating Trust and the transactions contemplated therein.

**7.    Injunctions**

As of the Effective Date, the Confirmation Order shall enjoin the prosecution, whether

48

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is or may be discharged are permanently enjoined from taking any of the following actions against the Debtors or their Estates or their property on account of any such claims, debts or liabilities: (1) commencing or continuing, in any manner or in any place, any action or other proceeding; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (5) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

By accepting distributions pursuant to the Plan and the Liquidating Trust Agreement, each Holder of an Allowed Claim or Allowed Interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

**D.    Other Provisions of the Plan**

      **1.    Executory Contracts and Unexpired Leases**

            **a.    Assumptions**

On the Effective Date, the Liquidating Debtors will be deemed to have assumed any and all executory contracts or unexpired leases which may be in effect that were not previously rejected. The Confirmation Order, subject to the occurrence of the Effective Date, shall constitute an Order approving the Debtors' assumption of all such executory contracts and unexpired leases. The Debtors will File a schedule of proposed Cure Claims and/or a statement that the Debtors are not aware of any Cure Claims due under 11 U.S.C. § 365, not later than seven (7) days before the Confirmation Hearing Date and will serve the schedule on the non-Debtor counterparties to such executor contracts and unexpired leases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

49

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### b.    Rejections

The Debtors reserve the right to seek approval of its rejection of any executory contract or unexpired lease prior to the Confirmation Date.  Debtors will File a schedule of contracts and leases to be rejected under the Plan not later than seven (7) days before the Confirmation Hearing Date and will serve the schedule on non-Debtor counterparties to such contracts and leases.  **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE THIRTY (30) DAYS AFTER THE CONFIRMATION DATE**.  Any Claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed.

### 2.    Changes in Rates Subject to Regulatory Commission Approval

The Debtors are not subject to governmental regulatory commission approval of its rates.

### 3.    Retention of Jurisdiction/Consent to Jurisdiction by Holders and Parties in Interest

After the Confirmation Date and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible, and all Holders of Claims and Interests and parties in interest that have notice of this Plan shall be deemed to have consented to such jurisdiction, including for the following purposes:

a.    To resolve any and all disputes regarding the operation and interpretation of the Plan, the Confirmation Order, and/or the Liquidating Trust Agreement;

b.    To resolve any and all disputes arising out of or regarding the Exit Financing;

c.    To decide and enter orders and judgments with respect to all motions, claims or causes of action relating to the sale or other disposition of the Liquidating Trust Assets;

d.    To determine and enter orders and judgments with respect to any claims, causes of action held by the Liquidating Trust or settlement of claims or causes of action, notwithstanding that settlements of any Litigation Claims need not be approved by the Court;

e.    To determine and enter orders and judgments with respect to the allowance, classification, or priority of Claims and Interests upon objection by the Liquidating Trustee,

50

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Post-Confirmation Oversight Committee, or by other parties in interest with standing to bring such objection or proceeding;

f.    To determine and enter orders and judgments with respect to the extent, validity and priority of any Lien asserted against the Liquidating Trust Assets;

g.    To hear actions and enter orders and judgments to implement, consummate and enforce the Plan, the Confirmation Order, the Liquidating Trust Agreement, and to determine all matters that may be pending before the Court in the Cases on or before the Effective Date with respect to any person or entity related thereto;

h.    To determine and enter orders and judgments with respect to any request for payment of Administrative Claims;

i.    To hear and determine any motion for surcharge of Collateral by the Liquidating Trustee;

j.    To determine and enter orders and judgments with respect to all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted by the Debtors, the Liquidating Trustee, or the Post-Confirmation Oversight Committee during the pendency of these bankruptcy cases whether before, on, or after the Effective Date;

k.    To determine and enter orders and judgments with respect to such other matters and for such other purposes as may be provided in the Confirmation Order;

l.    To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

m.    Except as otherwise provided herein or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any Person of the Plan or the Confirmation Order;

51

n.      To consider and enter any order or judgment with respect to any action filed to remove and/or replace the Liquidating Trustee;

o.      To resolve disputes between the Liquidating Trustee and the Post-Confirmation Oversight Committee;

p.      To hear and resolve any action by a third party against the Liquidating Trustee and/or any member of the Post-Confirmation Oversight Committee in their representative capacities arising out of or relating to the Cases, the Plan and/or the Liquidating Trust; and

q.      To enter a final decree closing these Cases.

**4.      Transfer Taxes**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer, or the making or delivery of an instrument of transfer, of real property interests from or by the Debtors or Liquidating Debtors to the Liquidating Trust or Liquidating Trustee or any other person or entity pursuant to the Plan, including, without limitation, the Liquidating Trust Assets, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**VI.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.      Discharge**

Subject to the provision below, Confirmation shall bind the Debtors, all Holders of Claims, all Holders of Interests, and other parties in interest to the provisions of the Plan whether or not the Claim or Interest of any such Holder is impaired under the Plan and whether or not any such Holder has accepted the Plan.

Except as otherwise provided in the Plan or in the Confirmation Order, on the Effective Date,

52

to the extent applicable, the Debtors will be discharged from any debt that arose before confirmation of the Plan, and any debt of a kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code whether or not a proof of claim based on such debt was filed or deemed filed under section 501 of the Bankruptcy Code, such claim was allowed under section 502 of the Bankruptcy Code or the Holder of such Claim accepted the Plan.  Nothing contained herein shall limit the effect of Confirmation as described in sections 524 and/or 1141 of the Bankruptcy Code, and on the Effective Date, the Debtors shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code.

**B.       Vesting of Property in the Liquidating Trust**

All Assets shall be transferred to the Liquidating Trust and shall be the Liquidating Trust Assets.

**C.       Modification of Plan**

The Proponents may modify the Plan at any time before Confirmation.  However, the Court may require a new disclosure statement and/or re-voting on the Plan, unless the modification is non-material or relates only to the extension of the Effective Date, which modification shall not require a new disclosure statement and/or re-voting on the Plan.

The Proponents may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.       Post-Confirmation Status Report**

Within no more than 120 days of the entry of the Confirmation Order, the Liquidating Trustee shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the Post-Confirmation Oversight Committee and those parties who have requested special notice.  Further status reports shall be filed no more than every 120 days and served on the same parties.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

53

**E.      Post-Confirmation Conversion/Dismissal**

If for any reason the Court orders the Cases converted to chapter 7 cases after the Effective

Date, such conversion will have no impact or effect on the Liquidating Trust or the Liquidating Trust

Assets, including, but not limited to, the liens and security interests given the Exit Lender to secure

the Exit Financing, and the Liquidating Trustee and the Post-Confirmation Oversight Committee

shall continue to perform their duties as set forth in the Liquidating Trust Agreement.

The Confirmation Order may be revoked under very limited circumstances. The Court may

revoke the Confirmation Order if it was procured by fraud and if the party in interest brings an

adversary proceeding to revoke confirmation within 180 days after the entry of the Conformation

Order.

**F.      Post-Confirmation U.S. Trustee Fees**

All fees incurred after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6) shall be paid by

the Liquidating Trustee from the Liquidating Trust Assets.

**G.      Confirmation of the Plan Pursuant to Bankruptcy Code § 1129(b)**

The Proponents request Confirmation of this Plan under section 1129(b) of the Bankruptcy

Code with respect to any Impaired Class that does not accept this Plan pursuant to section 1126 of

the Bankruptcy Code.  The Proponents reserve the right to modify this Plan in order to satisfy the

requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**H.      Final Decree**

Once these Estates have been fully administered as referred to in Bankruptcy Rule 3022, the

Liquidating Debtors, the Liquidating Trustee or the Post-Confirmation Oversight Committee shall

have authority to File a motion with the Bankruptcy Court to obtain a final decree to close the Cases.

Dated: April 19, 2012                SCI REAL ESTATE INVESTMENTS, LLC
                                     SECURED CALIFORNIA INVESTMENTS, INC.


By: _____
        Bill Hoffman,
        Chief Restructuring Officer

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

54

Dated: April 19, 2012

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

    Wells Fargo Bank, NA
    Chair of the Official Committee of Unsecured
    Creditors through its authorized representative
    Gail E. Tubbs, Vice President

Presented By:

PACHULSKI STANG ZIEHL & JONES LLP

By: _/s/ Jeffrey W. Dulberg_
    JEFFREY N. POMERANTZ
    JEFFREY W. DULBERG
    Attorneys for Co-Proponents
    SCI Real Estate Investments, LLC
    Secured California Investments, Inc.
    Debtors in Possession

and

LEVENE NEALE BENDER YOO

By: _____
    DAVID L. NEALE
    DANIEL H. REISS
    Attorneys for Co-Proponent
    Official Committee of Unsecured Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

55

# <u>EXHIBIT A</u>

000141

## LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT (the "Agreement") is made this ___ day of _____, _____ by and among SCI Real Estate Investments, LLC and Secured California Investments, Inc. (the "Debtors") and William Hoffman, not in his individual capacity, but solely as the liquidating trustee hereunder (the "Trustee").

### R E C I T A L S:

A.      The Debtors filed voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 11, 2011 in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), jointly administered as Case No. 2:11-bk-15975 PC.

B.      An Official Committee of Unsecured Creditors (the "Committee") was formed by the Office of the United States Trustee in the Debtors' bankruptcy cases.

C.      Mr. William Hoffman of Trigild, Incorporated, was appointed as chief restructuring officer (the "CRO") of the Debtors by order of the Bankruptcy Court dated October 27, 2011.

D.      Pursuant to an order entered following a hearing on _____, 2012 (the "Plan Confirmation Order"), the Bankruptcy Court confirmed the Joint Chapter 11 Plan of Liquidation (the "Plan") proposed by the Debtors and the Committee.

E.      The Plan provides that, among other things, a liquidating trust (the "Liquidating Trust") be created for the benefit of the Holders of Allowed Claims.

F.      The Debtors and the Trustee desire to create and fund the Liquidating Trust on the Effective Date (as defined below), as provided for in the Plan, pursuant to this Agreement.

### A G R E E M E N T S:

NOW THEREFORE, for and in consideration of the premises, and the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Debtors and the Trustee, intending to be legally bound, hereby agree as follows:

I.      <u>Definitions:</u>

A.      <u>Terms Defined Above</u>. As used in this Agreement, each of the terms the "CRO", "Debtors," "Agreement," "Bankruptcy Code," "Bankruptcy Court," "Plan,", "Committee", "Plan Confirmation Order," and "Trustee" shall have the meanings set forth above.

B.      <u>Additional Defined Terms</u>. As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

1.      "Allowed Claim" shall have that meaning as ascribed in the Plan.

1

2.    "Beneficial Interest" shall mean a participating beneficial interest in the Liquidating Trust issued pursuant to the Plan and this Agreement to the Holder of an Allowed Claim or equity interest entitled to distribution from the Liquidating Trust under the Plan.

3.    "Beneficiaries" shall mean the owners of a Beneficial Interest.

4.    "Effective Date" shall mean the effective date of the Plan which will be the later of (1) the fifteenth (15th) calendar day after the entry of the Confirmation Order (unless such day is a Saturday, Sunday or a legal holiday, in which case the Effective Date shall be the next business day), assuming there has been no order staying the effectiveness of the Confirmation Order, and (2) if an appeal of the Confirmation Order has been filed before such date and there has been an order staying the effectiveness of the Confirmation Order entered before such date, on the date an order dismissing the appeal becomes final and non-appealable or a stay of the Confirmation Order terminates.

5.    "Estates" shall have that meaning as ascribed in the Plan.

6.    "Holder" shall have that meaning as ascribed in the Plan.

7.    "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

8.    "Liquidating Trust" shall mean the Liquidating Trust formed pursuant to the Plan and this Agreement.

9.    "Monetary Claim" shall have that meaning as ascribed in the Plan.

10.    "Trust Assets" means any and all Assets of each of the Debtors' Estates, including Cash, Causes of Action, and other personal and real property, all of which shall be transferred or assigned to the Liquidating Trust on the Effective Date of the Plan.

11.    "Registrar and Transfer Agent" shall mean the Trustee or any agent or designee appointed by the Trustee.

12.    "Trust Register" shall mean the books kept by the Registrar and Transfer Agent for the registration of Beneficial Interests and in which shall be recorded the names and addresses of the Holders and amounts of their Allowed Claims.

13.    "Trustee" shall have the meaning ascribed to that term above, and any duly appointed successors, not in his/her individual capacity, but solely as Trustee hereunder.

C.    <u>Terms Defined in Plan</u>.  Terms used in this Agreement without definition shall have the meanings assigned to them in the Plan.  The rules of construction applicable to the Plan shall also apply to this Agreement.  The Plan is hereby incorporated into this Agreement by this reference.

II.    <u>Declaration of Trust</u>.

2

A.  <u>Creation of Liquidating Trust</u>.  Pursuant to the Plan and the Confirmation Order, and as of the Effective Date, the Debtors and the Trustee hereby irrevocably create the Liquidating Trust for the benefit of the Beneficiaries.  The name of the Liquidating Trust shall be "SCI Bankruptcy Liquidating Trust."  The Liquidating Trust shall terminate only in accordance with the provisions of the Plan and this Agreement.

B.  <u>Property in the Liquidating Trust</u>.  The Liquidating Trust shall hold the legal title to the Trust Assets and shall hold such property in trust to be administered and disposed of by it pursuant to the terms of the Plan and this Agreement for the benefit of the Beneficiaries.  The Trustee is authorized to make disbursements and payments from the Liquidating Trust in accordance with the Plan and this Agreement.

C.  <u>Purpose of Liquidating Trust</u>.  The Liquidating Trust is organized for the purposes of (a) identifying, recovering, preserving, monitoring, liquidating and disposing of the Trust Assets in a manner that maximizes the value of the Trust Assets, which may take into consideration the net present value at a reasonable discount rate, (b) making payments to the Beneficiaries pursuant to the terms of the Plan and this Agreement, (c) administering, compromising, settling, withdrawing, objecting to, or litigating objections to disputed claims (the "Disputed Claims"), and (d) prosecuting Litigation Claims, with no objective to engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

D.  <u>Duties of the Trustee</u>.  The Trustee shall administer the Liquidating Trust pursuant to the Plan and this Agreement and shall perform all of the obligations of the Trustee under the Plan and this Agreement.  The Trustee shall be the authorized representative of the Liquidating Trust.  The Trustee shall serve without bond for the duration of the Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided herein and in the Plan.  The Trustee will also be required to do the following upon the receipt of written instruction from the Post-Confirmation Oversight Committee:  (1) commence or continue to prosecute litigation with respect to any claims or causes of action on behalf of the Liquidating Trust; (2) propose, accept or reject any settlement proposals with respect to any claims or causes of action that are Liquidating Trust Assets; (3) propose, accept or reject any settlement proposals with respect to any Claim asserted against the Debtors or the Liquidating Trust Assets whether arising prior to or after the Effective Date; (4) make Distributions in accordance with the terms of the Plan or this Agreement if such has not previously been timely made by the Trustee; (5) maintain adequate reserves in the Reserve Account; (6) when appropriate, exercise the rights and powers set forth in this Agreement; and (7) perform such other reasonable and necessary acts in order to carry out the terms of the Plan, the Liquidating Trust, and/or which are in the best interests of the Beneficiaries if such does not violate any provision of the Plan, this Agreement, or applicable law. If the Trustee disagrees with any instruction received by the Post-Confirmation Oversight Committee, then the Trustee may seek an order from the Bankruptcy Court that the instruction received was unreasonably given, and if such an order is obtained, authorizing the Trustee to take such other action as appropriate to maximize the value of the Liquidating Trust Assets.

E.  <u>Number of Trustees</u>.  There shall be one (1) Trustee.  The resignation, removal, incapacity or death of the Trustee shall not operate to terminate the Liquidating Trust.

3

     F.    <u>Tax Treatment</u>.  The Liquidating Trust is hereby established for the primary purpose of liquidating its assets, in accordance with Treasury Income Tax Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. For federal income tax purposes, the Debtors, the Estates, the Trustee, and the Beneficiaries shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d). For federal income tax purposes, the transfer of assets to the Liquidating Trust under the Plan is treated as a deemed transfer to the Beneficiaries in satisfaction of their Allowed Claims followed by a deemed transfer of the assets by the Beneficiaries to the Liquidating Trust. For federal income tax purposes, the Beneficiaries will be deemed to be the grantors and owners of the assets held by the Trustee. Consequently, for federal income tax purposes, the Liquidating Trust will be taxed as a grantor trust (a non-taxable pass-through tax entity) owned by the Beneficiaries. The Liquidating Trust will file federal income tax returns as a grantor trust under IRC Section 671 and Treasury Income Tax Regulation Section 1.671-4 and report, but not pay tax on the Liquidating Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The Beneficiaries will report on their federal income tax returns and pay any federal income tax liability attributable to such Liquidating Trustee's Tax Items. The Debtors, the Estates, the Trustee, and the Beneficiaries will use consistent valuations of the assets transferred to the Trustee for all federal income tax purposes, such valuations to be determined jointly by the Debtors and the Trustee. The federal tax treatment described herein will be the same for California and for other states following federal rules. The federal income tax treatment describe in this Section II.E shall not apply to any portion of the Trust Assets that are subject to a Disputed Ownership Fund election described Section V.A. Pursuant to section 1146(a) of the Bankruptcy Code, any transfer, or the making or delivery of an instrument of transfer, of real property interests from or by the Debtors or Liquidating Debtors to the Liquidating Trust or Trustee or any other person or entity pursuant to the Plan, including, without limitation, the Trust Assets, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Plan Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

III.    <u>Beneficial Interests</u>.

     A.    <u>Non-Certificated and Non-Transferable</u>.  Beneficial Interests will not be evidenced by any certificate or other instrument or document. Beneficial Interests in the Liquidating Trust are non-transferable and non-assignable other than to successors in interest, or by will, the laws of descent and distribution, or by operation of law. Beneficial Interests shall be divided into classes corresponding to the classes in the Plan which provide for the distributions of cash from the Liquidating Trust to the Beneficiaries. Pursuant to the Plan, upon the Effective Date of the Plan, each entity which is the Holder of an Allowed Claim shall automatically become the owner of a Beneficial Interest corresponding to the class of Allowed Claim held by such entity.

000145

B. **Absolute Owners.** The Liquidating Trust and the Trustee may deem and treat each Beneficiary as the absolute owner of the underlying Beneficial Interest for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

C. **No Required Meetings or Solicitation of Votes.** Except as otherwise provided herein and in the Plan, the Trustee is not required to call or conduct any meeting of all or any of the Beneficiaries. Further, except with respect to the Trustee's obligation to follow instructions of, or seek the consent of, the Post-Confirmation Oversight Committee, the Trustee is not required to solicit, obtain the vote or consent of, or give any notice to, any of the Beneficiaries with respect to any action authorized or permitted under the Plan, this Agreement or any order of the Bankruptcy Court. The Trustee may, however, discuss any proposed action with any one or more of the Beneficiaries as the Trustee, in his/her sole and absolute discretion, deems appropriate.

D. **Trustee as Beneficiary.** The Trustee may not be a Beneficiary.

IV. **Delivery and Acceptance of Trust Assets.**

A. **Conveyance by Debtors.** Upon the Effective Date, the Debtors and the Estates shall be deemed to have transferred and assigned all of the Trust Assets to the Liquidating Trust. All Trust Assets will vest with the Liquidating Trustee free and clear of all claims and liens, subject only to the Allowed Claims of the applicable beneficiaries, as set forth in the Plan. At any time and from time to time after the date hereof at the Trustee's request and without further consideration, the Debtors shall execute and deliver such instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Trustee may deem reasonably necessary or desirable in order to more effectively transfer, convey and assign all rights, title and interests in and to the Trust Assets to the Liquidating Trust and all privileges to the Liquidating Trust or the Trustee on behalf of the Liquidating Trust. The CRO is authorized to act on behalf of the Debtors with respect to all obligations of the Debtors in this Agreement.

B. **Acceptance of Conveyance.** The Trustee is hereby directed to, and the Trustee agrees that he/she will:

1. accept delivery of the Trust Assets on behalf of the Liquidating Trust;

2. accept from the Debtors all bills of sale, deeds, assumptions and assignments, and all other instruments of conveyance required to be delivered by the Debtors with respect to the Trust Assets transferred to the Liquidating Trust or the Trustee on behalf of the Liquidating Trust pursuant to or in connection with the Plan, the Plan Confirmation Order or this Agreement; and

3. take such other action as may be required of the Liquidating Trust hereunder, including the receipt and acceptance as part of the Trust Assets of any property, instruments and choses in action, which the Trustee may receive in connection with or in consideration for the Liquidating Trust.

5

000146

C.    No Interest Retained by Debtors.  The Debtors and the Estates shall retain no interest in the Trust Assets or the Liquidating Trust.

V.    Administration of Trust Estate.

A.    Reserves.  As set forth more fully below in Section VI.D., as soon as funds become available in the Liquidating Trust, the Trustee shall establish and maintain sufficient cash reserves for (1) all Disputed Claims (the "Disputed Claim Reserve"); (2) expenses to administer the Trust Assets, including all fees, costs, and expenses of the Liquidating Trust and the Post-Confirmation Oversight Committee and post-confirmation professionals and employees; (3) unpaid secured Class 1 and Class 2 Allowed Secured Claims; (4) unpaid Allowed Priority Claims under 11 U.S.C. §§ 507(a)(2) – (8); and (5) the Unclaimed Distribution Reserve (items (1) – (5) being collectively referred to as the "Reserve Account").  The Trustee may, at the Trustee's sole discretion, file a tax election to treat the Disputed Claims Reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than tax such reserve as a part of the grantor liquidating trust.  If the election is made, the Trustee shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal income tax return for the DOF and the payment of federal and/or state income tax due.

B.    Powers of the Trustee.

1.    Administrative Powers.  During the Trustee's administration of the Liquidating Trust, and subject to the Plan, the Plan Confirmation Order and this Agreement, the Liquidating Trust and the Trustee may exercise the power:

i.    to administer the Liquidating Trust pursuant to the Plan and this Agreement;

ii.    to receive, hold, ultimately liquidate, and eventually distribute the Trust Assets for the benefit of the Beneficiaries and to have exclusive possession and control thereof for the purposes set forth in Section II.C. hereof;

iii.    to serve without bond as the authorized representative of the Liquidating Trust and disbursing agent for purposes of making all distributions provided for under the Plan and this Agreement for the duration of the Liquidating Trust, subject to earlier death, resignation, incapacity, or removal as provided in the Plan and this Agreement;

iv.    to perform all of the obligations and such other reasonable and necessary acts in order to carry out the terms of the Plan and this Agreement and/or which are in the best interests of the Beneficiaries if such does not violate any provision of the Plan, this Agreement, or applicable law;

v.    to enter into, perform and exercise rights under contracts binding upon the Liquidating Trust (but not upon the Trustee in his/her individual or corporate

6

capacities) which are reasonably incident to the administration of the Liquidating Trust and which the Trustee, in the exercise of his/her judgment, believes to be in the best interests of the Liquidating Trust;

        vi.    to establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which the reserves or other cash and property of the Liquidating Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Trust Assets as permitted or required under the Plan or this Agreement;

        vii.    to employ and compensate attorneys, accountants, appraisers, property managers, disbursing agents, brokers, realtors, expert witnesses, insurance adjusters, or any successor or other persons whose services may be necessary or advisable in the judgment of the Trustee in accordance with the terms of the Plan, and to pay from the Trust Assets reasonable compensation to such attorneys, accountants, appraisers, property managers, disbursing agents, brokers, realtors, expert witnesses, insurance adjusters or any successor, or other persons (including, when necessary or appropriate, contingent fee or commission based arrangements) in accordance with the terms of the Plan;

        viii.    to hold, monitor, administer, preserve, market, and lease (for the purposes of holding for sale) the Trust Assets;

        ix.    with and subject to the approval of the Post-Confirmation Oversight Committee, the Trustee shall have the authority to monetize, sell, liquidate or otherwise dispose of all Liquidating Trust Assets without need to obtain approval from the Bankruptcy Court or the United States Trustee.  The Trustee shall collect all monies owed to the Liquidating Trust whether based on a contract or any other basis.  If the Trustee wishes to settle any Monetary Claim for less than the full face amount of the Monetary Claim or monetize any other Trust Asset, such transaction(s) shall be subject to majority approval by the Post-Confirmation Oversight Committee.  Unanimous approval of the Post-Confirmation Oversight Committee is required as a condition to the Trustee entering into any transaction or settlement that represents a discount of more than $100,000 or 20% (whichever is less) of the face amount of the Monetary Claim. However, if the Post-Confirmation Oversight Committee does not give its consent, the Trustee may seek a ruling from the Bankruptcy Court that the Post-Confirmation Oversight Committee's consent was unreasonably withheld, and if so, seek Bankruptcy Court approval of the proposed settlement.  Any funds held or received by the Trustee shall be maintained in one or more segregated bank accounts maintained to hold funds to be distributed under the Plan.  If the Post-Confirmation Oversight Committee instructs the Trustee to file a Litigation Claim, including any action under Chapter 5 of the Bankruptcy Code, and the Trustee elects not to do so, the Post-Confirmation Oversight Committee shall have standing to file any such Litigation Claim in the appropriate forum;

        x.    to seek relief from the Bankruptcy Court to resolve disputes between the Liquidating Trustee and the Post-Confirmation Oversight Committee;

        xi.    with the consent or upon instruction of the Post-Confirmation Oversight Committee, may abandon to the Debtors or disclaim any interest in a Trust Asset if it

7

is determined that the Trust Asset is burdensome to the Liquidating Trust or that it is of inconsequential value or benefit to the Liquidating Trust.  Such abandonment shall be accomplished by filing a "Notice of Abandonment" with the Bankruptcy Court, which shall be served by regular mail upon the Post-Confirmation Oversight Committee, the Debtors, all Beneficiaries at their address of record, and any other entity of which the Trustee is aware that may claim a lien or other interest in the Trust Asset being abandoned (the "Abandoned Asset"). In so doing, the Abandoned Asset shall be deemed transferred to the Debtors subject to all liabilities, liens, interests and encumbrances that existed with respect to the Abandoned Asset as of the Effective Date.

xii.    to collect and receive any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Trust Assets and to distribute the same to the Beneficiaries in accordance with the terms of the Plan and this Agreement;

xiii.    to pay any and all necessary expenses attributable or related to the management, maintenance, administration, preservation or liquidation of the Trust Assets;

xiv.    to investigate, file, compromise, settle, withdraw or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) or in any other appropriate court or tribunal, Litigation Claims, Monetary Claims, objections to disputed administrative expenses and Disputed Claims, and any and all other claims or causes of action of the Liquidating Trust, and to exercise any and all rights and perform any and all obligations of the Liquidating Trust, under the Plan, this Agreement or otherwise;

xv.    to take all actions reasonable and necessary to preserve, monetize, and dispose of all Trust Assets, and otherwise fulfill the Trustee's obligations under the Plan and this Agreement without need to obtain approval from the Bankruptcy Court or the United States Trustee, subject to majority approval by the Post-Confirmation Oversight Committee (except where unanimous approval is specified elsewhere herein);

xvi.    to sue or be sued in connection with any matter arising from or related to the Plan or this Agreement that affects in any way the rights or obligations of the Liquidating Trust, the Trustee or the Beneficiaries;

xvii.    to represent the interests of the Beneficiaries with respect to any matters relating to the Plan, this Agreement or the Liquidating Trust affecting the rights of the Beneficiaries solely in their capacity as Beneficiaries;

xviii.    to prosecute, exercise, enforce, or settle all Litigation Claims and the rights, claims, powers, objections and actions of the Debtors and their Estates under sections 363, 365 and 501 to 558, inclusive, of the Bankruptcy Code whether or not such litigation was commenced by the Debtors prior to the Effective Date of the Plan;

xix.    to act as representative of the Estates under section 1123(b) of the Bankruptcy Code or otherwise, as allowed by the Plan.  All claims and causes of action held by the Debtors or Liquidating Debtors and their bankruptcy estates as of the Effective Date shall be, as a matter of law, transferred free and clear of liens and interests to the Liquidating Trust as part of the Trust Assets (the "Litigation Claims").  to act as representative of the Estates under section

000149

1123(b) of the Bankruptcy Code or otherwise, as allowed by the Plan.  All claims and causes of action held by the Debtors or Liquidating Debtors and their bankruptcy estates as of the Effective Date shall be, as a matter of law, transferred free and clear of liens and interests to the Liquidating Trust as part of the Trust Assets (the "Litigation Claims").  The Trustee shall have standing and authority to initiate, prosecute, compromise or otherwise resolve any and all Litigation Claims either in consultation with or at the instruction of the Post-Confirmation Oversight Committee. The Bankruptcy Court shall have non-exclusive jurisdiction to hear and determine any litigation commenced with respect to the Litigation Claims. The Trustee shall have the duty to investigate all Litigation Claims and determine which, if any, should be prosecuted for the benefit of the Liquidating Trust.  Except as otherwise set forth herein and subject to the approval of the Post-Confirmation Oversight Committee, all Litigation Claims are preserved by the Plan, and the Trustee shall have the authority to settle, adjust, retain, enforce or abandon any Litigation Claim as the representative of the Debtors' Estates under Section 1123(b)(3)(B) of the Bankruptcy Code without supervision of, or need for approval by, the Bankruptcy Court.  The Trustee shall provide a written description of any proposed settlement, compromise or dismissal of any Litigation Claim (i.e., any right or cause of action) to the Post-Confirmation Oversight Committee for approval;

xx.    to do any and all other things, not in violation of any other terms of the Plan or this Agreement, which, in the judgment of the Trustee, are necessary or appropriate to carry out the terms or purposes of the Plan, this Agreement, the Liquidating Trust or for the proper liquidation, management, investment and distribution of the Trust Assets in accordance with the provisions of the Plan and this Agreement;

xxi.    after the Debtor's Estates have been fully administered as referred to in Bankruptcy rule 3022, the right to file a motion with the Court to obtain a final decree to close the case;

xxii.    in the event of the occurrence, anticipated or likely occurrence, or threat of (i) any default or earlier resolution of a mortgage loan secured by the Properties, (ii) foreclosure or threat of foreclosure on any of the Properties, or (iii) any other event or circumstance which, in the Trustee's business judgment, jeopardizes the Trustee's ability to maximize the recovery of the Liquidating Trust's direct and indirect ownership interests in the Properties or any interest therein (the "Trust's Interests") or to recover and maximize the value of the Trust Assets, including the Dispo Fees and/or other fees or interests, consideration or benefit to which the Liquidating Trust is entitled in connection with the Properties or otherwise, the Trustee shall have the right to negotiate with the TIC Co-Owners and attempt to amicably settle the dispute and avoid or resolve the threat of not maximizing the recovery of the Trust Assets, including by loss or threat of loss of all or any part of the value of the Trust's Interests or any other Trust Assets, because of a failure to obtain the unanimous consent (or consent of such lesser number as may be required) of the TIC Co-Owners to terms acceptable to all parties and the Trustee, subject to the consent by a majority of the Oversight Committee; and

xxiii.    is authorized to act as management of the Reorganized Debtors and Liquidating Debtors and can execute such documents and enter into such transactions as necessary for purposes of consummating the Plan and complying with this Agreement, subject to

9

the majority consent of the Oversight Committee (except where unanimous consent is specifically required herein).

2. Retention of Attorneys and Other Professionals. It is anticipated that Thompson & Knight LLP and Pachulski Stang Ziehl & Jones LLP (and other such counsel as the Trustee shall employ with Court approval or with the majority consent of the members of the Post-Confirmation Oversight Committee) shall serve as counsel for the Trustee and Levene, Neale, Bender, Yoo & Brill, L.L.P. shall serve as counsel for the Post-Confirmation Oversight Committee commencing on the Effective Date. Professionals employed by the Trustee and the Post-Confirmation Oversight Committee shall be compensated by the Liquidating Trust based on their customary rates and terms on a monthly basis without need for Court approval of fees and expenses. Professionals employed by the Trustee and the Post-Confirmation Oversight Committee shall submit monthly bills to both the Trustee and the Post-Confirmation Oversight Committee in the ordinary course of the professionals' billing practices. The Trustee and the Post-Confirmation Oversight Committee shall have ten calendar days to object to the payment of the fees and expenses provided in such billings (the "Fee Objection Date"). If no written objection is received by the respective professional(s) by the Fee Objection Date, then such fees shall be paid by the Trustee in the full amount requested without need for further review or authorization. The Bankruptcy Court will retain exclusive jurisdiction to resolve any fee disputes among the Trustee, the Post-Confirmation Oversight Committee and retained professionals. Any actual or potential conflict of interest which might otherwise preclude such employment is waived and the Debtors and Trustee acknowledge that they have received full disclosure of such conflict, and hereby consent to such continued employment

1. Members of the Post-Confirmation Oversight Committee shall receive reimbursement of actual costs and expenses (but not reimbursement for individual counsel or advisor fees) in connection with their duties as members of the Post-Confirmation Oversight Committee. Any member of the Post-Confirmation Oversight Committee may opt-out of participation in the Post-Confirmation Oversight Committee by providing written notice to the other members of the Post-Confirmation Oversight Committee and counsel for the Trustee. A member of the Post-Confirmation Oversight Committee who has chosen to opt-out may be replaced pursuant to the procedures adopted in the by-laws of the Post Confirmation Oversight Committee.

2. Objections to Disputed Administrative Expenses and Disputed Claims. Except as otherwise provided in the Plan, from and after the Effective Date of the Plan, the Liquidating Trust, through the Trustee, shall be the sole representative of the Liquidating Trust for the purposes of investigating, settling, compromising, objecting to, and litigating in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Disputed Administrative Claims, and the prosecution of the Litigation Claims, Monetary Claims, and any and all other claims and causes of action of the Liquidating Trust (whether that involves commencing such prosecution or continuing with the prosecution previously commenced by the Debtors).

C. Limitations on Trustee; Investments.

10

1. <u>No Trade or Business for Liquidating Trust</u>. The Trustee shall carry out the purposes of the Plan, this Agreement and the Liquidating Trust and the directions contained herein and shall not at any time cause the Liquidating Trust to enter into or engage in any business (except as may be consistent with the limited purposes of the Liquidating Trust), including the purchase of any asset or property (other than such assets or property as are necessary to carry out the purposes of the Plan, this Agreement or the Liquidating Trust, on behalf of the Liquidating Trust or the Beneficiaries). The Trustee is directed to take all actions necessary or appropriate to dispose of the Trust Assets in as prompt, efficient and orderly a fashion as possible, to maintain sufficient Reserves in the Reserve Account, to make timely distributions of cash out of the Liquidating Trust, and to otherwise not unduly prolong the duration of the Liquidating Trust.

2. <u>Investments</u>. The investment powers of the Trustee, other than those reasonably necessary to maintain the value of the assets and to further the Liquidating Trust's purposes, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills and any other investments authorized under Section 345 of the Bankruptcy Code ("Permitted Investments"). The Trustee shall be restricted to the collection and holding of such funds and to the payment and distribution thereof for the purposes set forth in the Plan and this Agreement and to the conservation and protection of the Trust Assets in accordance with the provisions of the Plan and this Agreement.

D. <u>Transferee Liabilities</u>. If any liability shall be asserted against the Liquidating Trust as transferee of the Trust Assets or any other property or assets on account of any claimed liability of or through the Debtors, the Trustee may use such part of the Trust Assets as may be necessary in contesting any such claimed liability and in payment, compromise, settlement and discharge thereof on terms satisfactory to the Trustee. In no event shall the Trustee be required or obligated to use his/her own property, funds or assets for any such purposes.

E. <u>Administration of Trust</u>. In administering the Liquidating Trust, the Trustee, subject to the express limitations contained in the Plan and this Agreement, is authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as he/she may deem necessary or appropriate to carry out the purposes of the Plan, this Agreement and the Liquidating Trust. The Trustee shall not commingle any of the Trust Assets with the property of the Trustee or any other entity.

F. <u>Payment of Expenses and Other Liabilities</u>. The Trustee shall pay from the Trust Assets all expenses, charges, liabilities and obligations of the Liquidating Trust, including such debts, liabilities, or obligations as may be payable from the Trust Assets, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses in connection with or arising out of the execution or administration of the Liquidating Trust and the Trust Assets, and such other payments and disbursements as are provided for in the Plan or this Agreement or which may be necessary or appropriate charges against the Liquidating Trust and the Trust Assets, and the Trustee, in his/her judgment, may, from time to time, make provision by reserve or otherwise, out of the Trust Assets, for such amount or amounts as the Trustee in his/her judgment may determine to be necessary or appropriate to meet or satisfy unascertained, unliquidated or contingent liabilities of the Liquidating Trust or the Trustee.

11

G.    Tax Requirements.    The Liquidating Trust shall comply with all payment, withholding and reporting requirements imposed by any federal, state or local laws.    All distributions of cash by the Liquidating Trust shall be subject to all such payment, withholding and reporting requirements.    The Liquidating Trust shall report and pay any taxes that may be imposed on the Liquidating Trust, the reserve for Disputed Claims, the reserve for unclaimed distributions and the Liquidating Trust's expense reserve by any federal, state or local laws.    As a condition to the receipt of any distributions under the Plan, the Beneficiaries may be required to provide the Liquidating Trust with information or documents required under applicable law for tax or other purposes.    Any Holder to whom a notice is mailed requesting such information or documents but who fails to deliver such information or documents to the Liquidating Trust within three months after the notice is mailed shall be forever barred from thereafter receiving any distributions from the Liquidating Trust and the amounts to which such holder is no longer entitled shall be reallocated to make other distributions required by the Plan.

H.    Liabilities of the Liquidating Trust.    The Liquidating Trust shall have no liabilities whatsoever except (a) in accordance with the Plan and this Agreement and (b) the obligation to pay and reimburse the Trustee and the officers, employees, professionals, agents and representatives of the Liquidating Trust in accordance with the Plan and this Agreement.    Without limiting the foregoing, the Liquidating Trust shall have no liability for any expenses of or claims against the Debtors, their Estates or any other entities except, with respect to the Liquidating Trust, for allowed administrative expenses and allowed general unsecured claims in accordance with the Plan and this Agreement.

I.    Rights of the Liquidating Trust.    The Liquidating Trust shall have all of the rights, claims, powers, objections, counterclaims, defenses, setoffs and actions of the Debtors and their Estates under the Bankruptcy Code.    After the Effective Date, all claims, rights and causes of action of the Debtors and their Estates shall be filed and prosecuted in the name of the Liquidating Trust.    The entry of a final decree in or order closing the Debtors' bankruptcy cases shall not eliminate any claim, right or cause of action, or any counterclaim, defense or objection that existed prior to such final decree or order closing the bankruptcy cases.

J.    Appointment of Post-Confirmation Oversight Committee.    On the Effective Date, the Committee will be deemed dissolved and its members will be released and discharged from all further duties and obligations arising from or related to these bankruptcy cases.    On the Effective Date, a post-confirmation oversight committee of creditors (the "Post-Confirmation Oversight Committee") shall be appointed which shall consist of the members of the Creditors' Committee as of the date of entry of the Confirmation Order.    The Post-Confirmation Oversight Committee shall serve without bond.    Except as expressly provided herein and in the Plan, decisions of the Post-Confirmation Oversight Committee shall be made by majority vote of its members.    Members of the Post-Confirmation Oversight Committee shall receive reimbursement of actual costs and expenses (but not reimbursement for individual counsel or advisor fees) in connection with their duties as members of the Post-Confirmation Oversight Committee.    Any member of the Post-Confirmation Oversight Committee may opt-out of participation in the Post-Confirmation Oversight Committee by providing written notice to the other members of the Post-Confirmation Oversight Committee and counsel for the Debtors.    A member of the Post-Confirmation Oversight

12

Committee who has chosen to opt-out may be replaced pursuant to the procedures adopted in the by-laws of the Post Confirmation Oversight Committee.

K.      Appointment/Compensation/Duties of Liquidating Trustee. The Trustee shall be William Hoffman of Trigild, Incorporated. The Trustee shall be compensated at his/her customary hourly rate. The Trustee shall administer the Liquidating Trust pursuant to the Plan and this Agreement and shall perform all of the obligations of the Trustee under the Plan and the this Agreement. The Trustee shall be the authorized representative of the Liquidating Trust. The Trustee shall serve without bond for the duration of the Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided herein and in this Agreement. The Trustee will also be required to do the following upon the receipt of written instruction from the Post-Confirmation Oversight Committee: (1) commence or continue to prosecute litigation with respect to any claims or causes of action on behalf of the Liquidating Trust; (2) propose, accept or reject any settlement proposals with respect to any claims or causes of action; (3) propose, accept or reject any settlement proposals with respect to any claim asserted against the Trust Assets whether arising prior to or after the Effective Date; (4) make disbursements in accordance with the terms of the Plan or the this Agreement if such has not been timely made by the Trustee; (5) maintain adequate reserves in the Reserve Account; and (6) perform such other reasonable and necessary acts in order to carry out the terms of the Plan, the Liquidating Trust, and/or which are in the best interests of the Beneficiaries if such does not violate any provision of the Plan, the Liquidating Trust, or applicable law. If the Trustee disagrees with any instruction received by the Post-Confirmation Oversight Committee, then the Trustee may seek an order from the Bankruptcy Court that the instruction received was unreasonably given, and if such an order is obtained, authorizing the Trustee to take such other action as appropriate to maximize the value of the Liquidating Trust Assets.

VI.      Source of Payments; Distributions

A.      Payments from the Liquidating Trust. All payments to be made to the Beneficiaries under the Plan and this Agreement shall be made only from the Trust Assets and only to the extent that the Trust Assets are sufficient assets to make such payments in accordance with the Plan and this Agreement. Each Beneficiary shall look solely to the Trust Assets, and not to the Trustee or the officers, employees, professionals, agents or representatives of the Liquidating Trust in their personal, individual or corporate capacities, or to the Debtors, for distribution to such Beneficiary as provided in the Plan and this Agreement.

B.      Distributions Pursuant to Plan and Agreement. Pursuant to the authority granted herein and in the Plan, and subject to maintaining adequate reserves in the Reserve Account, the Trustee shall distribute funds from liquidating the Trust Assets in accordance with the Plan and this Agreement.

1.      Timing of Distributions Generally. The Trustee shall make distributions on all Allowed Claims pursuant to the terms of the Plan and this Agreement.

2.      Distributions to be Made. Distributions to be made by the Trustee on the Effective Date on account of any Allowed Claim shall be made on the Effective Date or as promptly thereafter as practicable. Distributions to be made by the Trustee under the Plan or this

13

Agreement shall be made, after consultation with the Post-Confirmation Oversight Committee, by check drawn on a domestic bank or by wire transfer.  Holders of Allowed Claims shall receive distributions in their order of statutory priority as set forth in Sections _____ and _____ of the Plan.

       3.      Distributions to Beneficiaries who are Class 1 or Class 2 Creditors.  Beneficiaries who are Holders of Class 1 or Class 2 Allowed Secured Claims shall receive Distributions from the Net Proceeds generated from the disposition of the Collateral securing allowed Class 1 and 2 Claims as soon as practicable, subject to any Reserve Account for Disputed Claims relating to such Creditor Classes.

       4.      Interim and final distributions to Beneficiaries who are Class 4 General Unsecured Creditors. Interim and final distributions to Beneficiaries who are Holders of Allowed Class 4 General Unsecured Claims will be made by the Trustee as follows:

       i.      On the Effective Date, or as soon as practicable thereafter, the Trustee will distribute the sums then available, if any, after funding of the Reserve Account, to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis;

       ii.      If at any time after the Effective Date, the Trustee is holding more than $1,000,000 (one million) in Cash that is not necessary to fund the Reserve Account or at such other times upon instruction of the Post-Confirmation Oversight Committee, the Trustee will distribute the Available Cash to the Holders of Allowed Class 4 General Unsecured Claims on a pro rata basis; and

       iii.      Upon the resolution of all objections to Claims, litigation, and the liquidation of all Liquidating Trust Assets, the Trustee shall distribute the remaining cash from the Liquidating Trust Assets and the Reserve Accounts established under Section VI.D., below, by making a final distribution to the Holders of Allowed Class 4 General Unsecured Claims.

       iv.      Except as otherwise agreed to by the Trustee in writing, distributions to be made to Beneficiaries may be delivered by regular mail, postage prepaid, to the address shown in the Debtors' Bankruptcy Schedules filed with the Bankruptcy Court, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated (a) in a proof of claim duly filed with the Court or (b) in a written notice of change of address (i) delivered by the Record Date to the Debtors or (ii) thereafter, at least thirty (30) days prior to any Distribution, to the Trustee, to such address.  If no address is available either on a proof of claim, on the Schedules or in a written notice delivered in a timely manner to the appropriate party, the Distribution will be deemed to be undeliverable and subject to the provisions below relating to "Unclaimed Property".

       v.      A Distribution made by the Trustee to any individual Beneficiary shall not be less than $25.00, unless such distribution constitutes the final distribution to be made to such Beneficiary under the Plan.

14

5.      Failure to Negotiate Checks Distributed by Liquidating Trustee.  Checks issued by the Trustee to pay Allowed Claims shall be null and void if not negotiated (each, a "Void Check") within one hundred eighty (180) days after the date of issuance thereof (the "Claiming Period").  Requests for reissuance of any check by a Beneficiary to whom such check was originally issued must be received by the Trustee prior to the expiration of the Claiming Period. After the expiration of the Claiming Period, any unclaimed property held on account of such Void Check shall be re-distributed to the remaining Beneficiaries on a pro rata basis based on their relative statutory priority under the Bankruptcy Code. After the expiration of the Claiming Period, the unpaid balance of an Allowed Claim of a Beneficiary to whom the Void Check was sent shall be disallowed, and such Beneficiary shall be forever barred, estopped and enjoined from seeking payment from the Liquidating Trust on account of such Claim.

6.      Unclaimed Property.  If a Distribution is returned to the Trustee as an undeliverable Distribution or is otherwise deemed to be an undeliverable Distribution, the Trustee will not make any further Distribution to the Beneficiary, except as provided below.  If a Distribution to a Beneficiary is returned as undeliverable or a Beneficiary fails to provide the Trustee its Federal Tax Identification Number or Social Security Number within forty–five (45) days after the date of the Trustee's written request, no further Distributions shall be made to such Beneficiary unless and until the Trustee is notified in writing of such Beneficiary's then current address or requested tax identification number. Unclaimed and undeliverable Distributions shall remain in the possession of the Liquidating Trust until such time as a Distribution becomes Distributable. All unclaimed and undeliverable cash Distributions will be held in unsegregated, noninterest-bearing bank accounts for the benefit of the entities entitled to the Distributions (the "Unclaimed Distributions Reserve"). Any Beneficiary who does not claim in writing the undeliverable or uncashed Distribution within 180 days after the date such Distribution was to be made shall be deemed to have waived all of such Beneficiary's rights and claims with respect to the unpaid balance of its Allowed Claim and such Beneficiary shall be forever barred, estopped and enjoined from seeking payment from the Liquidating Trust on account of its Allowed Claim. Such unclaimed or undeliverable Distribution shall be transferred from the Unclaimed Distributions Reserve to the applicable bank account for subsequent Distributions according to the Plan.  Without further Court order, and notwithstanding any federal or state escheat laws to the contrary, unclaimed funds held by the Liquidating Trust in an amount of $10,000 or less on the date that the Liquidating Trust is terminated may be redistributed to the remaining Beneficiaries on a pro rata basis based on their relative statutory priority under the Bankruptcy Code, donated to a charity selected by the Post-Confirmation Oversight Committee, or may be used for such other purpose consistent with the Plan and applicable law at the discretion and instruction of the Post-Confirmation Oversight Committee. Nothing herein requires the Trustee to attempt to locate any entity holding an Allowed Claim whose Distribution is undeliverable.

7.      Record Date.  The record date for purposes of the initial Distributions under the Plan and this Agreement shall be the date the Bankruptcy Court enters the Confirmation Order.  The Trustee will rely on the Schedules and/or register of proofs of claim filed in the Cases except to the extent a notice of transfer of Claim or Interest or change of address of a Holder has been filed with the Court prior to the Record Date pursuant to Bankruptcy Rule 3001.

8.      Disputed Claims.  The amount to be deposited in the Disputed Claim Reserve shall be that which is reasonably estimated by the Trustee, with the consent of the Post-

000156

Confirmation Oversight Committee, to be payable to the Holder of a Disputed Claim on a pro rata basis if such claim ultimately became an Allowed Claim. The amount in the Disputed Claim Reserve, in the discretion of the Trustee after consultation with the Post-Confirmation Oversight Committee, may be adjusted from time to time as Disputed Claims are resolved and distributions are made on account of any Disputed Claim that has become an Allowed Claim in whole or in part. The Disputed Claims Reserve shall be maintained at appropriate funding levels in the reasonable discretion of the Liquidating Plan Trustee until the resolution of all Disputed Claims. No payments of cash or distributions of other property or other consideration of any kind shall be made on account of any Disputed Claim unless and until such claim becomes an Allowed Claim or is deemed to be such for purposes of Distribution.

9.      Payment of Resolved Disputed Claims.

i. On the distribution date following the date on which a Disputed Claim is resolved as an Allowed Claim, the Liquidating Trust shall make the appropriate distribution of the cash allocated to the reserve for Disputed Claims to the holder of the Allowed Claim (or such lesser pro rata amount if resolved as an allowed administrative expense or allowed general unsecured claim in an amount less than the amount used to determine the reserve). If an entity holds one or more Allowed Claims and one or more Disputed Claims, no distribution of cash shall be made to that entity by the Liquidating Trust until all claims held by that entity have been resolved.

ii.      If a Disputed Claim is resolved as an Allowed Claim in an amount that is greater than the amount for which cash was reserved in the reserve for Disputed Claims, the holder of the Allowed Claim shall receive distributions from the Liquidating Trust in an amount equal to the amount that would have been received if the Liquidating Trust had allocated cash to the reserve for Disputed Claims on the basis of the amount of the allowed administrative expense or allowed general unsecured claim, to the extent available. Any distributions of cash to which the holders of Allowed Claims would have been entitled had cash been reserved in the reserve for Disputed Claims on account of the full amount of the allowed administrative expenses or allowed general unsecured claims shall be made up pro rata from subsequent distributions of available cash before any other distributions of available cash are made to other entities.

iii.      Any cash allocated to the reserve for Disputed Claims on account of a Disputed Claim that is resolved, in whole or in part, as not qualifying as an Allowed Claim shall, to the extent it does not qualify as an Allowed Claim, be reallocated to make other distributions of cash required by the Plan.

C.      Maintenance of Records/Reporting/Operating Budget. The Liquidating Trust shall establish and maintain such books and records as the Trustee deems necessary or appropriate. Annexed to the Plan as Exhibit "__" is a proposed operating budget for administration of the Liquidating Trust prepared for the period from the Effective Date through December 31, 2017, which budget shall be subject to the majority approval of the Post-Confirmation Oversight Committee (the "Initial Post-Confirmation Budget"). Budgets shall be prepared no later than (60) days in advance of the expiration of the end of each calendar year and shall be subject to majority approval of the Post-Confirmation Oversight Committee (the "Successive Post-Confirmation Budgets"). Successive Post-Confirmation Budgets shall cover a forward-looking period of not less

16

than five years or until such earlier time as the Liquidating Trust is anticipated to terminate. If approval of the budget is not given by from the Post-Confirmation Oversight Committee, the Trustee may seek an order from the Bankruptcy Court that the approval was unreasonably withheld, and if such an order is obtained, the Trustee can administer the Liquidating Trust in accordance with such Initial Post-Confirmation Budget or such Successive Post-Confirmation Budget. The Trustee shall provide a quarterly written report to the Post-Confirmation Oversight Committee regarding the status of the matters within the responsibility of the Trustee on the twentieth (20th) day of the month (or the first Business Day thereafter if such date is on a weekend or legal holiday) following the end of the immediately preceding three calendar month period (each such period being a "quarter", with the first quarter being that period that includes the first three full calendar months following the Effective Date) or at such other intervals and in such form as reasonably requested by the Post-Confirmation Oversight Committee (the "Periodic Trustee Reports"). The Periodic Trustee Reports shall include (i) monthly financial statements/reports generated by the Trustee; (ii) such other information as reasonably requested regarding the Initial Post-Confirmation Budget or any Successive Post-Confirmation Budget; (iii) pertinent current or historical financial or operational information; and (iv) such other documents as are appropriate relating to the administration of the Liquidating Trust.

D.    <u>Reserves</u>.  As soon as funds become available in the Liquidating Trust, the Trustee shall establish and maintain sufficient cash reserves for (1) all Disputed Claims (the "Disputed Claim Reserve"); (2) expenses to administer the Trust Assets, including all fees, costs, and expenses of the Liquidating Trust and the Post-Confirmation Oversight Committee and post-confirmation professionals and employees; (3) unpaid Class 1 and Class 2 Allowed Secured Claims; (4) unpaid Allowed Priority Claims under 11 U.S.C. §§ 507(a)(2) – (8); and (5) the Unclaimed Distribution Reserve (items (1) – (5) being collectively referred to herein as the "Reserve Account."

E.    <u>No Fractional Distributions</u>.  No distributions to Beneficiaries in fractions of cents (i.e. fractions of hundredths of U.S. Dollars) shall be made by the Liquidating Trust. Any distribution to a Beneficiary that would include a fraction of a cent shall be rounded down to the nearest whole cent. The aggregate amount of fractions of cents that are not distributed pursuant to this provision on the final distribution date shall be donated to a charitable organization designated by the Trustee and the Post-Confirmation Oversight Committee.

F.    <u>Dissolution and Termination</u>.

1.    <u>Dissolution Event</u>.  The Liquidating Trust shall be dissolved upon the first to occur of the following:

i. the determination by the Trustee, with the consent of the Post-Confirmation Oversight Committee to dissolve the Liquidating Trust upon performance and completion of all obligations and duties of the Liquidating Trust and the Trustee under the Plan and this Agreement, including, without limitation, the distribution of the proceeds of the Trust Assets to the Beneficiaries as set forth in the Plan and this Agreement (provided, however, if the Post-Confirmation Oversight Committee does not give its consent, the Trustee may seek a ruling from the Bankruptcy Court that the Post-Confirmation Oversight Committee's consent was unreasonably withheld); or

17

        ii.       the date which is five (5) years from the Effective Date of the Plan (the "Termination Date"), provided, however, if warranted by the facts and circumstances, upon a determination by the Oversight Committee that an extension of the term of the Liquidating Trust is necessary to accomplish the liquidation purpose of the Liquidating Trust, the Liquidating Trust's term may be extended for a finite term based on facts and circumstances.

VII.    <u>Other Duties of the Trustee</u>.

    A.    <u>Management of Trust Assets</u>.  With respect to the Trust Assets, the Trustee may, if sufficient funds are available and, if so with the consent of the Post-Confirmation Oversight Committee (provided, however, if the Post-Confirmation Oversight Committee does not give its consent, the Trustee may seek a ruling from the Bankruptcy Court that the Post-Confirmation Oversight Committee's consent was unreasonably withheld), purchase and maintain in existence such insurance as the Trustee deem necessary or appropriate from time to time to protect the Liquidating Trust, the Trustee, the Post-Confirmation Oversight Committee (including the officers, employees, professionals, agents, representatives of the Liquidating Trust and members of the Post-Confirmation Oversight Committee) and the Beneficiary's interests in the Trust Assets from any potential claims or liabilities relating thereto or the distribution thereof.

    B.    <u>No Implied Duties</u>.  The Trustee shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Assets or otherwise take any action hereunder except as expressly provided in the Plan or this Agreement, and no implied duties or obligations whatsoever of the Trustee shall be read into this Agreement.  Except as otherwise expressly provided in the Plan or this Agreement, the Trustee shall have no duties or obligations under any laws or statutes otherwise applicable to trusts.

VIII.    <u>Concerning the Trustee</u>.

    A.    <u>Acceptance by Trustee</u>.  The Trustee accepts the Liquidating Trust hereby created for the benefit of the Holders and agrees to act as Trustee of the Liquidating Trust pursuant to the terms of the Plan and this Agreement.  The Trustee shall have and exercise the rights and powers granted in the Plan and this Agreement and is charged with the performance of the duties declared in the Plan and this Agreement on the part of the Trustee.  The Trustee also agrees to receive and disburse all funds actually received by him/her constituting part of the Trust Assets pursuant to the terms of the Plan and this Agreement, with the appropriate consents and consultation with the Post-Confirmation Oversight Committee.

    B.    <u>Liability of the Trustee and Representatives</u>.

        1.    <u>Limitation on Liability</u>.  No provision of the Plan or this Agreement shall be construed to impose any liability upon the Trustee or the officers, employees, professionals, agents or representatives of the Liquidating Trust, including, without limitation, the Post-Confirmation Oversight Committee and its members, unless it shall be proven that the actions or omissions of such entity are not authorized under the Plan and this Agreement and constituted gross negligence or willful misconduct in the exercise of, or failure to exercise, any right or power under the Plan or this Agreement.

18

2.    Reliance on Certificates or Opinions.  In the absence of willful misconduct on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of the Plan or this Agreement.

3.    Discretion of Trustee.  Except as otherwise expressly provided in the Plan or this Agreement, and in particular, subject to the appropriate consents of and consultation with the Post-Confirmation Oversight Committee, the Trustee, within the limitations and restrictions expressed and imposed in the Plan and this Agreement, may act freely under all or any of the rights, powers and authority conferred in the Plan or this Agreement in all matters concerning the Liquidating Trust and the Trust Assets without the necessity of obtaining the consent or permission or authorization of the Beneficiaries, the Debtors, the Trustee, the Bankruptcy Court, or of any official or officer; and the rights, powers and authority conferred on the Trustee by the Plan and this Agreement are conferred in contemplation of such freedom of action within the limitations and restrictions so expressed and imposed; provided, however, that the Trustee shall not be liable for any error unless it shall be proved that the Trustee acted in a manner which constituted gross negligence or willful misconduct.

C.    Reliance by Trustee.

1.    Genuineness of Documents.  The Trustee and the officers, employees, professionals, agents and representatives of the Liquidating Trust may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, objection, order, judgment, decree, or other paper or document reasonably believed by them to be genuine and to have been signed, made, entered or presented by the proper party, parties, official, officials, entity or entities.

2.    Reliance on Trustee.  No entity dealing with the Trustee or the officers, employees, professionals, agents or representatives of the Liquidating Trust shall be obligated to see to the application of any funds, securities, or other property paid or delivered to any of them or the Liquidating Trust or to inquire into the expediency or propriety of any transaction or the right, power or authority of the Trustee to enter into or consummate any transaction upon such terms as the Trustee deem necessary or appropriate.

D.    Indemnification.

1.    Payment of Expenses.  Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding referred to above may be paid by the Liquidating Trust in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the appropriate Trustee, officer, employee, professional, agent or representative of the Liquidating Trust to repay such amount if it shall ultimately be determined that such entity is not entitled to be indemnified.

2.    Insurance.  The Liquidating Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself, the Trustee, officers, employees, professionals, agents and representatives of the Liquidating Trust, the Post-Confirmation Oversight Committee and its members, of and from any liability.    The terms "Trustee," "officers"

19

"employees" "professionals," "agents", "representatives" and members as used in this Agreement, where applicable, include the heirs, successors, executors, administrators, personal representatives, or estates of such persons or entities.

E.   Costs and Expenses of Trustee.

1.   Costs and Expenses.  Subject to the terms of the Plan, the Trustee shall pay out of the Liquidating Trust all reasonable costs, expenses and obligations incurred by the Trustee in carrying out his/her duties under the Plan and this Agreement or in any manner connected, incidental or related to the administration of the Liquidating Trust, including any taxes, charges and assessments which may be owed by, or levied or assessed against the Liquidating Trust or any property held in trust hereunder.

F.   Resignation and Removal.

1.   Resignation of Administration Trustee.  The Trustee may resign with thirty (30) days prior written notice; provided, however, the Trustee shall continue to act as the Trustee until such time as the Post-Confirmation Oversight Committee shall find a suitable substitute Liquidating Trustee; provided, however, the Trustee shall not continue to serve as the Trustee more than one-hundred eighty (180) days after he/she submits his/her written notice of resignation.  If the Post-Confirmation Oversight Committee has not found a suitable replacement for the Trustee by the end of the aforementioned one-hundred eighty (180) day period, the Post-Confirmation Oversight Committee shall perform the duties of the Trustee until a suitable replacement can be found.

2.   Removal of Trustee.  The Post-Confirmation Oversight Committee shall have the authority during the term of the Liquidating Trust to seek the removal and/or replacement of the Trustee for cause shown to the Bankruptcy Court if, after consultation with the Trustee, the matter cannot be resolved short of such action.  In the event that the Trustee is terminated by final Bankruptcy Court order, then the Trustee and his retained professionals shall be entitled to recover any earned and unpaid fees and expenses through the date of termination.

3.   Appointment of a Successor Trustee Each Liquidating Trustee appointed after the initial Liquidating Trustee shall be subject to removal by the Post-Confirmation Oversight Committee upon thirty days' written notice without cause.  For any time period that a suitable substitute Liquidating Trustee cannot be found, the Post-Confirmation Oversight Committee may assume the responsibilities of the Trustee for such periods.  The Post-Confirmation Oversight Committee may provide for a reasonable manner in which it would act as the Trustee in its by-laws.

4.   Acceptance of Appointment by Successor Trustee.  Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder in the form determined by the Post-Confirmation Oversight Committee, which shall be filed with the Bankruptcy Court.  Thereupon, such successor Trustee shall, without any further act, become vested with all of the estates, properties, rights, powers, trusts and duties of its predecessor in the Liquidating Trust hereunder with like effect as if originally named herein from that date forward, except as otherwise provided herein.

20

000161

IX.    <u>Supplements and Amendments to this Agreement</u>.

A.    <u>Supplements and Amendment</u>.   Subject to the provisions of the Plan and this Agreement, at any time and from time to time, upon notice and motion approved by the Bankruptcy Court, the Trustee may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Agreement, or amendments thereto.   In no event shall this Agreement be amended so as to change the purpose of the Liquidating Trust as set forth in the Plan or Section II above without the prior approval of the Bankruptcy Court after notice and opportunity for a hearing have been provided to the Post-Confirmation Oversight Committee and Beneficiaries.

B.    <u>Notice and Effect of Executed Amendment</u>. Upon the execution of any amendment or supplement approved by the Bankruptcy Court, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Agreement of the Trustee and the Beneficiaries shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Agreement for any and all purposes.

X.    <u>Miscellaneous</u>.

A.    <u>Title to Trust Assets</u>.   No Beneficiary shall possess legal ownership of, or have title to, any part of the Trust Assets and no Beneficiary shall have an interest in any specific property of the Liquidating Trust.

B.    <u>Sales or other Disposition of Trust Assets</u>. Any sale or other disposition of any Trust Assets, or part thereof, by the Trustee made in accordance with the terms of the Plan and this Agreement shall bind the Liquidating Trust and the Beneficiaries and shall be effective to transfer or convey all right, title and interest of the Trustee, the Liquidating Trust and the Beneficiaries in and to such Trust Assets.

C.    <u>Notices</u>. Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or by facsimile transmission (and confirmed by mail), or by overnight courier, in any such case addressed as follows:

000162

If to the Liquidating Trust/Trustee:

SCI Bankruptcy Liquidating Trust
c/o [COUNSEL]
Attn: _____
_____
_____

If to the Post-Confirmation Oversight Committee:
SCI Post-Confirmation Oversight Committee
c/o [COUNSEL]
Attn: _____
_____
_____

D.   <u>Severability</u>.   Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, unless the prohibition or unenforceability of such provision will materially change the purpose or effect of this Agreement.

E.   <u>Counterparts</u>.   This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument, and facsimile signatures shall have the same force and effect as original signatures.

F.   <u>Binding Agreement</u>.   All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustee and his/her respective successors and assigns and any successor Trustee provided for in Section VIII, and his/her respective successors and assigns, and the Holders, and his/her respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Beneficiary shall bind their respective heirs, personal representatives, successors and assigns.

G.   <u>Headings</u>.   The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

H.   <u>Construction</u>.   Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neutral, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, and corporations.

I.   <u>Governing Law</u>.   Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law may apply, this Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of California (excluding conflict of law rules), including all matters of construction, validity and performance.

22

000163

# EXHIBIT A

J.    <u>Construction with the Plan</u>.  The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes.  References herein to this Agreement shall refer only to this Agreement and shall not include the Plan unless otherwise indicated.  In the event that the Plan and this Agreement are in contradiction, the terms of this Agreement shall be controlling.

K.    <u>Subject to Bankruptcy Court's Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction over this Agreement and the Liquidating Trust, the Trust Assets, the Trustee and the Debtors to: (a) ensure that the purposes and intent of the Plan and this Agreement are carried out; (b) issue any and all orders and to take other actions necessary to the implementation of the Plan and this Agreement, such jurisdiction to include the jurisdiction contemplated by Section 1142 of the Bankruptcy Code; and (c) resolve any disputes regarding the employment or compensation of any officers, employees, professionals, agents or representatives of the Trustee or the Liquidating Trust.  All provisions of this Agreement are subject to such continuing jurisdiction of the Bankruptcy Court.  The Bankruptcy Court may interpret or enforce this Agreement upon request of a party in interest in accordance with the Bankruptcy Rules.

L.    <u>Integration</u>.  The Plan and this Agreement supersede all negotiations concerning their subject matter which preceded or accompanied the execution and delivery of this Agreement.  The Plan and this Agreement are intended as a final expression of agreement as to the terms set forth in the Plan and this Agreement and may not be contradicted by evidence of prior agreement or contemporaneous agreement.  The Plan and this Agreement are also intended as a complete and exclusive statement of their terms.

IN WITNESS WHEREOF, the parties have executed or have hereunto caused this Agreement to be duly executed, as of the day and year first above written.

**DEBTORS:**                                                **TRUSTEE:**

_____        _____
WILLIAM HOFFMAN                                    WILLIAM HOFFMAN, Trustee
Chief Restructuring Officer for
SCI Real Estates Investments, LLC and
Secured California Investments, Inc.,
Chapter 11 Debtors

23

# EXHIBIT B

000166
000080

| Properties | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| Retail Properties | City | State | Desc. | Sq. Ft | Date Purchased | Acquistion Price |
| Park Place II | Sacramento | CA | Retail | 257,774 | 10/12/2005 | $71,569,000 |
| ITC Crossing South | Flanders | NJ | Retail | 372,604 | 9/29/2006 | $67,515,000 |
| Cobb Place Shopping Center | Atlanta | GA | Retail | 338,365 | 3/31/2005 | $63,745,000 |
| Palmer Town Center | Easton | PA | Retail | 153,116 | 10/5/2005 | $40,810,000 |
| Price Plaza | Houston | TX | Retail | 205,818 | 11/22/2005 | $37,620,000 |
| Anderson Station | Anderson | SC | Retail | 243,663 | 12/30/2005 | $32,623,554 |
| Bryant Square | Edmond | OK | Retail | 275,106 | 8/31/2006 | $31,700,000 |
| Village Shoppes of Sugarloaf | Lawrenceville | GA | Retail | 147,817 | 6/27/2007 | $30,361,800 |
| Verdae Village | Greenville | SC | Retail | 243,298 | 11/1/2007 | $29,499,750 |
| Chino Towne Center | Chino | CA | Retail | 117,419 | 5/22/2006 | $28,737,500 |
| River Place | Sevierville | TN | Retail | 154,735 | 8/29/2007 | $21,109,375 |
| Walmart Way Crossing Shopping Center | Chesapeake | VA | Retail | 80,160 | 7/14/2005 | $20,301,206 |
| Rockbridge Village | Stone Mountain | GA | Retail | 102,432 | 7/10/2007 | $18,669,280 |
| Parmer McNeil Plaza | Austin | TX | Retail | 51,052 | 5/8/2007 | $18,020,000 |
| Plaza at Point Happy | La Quinta | CA | Retail | 38,567 | 6/30/2006 | $16,302,000 |
| Watauga Towne Center | Watauga | TX | Retail | 65,280 | 5/29/2006 | $16,086,000 |
| Woodmont Village | Canton | GA | Retail | 85,639 | 7/10/2007 | $16,082,100 |
| University Marketplace | Pembroke Pines | FL | Retail | 125,704 | 8/12/2004 | $15,093,750 |
| Richmond Ranch Shopping Center | Texarkana | TX | Retail | 58,555 | 8/10/2007 | $12,987,500 |
| Market Square | Fort Myers | FL | Retail | 65,688 | 4/14/2005 | $12,705,000 |
| Denton Towne Center | Denton | TX | Retail | 35,780 | 5/12/2008 | $12,136,000 |
| Red Rock Shopping Center | Las Vegas | NV | Retail | 83,367 | 10/31/2001 | $12,010,300 |
| Lynnhaven Square Shopping Center | Virginia Beach | VA | Retail | 22,933 | 7/14/2005 | $6,921,325 |
| | | | | 3,324,872 | Subtotal | $632,605,440 |
| Office/Medical Properties | City | State | Desc. | Sq. Ft | Date Purchased | Acquistion Price |

000167

| Erwin Plaza (Duke Note) | Durham | NC | Office | | 238,792 | 5/22/2003 | $38,000,000 |
| | | | | | 238,792 | Subtotal | $38,000,000 |

| Multi-Family Properties | City | State | Desc. | Units | Sq. Ft | Date Purchased | Acquistion Price |
|---|---|---|---|---|---|---|---|
| Austin City Lights | Austin | TX | MF | 352 | 359,144 | 7/27/2007 | $49,116,500 |
| Mandalay on the Lake | Irving | TX | MF | 367 | 356,517 | 12/14/2006 | $46,800,000 |
| Bellagio at Bent Tree | Dallas | TX | MF | 500 | 481,682 | 2/3/2005 | $41,016,250 |
| Waterstone | Austin | TX | MF | 308 | 307,374 | 8/24/2007 | $38,677,980 |
| Stone Canyon Apartments | Mesa | AZ | MF | 392 | 358,168 | 6/16/2005 | $37,620,000 |
| The Crescent | San Antonio | TX | MF | 306 | 302,608 | 6/21/2007 | $36,750,000 |
| Reserve at Charles Place | Plano | TX | MF | 264 | 343,443 | 5/23/2006 | $32,917,500 |
| Western Ridge | Houston | TX | MF | 318 | 295,086 | 5/31/2007 | $28,875,000 |
| Keystone at Alamo Heights | San Antonio | TX | MF | 224 | 211,336 | 3/30/2007 | $25,872,000 |
| Brodick Hill | Lithia Springs | GA | MF | 312 | 294,198 | 4/11/2006 | $25,207,650 |
| Kings Cove | Kingwood | TX | MF | 192 | 185,580 | 11/6/2008 | $22,856,000 |
| Cumberland at Ridglea | Fort Worth | TX | MF | 244 | 210,582 | 5/23/2007 | $21,682,500 |
| Camino Real Apartment | Albuquerque | NM | MF | 248 | 238,266 | 10/6/2005 | $21,579,250 |
| Presidio at Northeast Heights | Albuquerque | NM | MF | 200 | 198,880 | 1/30/2006 | $21,579,250 |
| Town East | Mesquite | TX | MF | 224 | 222,916 | 12/20/2005 | $19,939,500 |
| Total Units | | | | 4,451 | 4,365,780 | Subtotal | $470,489,380 |

| Student Housing Properties | City | State | Desc. | Beds | Sq. Ft | Date Purchased | Acquistion Price |
|---|---|---|---|---|---|---|---|
| Gateway at Tempe | Tempe | AZ | SH | 918 | 289,704 | 12/5/2006 | $53,295,000 |
| Apache Station | Tempe | AZ | SH | 684 | 422,764 | 9/6/2007 | $48,458,125 |
| Seminole Suites (Gateway at Tallahassee) | Tallahassee | FL | SH | 924 | 423,060 | 6/29/2007 | $45,100,000 |
| Campus Club | Gainesville | FL | SH | 924 | 329,700 | 5/24/2007 | $33,705,000 |
| Gateway at Denton | Denton | TX | SH | 696 | 251,208 | 9/26/2006 | $32,130,000 |
| Gateway at College Station | College Station | TX | SH | 960 | 315,412 | 7/13/2006 | $31,137,500 |
| Gateway at Lubbock | Lubbock | TX | SH | 744 | 274,872 | 9/26/2006 | $26,670,000 |
| Gateway at Tucson | Tucson | AZ | SH | 552 | 201,924 | 12/27/2006 | $25,567,500 |
| Gateway at Knoxville | Knoxville | TN | SH | 720 | 223,296 | 3/22/2007 | $24,380,000 |
| University Edge | Hattiesburg | MS | SH | 552 | 210,732 | 5/24/2007 | $22,737,000 |
| Gateway at Columbia | Columbia | MO | SH | 450 | 177,054 | 1/25/2007 | $18,868,000 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Gateway at Huntsville | Huntsville | TX | SH | 416 | 180,448 | 3/28/2007 | $18,762,000 |
| University Glades | Gainesville | FL | SH | 432 | 124,416 | 5/24/2007 | $16,017,500 |
| Campus Park | Stillwater | OK | SH | 384 | 133,596 | 6/11/2008 | $9,000,000 |
| Total Beds | | | | 9,356 | 3,558,186 | Subtotal | $405,827,625 |

| | | | |
|---|---|---|---|
| TOTAL PORTFOLIO | | 11,487,630 | $1,546,922,445 |

000169

# EXHIBIT C

000170
000085

PLEDGE AND SECURITY AGREEMENT

This PLEDGE AND SECURITY AGREEMENT (this "Security Agreement") is dated as of
January 1, 2009 (the "Effective Date"), by and between SCI Real Estate Investments, LLC, a Virginia
limited liability company ("SCI LLC") and Secured California Investments, Inc., a California corporation
("SCI Inc."; together with SCI LLC, collectively, "Pledgor") and the parties indicated as "Lenders" listed
on Exhibit A attached hereto (each, a "Lender" and collectively, the "Lenders").

R E C I T A L S

A.    Lenders are the holders of various loans in the current outstanding sums indicated on
Exhibit A (each, a "Loan" and collectively, the "Loans"), as evidenced by the Loan Agreements or
Placement Agreements listed on Exhibit A (each, as modified and/or reissued, a "Loan Agreement" and
collectively, the "Loan Agreements").

B.    To induce each of the Lenders to modify the Loans pursuant to certain Modification of
Loan Agreements or Placement Agreements, as applicable, to be entered into concurrently herewith,
Pledgor has agreed to pledge all or a portion of its membership and ownership interests in the entities
listed on Exhibit B (each, a "MMLLC" and collectively the "MMLLCs") (such membership and
ownership interests in the MMLLCs, are collectively the "Membership Interests"), as security for the
payment and performance of SCI LLC's and SCI Inc.'s obligations, respectively, under the Loan
Agreements (collectively, the "Obligations").

C.    SCI LLC has also agreed to pledge all or a portion of its rights to receive the deferred
payments owed SCI LLC listed on Exhibit C (collectively, the "Fees") as additional security for the
payment and performance of the Obligations.

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained and
for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged,
the parties hereto agree as follows:

1.    **GRANT OF LIEN; PARTIAL RELEASES AND REALLOCATIONS.**

(a)    As security for all the Obligations and subject to the restrictions set forth herein, Pledgor
hereby grants to each of the Lenders a present and continuing security interest in and lien on all of its right,
title and interest in the Membership Interests, together with: (i) all Sale (defined below) proceeds
therefrom; (ii) all Sale distributions, products, offspring, rents, revenues, issues, profits, royalties, income,
benefits, additions and accessions to or of the foregoing; (iii) all replacements and substitutions of or for
the foregoing; and (iv) all documents, instruments, certificates, agreements or other evidence of the
foregoing, whether or not in written form, (collectively, the "Membership Interests Collateral").

(b)    As security for all the Obligations and subject to the restrictions set forth herein, SCI LLC
hereby grants to each of the Lenders a present and continuing security interest in and lien on all of its right,
title and interest in the Fees, together with: (i) all proceeds therefrom; (ii) all distributions, products,
offspring, rents, revenues, issues, profits, royalties, income, benefits, additions and accessions to or of the
foregoing; (iii) all replacements and substitutions of or for the foregoing; (iv) all books and records (in
whatever form or media, including without limitation computerized records, software and disks) relating to
any of the foregoing; (v) and all documents, instruments, certificates, agreements or other evidence of the
foregoing, whether or not in written form, (collectively, the "Fee Collateral"; together with the
Membership Interests Collateral, the "Collateral"); provided, however, that the security interest granted
herein shall not be effective for any single Lender unless and until such Lender executes and delivers this

Security Agreement to Pledgor.  Notwithstanding the foregoing, SCI LLC may adjust the amount of the Fees, waive its receipt of the Fees, and otherwise exercise full control over the amount of the fees due and payable to SCI LLC, so long as any Fees actually received by SCI LLC pursuant to a Sale are paid to the Lenders in accordance with Section 1(d) herein.

   (c) All of the Obligations shall be secured by all of the Collateral.

   (d) Pledgor shall have the right to obtain a full or partial release of the Collateral upon the sale (a "Sale"), of either (a) all of the real property (the "Release Property") owned, directly or indirectly, by a MMLLC or (b) all or part of the Membership Interests, subject to the satisfaction of all of the following terms and conditions: (i) the proposed purchaser of the Release Property or the Membership Interests in connection with a Sale is not an affiliate of Pledgor; and (ii) Pledgor shall, upon consummation of the Sale, pay to all of the Lenders on a pro rata basis, based upon the principal balance due each Lender as of the date of the Sale, 100% of the Net Proceeds of the Sale actually received by Pledgor plus any Fees Pledgor receives on account of the Sale, provided that in no event shall any Lender receive more than the amount then due on its Loan to which it is entitled under the applicable Loan Agreement.  The initial pro rata share for each Lender, expressed as a percentage, is listed on Exhibit A.  "Net Proceeds" means the net proceeds from a sale or refinancing of the Release Property or the subject Membership Interests, or any portion thereof, less prorations, commissions, price adjustments, and reasonable, ordinary and customary adjustments and out-of-pocket closing costs and expenses including, without limitation, the costs of third party vendors and legal fees and costs.

  2. **PERFECTION AND PROTECTION OF SECURITY INTEREST.**

   (a) The security interest granted herein is a pledge and security interest in and to the Collateral pursuant to the provisions of Article 9 of the Uniform Commercial Code as enacted in the State of California as in effect from time to time.  To the extent any of the Collateral is in the form of a "certificated security" within the meaning of Article 8 of the Uniform Commercial Code, Pledgor shall deliver directly to Lenders (i) each such "certificated security" and (ii) all necessary stock or certificate powers, other powers, instruments of transfer or assignment, each undated and duly executed in blank, as Lenders may request.  Lenders may (and are hereby authorized to) file with any filing office such financing statements, amendments, addenda, continuations, terminations, assignments and other records (whether or not executed by Pledgor) as Lenders may deem necessary in their sole discretion to perfect and to maintain perfected security interests in the Collateral.  Such documents may designate Lenders as the secured party and Pledgor as the debtor, identify Lenders' security interest in the Collateral, and contain any other items required by law or deemed necessary by Lenders.  Upon Lenders' request, Pledgor shall execute any such documents (whether or not required by law).  Any such filings made by Lenders prior to Pledgor's execution of this Security Agreement are hereby authorized, ratified and confirmed by Pledgor.  Pledgor shall, at its expense, perform all other steps requested by Lenders at any time to perfect, maintain, protect, and enforce the security interest granted herein, including:  (i) filing financing or continuation statements, and amendments thereof, in form and substance reasonably satisfactory to Lenders; and (ii) taking such other steps as are necessary or desirable to maintain and protect such security interest.

   (b) Upon the request of Lenders, Pledgor shall deliver to Lenders all Collateral consisting of negotiable documents, promptly after Pledgor receives the same.

  3. **REPRESENTATIONS AND WARRANTIES OF PLEDGOR.**  Pledgor hereby represents and warrants to Lenders with respect to itself and the Collateral that now and until the payment and satisfaction in full of the Obligations:

2

000172
000087

(a)     Each of SCI LLC and SCI Inc. is a member of the indicated MMLLCs, and is the owner of all of the indicated Membership Interests.

(b)     Pledgor has all requisite power and authority to execute, deliver and perform this Security Agreement and to consummate the transactions contemplated hereby, and to execute, deliver and perform its obligations under Pledgor's organizational and governance documents and this Security Agreement.

(c)     Pledgor's interest as a member of any MMLLC is not represented by any certificate.

(d)     Each of SCI LLC and SCI Inc. is the sole record, legal and beneficial owner of all of the indicated Collateral, and the Collateral is free and clear of any lien, mortgage, encumbrance, charge, pledge, security interest, or claim of any kind (including, without limitation, any unconditional sale or other title retention agreement) other than as created by this Security Agreement.

## 4.    LIMITATION ON COLLATERAL.

(a)     Subject to Section 1(d) herein, Pledgor shall not assign, pledge, or hypothecate the Membership Interests or the Fees without the prior written consent of Lenders, which consent may be granted or withheld in Lenders' sole and absolute discretion.

(b)     Pledgor will not create, permit, or suffer to exist, and will defend the Collateral against, and take such other action as is necessary to remove, any lien on the Collateral, and will defend the right, title, and interest of Lenders in and to any of Pledgor's rights under the Collateral against the claims and demands of all persons whomsoever.

(c)     Pledgor will advise Lenders promptly, in reasonable detail of any lien or claim made or asserted against any of the Collateral.

(d)     Except as set forth above in Section 3, Lender makes no representation or warranty whatsoever regarding the Collateral, the value of the Collateral, the ability of Pledgor to collect the Collateral, any of the MMLLCs, or any property that may or may not be owned by any MMLLC. The values of the Membership Interests reflected in the MMLLC operating agreements represent Pledgor's original purchase price and the current values of the Membership Interests may be significantly higher or lower than Pledgor's initial investment. While SCI LLC is contractually entitled to receive the Fees herein pledged, neither SCI LLC nor SCI Inc. makes any representation or warranty regarding the collectability or value of such Fees. Lenders acknowledge that the Collateral may be subject to restrictions imposed by lenders of the respective MMLLCs and/or their affiliates.

## 5.    REMEDIES; RIGHTS UPON DEFAULT.

(a)     In addition to all other rights and remedies granted to it under this Security Agreement or any other loan documents, if any default under the Loan Agreement or any other of the Obligations shall have occurred and be continuing beyond applicable cure periods, Lenders may exercise all default rights and remedies of a secured party under the UCC. Without limiting the generality of the foregoing, Pledgor expressly agrees that in any such event Lenders, without demand of performance or other demand, advertisement, or notice of any kind (except the notice specified below of time and place of public or private sale) to or upon Pledgor or any other person (all and each of which demands, advertisement, and notices are hereby expressly waived to the maximum extent permitted by the UCC and other applicable law), may collect, receive, assemble, process, appropriate, and realize upon the Collateral, or any part thereof, and may forthwith assign, give an option or options to purchase, or sell or otherwise dispose of and deliver said Collateral (or contract to do so), or any part thereof, in one or more lots at a public or private sale or sales, at any exchange at such prices as it may deem acceptable, for cash or on credit or for

3

000173
000088

future delivery without assumption of any credit risk. Lenders shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales, to purchase for the benefit of Lenders the whole or any part of said Collateral so sold, free of any right or equity of redemption, which equity of redemption Pledgor hereby releases. Such sales may be adjourned and continued from time to time with or without notice. Lenders shall have the right to conduct such sales on Pledgor's premises or elsewhere and shall have the right to use Pledgor's premises without charge for such time or times as Lenders deems necessary or advisable.

(b)    Pledgor further agrees, at Lenders' request, to assemble the Collateral and make it available to Lenders at a place or places designated by Lenders that are reasonably convenient to Lenders and Pledgor, whether at Pledgor's premises or elsewhere. Until Lenders are able to effect a sale, lease, or other disposition of Collateral, Lenders shall have the right to hold or use Collateral, or any part thereof, to the extent that it deems appropriate for the purpose of preserving Collateral or its value or for any other purpose deemed appropriate by Lenders. Lenders shall have no obligation to Pledgor to maintain or preserve the rights of Pledgor as against third parties with respect to Collateral while Collateral is in the possession of Lenders. Lenders may, if they so elect, seek the appointment of a receiver or keeper to take possession of Collateral and to enforce any of Lenders' remedies with respect to such appointment without prior notice or hearing as to such appointment. To the maximum extent permitted by applicable law, Pledgor waives all claims, damages, and demands against Lenders arising out of the repossession, retention, or sale of the Collateral except such as arise solely out of the gross negligence or willful misconduct of any of the Lenders as finally determined by a court of competent jurisdiction. Pledgor agrees that ten (10) days' prior notice by Lenders of the time and place of any public sale or of the time after which a private sale may take place is reasonable notification of such matters. Pledgor shall remain liable for any deficiency if the proceeds of any sale or disposition of the Collateral are insufficient to pay all Obligations, including any attorneys' fees or other expenses incurred by Lenders to collect such deficiency.

(c)    Except as otherwise specifically provided herein, Pledgor hereby waives presentment, demand, protest, or any notice (to the maximum extent permitted by applicable law) of any kind in connection with this Security Agreement or any Collateral.

(d)    To the extent that applicable law imposes duties on Lenders to exercise remedies in a commercially reasonable manner, Pledgor acknowledges and agrees that it is not commercially unreasonable for Lenders:  (a) to fail to incur expenses reasonably deemed significant by Lenders to prepare Collateral for disposition or otherwise to complete raw material or work in process into finished goods or other finished products for disposition; (b) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of; (c) to fail to exercise collection remedies against persons obligated on Collateral or to remove liens on or any adverse claims against Collateral; (d) to exercise collection remedies against persons obligated on Collateral directly or through the use of collection agencies and other collection specialists; (e) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature; (f) to contact other persons, whether or not in the same business as Pledgor, for expressions of interest in acquiring all or any portion of such Collateral; (g) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the Collateral is of a specialized nature; (h) to dispose of Collateral by utilizing internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capacity of doing so, or that match buyers and sellers of assets; (i) to dispose of assets in wholesale rather than retail markets; (j) to disclaim disposition warranties, such as title, possession or quiet enjoyment; (k) to purchase insurance or credit enhancements to insure Lenders against risks of loss, collection or disposition of Collateral or to provide to Lenders a guaranteed return from the collection or disposition of Collateral; or (l) to the extent deemed

4

appropriate by Lenders, to obtain the services of other brokers, investment bankers, consultants, and other professionals to assist Lenders in the collection or disposition of any of the Collateral.

(e)    Lenders shall not be required to make any demand upon, or pursue or exhaust any of their rights or remedies against, Pledgor, any other obligor, guarantor, pledgor, or any other person with respect to the payment of the Obligations or to pursue or exhaust any of their rights or remedies with respect to any collateral therefor or any direct or indirect guaranty thereof. Lenders shall not be required to marshal the Collateral for the Obligations or any guaranty of the Obligations or to resort to the Collateral or any such guaranty in any particular order, and all of its and their rights hereunder or under any other document evidencing or securing any of the Loans (the "Loan Documents"). To the extent it may lawfully do so, Pledgor absolutely and irrevocably waives and relinquishes the benefit and advantage of, and covenants not to assert against Lenders, any valuation, stay, appraisement, extension, redemption, or similar laws and any and all rights or defenses it may have as a surety now or hereafter existing that, but for this provision, might be applicable to the sale of any Collateral made under the judgment, order or decree of any court, or privately under the power of sale conferred by this Security Agreement, or otherwise.

6.    **LIMITATION ON LENDER'S DUTY IN RESPECT OF COLLATERAL.** Lenders shall use reasonable care with respect to the Collateral in their possession or under their control. Lenders shall have no other duty as to any Collateral in its possession or control or in the possession or control of any agent or nominee of Lenders, or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto.

7.    **RELEASE OF PLEDGOR.**

(a)    In consideration of this Security Agreement, each of the Lenders, each on its own behalf and on behalf of its members, managers, owners, affiliates, successors, assigns, related entities, parents, subsidiaries, trustees, beneficiaries, insurers, independent contractors, representatives and attorneys, and their predecessors and successors in interest (collectively, the "Releasing Parties"), hereby waives, releases, acquits and forever discharges Pledgor and its affiliates, successors, assigns, related entities, parents, subsidiaries, officers, trustees, beneficiaries, directors, shareholders, partners, members, managers, employees, agents, insurers, independent contractors, representatives and attorneys, and their predecessors and successors in interest (collectively, the "Released Parties"), jointly and severally, from and against any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, restitution, indemnities, liens, agreements, covenants, obligations, debts, judgments, orders and obligations of every kind and nature, at law, in equity, or otherwise, known or unknown, suspected and unsuspected, disclosed and undisclosed, occurring from the beginning of the world through the execution and delivery of this Security Agreement, now existing or hereafter arising out of or relating in any way to any action or inaction (including any breach or alleged breach) by any of the Released Parties in connection with or relating in any way to: (i) any of the Loans, (ii) any of the Loan Documents, (iii) the modification of the Loans and the Loan Documents contemplated by this Security Agreement, and/or (iv) the lending relationship between Pledgor and any of the Lenders (the "Released Claims"). In addition, each of the Releasing Parties agree not to commence, join in, prosecute or participate in any suit or other proceeding arising directly or indirectly from any of the Released Claims, in a position that is adverse to any of the Released Parties.

(b)    Each of the Lenders has made such investigation of the facts pertaining to the above releases as such Lender deems necessary. The Lenders acknowledge and understand that the nature, extent and results of the Released Claims may not now all be known or anticipated, and they further acknowledge and understand that in the future they might discover injuries, damages or other facts different from what they now believe to exist or be true or contemplate, and that events may occur in the future that change the Lenders' current perception of injuries, damages or the strength or weakness of their respective positions.

5

In entering into this Security Agreement, the Lenders expressly accept and assume the risk of such possible differences in injuries, damages or other facts and agree that this Security Agreement will become and remain effective notwithstanding any such differences or subsequent discovery thereof.

8.    **MISCELLANEOUS.**

(a)    Consent.  Any action on the part of the Lenders under this Security Agreement shall require the unanimous consent of all of the Lenders.

(b)    Reinstatement.  This Security Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against Pledgor for liquidation or reorganization, should Pledgor become insolvent or make an assignment for the benefit of any creditor or creditors, or should a receiver or trustee be appointed for all or any significant part of Pledgor's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the Obligations, whether as a "voidable preference," "fraudulent conveyance," or otherwise, all as though such payment or performance had not been made.  In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored, or returned.

(c)    Notices.  Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration, or other communication shall or may be given to or served upon any of the parties by any other party, or whenever any of the parties desires to give and serve upon any other party any communication with respect to this Security Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and shall be given by personal delivery, electronically confirmed facsimile transmission, or nationally recognized overnight courier service, and shall be effective upon receipt (or the next business day following receipt, if delivered on a Saturday, Sunday, California state holiday, or United States national holiday), if delivered to the following addresses:

|  |  |
|---|---|
| If to Lenders to: | The most current address provided to Pledgor by each of the Lenders |
| If to Pledgor to: | SCI Real Estate Investments, LLC<br>11620 Wilshire Blvd., Tenth Floor<br>Los Angeles, CA 90025<br>Attention: President |
|  | and to: |
|  | Secured California Investments, Inc.<br>11620 Wilshire Blvd., Tenth Floor<br>Los Angeles, CA 90025<br>Attention: President |

(d)    Severability.  Whenever possible, each provision of this Security Agreement shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision of this Security Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such

6

provision or the remaining provisions of this Security Agreement. This Security Agreement is to be read, construed, and applied together with the Loan Documents, which, taken together, set forth the complete understanding and agreement of Lenders and Pledgor with respect to the matters referred to herein and therein.

(e)    No Waiver; Cumulative Remedies. Lenders shall not by any act, delay, omission, or otherwise be deemed to have waived any of its rights or remedies hereunder, and no waiver shall be valid unless in writing signed by Lenders, and then only to the extent therein set forth. A waiver by Lenders of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Lenders would otherwise have had on any future occasion. No failure to exercise nor any delay in exercising on the part of Lenders any right, power, or privilege hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or future exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies hereunder provided are cumulative and may be exercised singly or concurrently, and are not exclusive of any rights and remedies provided by law. None of the terms or provisions of this Security Agreement may be waived, altered, modified, or amended except by an instrument in writing, duly executed by Lenders and Pledgor.

(f)    Limitation by Law. This Security Agreement is to be governed by and construed in accordance with the laws of the State of California. All rights, remedies, and powers provided in this Security Agreement may be exercised only to the extent that the exercise thereof does not violate any applicable provision of the Uniform Commercial Code as adopted in the State of California (as the context may require, the "UCC") and other applicable law, and all the provisions of this Security Agreement are intended to be subject to all applicable mandatory provisions of law that may be controlling and to be limited to the extent necessary so that they shall not render this Security Agreement invalid, unenforceable, in whole or in part, or not entitled to be recorded, registered, or filed under the provisions of any applicable law.

(g)    Termination of this Security Agreement. Subject to Section 8(a) hereof, this Security Agreement shall terminate upon the indefeasible payment in full of the Note and the payment and performance of all other Obligations. Lenders shall, upon the termination of this Security Agreement, terminate any financing statements of record with respect to this Security Agreement, at Pledgor's cost and expense.

(h)    Successors and Assigns. This Security Agreement and all obligations of Pledgor hereunder shall be binding upon the successors and assigns of Pledgor (including any debtor-in-possession on behalf of Pledgor) and shall, together with the rights and remedies of Lenders, inure to the benefit of Lenders and all future holders of any instrument evidencing any of the Obligations and their respective successors and assigns. Pledgor may not assign, sell, hypothecate, or otherwise transfer any interest in or obligation under this Security Agreement.

(i)    Counterparts. This Security Agreement may be authenticated in any number of separate counterparts, each of which shall collectively and separately constitute one and the same agreement. This Security Agreement may be authenticated by manual signature, facsimile or, if approved in writing by Lenders, electronic means, all of which shall be equally valid.

(j)    Waiver of Jury Trial. TO THE EXTENT PERMITTED BY APPLICABLE LAW, PLEDGOR AND EACH OF THE LENDERS EACH IRREVOCABLY WAIVE ALL OF THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS SECURITY AGREEMENT, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN

000177
000092

ANY ACTION, PROCEEDING, OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR ANY AGENT-RELATED PERSON, PARTICIPANT, OR ASSIGNEE, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. PLEDGOR AND LENDER EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM, OR OTHER PROCEEDING THAT SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS SECURITY AGREEMENT OR THE OTHER LOAN DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS SECURITY AGREEMENT AND THE OTHER LOAN DOCUMENTS.

(k)    No Strict Construction. The parties hereto have participated jointly in the negotiation and drafting of this Security Agreement. In the event an ambiguity or question of intent or interpretation arises, this Security Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Security Agreement.

(l)    Advice of Counsel; Business Relationship. Each of the parties represents to each other party hereto that it has discussed this Security Agreement with its counsel as it deems appropriate. Pledgor acknowledges that it and Lenders, as well as their respective officers, directors, or controlling persons, or their managers as appointed or elected by the members, have a preexisting business relationship. Lenders represents and warrants that by reason of its own business and financial experience and that of its officers, directors, members and professional advisers, it has the capacity to protect its own interests in connection with this Security Agreement and the transaction to which it relates.

[*document continues on next page*]

000178
000093

IN WITNESS WHEREOF, each of the parties hereto has caused this Security Agreement to be executed and delivered by its duly authorized officer as of the date first set forth above.

"PLEDGOR"

SCI REAL ESTATE INVESTMENTS, LLC,
a Virginia limited liability company

By: _____
Name: _____
Its: _____


SECURED CALIFORNIA INVESTMENTS, INC.,
a California corporation

By: _____
Name: _____
Its: _____


[*Signatures continue on next page*]

9

"LENDERS"

Signature Page to Pledge and Security Agreement--Lenders

000180
000095

EXHIBIT A

| Lender | Loan Agreement | | | Loan Balance | Initial Pro Rata Share |
|---|---|---|---|---|---|
| | Loan Agreement Title | PA# | Date Signed | | |
| ABLE, Shari | Loan Agreement | PAE1094 | 25-Apr-05 | 50,000.00 | 0.647740% |
| ABLE, Shari | Loan Agreement | PAE1170 | 21-Feb-06 | 27,000.00 | 0.349780% |
| ABRAMS, Mariam & Steven | Loan Agreement | PAE1150 | 5-Dec-05 | 64,000.00 | 0.829108% |
| ABRAMS, Marian | Loan Agreement | PAE1302 | 25-Jul-07 | 12,000.00 | 0.155458% |
| ABRAMS, Marian and Steven A.. | Loan Agreement | PAE1267 | 16-May-07 | 60,000.00 | 0.777288% |
| ARMER,Corinne Trustee | Reissued Loan Agreement | PAE1282 | 14-Jun-07 (date original Loan Agreement signed) | 5,000.00 | 0.064774% |
| ARMER,Corinne Trustee | Loan Agreement | PAE1122 | 16-Aug-05 | 15,000.00 | 0.194322% |
| ARMER,Corinne Trustee | Loan Agreement | PAE1272 | 25-May-07 | 25,000.00 | 0.323870% |
| BADON, John B. & Veronica H. | Loan Agreement | PAE1204 | 6-Jun-06 | 10,000.00 | 0.129548% |
| BILLINGS, Marilyn | Loan Agreement | SCIPA1377 | 30-Oct-08 | 10,000.00 | 0.129548% |
| DESMET, Christian D. | Loan Agreement | SCIPA1356 | 25-Jun-08 | 200,000.00 | 2.590961% |
| DODGE, Leslie M. or Florence H.--TTEE | Loan Agreement | PAE1077 | 14-Apr-05 | 25,000.00 | 0.323870% |
| DODGE, Leslie M. or Florence H.--TTEE | Loan Agreement | PAE1165 | 15-Feb-06 | 25,000.00 | 0.323870% |
| DODGE, Leslie M. or Florence H.--TTEE | Loan Agreement | PAE1171 | 15-Feb-06 | 25,000.00 | 0.323870% |
| DODGE, Leslie M. or Florence H.--TTEE | Loan Agreement | PAE1182 | 6-Mar-06 | 25,000.00 | 0.323870% |
| DODGE, Leslie M. or Florence H.--TTEE | Loan Agreement | PAE1268 | 14-May-07 | 25,000.00 | 0.323870% |
| DODGE, Leslie M. or Florence H.--TTEE | Loan Agreement | PAE1284 | 20-Jun-07 | 25,000.00 | 0.323870% |
| DODGE, Leslie M. or Florence H.--TTEE | Loan Agreement | SCIPA1365 | 20-Aug-08 | 25,000.00 | 0.323870% |

| DODGE, Wayne D. & Judy L. | Loan Agreement | PAE1285 | 21-Jun-07 | 10,000.00 | 0.129548% |
|---|---|---|---|---|---|
| DODGE, Wayne D. & Judy L. | Loan Agreement | SCIPA1367 | 20-Aug-08 | 25,000.00 | 0.323870% |
| DODGE, Wayne D--SM | Loan Agreement | PAE1304 | 1-Aug-07 | 15,000.00 | 0.194322% |
| FITZPATRICK Claire & John--MS/JT | Placement Agreement | PAE879 | 2-Mar-03 | 10,500.00 | 0.136025% |
| FITZPATRICK, Clair R. & John Gerald | Loan Agreement | PAE1093 | 15-Apr-05 | 53,000.00 | 0.686605% |
| FITZPATRICK, Clair R. & John Gerald | Loan Agreement | PAE1161 | 25-Jan-06 | 20,000.00 | 0.259096% |
| FITZPATRICK, Clair R. & John Gerald | Loan Agreement | PAE1184 | 9-Mar-06 | 31,750.00 | 0.411315% |
| GENDIS, Sheila R. | Loan Agreement | PAE1194 | 6-Mar-06 | 35,000.00 | 0.453418% |
| GENDIS, Sheila R. | Loan Agreement | PAE1261 | 25-Apr-07 | 74,000.00 | 0.958656% |
| GENDIS, Sheila R. | Loan Agreement | PAE1270 | 12-May-07 | 36,000.00 | 0.466373% |
| GENDIS, Sheila R.--Polycomp FRB | Loan Agreement | PAE1258 | 24-Apr-07 | 85,150.00 | 1.103102% |
| GITTER, Harriett Silverman & Medina Julie A. | Loan Agreement | PAE1297 | 19-Jul-07 | 19,000.00 | 0.246141% |
| GITTER, Harriett Silverman & Medina Julie A. | Loan Agreement | SCIPA1323 | 8-Jan-08 | 6,000.00 | 0.077729% |
| GITTER, Harriett Silverman & Medina Julie A. | Loan Agreement | SCI1144 | 3-Oct-05 | 8,000.00 | 0.103638% |
| GITTER, Harriett Silverman & Medina Julie A. | Loan Agreement | PAE1177 | 7-Feb-06 | 18,000.00 | 0.233186% |
| GITTER, Harriett Silverman & Medina Julie A. | Loan Agreement | PAE1205 | 1-Aug-06 | 11,000.00 | 0.142503% |
| GITTER, Harriett Silverman & Medina Julie A. | Loan Agreement | PA1208 | 1-Jul-06 | 20,000.00 | 0.259096% |

000182
000097

| GITTER, Harriett Silverman & Medina Julie A. | Loan Agreement | SCIPA1339 | 1-May-08 | 23,000.00 | 0.297961% |
|---|---|---|---|---|---|
| GORDON, L. K. Wong, DDS Profit Sharing Plan | Loan Agreement | SCIPA1345 | 12-May-08 | 25,000.00 | 0.323870% |
| GORDON, L. K. Wong, DDS Profit Sharing Plan | Loan Agreement | SCIPA1369 | 25-Sep-08 | 30,000.00 | 0.388644% |
| GORDON, L. K. Wong and Christina Wong | Loan Agreement | PAE1127 | 16-Aug-05 | 10,000.00 | 0.129548% |
| GORDON, L. K. Wong and Christina Wong | Loan Agreement | SCIPA1370 | 25-Sep-08 | 10,000.00 | 0.129548% |
| GRECO, Mary L--TTEE | Reissued Loan Agreement | SCICG1319 | 12-Dec-07 (date original Loan Agreement signed) | 25,000.00 | 0.323870% |
| GRECO, Mary L--TTEE | Loan Agreement | PAE1106 | 5-May-05 | 40,000.00 | 0.518192% |
| GRECO, Mary L--TTEE | Loan Agreement | PAE1280 | 9-Jun-07 | 40,000.00 | 0.518192% |
| GRECO, Mary L--TTEE | Loan Agreement | PAE1198 | 20-Mar-06 | 45,000.00 | 0.582966% |
| GRECO, Mary L--TTEE | Loan Agreement | PAE1217 | 7-Aug-06 | 50,000.00 | 0.647740% |
| GRISBACH, Robert & Sonja | Loan Agreement | PAE1288 | 13-Jun-07 | 40,000.00 | 0.518192% |
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | SCICG1334 | 31-Mar-08 | 100,000.00 | 1.295480% |
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | SCICG1316 | 18-Dec-07 | 75,000.00 | 0.971610% |
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | PAE1139 | 28-Sep-05 | 100,000.00 | 1.295480% |
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | PAE1140 | 21-Sep-05 | 100,000.00 | 1.295480% |
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | PAE1141 | 21-Sep-05 | 100,000.00 | 1.295480% |

| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | PAE1234 | 29-Jan-07 | 65,000.00 | 0.842062% |
|---|---|---|---|---|---|
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | PAE1241 | 6-Mar-07 | 100,000.00 | 1.295480% |
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | PAE1265 | 16-May-07 | 112,000.00 | 1.450938% |
| HANDEL, Neal -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | PAE1314 | 15-Aug-07 | 125,000.00 | 1.619351% |
| HENSEL, Bruce Hensel, M.D., Inc Benefit Pension | Loan Agreement | SCICG1324 | 25-Jan-08 | 215,000.00 | 2.785283% |
| HOBSON, Alice J, Trustee of the Survivor's Trust of | Loan Agreement | SCIPA1342 | 1-May-08 | 20,000.00 | 0.259096% |
| JAMESON, Donald C. -- TTEE | Loan Agreement | PAE1273 | 12-May-07 | 10,000.00 | 0.129548% |
| JAMESON, Donald C. or June L -- TTEE | Loan Agreement | PAE1192 | 13-Mar-06 | 5,000.00 | 0.064774% |
| JAMESON, Donald C. or June L -- TTEE | Loan Agreement | SCIPA1368 | 2-Sep-08 | 7,000.00 | 0.090684% |
| JAMESON, Donald C--TTEE | Loan Agreement | PAE1301 | 20-Jul-07 | 5,000.00 | 0.064774% |
| JAMESON, June L -- TTEE | Loan Agreement | PAE1153 | 2-Dec-05 | 5,000.00 | 0.064774% |
| JAMESON, June L -- TTEE | Loan Agreement | PAE1190 | 13-Mar-06 | 18,000.00 | 0.233186% |
| JAMESON, June L--TTEE | Loan Agreement | PAE1274 | 12-May-07 | 15,000.00 | 0.194322% |
| JAMESON, June L--TTEE | Loan Agreement | PAE1300 | 17-Jul-07 | 5,000.00 | 0.064774% |
| KAY, GREGORY & LYNN | Loan Agreement | PAE1298 | 1-Jul-07 | 50,000.00 | 0.647740% |
| FREIDERIC, Klaus, | Loan Agreement | SCICG1317 | 7-Dec-07 | 200,000.00 | 2.590961% |
| LEWIS, Lawrence & Lois | Loan Agreement | PAE1162 | 23-Jan-06 | 20,000.00 | 0.259096% |
| LEWIS, Lawrence & Lois | Loan Agreement | PAE1169 | 21-Feb-06 | 20,000.00 | 0.259096% |

| LEWIS, Lawrence & Lois | Loan Agreement | PA1212 | 30-Jun-06 | 40,000.00 | 0.518192% |
|---|---|---|---|---|---|
| LEWIS, Lawrence & Lois | Loan Agreement | PAE1214 | 15-Aug-06 | 40,000.00 | 0.518192% |
| LEWIS, Lawrence & Lois | Loan Agreement | PAE1224 | 1-Nov-06 | 20,000.00 | 0.259096% |
| LEWIS, Lawrence & Lois | Loan Agreement | PAE1237 | 29-Jan-07 | 20,000.00 | 0.259096% |
| LEWIS, Lawrence & Lois | Loan Agreement | PAE1249 | 21-Mar-07 | 61,380.00 | 0.795166% |
| LEWIS, Lawrence & Lois | Loan Agreement | SCIPA1322 | 18-Dec-07 | 40,000.00 | 0.518192% |
| LEWIS, Lawrence & Lois | Loan Agreement | SCIPA1340 | 1-May-08 | 40,000.00 | 0.518192% |
| LEWIS, Lawrence & Lois | Loan Agreement | PAE1293 | 3-Jul-07 | 35,000.00 | 0.453418% |
| LEWIS, Lawrence & Lois | Placement Agreement | PAE881 | 7-Apr-03 | 20,000.00 | 0.259096% |
| McCall Geraldine, Trustee | Loan Agreement | PAE1239 | 27-Feb-07 | 12,000.00 | 0.155458% |
| McCall Geraldine, Trustee | Loan Agreement | SCIPA1372 | 22-Sep-08 | 50,000.00 | 0.647740% |
| McGrane L Dorothy Trustee of McGrane Living Trust | Loan Agreement | PAE1189 | 15-Mar-06 | 5,000.00 | 0.064774% |
| McGrane L Dorothy Trustee of McGrane Living Trust | Loan Agreement | PAE1124 | 30-Aug-05 | 20,000.00 | 0.259096% |
| MEYERSTEIN, Marcia | Loan Agreement | PAE1287 | 20-Jan-04 | 20,000.00 | 0.259096% |
| MISTRETTA, VICTOR JOSEPH TTEE | Loan Agreement | PAE1295 | 7-Jul-07 | 50,000.00 | 0.647740% |
| MORGAN FAMILY, Patrick & Linda | Placement Agreement | PAE1038 | 18-Nov-04 | 15,000.00 | 0.194322% |
| MORGAN FAMILY, Patrick & Linda | Placement Agreement | PAE1033 | 13-Sep-04 | 26,000.00 | 0.336825% |
| MORGAN FAMILY, Patrick & Linda | Loan Agreement | PAE1306 | 1-Aug-07 | 15,000.00 | 0.194322% |
| MORGAN, Flavia H--TTEE | Loan Agreement | PAE1095 | 30-Apr-05 | 25,000.00 | 0.323870% |
| MORGAN, Flavia H--TTEE | Loan Agreement | PAE1213 | 14-Aug-06 | 33,000.00 | 0.427509% |
| MORGAN, Flavia H--TTEE | Loan Agreement | PAE1228 | 15-Dec-06 | 11,000.00 | 0.142503% |

000185
000100

| | | | | | |
|---|---|---|---|---|---|
| MORGAN, Flavia H--TTEE | Loan Agreement | PAE1257 | 12-Apr-07 | 37,000.00 | 0.479328% |
| MORGAN, Flavia H--TTEE | Loan Agreement | PAE1281 | 10-Jun-07 | 30,000.00 | 0.388644% |
| MORGAN, Flavia H--TTEE | Loan Agreement | PAE1283 | 16-Jun-07 | 10,000.00 | 0.129548% |
| MORGAN, Flavia H--TTEE | Loan Agreement | SCIPA1353 | 22-May-08 | 17,000.00 | 0.220232% |
| MORGAN, Flavia H--TTEE | Loan Agreement | SCIPA1364 | 19-Aug-08 | 12,000.00 | 0.155458% |
| MORGAN, Flavia H--TTEE | Placement Agreement | PAE1030 | 13-Sep-04 | 12,000.00 | 0.155458% |
| MORGAN, Flavia H--TTEE | Placement Agreement | PAE1039 | 10-Nov-04 | 40,000.00 | 0.518192% |
| PARAYNO, Amelia | Loan Agreement | SCIPA1355 | 2-Jun-08 | 15,000.00 | 0.194322% |
| PARNES, Charles & Judith, Trustees | Loan Agreement | SCIPA1338 | 13-Jul-05 | 50,000.00 | 0.647740% |
| PERRY, Alan -- Cal Nat'l Bank Cust FBO Acct#CHN-0050 | Loan Agreement | SCIPA1360 | 2-Sep-08 | 15,000.00 | 0.194322% |
| PERRY, Ann Marie/Alan Wayne--TTEE , Perry Family Trust dtd Mar 5,2007 | Loan Agreement | SCIPA1359 | 11-Aug-08 | 15,000.00 | 0.194322% |
| PERRY, Ann Marie--TTEE , Perry Family Trust dtd Mar 5,2007 | Loan Agreement | PAE1246 | 14-May-07 | 53,000.00 | 0.686605% |
| PERRY, Ann Marie-- TTEE , Perry Family Trust dtd Mar 5,2007 | Reissued Placement Agreement | PAE1245 | 5-May-07 (date original Loan Agreement signed) | 200,000.00 | 2.590961% |
| PERRY, Ann Marie--TTEE Helen E. Nilsson Trst | Loan Agreement | SCIPA1343 | 1-May-08 | 9,000.00 | 0.116593% |
| PHILLIPS, Wayne & Gay | Loan Agreement | PAE1255 | 28-Jun-04 | 100,000.00 | 1.295480% |
| PHILLIPS, Wayne & Gay / Tsafaroff, Dorothy | Loan Agreement | PAE1256 | 28-Jun-04 | 105,000.00 | 1.360255% |
| PROVASI, Kenneth & Sharron--HW/JT | Placement Agreement | PAE998 | 17-May-07 | 114,959.00 | 1.489271% |

| Name | Type | ID | Date | Amount | Percent |
|---|---|---|---|---|---|
| PROVASI, Kenneth & Sharron--HW/JT | Placement Agreement | PAE894 | 15-Apr-03 | 400,000.00 | 5.181922% |
| PROVASI, Kenneth & Sharron--HW/JT | Loan Agreement | PAE1308 | 3-Aug-07 | 40,000.00 | 0.518192% |
| PROVASI, P. Josephine | Loan Agreement | SCII1145 | 7-Oct-05 | 275,000.00 | 3.562571% |
| QUINT, Susan | Loan Agreement | PAE1219 | 16-Aug-06 | 20,000.00 | 0.259096% |
| RADAVICH, Florence J. | Loan Agreement | PAE1230 | 14-Dec-06 | 89,729.00 | 1.162422% |
| RADAVICH, Stanley J. & Mary J. | Loan Agreement | PAE1097 | 14-Apr-05 | 7,131.00 | 0.092381% |
| RADAVICH, Stanley J. & Mary J. | Loan Agreement | PAE1186 | 9-Mar-06 | 20,000.00 | 0.259096% |
| RADAVICH, Stanley J. & Mary J. | Loan Agreement | PAE1225 | 6-Nov-06 | 10,000.00 | 0.129548% |
| RADAVICH, Stanley J. & Mary J. | Loan Agreement | PAE1247 | 16-Mar-07 | 18,620.00 | 0.241218% |
| RADAVICH, Stanley J. & Mary J. | Loan Agreement | PAE1271 | 17-May-07 | 13,000.00 | 0.168412% |
| SCHNEIDER, Richard & Pauline, TTEE | Loan Agreement | SCICG1327 | 14-Jan-08 | 400,000.00 | 5.181922% |
| SCHNEIDER, Richard & Pauline | Loan Agreement | SCIPA1366 | 15-Aug-08 | 100,000.00 | 1.295480% |
| SCHNEIDER, Richard & Pauline | Loan Agreement | PAE1233 | 18-Jan-07 | 300,000.00 | 3.886441% |
| SCHNEUDER, D. Richard | Loan Agreement | PAE1174 | 15-Feb-06 | 300,000.00 | 3.886441% |
| SELCER, Roscilla, TTEE | Loan Agreement | PAE1168 | 21-Feb-06 | 35,000.00 | 0.453418% |
| SELCER, Roscilla, TTEE | Loan Agreement | PA1210 | 17-Jul-06 | 50,000.00 | 0.647740% |
| SELCER, Roscilla, TTEE | Loan Agreement | PAE1260 | 11-Apr-07 | 45,000.00 | 0.582966% |
| SHARPLESS, Raymond G. & Marilyn G--TTEE | Loan Agreement | PAE1187 | 6-Mar-06 | 10,000.00 | 0.129548% |
| SHARPLESS, Raymond G. & Marilyn G--TTEE | Loan Agreement | PAE1259 | 11-Apr-07 | 10,000.00 | 0.129548% |

| SHARPLESS, Raymond G. & Marilyn G-- TTEE | Loan Agreement | SCIPA1325 | 16-Jan-08 | 20,000.00 | 0.259096% |
|---|---|---|---|---|---|
| SHARPLESS, Raymond G. & Marilyn G-- TTEE | Loan Agreement | PAE1279 | 9-Jun-07 | 10,000.00 | 0.129548% |
| SHARPLESS, Raymond G. & Marilyn G-- TTEE | Loan Agreement | PAE1290 | 13-Jan-04 | 14,000.00 | 0.181367% |
| SHARPLESS, Raymond G. & Marilyn G-- TTEE | Loan Agreement | PAE1291 | 6-Jun-04 | 15,000.00 | 0.194322% |
| SHARPLESS, Raymond G. & Marilyn G-- TTEE | Loan Agreement | SCIPA1358 | 16-Jul-08 | 20,000.00 | 0.259096% |
| SHARPLESS, Raymond TTEE FBO Lee J. Cramer | Loan Agreement | PAE1151 | 5-Dec-05 | 100,000.00 | 1.295480% |
| SHARPLESS, Raymond TTEE FBO Lee J. Cramer | Loan Agreement | PAE1188 | 6-Mar-06 | 20,000.00 | 0.259096% |
| SHARPLESS, Raymond TTEE FBO Lee J. Cramer | Loan Agreement | PAE1197 | 21-Mar-06 | 20,000.00 | 0.259096% |
| SHARPLESS, Raymond TTEE FBO Lee J. Cramer | Loan Agreement | PAE1218 | 14-Aug-06 | 20,000.00 | 0.259096% |
| SHARPLESS, Raymond TTEE FBO Lee J. Cramer | Loan Agreement | PAE1251 | 20-Mar-07 | 20,000.00 | 0.259096% |
| SHAW, Robert L & Rosa G. | Loan Agreement | PAE1156 | 16-Dec-05 | 15,000.00 | 0.194322% |
| SHIPPEY, William H. & Noelene N. | Loan Agreement | SCI1149 | 14-Nov-05 | 30,000.00 | 0.388644% |
| SHIPPEY, William H.-- Trustee Cornerstone | Loan Agreement | PAE1286 | 13-Jun-07 | 30,000.00 | 0.388644% |

| SHIPPEY, William H.-- Trustee Cornerstone | Loan Agreement | PAE1296 | 7-Jul-07 | 15,000.00 | 0.194322% |
|---|---|---|---|---|---|
| SHIPPEY, William H.-- Trustee Cornerstone | Loan Agreement | SCIPA1352 | 11-Jun-08 | 50,000.00 | 0.647740% |
| SHIPPEY, William H.-- Trustee Cornerstone Prod Inc | Loan Agreement | PAE1115 | 14-Jun-05 | 25,000.00 | 0.323870% |
| SHIPPEY, William H.-- Trustee Cornerstone Prod Inc | Loan Agreement | PA1209 | 1-Aug-06 | 30,000.00 | 0.388644% |
| SHIPPEY, William H.-- Trustee Cornerstone Prod Inc | Loan Agreement | PAE1236 | 23-Jan-06 | 25,000.00 | 0.323870% |
| SHIPPEY, William H.-- Trustee Cornerstone Prod Inc | Loan Agreement | PAE1248 | 21-Mar-07 | 25,000.00 | 0.323870% |
| SHIPPEY, William H.-- Trustee Cornerstone Prod Inc | Loan Agreement | PAE1263 | 23-Apr-07 | 20,000.00 | 0.259096% |
| SHIPPEY, William H.-- Trustee Cornerstone Prod Inc | Loan Agreement | PAE1269 | 12-May-07 | 25,000.00 | 0.323870% |
| SHIPPEY, William H.-- Trustee Cornerstone Prod Inc | Loan Agreement | SCIPA1363 | 1-Aug-08 | 15,000.00 | 0.194322% |
| SINQUIMANI, Carlos & Rosa Maria | Loan Agreement | SCIPA1351 | 15-May-08 | 112,924.60 | 1.462916% |
| SINQUIMANI, Manuel & Carlos | Loan Agreement | SCICG1318 | 10-Dec-07 | 100,000.00 | 1.295480% |
| SMITH, Dorothy Mae | Loan Agreement | PAE1305 | 1-Aug-07 | 20,000.00 | 0.259096% |
| SMITH, Dorothy Mae | Loan Agreement | SCIPA1374 | 30-Oct-08 | 5,000.00 | 0.064774% |

000189
000104

| SPEISSER, Edda | Loan Agreement | SCIPA1348 | 13-May-08 | 25,000.00 | 0.323870% |
|---|---|---|---|---|---|
| SPEISSER, Roland & Edda | Loan Agreement | PAE1172 | 8-Feb-06 | 20,000.00 | 0.259096% |
| SPEISSER, Roland & Edda | Loan Agreement | SCIPA1371 | 25-Sep-08 | 25,000.00 | 0.323870% |
| STERN, Rosalie, TTEE | Loan Agreement | PAE1173 | 15-Feb-06 | 40,000.00 | 0.518192% |
| STERN, Rosalie, TTEE | Loan Agreement | PAE1310 | 6-Aug-07 | 30,000.00 | 0.388644% |
| STILL William | Loan Agreement | SCIPA1350 | 19-May-08 | 25,000.00 | 0.323870% |
| STURNER, Frances | Reissued Loan Agreement | PAE1206 | 23-Jun-06 (date original Loan Agreement signed) | 25,000.00 | 0.323870% |
| WALES, E. Susan | Loan Agreement | PAE1262 | 27-Apr-07 | 100,000.00 | 1.295480% |
| WILSON, Ruth S Trustee of the Ruth S. Wilson Rev Trust | Loan Agreement | SCIPA1357 | 20-Jun-08 | 25,000.00 | 0.323870% |
| WONG, Eric M. K. | Loan Agreement | SCIPA1344 | 1-May-08 | 15,000.00 | 0.194322% |
| YOUNG, Benjamin F. & Hellen J. | Loan Agreement | PAE1164 | 21-Feb-06 | 35,000.00 | 0.453418% |
| YOUNG, Benjamin F. & Hellen J. | Loan Agreement | PAE1104 | 3-May-05 | 10,000.00 | 0.129548% |
| YOUNG, John J | Loan Agreement | PAE1138 | 19-Sep-05 | 25,000.00 | 0.323870% |

EXHIBIT B

## MMLLC Membership Interests Pledged by SCI Real Estate Investments, LLC

| MMLLC | Percentage of Interests in MMLLC Pledged by SCI LLC* |
|---|---|
| SCI Gateway at Denton Fund, LLC, a Delaware limited liability company | 4.441816% |
| Calabasas-Lubbock, LLC, a Delaware limited liability company | 7.189330% |
| SCI Gateway at Club Fund, LLC, a Delaware limited liability company | 64.419011% |
| SCI Gateway at Tempe Fund, LLC, a Delaware limited liability company | 14.593700% |
| SCI Verdae Fund, LLC, a Delaware limited liability company | 17.411160% |
| SCI Palmer Town Center Fund, LLC, a Delaware limited liability company | 59.025876% |
| SCI Austin Lights-Forest Fund, LLC, a Florida limited liability company | 2.233029% |
| SCI Sugarloaf-Rolando Fund, LLC, a Delaware limited liability company | 4.540829% |
| SCI Park Place Fund, LLC, a Delaware limited liability company | 11.490202% |
| 1313 Bundy, LLC, a Delaware limited liability company | 46.653356% |
| SCI Price Plaza Fund, LLC, a Delaware limited liability company | 14.932050% |
| SCI Commercial Center LLC, a Nevada limited liability company | 4.147657% |
| 14335 Burbank, LLC, a California limited liability company | 73.850341% |
| SCI Gateway on Apache Fund, LLC, a Delaware limited liability company | 40.856828% |
| SCI Deer Valley Village Fund, LLC, an Arizona limited liability company** | 9.580293% |
| SCI ITC South Fund, LLC, a Delaware limited liability company | 12.865937% |
| Woodland Hills-Chino, LLC, a California limited liability company | 0.133456% |
| 3535 Jasmine, LLC, a California limited liability company | 17.895469% |

*Represents less than the total interests in the MMLLC owned by SCI LLC or SCI INC., as applicable

**Owns indirect interests in two different properties

**MMLLC Membership Interests Pledged by Secured California Investments, Inc.**

| MMLLC | Percentage of Interests in MMLLC Pledged by SCI Inc.* |
|---|---|
| Calabasas-Lubbock, LLC, a Delaware limited liability company | 16.864620% |
| SCI Austin Lights-Forest Fund, LLC, a Florida limited liability company | 11.439536% |
| SCI Sugarloaf-Rolando Fund, LLC, a Delaware limited liability company | 22.729590% |
| Woodland Hills-Chino, LLC, a California limited liability company | 1.894425% |
| 7454 Haskell, LLC, a California limited liability company | 1.304108% |
| 1218 Armout, LLC, a Delaware limited liability company | 5.737322% |
| SCI Commercial Center LLC, a Nevada limited liability company | 4.362229% |
| SCI Deer Valley Village Fund, LLC, an Arizona limited liability company** | 13.935803% |
| SCI Duke Fund 11, LLC, a Delaware limited liability company | 16.694102% |
| SCI Duke Fund 12A, LLC, a Delaware limited liability company | 0.139756% |

*Represents less than the total interests in the MMLLC owned by SCI LLC or SCI INC., as applicable

**Owns indirect interests in two different properties

EXHIBIT C

Fees

1.  Deferred fee of $1,275,000 pursuant to Section 4.3.2 of that certain Co-Owners Agreement recorded December 8, 2006 as document number 20061608390 in the Official Records of Maricopa County, Arizona, by and among SCI Gateway at Tempe Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire fractional undivided interests in the Property and assume the rights and obligations thereunder by written instrument).

2.  Deferred fee of $635,000 pursuant to Section 4.3.2 of that certain Co-Owners Agreement recorded September 27, 2006 as document number 2006040552 in the Official Records of Lubbock County, Texas, by and among SCI Gateway at Lubbock Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire fractional undivided interests in the Property and assume the rights and obligations thereunder by written instrument).

3.  Deferred fee of $1,687,875 pursuant to Section 4.3.2 of that certain Tenants in Common Agreement recorded October 5, 2006 as file number 2006096170 in Book 20636 at Page 1630 in the Official Records of Morris County, New Jersey, by and among SCI ITC South Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire undivided tenant-in-common interests in the Property and assume the rights and obligations thereunder by written instrument).

4.  Deferred fee of $770,000 pursuant to Section 4.3.2 of that certain Tenants in Common Agreement by and among SCI Palmer Town Center Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire undivided tenant-in-common interests in the Property and assume the rights and obligations thereunder by written instrument).

<u>CONSENT OF MANAGERS/MANAGING MEMBERS</u>

The undersigned Managers and Managing Members, as applicable, of the MMLLCs each hereby consents to and accepts the foregoing pledge of Membership Interests.

**MANAGER of each of the following:**
**SCI Gateway at Denton Fund, LLC**
**Calabasas-Lubbock, LLC**
**SCI Gateway at Tempe Fund, LLC**
**SCI Palmer Town Center Fund, LLC**
**SCI Park Place Fund, LLC**
**SCI Price Plaza Fund, LLC**
**SCI ITC South Fund, LLC**
**1313 Bundy, LLC**
**1218 Armout, LLC**
**Woodland Hills-Chino, LLC**
**7454 Haskell, LLC**
**3535 Jasmine, LLC**

SCI FUND MANAGER, INC.,
a Virginia corporation

By: _____
Name: _____
Title: _____

**MANAGER of each of the following:**
**SCI Gateway at Club Fund, LLC**
**SCI Verdae Fund, LLC**
**SCI Austin Lights-Forest Fund, LLC**
**SCI Sugarloaf-Rolando Fund, LLC**
**SCI Gateway on Apache Fund, LLC**
**SCI Deer Valley Village Fund, LLC**

SCI FUND MANAGER I, LLC,
a Virginia limited liability company

By:    SCI Real Estate Investments, LLC,
       a Virginia limited liability company
Its:   Manager

By: _____
Name: _____
Title: _____

000194
000109

MANAGER of both of the following:
**SCI Duke Fund 11, LLC**
**SCI Duke Fund 12A, LLC**

SCI DUKE MM, LLC,
a Delaware limited liability company

By: _____
Name: _____
Title: _____

**MANAGING MEMBER of both of the following:**
**14335 Burbank, LLC**
**SCI Commercial Center LLC**

SECURED CALIFORNIA INVESTMENTS, INC.,
a California corporation

By: _____
Name: _____
Title: _____

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SCI Real Estate Investments, LLC | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 11620 Wilshire Blvd., Tenth Floor | Los Angeles | CA | 90025 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | Virginia | S141435 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Secured California Investments, Inc. | | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 11620 Wilshire Blvd., Tenth Floor | Los Angeles | CA | 90025 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Corporation | California | C1894398 | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**4. This FINANCING STATEMENT covers the following collateral:**

All of Debtor's right, title and interest in a portion of its membership and ownership interests in the entities listed on Schedule A (each, a "MMLLC" and collectively the "MMLLCs"), together with: (i) all Sale (defined below) proceeds therefrom; (ii) all Sale distributions, products, offspring, rents, revenues, issues, profits, royalties, income, benefits, additions and accessions to or of the foregoing; (iii) all replacements and substitutions of or for the foregoing; and (iv) all documents, instruments, certificates, agreements or other evidence of the foregoing, whether or not in written form, (collectively, the "Membership Interests Collateral"). "Sale" means a sale of either (a) all of the real property owned, directly or indirectly, by a MMLLC or (b) all or part of the Membership Interests. All of Debtor's right, title and interest in the Fees(defined below), together with: (i) all proceeds therefrom; (ii) all distributions, products, offspring, rents, revenues, issues, profits, royalties, income, benefits, additions and accessions to or of the foregoing; (iii) all replacements and substitutions of or for the foregoing; (iv) all books and records (in whatever form or media, including without limitation computerized records, software and disks) relating to any of the foregoing; (v) and all documents, instruments, certificates, agreements or other evidence of the foregoing, whether or not in written form, (collectively, the "Fee Collateral"; together with the Membership Interests Collateral, the "Collateral"). "Fees" means those certain Fees listed on Schedule B attached hereto.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Schedule A to UCC Financing Statement

**MMLLC Membership Interests Pledged by SCI Real Estate Investments, LLC**

| MMLLC | Percentage of Interests in MMLLC Pledged by SCI LLC* |
|---|---|
| SCI Gateway at Denton Fund, LLC, a Delaware limited liability company | 5.805110% |
| Calabasas-Lubbock, LLC, a Delaware limited liability company | 6.494146% |
| SCI Gateway at Club Fund, LLC, a Delaware limited liability company | 65.419011% |
| SCI Gateway at Tempe Fund, LLC, a Delaware limited liability company | 14.593700% |
| SCI Verdae Fund, LLC, a Delaware limited liability company | 17.411160% |
| SCI Palmer Town Center Fund, LLC, a Delaware limited liability company | 59.025876% |
| SCI Austin Lights-Forest Fund, LLC, a Florida limited liability company | 0.192012% |
| SCI Sugarloaf-Rolando Fund, LLC, a Delaware limited liability company | 4.341053% |
| SCI Park Place Fund, LLC, a Delaware limited liability company | 12.042715% |
| 1313 Bundy, LLC, a Delaware limited liability company | 46.653356% |
| SCI Price Plaza Fund, LLC, a Delaware limited liability company | 14.932050% |
| SCI Commercial Center LLC, a Nevada limited liability company | 3.147657% |
| 14335 Burbank, LLC, a California limited liability company | 73.980914% |
| SCI Gateway on Apache Fund, LLC, a Delaware limited liability company | 40.856828% |
| SCI Deer Valley Village Fund, LLC, an Arizona limited liability company** | 8.580294% |
| SCI ITC South Fund, LLC, a Delaware limited liability company | 12.865937% |
| Woodland Hills-Chino, LLC, a California limited liability company | 0.133456% |
| 3535 Jasmine, LLC, a California limited liability company | 17.895469% |

*Represents less than the total interests in the MMLLC owned by SCI LLC or SCI INC., as applicable

**Owns indirect interests in two different properties

**MMLLC Membership Interests Pledged by Secured California Investments, Inc.**

| MMLLC | Percentage of Interests in MMLLC Pledged by SCI Inc.* |
|---|---|
| Calabasas-Lubbock, LLC, a Delaware limited liability company | 17.864620% |
| SCI Austin Lights-Forest Fund, LLC, a Florida limited liability company | 20.006469% |
| SCI Sugarloaf-Rolando Fund, LLC, a Delaware limited liability company | 29.257827% |
| Woodland Hills-Chino, LLC, a California limited liability company | 1.894425% |
| 7454 Haskell, LLC, a California limited liability company | 1.304108% |
| 1218 Armout, LLC, a Delaware limited liability company | 5.737322% |
| SCI Commercial Center LLC, a Nevada limited liability company | 5.362229% |
| SCI Deer Valley Village Fund, LLC, an Arizona limited liability company** | 14.935803% |
| SCI Duke Fund 11, LLC, a Delaware limited liability company | 16.694102% |
| SCI Duke Fund 12A, LLC, a Delaware limited liability company | 0.139756% |

*Represents less than the total interests in the MMLLC owned by SCI LLC or SCI INC., as applicable

**Owns indirect interests in two different properties

000198
000113

Schedule B to UCC Financing Statement

Fees

1.  Deferred fee of $1,275,000 pursuant to Section 4.3.2 of that certain Co-Owners
    Agreement recorded December 8, 2006 as document number 20061608390 in the Official
    Records of Maricopa County, Arizona, by and among SCI Gateway at Tempe Fund,
    LLC, a Delaware limited liability company and the other signatories thereto (together
    with any other persons or parties who acquire fractional undivided interests in the
    Property and assume the rights and obligations thereunder by written instrument).

2.  Deferred fee of $635,000 pursuant to Section 4.3.2 of that certain Co-Owners Agreement
    recorded September 27, 2006 as document number 2006040552 in the Official Records
    of Lubbock County, Texas, by and among SCI Gateway at Lubbock Fund, LLC, a
    Delaware limited liability company and the other signatories thereto (together with any
    other persons or parties who acquire fractional undivided interests in the Property and
    assume the rights and obligations thereunder by written instrument).

3.  Deferred fee of $1,687,875 pursuant to Section 4.3.2 of that certain Tenants in Common
    Agreement recorded October 5, 2006 as file number 2006096170 in Book 20636 at Page
    1630 in the Official Records of Morris County, New Jersey, by and among SCI ITC
    South Fund, LLC, a Delaware limited liability company and the other signatories thereto
    (together with any other persons or parties who acquire undivided tenant-in-common
    interests in the Property and assume the rights and obligations thereunder by written
    instrument).

4.  Deferred fee of $770,000 pursuant to Section 4.3.2 of that certain Tenants in Common
    Agreement by and among SCI Palmer Town Center Fund, LLC, a Delaware limited
    liability company and the other signatories thereto (together with any other persons or
    parties who acquire undivided tenant-in-common interests in the Property and assume the
    rights and obligations thereunder by written instrument).

# EXHIBIT D

000200
000115

# SCI REAL ESTATE INVESTMENTS, LLC
## EXHIBIT 10a to SOFA
### COLLATERAL DESCRIPTION FOR 7/8/09 TRANSFER TO PRIVATE INVESTORS

<u>Membership Interests</u>:

SCI Real Estate Investments, LLC pledged a portion of its interests as a member in the following multi-member LLC's more particularly described below. Each entity owns a partial undivided interest as a tenant in common co-owner:

| MMLLC | Percentage of Interest Pledged |
|---|---|
| SCI Gateway at Denton Fund, LLC, a Delaware limited liability company | 4.441816% |
| Calabasas-Lubbock, LLC, a Delaware limited liability company | 7.189330% |
| SCI Gateway at Club Fund, LLC, a Delaware limited liability company | 64.419011% |
| SCI Gateway at Tempe Fund, LLC, a Delaware limited liability company | 14.593700% |
| SCI Verdae Fund, LLC, a Delaware limited liability company | 17.411160% |
| SCI Palmer Town Center Fund, LLC, a Delaware limited liability company | 59.025876% |
| SCI Austin Lights-Forest Fund, LLC, a Florida limited liability company | 2.233029% |
| SCI Sugarloaf-Rolando Fund, LLC, a Delaware limited liability company | 4.540829% |
| SCI Park Place Fund, LLC, a Delaware limited liability company | 11.490202% |
| 1313 Bundy, LLC, a Delaware limited liability company | 46.653356% |
| SCI Price Plaza Fund, LLC, a Delaware limited liability company | 14.932050% |
| SCI Commercial Center LLC, a Nevada limited liability company | 4.147657% |
| 14335 Burbank, LLC, a California limited liability company | 73.850341% |

116

Case 2:11-bk-15975-PC    Doc 20    Filed 03/09/11    Entered 03/09/11 17:55:28    Desc
Main Document    Page 202 of 243

# SCI REAL ESTATE INVESTMENTS, LLC
## EXHIBIT 10a to SOFA
## COLLATERAL DESCRIPTION FOR 7/8/09 TRANSFER TO PRIVATE INVESTORS

| | |
|---|---|
| SCI Gateway on Apache Fund, LLC, a Delaware limited liability company | 40.856828% |
| SCI Deer Valley Village Fund, LLC, an Arizona limited liability company** | 9.580293% |
| SCI ITC South Fund, LLC, a Delaware limited liability company | 12.865937% |
| Woodland Hills-Chino, LLC, a California limited liability company | 0.133456% |
| 3535 Jasmine, LLC, a California limited liability company | 17.895469% |

**Owns indirect interests in two different properties

2

117

000202
000117

# SCI REAL ESTATE INVESTMENTS, LLC

## EXHIBIT 10a to SOFA

## COLLATERAL DESCRIPTION FOR 7/8/09 TRANSFER TO PRIVATE INVESTORS

Deferred Acquisition Fees:

SCI Real Estate Investments, LLC (or a wholly-owned subsidiary) is contractually entitled to amounts identified as "deferred payments" which are described as fully earned at the time the subject property was acquired, but are payable at the time of sale or loan maturity. SCI Real Estate Investments, LLC pledged the following "deferred payments," only to the extent actually received, with the understanding that the actual amounts received at time of sale or refinancing upon loan maturity may be less than the full contractual entitlement as a result of inadequate proceeds or an agreement to reduce such fees in order to accommodate a sale or refinancing.

1. Deferred fee of $1,275,000 pursuant to Section 4.3.2 of that certain Co-Owners Agreement recorded December 8, 2006 as document number 2006160B390 in the Official Records of Maricopa County, Arizona, by and among SCI Gateway at Tempe Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire fractional undivided interests in the Property and assume the rights and obligations thereunder by written instrument).

2. Deferred fee of $635,000 pursuant to Section 4.3.2 of that certain Co-Owners Agreement recorded September 27, 2006 as document number 2006040552 in the Official Records of Lubbock County, Texas, by and among SCI Gateway at Lubbock Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire fractional undivided interests in the Property and assume the rights and obligations thereunder by written instrument).

3. Deferred fee of $1,687,875 pursuant to Section 4.3.2 of that certain Tenants in Common Agreement recorded October 5, 2006 as file number 2006096170 in Book 20636 at Page 1630 in the Official Records of Morris County, New Jersey, by and among SCI ITC South Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire undivided tenant-in-common interests in the Property and assume the rights and obligations thereunder by written instrument).

4. Deferred fee of $770,000 pursuant to Section 4.3.2 of that certain Tenants in Common Agreement by and among SCI Palmer Town Center Fund, LLC, a Delaware limited liability company and the other signatories thereto (together with any other persons or parties who acquire undivided tenant-in-common interests in the Property and assume the rights and obligations thereunder by written instrument).

3

118

000203
000118

# SECURED CALIFORNIA INVESTMENTS, INC.
## SOFA – EXHIBIT 10
## COLLATERAL DESCRIPTION FOR 7/8/09 TRANSFER TO PRIVATE INVESTORS

Membership Interests:

Secured California Investments, Inc. pledged a portion of its interests as a member in the following multi-member LLC's more particularly described below. Each entity owns a partial undivided interest as a tenant in common co-owner:

| MMLLC | Percentage of Interests Pledged |
|---|---|
| Calabasas-Lubbock, LLC, a Delaware limited liability company | 16.864620% |
| SCI Austin Lights-Forest Fund, LLC, a Florida limited liability company | 11.439536% |
| SCI Sugarloaf-Rolando Fund, LLC, a Delaware limited liability company | 22.729590% |
| Woodland Hills-Chino, LLC, a California limited liability company | 1.894425% |
| 7454 Haskell, LLC, a California limited liability company | 1.304108% |
| 1218 Armacost, LLC, a Delaware limited liability company | 5.737322% |
| SCI Commercial Center LLC, a Nevada limited liability company | 4.362229% |
| SCI Deer Valley Village Fund, LLC, an Arizona limited liability company** | 13.935803% |
| SCI Duke Fund 11, LLC, a Delaware limited liability company | 16.694102% |
| SCI Duke Fund 12A, LLC, a Delaware limited liability company | 0.139756% |

**Owns indirect interests in two different properties

74

000204
000119

# EXHIBIT E

000205
000120

PLEDGE AND SECURITY AGREEMENT

(Replacement Collateral)

This PLEDGE AND SECURITY AGREEMENT (this "Security Agreement") is dated as of October ___, 2010 (the "Effective Date"), by and between SCI Real Estate Investments, LLC, a Virginia limited liability company ("SCI LLC") and Secured California Investments, Inc., a California corporation ("SCI Inc."; together with SCI LLC, collectively, "Pledgor") and SCICG MEZZANINE FUND I, LLC, a Delaware limited liability company ("Lender" or "Beneficiary").

R E C I T A L S

A.    Lender and SCI CAPITAL GROUP, LLC, a California limited liability company (the "Borrower") are parties to that certain Loan, Pledge and Security Agreement entered into between the Lender and Borrower dated June 24, 2009 (the "Original Agreement"), as amended by that certain Amendment to Loan, Pledge and Security Agreements entered into effective as of June 24, 2009, as amended by that certain Second Amendment to Loan, Pledge and Security Agreements entered into effective as of the date hereof; collectively with the Original Agreement, the "SCI CG Agreement").

B.    Lender and SCI LLC are parties to that certain Loan, Pledge and Security Agreement entered into between the Lender and Borrower dated July 25, 2009, as amended by that certain Amendment to Loan, Pledge and Security Agreement entered into effective as of the date hereof (collectively, the "SCI LLC Agreement"; collectively with the SCICG Agreement, the "Agreement").

C.    To induce Lender to release the existing collateral provided for the Agreement, Pledgor has agreed to pledge certain collateral, as hereinafter provided.

NOW, THEREFORE, in consideration of the premises and mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **GRANT OF LIEN; PARTIAL RELEASES AND REALLOCATIONS.**

(a)    Pledgor hereby grants to beneficiary as security for "), as security for the obligations of Borrower under the Agreement and the Notes (collectively, the "Obligations"), but subject to the restrictions herein contained, a present and continuing security interest in and lien on all of its right, title and interest of Pledgor in and to the Membership Interests and Deferred Acquisition Fees more particularly described on Exhibit A, together with: (i) all proceeds therefrom; (ii) all distributions, products, offspring, rents, revenues, issues, profits, royalties, income, benefits, additions and accessions to or of the foregoing; (iii) all replacements and substitutions of or for the foregoing; and (iv) all documents, instruments, certificates, agreements or other evidence of the foregoing, whether or not in written form, (collectively, the "Collateral").

(b)    All of the Obligations shall be secured by all of the Collateral.

(c)    Upon sale, payment or other liquidation of any Collateral (or the underlying property interests, if the Collateral is a membership or other ownership interest), Available Sales Proceeds (as such term is defined in the Loan Modification Agreement) from any Collateral will be received and disbursed

000206
000121

for the benefit of Beneficiary in accordance with terms and conditions of the Loan Modification Agreement.

2.    **PERFECTION AND PROTECTION OF SECURITY INTEREST.**

(a)    The security interest granted herein is a pledge and security interest in and to the Collateral pursuant to the provisions of Article 9 of the Uniform Commercial Code as enacted in the State of California as in effect from time to time. To the extent any of the Collateral is in the form of a "certificated security" within the meaning of Article 8 of the Uniform Commercial Code, Pledgor shall deliver directly to Beneficiary (i) each such "certificated security" and (ii) all necessary stock or certificate powers, other powers, instruments of transfer or assignment, each undated and duly executed in blank, as Beneficiary may request. Beneficiary may (and is hereby authorized to) file with any filing office such financing statements, amendments, addenda, continuations, terminations, assignments and other records (whether or not executed by Pledgor) as Beneficiary may deem necessary in their sole discretion to perfect and to maintain perfected security interests in the Collateral. Such documents may designate Beneficiary as the secured party and Pledgor as the debtor, identify Beneficiary's security interest in the Collateral, and contain any other items required by law or deemed necessary by Beneficiary. Upon Beneficiary's request, Pledgor shall execute any such documents (whether or not required by law). Any such filings made by Beneficiary prior to Pledgor's execution of this Security Agreement are hereby authorized, ratified and confirmed by Pledgor. Pledgor shall, at its expense, perform all other steps requested by Beneficiary at any time to perfect, maintain, protect, and enforce the security interest granted herein, including:    (i) filing financing or continuation statements, and amendments thereof, in form and substance reasonably satisfactory to Beneficiary; and (ii) taking such other steps as are necessary or desirable to maintain and protect such security interest.

(b)    Upon the request of Beneficiary, Pledgor shall deliver to Beneficiary all Collateral consisting of negotiable documents, promptly after Pledgor receives the same.

3.    **REPRESENTATIONS AND WARRANTIES OF PLEDGOR.** Pledgor hereby represents and warrants to Beneficiary with respect to itself and the Collateral that now and until the payment and satisfaction in full of the Obligations:

(a)    Each of SCI LLC and SCI Inc. is a member of the indicated Ownership Entity, and is the owner of all of the indicated Membership Interests.

(b)    Pledgor has all requisite power and authority to execute, deliver and perform this Security Agreement and to consummate the transactions contemplated hereby, and to execute, deliver and perform its obligations under Pledgor's organizational and governance documents and this Security Agreement.

(c)    Pledgor's interest as a member of any Ownership Entity is not represented by any certificate.

(d)    Each of SCI LLC and SCI Inc. is the sole record, legal and beneficial owner of all of the indicated Collateral, and the Collateral is free and clear of any lien, mortgage, encumbrance, charge, pledge, security interest, or claim of any kind (including, without limitation, any unconditional sale or other title retention agreement) other than as created by this Security Agreement.

2

4.    **LIMITATION ON COLLATERAL.**

(a)    Subject to Section 1(c) herein, Pledgor shall not assign, pledge, or hypothecate the Membership Interests, or the Fees without the prior written consent of Beneficiary, which consent may be granted or withheld in Beneficiary's sole and absolute discretion.

(b)    Pledgor will not create, permit, or suffer to exist, and will defend the Collateral against, and take such other action as is necessary to remove, any lien on the Collateral, and will defend the right, title, and interest of Beneficiary in and to any of Pledgor's rights under the Collateral against the claims and demands of all persons whomsoever.

(c)    Pledgor will advise Beneficiary promptly, in reasonable detail of any lien or claim made or asserted against any of the Collateral.

(d)    Except as set forth above in Section 3, Beneficiary makes no representation or warranty whatsoever regarding the Collateral, the value of the Collateral, the ability of Pledgor to collect the Collateral, any of the Ownership Entities, or any property that may or may not be owned by any of the Ownership Entities. The values of the Membership Interests reflected in any documentation provided to Beneficiary represent Pledgor's original purchase price and the current values of the Membership Interests may be significantly higher or lower than Pledgor's initial investment. While SCI LLC is contractually entitled to receive the Deferred Acquisition Fees herein pledged, neither SCI LLC nor SCI Inc. makes any representation or warranty regarding the collectability or value of such Deferred Acquisition Fees, and specifically reserves the right to agree to a reduction in the amount due in order to accommodate a property sale, note payment or other transactions which will result in payment, in whole or in part, of amounts due. Beneficiary acknowledges that the Collateral may be subject to restrictions imposed by lenders of the respective Ownership Entities and/or their affiliates as well.

5.    **REMEDIES; RIGHTS UPON DEFAULT.**

(a)    In addition to all other rights and remedies granted to it under this Security Agreement, if any default under any of the Obligations shall have occurred and be continuing beyond applicable cure periods, Beneficiary may exercise all default rights and remedies of a secured party under the UCC. Without limiting the generality of the foregoing, Pledgor expressly agrees that in any such event Beneficiary, without demand of performance or other demand, advertisement, or notice of any kind (except the notice specified below of time and place of public or private sale) to or upon Pledgor or any other person (all and each of which demands, advertisement, and notices are hereby expressly waived to the maximum extent permitted by the UCC and other applicable law), may collect, receive, assemble, process, appropriate, and realize upon the Collateral, or any part thereof, and may forthwith assign, give an option or options to purchase, or sell or otherwise dispose of and deliver said Collateral (or contract to do so), or any part thereof, in one or more lots at a public or private sale or sales, at any exchange at such prices as it may deem acceptable, for cash or on credit or for future delivery without assumption of any credit risk. Beneficiary shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales, to purchase for the benefit of Beneficiary the whole or any part of said Collateral so sold, free of any right or equity of redemption, which equity of redemption Pledgor hereby releases. Such sales may be adjourned and continued from time to time with or without notice. Beneficiary shall have the right to conduct such sales on Pledgor's premises or elsewhere and shall have the right to use Pledgor's premises without charge for such time or times as Beneficiary deems necessary or advisable.

(b)    Pledgor further agrees, at Beneficiary's request, to assemble the Collateral and make it available to Beneficiary at a place or places designated by Beneficiary that are reasonably convenient to

000208
000123

Beneficiary and Pledgor, whether at Pledgor's premises or elsewhere. Until Beneficiary are able to effect a sale, lease, or other disposition of Collateral, Beneficiary shall have the right to hold or use Collateral, or any part thereof, to the extent that it deems appropriate for the purpose of preserving Collateral or its value or for any other purpose deemed appropriate by Beneficiary. Beneficiary shall have no obligation to Pledgor to maintain or preserve the rights of Pledgor as against third parties with respect to Collateral while Collateral is in the possession of Beneficiary. Beneficiary may, if they so elect, seek the appointment of a receiver or keeper to take possession of Collateral and to enforce any of Beneficiary's remedies with respect to such appointment without prior notice or hearing as to such appointment. To the maximum extent permitted by applicable law, Pledgor waives all claims, damages, and demands against Beneficiary arising out of the repossession, retention, or sale of the Collateral except such as arise solely out of the gross negligence or willful misconduct of any of the Beneficiary as finally determined by a court of competent jurisdiction. Pledgor agrees that ten (10) days' prior notice by Beneficiary of the time and place of any public sale or of the time after which a private sale may take place is reasonable notification of such matters. Pledgor shall remain liable for any deficiency if the proceeds of any sale or disposition of the Collateral are insufficient to pay all Obligations, including any attorneys' fees or other expenses incurred by Beneficiary to collect such deficiency.

      (c)     Except as otherwise specifically provided herein, Pledgor hereby waives presentment, demand, protest, or any notice (to the maximum extent permitted by applicable law) of any kind in connection with this Security Agreement or any Collateral.

      (d)     To the extent that applicable law imposes duties on Beneficiary to exercise remedies in a commercially reasonable manner, Pledgor acknowledges and agrees that it is not commercially unreasonable for Beneficiary: (a) to fail to incur expenses reasonably deemed significant by Beneficiary to prepare Collateral for disposition or otherwise to complete raw material or work in process into finished goods or other finished products for disposition; (b) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of; (c) to fail to exercise collection remedies against persons obligated on Collateral or to remove liens on or any adverse claims against Collateral; (d) to exercise collection remedies against persons obligated on Collateral directly or through the use of collection agencies and other collection specialists; (e) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature; (f) to contact other persons, whether or not in the same business as Pledgor, for expressions of interest in acquiring all or any portion of such Collateral; (g) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the Collateral is of a specialized nature; (h) to dispose of Collateral by utilizing internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capacity of doing so, or that match buyers and sellers of assets; (i) to dispose of assets in wholesale rather than retail markets; (j) to disclaim disposition warranties, such as title, possession or quiet enjoyment; (k) to purchase insurance or credit enhancements to insure Beneficiary against risks of loss, collection or disposition of Collateral or to provide to Beneficiary a guaranteed return from the collection or disposition of Collateral; or (l) to the extent deemed appropriate by Beneficiary, to obtain the services of other brokers, investment bankers, consultants, and other professionals to assist Beneficiary in the collection or disposition of any of the Collateral.

      (e)     Beneficiary shall not be required to make any demand upon, or pursue or exhaust any of their rights or remedies against, Pledgor, any other obligor, guarantor, pledgor, or any other person with respect to the payment of the Obligations or to pursue or exhaust any of their rights or remedies with respect to any collateral therefor or any direct or indirect guaranty thereof. Beneficiary shall not be required to marshal the Collateral for the Obligations or any guaranty of the Obligations or to resort to the Collateral or any such guaranty in any particular order, and all of its and their rights hereunder or under

4

any other document evidencing or securing any of the Obligations. To the extent it may lawfully do so, Pledgor absolutely and irrevocably waives and relinquishes the benefit and advantage of, and covenants not to assert against Beneficiary, any valuation, stay, appraisement, extension, redemption, or similar laws and any and all rights or defenses it may have as a surety now or hereafter existing that, but for this provision, might be applicable to the sale of any Collateral made under the judgment, order or decree of any court, or privately under the power of sale conferred by this Security Agreement, or otherwise.

6.    **LIMITATION ON BENEFICIARY'S DUTY IN RESPECT OF COLLATERAL.** Beneficiary shall use reasonable care with respect to the Collateral in their possession or under their control. Beneficiary shall have no other duty as to any Collateral in its possession or control or in the possession or control of any agent or nominee of Beneficiary, or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto.

7.    **MISCELLANEOUS.**

(a)    Consent. Any action on the part of the Beneficiary under this Security Agreement shall require the unanimous consent of Beneficiary.

(b)    Reinstatement. This Security Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against Pledgor for liquidation or reorganization, should Pledgor become insolvent or make an assignment for the benefit of any creditor or creditors, or should a receiver or trustee be appointed for all or any significant part of Pledgor's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee of the Obligations, whether as a "voidable preference," "fraudulent conveyance," or otherwise, all as though such payment or performance had not been made. In the event that any payment, or any part thereof, is rescinded, reduced, restored or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored, or returned.

(c)    Notices. Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration, or other communication shall or may be given to or served upon any of the parties by any other party, or whenever any of the parties desires to give and serve upon any other party any communication with respect to this Security Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and shall be given by personal delivery, electronically confirmed facsimile transmission, or nationally recognized overnight courier service, and shall be effective upon receipt (or the next business day following receipt, if delivered on a Saturday, Sunday, California state holiday, or United States national holiday), if delivered to the following addresses:

| | |
|---|---|
| If to Beneficiary to: | The most current address provided to Pledgor by the Beneficiary |
| If to Pledgor to: | SCI Real Estate Investments, LLC<br>11620 Wilshire Blvd., Tenth Floor<br>Los Angeles, CA 90025<br>Attention: President |
| | and to: |
| | Secured California Investments, Inc. |

5

000210
000125

11620 Wilshire Blvd., Tenth Floor
Los Angeles, CA 90025
Attention: President

(d)    Severability.  Whenever possible, each provision of this Security Agreement shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision of this Security Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Security Agreement.  This Security Agreement is to be read, construed, and applied together with the Agreement and the Notes, which, taken together, set forth the complete understanding and agreement of Beneficiary and Pledgor with respect to the matters referred to herein and therein.

(e)    No Waiver; Cumulative Remedies. Beneficiary shall not by any act, delay, omission, or otherwise be deemed to have waived any of its rights or remedies hereunder, and no waiver shall be valid unless in writing signed by Beneficiary, and then only to the extent therein set forth.  A waiver by Beneficiary of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Beneficiary would otherwise have had on any future occasion.  No failure to exercise nor any delay in exercising on the part of Beneficiary any right, power, or privilege hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or future exercise thereof or the exercise of any other right, power, or privilege.  The rights and remedies hereunder provided are cumulative and may be exercised singly or concurrently, and are not exclusive of any rights and remedies provided by law.  None of the terms or provisions of this Security Agreement may be waived, altered, modified, or amended except by an instrument in writing, duly executed by Beneficiary and Pledgor.

(f)    Limitation by Law.  This Security Agreement is to be governed by and construed in accordance with the laws of the State of California.  All rights, remedies, and powers provided in this Security Agreement may be exercised only to the extent that the exercise thereof does not violate any applicable provision of the Uniform Commercial Code as adopted in the State of California (as the context may require, the "UCC") and other applicable law, and all the provisions of this Security Agreement are intended to be subject to all applicable mandatory provisions of law that may be controlling and to be limited to the extent necessary so that they shall not render this Security Agreement invalid, unenforceable, in whole or in part, or not entitled to be recorded, registered, or filed under the provisions of any applicable law.

(g)    Termination of this Security Agreement.  Subject to Section 7(a) hereof, this Security Agreement shall terminate upon the payment and performance of all Obligations.  Beneficiary shall, upon the termination of this Security Agreement, terminate any financing statements of record with respect to this Security Agreement, at Pledgor's cost and expense.

(h)    Successors and Assigns.  This Security Agreement and all obligations of Pledgor hereunder shall be binding upon the successors and assigns of Pledgor (including any debtor-in-possession on behalf of Pledgor) and shall, together with the rights and remedies of Beneficiary, inure to the benefit of Beneficiary and all future holders of any instrument evidencing any of the Obligations and their respective successors and assigns. Pledgor may not assign, sell, hypothecate, or otherwise transfer any interest in or obligation under this Security Agreement.

(i)    Counterparts.  This Security Agreement may be authenticated in any number of separate counterparts, each of which shall collectively and separately constitute one and the same agreement.  This

6

000211
000126

Security Agreement may be authenticated by manual signature, facsimile or, if approved in writing by Beneficiary, electronic means, all of which shall be equally valid.

(j)  Waiver of Jury Trial. TO THE EXTENT PERMITTED BY APPLICABLE LAW, PLEDGOR AND BENEFICIARY EACH IRREVOCABLY WAIVE ALL OF THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS SECURITY AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING, OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR ANY AGENT-RELATED PERSON, PARTICIPANT, OR ASSIGNEE, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. PLEDGOR AND LENDER EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY.  WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM, OR OTHER PROCEEDING THAT SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS SECURITY AGREEMENT OR ANY PROVISION HEREOF.  THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS SECURITY AGREEMENT.

(k)  No Strict Construction. The parties hereto have participated jointly in the negotiation and drafting of this Security Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Security Agreement shall be construed as if drafted jointly by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Security Agreement.

(l)  Advice of Counsel; Business Relationship. Each of the parties represents to each other party hereto that it has discussed this Security Agreement with its counsel as it deems appropriate. Pledgor acknowledges that it and Beneficiary, as well as its respective officers, directors, or controlling persons, or its managers as appointed or elected by the members, have a preexisting business relationship. Beneficiary represents and warrants that by reason of its own business and financial experience and that of its officers, directors, members and professional advisers, it has the capacity to protect its own interests in connection with this Security Agreement and the transaction to which it relates.

*[document continues on next page]*

7

000212
000127

IN WITNESS WHEREOF, each of the parties hereto has caused this Security Agreement to be executed and delivered by its duly authorized officer as of the date first set forth above.

"PLEDGOR"

SCI REAL ESTATE INVESTMENTS, LLC,
a Virginia limited liability company

By: _____
Name: _____
Its: _____


SECURED CALIFORNIA INVESTMENTS, INC.,
a California corporation

By: _____
Name: _____
Its: _____

*[Signatures continue on next page]*

000213
000128

"LENDER"

SCICG MEZZANINE FUND I, LLC,
a Delaware limited liability company

By:  SCI Capital Group, LLC,
        a Delaware limited liability company,
        its Manager

        By:  SCI Real Estate Investments, LLC,
                a Virginia limited liability company,
                its Sole Member

                By: _____
                        Marc Paul, President

000214
000129

EXHIBIT A

Collateral

Membership Interests:

In each case, either SCI Real Estate Investments, LLC or (SCI,LLC) or Secured California Real Estate Investments, Inc. (SCI, Inc.) has agreed to pledge all or a portion of its interests as a member in the following entities more particularly described below. Each entity owns a partial undivided interest as a tenant in common co-owner of the subject Property:

| Property Name | Location | Asset Type | Ownership Entity | Ownership Agreement | Membership Interest: SCI, LLC | Membership Interest: SCI, Inc. |
|---|---|---|---|---|---|---|
| Western Ridge | Houston, TX | MF | SCI Western-Broadstone Fund, LLC | Amended and Restated Operating Agreement | 2.42913% | 12.633254% |

To the extent that only a portion of a membership interest is pledged, all receipts on account of that membership interest shall be allocated proportionately between that portion pledged, and that portion retained by Pledgor.

Deferred Acquisition Fees:

In each case, either SCI, LLC or SCI, Inc. (or a wholly-owned subsidiary) is contractually entitled to amounts identified as "deferred payment", amounts described as fully earned at the time the subject property was acquired, but only being payable at the time of sale or loan maturity. SCI, LLC and SCI, Inc. are pledging these payments only to the extent actually received, with the understanding that the actual amounts received at time of sale or refinancing upon loan maturity may be less that the full contractual entitlement as a result of inadequate proceeds or an agreement to reduce such fees in order to accommodate a sale or refinancing.

| Property Name | Location | Asset Type | Ownership Entity | Document providing for Fees | Amount of Fee |
|---|---|---|---|---|---|
| Austin City Lights | Austin, TX | MF | | Co-Owners Agreement | $1,150,000.00 |
| Chino Town Center | Chino, CA | Retail | Various Tenants in Common | Tenant-In-Common Agreement | $687,500.00 |

## CONSENT OF MANAGER

The undersigned Manager of the Ownership Entity hereby consents to and accepts the foregoing pledge of Membership Interests.

> **MANAGER of:**
> **SCI Western-Broadstone Fund, LLC**
>
> SCI FUND MANAGER I, LLC,
> a Virginia limited liability company
>
> By:    SCI Real Estate Investments, LLC,
>        a Virginia limited liability company
> Its:    Manager
>
> By: _____
> Name: _____
> Title: _____

000216
000131

| Name | Location | Date of Acq. | Asset Type | Number of Units/or Square Feet | Acquisition Price | Acquisition Cost | Current Principal (Loan Balance) | Year of Maturity | Original Cash Investment | SCI Deferred Acquisition Fee | SCI Deferred Acquisition Fee Assigned to Mezzanine Fund | SCI Equity | SCI Equity Assigned to Mezzanine Fund | SCI -Erwin Square Notes | SCI -Erwin Square Notes Assigned to Mezzanine Fund | TIC Equity | SCI, LLC Equity (at historical cost) | SCI, Inc. Equity (at historical cost) | Total LLC & Inc Equity (at historical cost) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Mult-Family Properties** | | | | | | | | | | | | | | | | | | | |
| Austin City Lights (Alexan City Lights) | Austin , TX | 7/17/2007 | MF | 352 | 49,116,500 | 50,863,996 | 29,900,000 | 2017 | 20,963,996 | 1,150,000 | 1,150,000 | 1,004,860 | 754,222 | - | - | 9,246,161 | 129,202 | 875,658 | 1,004,860 |
| Keystone at Alamo Heights | San Antonio, TX | 3/30/2007 | MF | 224 | 25,872,000 | 27,729,368 | 16,016,000 | 2017 | 11,713,368 | 616,000 | 616,000 | 454,634 | 412,067 | - | - | 7,456,623 | 1,000 | 453,634 | 454,634 |
| Mandalay at the Lake | Las Colinas, TX | 12/29/2006 | MF | 367 | 46,800,000 | 48,766,332 | 29,250,000 | 2016 | 19,516,332 | 1,125,000 | 1,125,000 | 195,163 | 185,423 | - | - | 18,542,316 | 195,163 | - | 195,163 |
| Reserve at St. Charles Place | Plano, TX | 5/18/2006 | MF | 264 | 32,917,500 | 34,342,000 | 20,475,000 | 2016 | 13,867,000 | 787,500 | | 138,670 | 127,518 | - | - | 12,751,760 | 138,670 | - | 138,670 |
| The Crescent at Alamo Heights | San Antonio, TX | 6/21/2007 | MF | 306 | 36,750,000 | 38,939,154 | 22,750,000 | 2017 | 16,189,154 | 875,000 | | 330,768 | 341,530 | - | - | 13,067,780 | 1,635 | 329,133 | 330,768 |
| Western Ridge | Houston, TX | | MF | | 28,875,000 | 30,888,935 | 17,875,000 | 2017 | 13,013,935 | 687,500 | 687,500 | 1,044,265 | 586,064 | - | - | 9,123,023 | 255,052 | 789,212 | 1,044,265 |
| **Total Multi-Family** | | | | | 220,331,000 | 231,529,785 | 136,266,000 | | 95,263,785 | 5,241,000 | 3,578,500 | 3,168,360 | 2,406,824.23 | - | - | 70,187,663 | 720,723 | 2,447,637 | 3,168,360 |
| **Retail Properties** | | | | | | | | | | | | | | | | | | | |
| Chino Towne Center | Chino, CA | | Retail | 117,419 | 28,737,500 | 29,708,653 | 16,500,000 | 2016 | 13,862,440 | 687,500 | | 272,849 | | - | - | 6,369,337 | 224,740 | 48,109 | 272,849 |
| Rockbridge Village | Stone Mountain, GA | 9/24/2007 | Retail | 102,432 | 18,669,280 | 19,523,858 | 11,500,000 | 2017 | 8,535,360 | 442,400 | 442,400 | 85,354 | | - | - | 8,450,006 | 85,354 | - | 85,354 |
| Verdae Village | Greenville, SC | 3/20/2008 | Retail | 241,548 | 29,499,750 | 30,377,249 | 17,520,000 | 2017 | 14,398,313 | 673,528 | 673,528 | 143,983 | | - | - | 13,616,272 | 143,983 | - | 143,983 |
| Walmart Way Crossing Shopping Ctr. | Chesapeake, VA | 7/14/2005 | Retail | 80,044 | 20,301,206 | 21,352,867 | 13,535,000 | 2015 | 7,817,867 | 386,690 | 386,690 | 4,382 | | - | - | 7,379,689 | 4,382 | - | 4,382 |
| **Total Retail** | | | | | 97,207,736 | 100,962,627 | 59,055,000 | | 44,613,980 | 2,190,118 | 1,502,618 | 506,568 | - | - | - | 35,815,304 | 458,459 | 48,109 | 506,568 |
| **Office Properties** | | | | | | | | | | | | | | | | | | | |
| Erwin Square | Durham, NC | 5/22/2003 | Office | 238,792 | 38,000,000 | 39,990,000 | 25,226,751 | 2013 | 11,990,000 | 1,206,000 | | 449,600 | | 8,076,000 | 2,692,000 | 7,413,296 | - | 449,600 | 449,600 |
| **Total Office** | | | | | 38,000,000 | 39,990,000 | 25,226,751 | | 11,990,000 | 1,206,000 | | 449,600 | - | 8,076,000 | 2,692,000 | 7,413,296 | - | 449,600 | 449,600 |
| **Development Site** | | | | | | | | | | | | | | | | | | | |
| Coronado | San Diego, CA | 11/20/2007 | Land | 5.14 Acres | 3,650,000 | 4,371,430 | - | 0 | 4,371,430 | | | 4,371,430 | 2,500,000 | | | - | - | - | - |
| **Total Development Site** | | | | | 3,650,000 | 4,371,430 | - | | 4,371,430 | - | - | 4,371,430 | 2,500,000 | - | - | - | - | - | - |
| | | | | | | | | | | | | | | | | | | | |
| **Grand Totals** | | | | | 359,188,736 | 376,853,842 | 220,547,751 | - | 156,239,195 | 8,637,118 | 5,081,118 | 8,495,958 | 4,906,824 | 8,076,000 | 2,692,000 | 113,416,263 | 1,179,182 | 2,945,346 | 4,124,528 |

Total Collateral Assigned to Mezzanine Fund        12,679,941.87

# **EXHIBIT F**

000218
000133

SCI REAL ESTATE INVESTMENTS, LLC
EXHIBIT 10b to SOFA
COLLATERAL DESCRIPTION FOR 12/28/10 TRANSFER TO MEZZANINE INVESTORS

Deferred Acquisition Fees:

SCI Real Estate Investments, LLC (or a wholly-owned subsidiary) is contractually entitled to amounts identified as "deferred payments" which are described as fully earned at the time the subject property was acquired, but are payable at the time of sale or loan maturity. SCI Real Estate Investments, LLC pledged the following "deferred payments," only to the extent actually received, with the understanding that the actual amounts received at time of sale or refinancing upon loan maturity may be less than the full contractual entitlement as a result of inadequate proceeds or an agreement to reduce such fees in order to accommodate a sale or refinancing.

| Property Name | Location | Asset Type | Ownership Entity | Document providing for Fees | Amount of Fee |
|---|---|---|---|---|---|
| Keystone at Alamo Heights | San Antonio, TX | MF | | Co-Owners Agreement | $616,000.00 |
| Mandalay at the Lake | Las Colinas, tX | MF | | Co-Owners Agreement | $1,125,000.00 |
| Rockbridge Village | Stone Mountain, GA | Retail | Various Tenants in Common | Co-Owners Agreement | $442,400.00 |
| Verdae Village | Greenville, SC | Retail | | Co-Owners Agreement | $673,528.00 |
| Walmart Way Crossing Center | Chesapeake, MD | Retail | | Co-Owners Agreement | $386,689.64 |

2

77002-002\DOCS_LA:234018.2

000219
000134

# SCI REAL ESTATE INVESTMENTS, LLC
## EXHIBIT 10b to SOFA
# COLLATERAL DESCRIPTION FOR 12/28/10 TRANSFER TO MEZZANINE INVESTORS

Membership Interests:

SCI Real Estate Investments, LLC pledged all or a portion of its interests as a member in the following entities more particularly described below. Each entity owns a partial undivided interest as a tenant in common co-owner of the subject Property:

| Property Name | Location | Asset Type | Ownership Entity | Ownership Agreement | Membership Interest |
|---|---|---|---|---|---|
| The Crescent at Alamo Heights | San Antonio, TX | MF | SCI Plaza at Punete Hills Fund, LLC | Amended and Restated Operating Agreement | 0.388347% |
| The Crescent at Alamo Heights | San Antonio, TX | MF | SCI Crescent-Jade Fund 5, LLC | Amended and Restated Operating Agreement | 0.022976% |
| The Crescent at Alamo Heights | San Antonio, TX | MF | SCI Crescent-Jade Fund 7, LLC | Amended and Restated Operating Agreement | 0.034817% |
| Keystone at Alamo Heights | San Antonio, TX | MF | SCI Keystone-Country Fund, LLC | Amended and Restated Operating Agreement | 0.023492% |
| Mandalay on the Lake | Las Colinas, TX | MF | SCI Mandalay Fund, LLC | Limited Liability Company Agreement | 19.03699% |
| Reserve at Charles Place | Plano, TX | MF | SCI Reserve at Charles Place Fund, LLC | Limited Liability Company Agreement | 11.4341% |

\* MF = Multi-Family

To the extent that only a portion of a membership interest was pledged, all receipts on account of that membership interest are allocated proportionately between that portion pledged and that portion retained by SCI Real Estate Investments, LLC.

77002-002\DOCS_LA:234018.2

138

000220
000135

# SECURED CALIFORNIA INVESTMENTS, INC.
## SOFA – EXHIBIT 10
## COLLATERAL DESCRIPTION FOR 12/28/10 TRANSFER TO MEZZANINE INVESTORS

Membership Interests:

Secured California Investments, Inc. pledged all or a portion of its interests as a member in the following entities more particularly described below. Each entity owns a partial undivided interest as a tenant in common co-owner of the subject Property:

| Property Name | Location | Asset Type | Ownership Entity | Ownership Agreement | Membership Interest |
|---|---|---|---|---|---|
| Austin City Lights | Austin, TX | MF* | SCI Austin Lights-Forest Fund, LLC | Amended and Restated Operating Agreement | 6.436533% |
| The Crescent at Alamo Heights | San Antonio, TX | MF | SCI Plaza at Punete Hills Fund, LLC | Amended and Restated Operating Agreement | 9.301667% |
| The Crescent at Alamo Heights | San Antonio, TX | MF | SCI Crescent-Jade Fund 5, LLC | Amended and Restated Operating Agreement | 8.041461% |
| The Crescent at Alamo Heights | San Antonio, TX | MF | SCI Crescent-Jade Fund 7, LLC | Amended and Restated Operating Agreement | 0.686439% |
| Keystone at Alamo Heights | San Antonio, TX | MF | SCI Keystone-Country Fund, LLC | Amended and Restated Operating Agreement | 9.680324% |

* MF = Multi-Family

To the extent that only a portion of a membership interest was pledged, all receipts on account of that membership interest are allocated proportionately between that portion pledged and that portion retained by Secured California Investments, Inc.

77002-002\DOCS_LA:234037.2

93

# SECURED CALIFORNIA INVESTMENTS, INC.
## SOFA – EXHIBIT 10
## COLLATERAL DESCRIPTION FOR 12/28/10 TRANSFER TO MEZZANINE INVESTORS

Promissory Notes:

In each case, Secured California Investments, Inc. pledged one-third (1/3) of the proceeds from each of the following unsecured promissory notes, subject to collection, with the understanding that payment may be deferred beyond the stated maturity date in the event that the underlying property has not been sold at time of maturity, and the actual amounts received at time of final payment may be less than the full principal as a result of inadequate sales proceeds or an agreement to reduce such amounts in order to accommodate a sale.

| Promissory Note | Maker | Principal Amount | Interest Rate | Maker | Maturity Date |
|---|---|---|---|---|---|
| Promissory Note dated January 1, 2006 | All of the tenant in common owners of First Union Plaza | $1,200,000 | Waived. | TIC Owners | Due on sale of the property commonly known as First Union Plaza |
| Promissory Note dated January 1, 2006 | All of the tenant in common owners of First Union Plaza | $1,000,000 | Waived. | TIC Owners | Due on sale of the property commonly known as First Union Plaza |
| Promissory Note dated June 1, 2007 | All of the tenant in common owners of First Union Plaza | $300,000 | Waived. | TIC Owners | Due on sale of the property commonly known as First Union Plaza |
| Promissory Note dated June 1, 2007 | All of the tenant in common owners of First Union Plaza | $3,351,000 | Waived. | TIC Owners | Due on sale of the property commonly known as First Union Plaza |
| Promissory Note dated June 1, 2007 | All of the tenant in common owners of First Union Plaza | $2,225,000 | Waived. | TIC Owners | Due on sale of the property commonly known as First Union Plaza |

To the extent that only a portion of a promissory note was pledged, or additional promissory notes remain outstanding from the same maker, all receipts on account of those promissory notes are allocated proportionately between that portion pledged and that portion retained by Secured California Investments, Inc.

2

77002-002\DOCS_LA:234037.2

94

000222
000137

# EXHIBIT G

000223

SCI Cash Flow - COMBINED INC + LLC
FIVE-YEAR HORIZON (2012 TO 2016)
**PROJECTION - ILLUSTRATIVE ONLY**

| | 2012 | 2013 | 2014 | 2015 | 2016 | |
|---|---|---|---|---|---|---|
| **BEGINNING OF YEAR CASH BALANCE** | 709,400 | 38,343 | 6,529,930 | 5,694,829 | 5,141,326 | |
| **CASH RECEIPTS** | | | | | | |
| Distributions from MMLLC - LLC and Inc | 21,600 | 21,600 | 21,600 | 21,600 | 21,600 | |
| Deferred Acquisiton Fees | 0 | 0 | 0 | 0 | 0 | Zeroed out for DS purposes.  See tab titled Deferred Compensation. |
| Return of Equity on Sale of Assets | 0 | 0 | 0 | 0 | 0 | Zeroed for DS purposes |
| Coronado Note | | | | | | Zeroed for DS purposes |
| Duke loan recovery at sale of property | 0 | 8,186,968 | | | | Forecast midyear sale date only and recovery of full loan amount |
| Cash available at subsidiary level | 504,451 | | | | | Need to merge subsidiaries into SCI LLC |
| Palmer Town Tax Escrow Recovery | 910,285 | | | | | Maintained in separate escrow account. Assumed recovered in April 2012. |
| Advances on Exit Financing LOC | 600,000 | 750,000 | 0 | 0 | 0 | Available commitment is up to $3,000,000 for 36 months. |
| **TOTAL ESTIMATED CASH SOURCES** | 2,036,336 | 8,958,568 | 21,600 | 21,600 | 21,600 | |
| **CASH DISBURSEMENTS** | | | | | | |
| **Operations** | | | | | | |
| Payroll, | 179,712 | 167,220 | 172,000 | 120,000 | 120,000 | |
| Payroll Taxes | 14,197 | 13,210 | 13,588 | 9,480 | 9,480 | |
| Work Comp | 899 | 836 | 860 | 600 | 600 | |
| Health Insurance | 85,074 | 44,168 | 45,577 | 19,805 | 20,434 | |
| Rent | 102,450 | 40,500 | 41,715 | 42,966 | 44,255 | |
| Parking | 10,148 | 5,400 | 5,400 | 5,400 | 5,400 | |
| Utilities | 2,400 | 2,400 | 2,400 | 2,400 | 2,400 | |
| Accounting Services - Tax | 28,000 | 28,840 | 29,705 | 30,596 | 31,514 | |
| Contract Services | 36,000 | 28,800 | 21,600 | 12,000 | 12,000 | |
| Licensing & State Fees | 5,055 | 5,055 | 5,055 | 5,055 | 5,055 | |
| Insurance | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | |
| Yardi licenses | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | |
| Office Supplies, Printing & Postage | 700 | 700 | 700 | 700 | 700 | |
| Off Site Storage | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | |
| LLC Cash Calls | 28,888 | 30,000 | 30,000 | 30,000 | 30,000 | |
| Income Tax LLC & S-Corp - State Min Fees | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | |
| **Total Disbursements for Operations** | 516,623 | 390,231 | 391,701 | 302,103 | 304,939 | |
| **BK Distributions** | | | | | | |
| **Administrative Claims** | | | | | | |
| Benchmark Bank LOC costs, interest & repay | 100,000 | 1,413,750 | 0 | 0 | 0 | |
| Professional Fees - Legal | 1,097,576 | 240,000 | 162,000 | 90,000 | 24,000 | |
| Professional Fees - Creditor's Committee | 239,132 | 50,000 | 50,000 | 50,000 | 50,000 | |
| CRO Fees | 501,140 | 360,000 | 240,000 | 120,000 | 90,000 | |
| UST & Clerk Fees | 15,600 | 13,000 | 13,000 | 13,000 | 13,000 | |
| **Total Admin Claims** | 1,953,447 | 2,076,750 | 465,000 | 273,000 | 177,000 | |
| **Priority Tax Claims** | | | | | | |
| IRS SCI | 2,400 | | | | | |
| IRS SCI | 1,887 | | | | | |
| FTB | 800 | | | | | |
| City of LA | 232,235 | | | | | |
| EDD | 0 | | | | | |
| **Total Estimated Priority Tax Claims** | 237,323 | | | | | |

| | | | | |
|---|---|---|---|---|
| Class 1 - Secured Claims - 2009 Pledge | | | | No distributions assumed for purposes of DS |
| Class 2 - Secured Claims - Collateralized | | | | No distributions assumed for purposes of DS |
| Class 3 - Unsecured - Priority Wages | | | | No distributions assumed for purposes of DS |
| Class 4 - Unsecured - General | | | | No distributions assumed for purposes of DS |

| | | | | |
|---|---|---|---|---|
| **Claims Disbursement** | 237,323 | 0 | 0 | 0 | 0 |
| **TOTAL ESTIMATED CASH USES** | 2,707,393 | 2,466,981 | 856,701 | 575,103 | 481,939 |
| **END OF YEAR CASH BALANCE** | 38,343 | 6,529,930 | 5,694,829 | 5,141,326 | 4,680,987 |

000225

**NOTES TO PROJECTION**

Assumes Duke notes (Erwin Square) collected in full by mid-year 2013

Assumes Palmer Town escrow balance recovered in full in 2012

Assumes exit financing is funded and full satisfaction of advances under line in July 2013

Although expected, cash sources to be received from deferred fees, distributions associated with equity interest, and other assets omitted due to uncertainty in collection and timing

Administrative expenses are highly estimated

No disbursements are reflected for distributions besides administrative and tax claims

# <u>EXHIBIT 2</u>

# Intentionally Omitted

# **EXHIBIT 3**

000228 000071

SCI Real Estate Invstmts, LLC (9900a)

# Balance Sheet (With Period Change)

Period = Dec 2009
Book = Accrual

| | Balance Current Period |
|---|---|
| 1000-0000 ASSET | |
| 1100-0000 CASH | |
| 1111-0000 Operating Cash 1 | 66,822.62 |
| 1113-0000 Operating Cash 3 | 8,848.66 |
| 1114-0000 Operating Cash 4 | 0.00 |
| 1115-0000 Operating Cash 5 | 0.00 |
| 1116-0000 Operating Cash 6 | 6,108.75 |
| 1150-0000 Petty Cash | 500.00 |
| 1159-9999 TOTAL CASH | 82,280.03 |
| 1200-0000 ACCOUNTS RECEIVABLE | |
| 1210-0000 Accounts Receivable | 7,400.66 |
| 1212-0000 Accounts Receivable-WIP | 35,565.34 |
| 1215-0000 Accounts Receivable-Intercompany | 573,112.14 |
| 1220-0000 Fees Receivable | 94,435.17 |
| 1249-9999 TOTAL ACCOUNTS RECEIVABLE | 710,513.31 |
| 1250-0000 DUE FROM AFFILIATES | |
| 1255-0000 Due from shareholders/members | 4,752.04 |
| 1299-9999 TOTAL DUE FROM AFFILIATES | 4,752.04 |
| 1300-0000 NOTES RECEIVABLE | |
| 1320-0000 Notes Receivable-Related Party | 15,676,841.62 |
| 1339-9999 TOTAL NOTES RECEIVABLE | 15,676,841.62 |
| 1400-0000 LOANS RECEIVABLE | |
| 1410-0000 Loans to Properties | 0.00 |
| 1450-0000 Loans to LLC's | 82,260.57 |
| 1470-0000 Loans Receivable | 25,000.00 |
| 1499-9999 TOTAL LOANS RECEIVABLE | 107,260.57 |
| 1500-0000 PREPAID EXPENSES | |
| 1510-0000 Prepaid Insurance | 7,864.44 |
| 1530-0000 Prepaid Expenses-Other | 2,138.42 |
| 1559-9999 TOTAL PREPAID EXPENSES | 10,002.86 |
| 1699-9999 TOTAL CURRENT ASSETS | 10,002.86 |
| 1700-0000 ESCROW DEPOSITS | |
| 1730-0000 Escrow Deposits | 910,285.26 |
| 1749-9999 TOTAL ESCROW DEPOSITS | 910,285.26 |
| 1750-0000 INVESTMENTS IN LLC's | |
| 1755-0000 Capital Contributions | 9,357,315.38 |
| 1760-0000 Capital Distributions | -118,498.42 |
| 1770-9999 TOTAL INVESTMENTS IN LLC'S | 9,238,816.96 |
| 1780-0000 PROPERTY HELD FOR SALE | |
| 1782-0000 Investment in Property Held for Sale | 0.00 |
| 1783-0000 Advances to Real Estate Investments | 2,755,158.73 |
| 1784-0000 Income/(Loss) from Inventory | 0.00 |
| 1789-9998 TOTAL PROPERTY HELD FOR SALE | 2,755,158.73 |
| 1800-0000 FIXED ASSETS | |
| 1810-0000 Leasehold Improvements | 209,903.28 |
| 1820-0000 A/D-Leasehold Improvements | -173,539.28 |
| 1830-0000 Furniture & Fixtures | 211,390.91 |
| 1835-0000 A/D-Furniture & Fixtures | -194,002.29 |
| 1840-0000 Office/Computer Equipment | 465,241.81 |
| 1845-0000 A/D-Office Equipment | -409,139.57 |
| 1855-9999 TOTAL FIXED ASSETS (NET) | 109,854.86 |
| 1899-0000 OTHER ASSETS | |
| 1920-0000 Leasehold Deposits | 6,154.00 |
| 1930-0000 Deferred Fees Receivable | 34,433,222.64 |
| 1932-0000 Credit Enhancement Fee Receivable | 1,078,350.00 |

000229 000072

SCI Real Estate Invstmts, LLC (9900a)
## Balance Sheet (With Period Change)
Period = Dec 2009
Book = Accrual

|  |  | Balance Current Period |
|---|---|---|
| 1934-0000 | Discount-Deferred Fees | -2,718,050.87 |
| 1936-0000 | Discount-Credit Enhancement Fees | 0.00 |
| 1998-9999 | TOTAL OTHER ASSETS | 32,799,675.77 |
| 1999-9999 | **TOTAL ASSETS** | **62,405,442.01** |
| 2100-0000 | CURRENT LIABILITIES |  |
| 2110-0000 | Accounts Payable | 264,351.85 |
| 2120-0000 | Mezz Interest Payable | 152,194.34 |
| 2130-0000 | Other Liabilities | 123,200.33 |
| 2132-0000 | Other Liabilities-Intercompany | 0.00 |
| 2138-0000 | Security Deposits | 0.00 |
| 2145-0000 | Due to Related Party | 2,566,000.00 |
| 2150-0000 | PAYROLL LIABILITIES |  |
| 2167-0000 | Other Salary Deductions | 0.00 |
| 2175-0000 | Accrued Vacation | 0.00 |
| 2185-0000 | Accrued 401k Contribution | 0.00 |
| 2190-0000 | Payroll Suspense | -679.37 |
| 2198-9999 | TOTAL PAYROLL LIABILITIES | -679.37 |
| 2199-9999 | TOTAL CURRENT LIABILITIES | 3,105,067.15 |
| 2300-0000 | NOTES PAYABLE |  |
| 2310-0000 | Placement Agreements | 6,049,684.60 |
| 2325-0000 | Note Payable-Accrued Rent | 467,377.76 |
| 2330-0000 | Stock Redemption Payable | 0.00 |
| 2339-9999 | TOTAL NOTES PAYABLE | 6,517,062.36 |
| 2500-0000 | BANK LOANS |  |
| 2510-0000 | First Regional Bank LOC1 | 15,000,000.00 |
| 2511-0000 | First Regional Bank LOC2 | 3,000,000.00 |
| 2520-0000 | Wachovia LOC1 | 3,555,685.00 |
| 2530-0000 | Other Loans Payable | 0.00 |
| 2599-9999 | TOTAL BANK LOANS | 21,555,685.00 |
| 2999-9999 | **TOTAL LIABILITIES** | **31,177,814.51** |
| 3000-0000 | EQUITY |  |
| 3040-0000 | Distributions to Owners | -7,569,704.60 |
| 3050-0000 | Contributions from Owners | -3,265,000.00 |
| 3200-0000 | Retained Earnings | 42,062,332.10 |
| 3998-9999 | **TOTAL EQUITY** | **31,227,627.50** |
| 3999-9999 | **TOTAL LIABILITIES & EQUITY** | **62,405,442.01** |

000230 000073

SCI Real Estate Invstmts, LLC (9900a)

## Income Statement

Period = Jan 2009-Dec 2009

Book = Accrual

| | | Year to Date |
|---|---|---:|
| 4000-0000 | **INCOME** | |
| 4020-0000 | Acquisition Fees | 140,008.00 |
| 4050-0000 | Asset Management Fees | 34,555.99 |
| 4060-0000 | Leasing Commissions | 19,128.61 |
| 4160-0000 | Miscellaneous Income | 102,250.00 |
| 4200-0000 | Interest Income | 5,322.58 |
| 4210-0000 | Interest Income-Intercompany | 345,168.05 |
| 4250-0000 | Interest Income-Discounts(fees) | 1,386,706.74 |
| 4450-0000 | LLC Distributions | 156,579.64 |
| 4455-0000 | Rental Income/(Loss)-Net | 667.60 |
| 4531-0000 | Gain/(Loss)-Investments | -27,969.12 |
| 4999-9999 | **TOTAL INCOME** | **2,162,418.09** |
| 6000-0000 | **EXPENSES** | |
| 6010-0000 | PERSONNEL COSTS | |
| 6011-0000 | Wages | |
| 6015-0000 | Base Salary | 417,046.55 |
| 6032-0000 | Bonus-Incentive | 47,307.62 |
| 6035-0000 | Overtime | 3,079.26 |
| 6036-0000 | Severance | 291,270.50 |
| 6039-0000 | Total Wages | 758,703.93 |
| 6040-0000 | Employer Taxes & Insurance | |
| 6041-0000 | Employer FICA Taxes | 49,861.74 |
| 6042-0000 | Employer Medicare Taxes | 12,227.33 |
| 6043-0000 | Employer FUTA Taxes | 950.84 |
| 6044-0000 | Employer SUI Taxes | 6,914.55 |
| 6046-0000 | Worker's Compensation | 2,057.51 |
| 6047-0000 | Total Employer Taxes & Insurance | 72,011.97 |
| 6050-0000 | Employee Benefits | |
| 6051-0000 | Employee Health Care | 106,990.00 |
| 6053-0000 | Employee Dental | 8,846.40 |
| 6056-0000 | Employee Disability | 5,633.03 |
| 6057-0000 | Employee Life Insurance | 14,238.85 |
| 6058-0000 | Employee 401 K Contributions | -63,000.00 |
| 6060-9999 | Total Employee Benefits | 72,708.28 |
| 6065-0000 | Other Employee Costs | |
| 6069-0000 | Payroll Service | 4,567.89 |
| 6071-0000 | Employee Benefit Plan Expense | 11,216.04 |
| 6073-0000 | Education & Training | -90.48 |
| 6077-0000 | Misc Employee Costs | 2,229.85 |
| 6079-9999 | Total Other Employee Costs | 17,923.30 |
| 6080-0000 | Outside Services | |
| 6081-0000 | Outside Services | 298,730.96 |
| 6083-0000 | Outside Services/Consulting (temp) | 40,942.95 |
| 6085-0000 | Total Outside Services | 339,673.91 |
| 6090-0000 | Guaranteed Payments | 480,000.00 |
| 6099-9999 | TOTAL PERSONNEL COSTS | 1,741,021.39 |
| 6100-0000 | EQUITY RAISE COMMISSION | |
| 6111-0000 | In House Brokers | 207,870.54 |
| 6112-0000 | Outside Brokers | 100,226.62 |
| 6114-0000 | Finder's Fee | 2,350.94 |
| 6115-0000 | Equity Commission (payroll) | 8,815.33 |
| 6120-9999 | TOTAL EQUITY RAISE COMMISSION | 319,263.43 |
| 6202-0010 | Property Promotion (Property) | 6,074.16 |
| 6202-0015 | Investor Promotion (General) | 18,630.14 |
| 6202-9999 | Investor Relations | 24,704.30 |
| 6204-0015 | Attendee Registration | 1,200.00 |
| 6204-0035 | Display Shipping & Storage | 2,081.17 |
| 6204-0045 | Program/Directory Advertising | 1,800.00 |
| 6204-0055 | Promotional Support | 124.49 |
| 6204-0060 | Misc. Conventions/Seminars | 375.00 |
| 6204-9999 | Conventions & Seminars | 5,580.66 |

000231 000074

SCI Real Estate Invstmts, LLC (9900a)

## Income Statement

Period = Jan 2009-Dec 2009
Book = Accrual

|  |  | Year to Date |
|---|---|---:|
| 6206-0020 | Web Site Links & Banner Ads | 480.00 |
| 6206-0025 | Web Site Design & Maint. | 850.00 |
| 6206-0030 | Hosting Services | 2,968.36 |
| 6206-9999 | Advrtsg (Web/Electronic/Video) | 4,298.36 |
| 6208-0030 | Misc. Advertising Production | 210.00 |
| 6208-9999 | Advertising Production | 210.00 |
| 6212-0025 | Miscellaneous Printing | -1,010.47 |
| 6212-0030 | Investment Summary | -3,985.66 |
| 6212-0035 | 2-Pagers | -562.04 |
| 6212-9999 | Printing | -5,558.17 |
| 6214-0020 | News Releases Property | 460.00 |
| 6214-9999 | Public Relations | 460.00 |
| 6218-0010 | Printing | 381.24 |
| 6218-0025 | Training | 2,100.00 |
| 6218-9999 | Regional Director Support | 2,481.24 |
| 6220-0010 | Misc. Marketing Services | -4,881.19 |
| 6220-9999 | Marketing (Office & Corporate) | -4,881.19 |
| 6299-9999 | TOTAL ADVERTISING & MARKETING | 27,295.20 |
| 6311-0000 | Office Rent | 521,749.63 |
| 6312-0000 | Office CAM | 8,274.20 |
| 6316-0000 | Office Utilities | 162.61 |
| 6318-0000 | Office Cleaning | 428.60 |
| 6320-0000 | Storage | 6,612.75 |
| 6321-0000 | Plants/Interior Design | 650.00 |
| 6325-0000 | Parking-Reserved Space | 10,815.00 |
| 6326-0000 | Parking-Non Reserved Space | 10,875.00 |
| 6327-0000 | Parking-Visitor | 2,548.00 |
| 6329-9999 | Total Occupancy Cost | 562,115.79 |
| 6400-0000 | Office Supplies | |
| 6401-0000 | Office Supplies-General | 6,925.25 |
| 6403-0000 | Computer Supplies | 1,803.11 |
| 6410-0000 | Total Office Supplies | 8,728.36 |
| 6425-0000 | Computer Expense | |
| 6427-0000 | Computer Equipment | -200.00 |
| 6429-0000 | Computer Contract | 2,378.63 |
| 6433-0000 | Computer Software/Warranty | 20,822.55 |
| 6435-0000 | Computer Misc Supplies | 7,679.73 |
| 6439-0000 | Office Internet | 7,192.01 |
| 6441-0000 | Home Office Internet | 1,724.31 |
| 6450-0000 | Total Computer Expense | 39,597.23 |
| 6500-0000 | Printing & Copy Expense | |
| 6510-0000 | Printing & Copying Fees | -1,898.80 |
| 6515-0000 | Copy Machine Contract | 19,471.45 |
| 6517-0000 | Copy Machine Repair & Maint. | 5,873.85 |
| 6520-0000 | Total Printing & Copy Expense | 23,446.50 |
| 6530-0000 | Telephone Expenses | |
| 6532-0000 | Telephone-Office Local | 14,615.14 |
| 6534-0000 | Telephone-Conference | 1,772.03 |
| 6540-0000 | Telephone-Blackberry | 17,555.74 |
| 6542-0000 | Telephone-Repair & Maint. | 995.39 |
| 6544-0000 | Telephone-Equipment & Supplies | 525.82 |
| 6550-0000 | Total Telephone Expenses | 35,464.12 |
| 6560-0000 | Postage & Shipping | |
| 6562-0000 | Postage | 9,788.12 |
| 6564-0000 | Postage Machine | 2,691.91 |
| 6566-0000 | Federal Express | 6,127.18 |
| 6570-0000 | Messenger | 330.93 |
| 6580-0000 | Total Postage & Shipping | 18,938.14 |
| 6600-0000 | Misc Office Expense | |
| 6605-0000 | Dues & Subscriptions | 15,449.52 |
| 6615-0000 | Filing Fees | 2,989.66 |

SCI Real Estate Invstmts, LLC (9900a)

## Income Statement

Period = Jan 2009-Dec 2009

Book = Accrual

|  |  | Year to Date |
|---|---|---|
| 6620-0000 | Bank Charges | 876.00 |
| 6625-0000 | Moving | 1,350.00 |
| 6690-0000 | Total Misc Office Expense | 20,665.18 |
| 6700-0000 | Insurance |  |
| 6700-1000 | Insurance-General Liability | 8,667.78 |
| 6700-1010 | Insurance-D&O | 61,299.18 |
| 6700-1030 | Insurance-Life | 1,248.26 |
| 6700-1050 | Insurance-Other | 1,793.00 |
| 6700-9999 | Total Insurance | 73,008.22 |
| 6749-9999 | TOTAL OFFICE ADMIN. EXPENSES | 781,963.54 |
| 6750-0000 | TRAVEL & ENTERTAINMENT |  |
| 6750-1000 | Automobile Expenses |  |
| 6750-1010 | Auto Allowance | 48,395.33 |
| 6750-1020 | Auto Gas Expense | 5,231.41 |
| 6750-1050 | Total Automobile Expenses | 53,626.74 |
| 6755-0000 | Lodging | 10,859.50 |
| 6760-0000 | Meals | 22,130.94 |
| 6765-0000 | Transportation | 12,418.84 |
| 6766-0000 | Auto Mileage Reimbursement | 154.00 |
| 6780-0000 | Travel Misc | 3.00 |
| 6782-0000 | Client Entertainment-Meals | 771.13 |
| 6783-0000 | Client Entertainment-Other | 93.67 |
| 6785-0000 | Memberships | 21,403.81 |
| 6786-0000 | Employee Meal & Lunches | 2,921.44 |
| 6787-0000 | Office Meals/Parties | 1,007.04 |
| 6788-0000 | Miscellaneous Travel and Entertainment | 100.00 |
| 6799-9999 | TOTAL TRAVEL & ENTERTAINMENT | 125,490.11 |
| 6800-0000 | PROFESSIONAL SERVICES |  |
| 6810-0000 | Accounting Fees | 44,571.87 |
| 6840-0000 | Legal Fees-Corporate | 213,556.23 |
| 6855-0000 | Other Professional Services | 4,958.35 |
| 6899-9999 | TOTAL PROFESSIONAL SERVICES | 263,086.45 |
| 6900-0000 | PROPERTY/ACQUISITION EXPENSE |  |
| 6902-0000 | Due Diligence Expenses | 7,121.41 |
| 6906-0000 | Property Professional Fees | 330,000.00 |
| 6910-9999 | TOTAL PROPERTY/ACQUISITION EXPENSE | 337,121.41 |
| 6952-0000 | Local Business Taxes | 11,513.97 |
| 6954-0000 | License/Permits | 1,488.28 |
| 6965-0000 | Sales Tax | 993.04 |
| 6970-0000 | TOTAL BUSINESS TAXES & LICENSE | 13,995.29 |
| 6999-9999 | **TOTAL OPERATING EXPENSES** | **3,609,236.82** |
| 8000-0000 | DEBT SERVICE |  |
| 8110-0000 | Interest Expense-Line of Credit | 443,625.00 |
| 8130-0000 | Interest Expense-PA | 193,152.23 |
| 8140-0000 | Interest Expense-Wachovia Line | -11,941.18 |
| 8150-0000 | Interest Expense-Mezzanine | 310,513.42 |
| 8299-9999 | TOTAL DEBT SERVICE | 935,349.47 |
| 8800-9999 | TOTAL EXPENSES | 4,544,586.29 |
| 8900-9999 | **NET OPERATING INCOME/LOSS** | **-2,382,168.20** |
| 9000-0000 | OTHER INCOME (EXPENSES) |  |
| 9100-0000 | Depreciation Expense | 294,283.15 |
| 9455-0000 | State Income Taxes | 19,390.00 |
| 9500-9999 | TOTAL OTHER INCOME (EXPENSES) | 313,673.15 |
| 9899-9999 | **NET INCOME/LOSS** | **-2,695,841.35** |

SCI Real Estate Invstmts, LLC (9900a)
## Balance Sheet (With Period Change)
Period = Dec 2010
Book = Accrual

| | | Balance<br>Current Period |
|---|---|---:|
| 1000-0000 | ASSET | |
| 1100-0000 | CASH | |
| 1111-0000 | Operating Cash 1 | -10,505.64 |
| 1113-0000 | Operating Cash 3 | 0.00 |
| 1116-0000 | Operating Cash 6 | 0.00 |
| 1117-0000 | Operating Cash 7 | 24,501.16 |
| 1150-0000 | Petty Cash | 0.35 |
| 1159-9999 | TOTAL CASH | 13,995.87 |
| 1200-0000 | ACCOUNTS RECEIVABLE | |
| 1210-0000 | Accounts Receivable | -0.50 |
| 1212-0000 | Accounts Receivable-WIP | 7,718.60 |
| 1215-0000 | Accounts Receivable-Intercompany | 897,952.18 |
| 1220-0000 | Fees Receivable | 94,435.17 |
| 1249-9999 | TOTAL ACCOUNTS RECEIVABLE | 1,000,105.45 |
| 1250-0000 | DUE FROM AFFILIATES | |
| 1255-0000 | Due from shareholders/members | 0.00 |
| 1299-9999 | TOTAL DUE FROM AFFILIATES | 0.00 |
| 1300-0000 | NOTES RECEIVABLE | |
| 1320-0000 | Notes Receivable-Related Party | 16,151,629.64 |
| 1331-0000 | Note Receivable-Provasi MMLLC | 110,000.00 |
| 1339-9999 | TOTAL NOTES RECEIVABLE | 16,261,629.64 |
| 1400-0000 | LOANS RECEIVABLE | |
| 1450-0000 | Loans to LLC's | 75,183.01 |
| 1470-0000 | Loans Receivable | 32,000.00 |
| 1499-9999 | TOTAL LOANS RECEIVABLE | 107,183.01 |
| 1500-0000 | PREPAID EXPENSES | |
| 1510-0000 | Prepaid Insurance | 46,191.58 |
| 1530-0000 | Prepaid Expenses-Other | 9,508.42 |
| 1559-9999 | TOTAL PREPAID EXPENSES | 55,700.00 |
| 1699-9999 | TOTAL CURRENT ASSETS | 55,700.00 |
| 1700-0000 | ESCROW DEPOSITS | |
| 1730-0000 | Escrow Deposits | 910,285.26 |
| 1749-9999 | TOTAL ESCROW DEPOSITS | 910,285.26 |
| 1750-0000 | INVESTMENTS IN LLC's | |
| 1755-0000 | Capital Contributions | 9,368,607.02 |
| 1760-0000 | Capital Distributions | -119,801.99 |
| 1770-9999 | TOTAL INVESTMENTS IN LLC'S | 9,248,805.03 |
| 1780-0000 | PROPERTY HELD FOR SALE | |
| 1783-0000 | Advances to Real Estate Investments | 2,769,992.07 |
| 1789-9998 | TOTAL PROPERTY HELD FOR SALE | 2,769,992.07 |
| 1800-0000 | FIXED ASSETS | |
| 1810-0000 | Leasehold Improvements | 209,903.28 |
| 1820-0000 | A/D-Leasehold Improvements | -185,655.92 |
| 1830-0000 | Furniture & Fixtures | 211,390.91 |
| 1835-0000 | A/D-Furniture & Fixtures | -202,313.38 |
| 1840-0000 | Office/Computer Equipment | 465,241.81 |
| 1845-0000 | A/D-Office Equipment | -440,865.50 |
| 1855-9999 | TOTAL FIXED ASSETS (NET) | 57,701.20 |
| 1899-0000 | OTHER ASSETS | |
| 1920-0000 | Leasehold Deposits | 6,154.00 |
| 1930-0000 | Deferred Fees Receivable | 34,433,222.64 |
| 1932-0000 | Credit Enhancement Fee Receivable | 1,078,350.00 |

000234  000077

SCI Real Estate Invstmts, LLC (9900a)
## Balance Sheet (With Period Change)
Period = Dec 2010

Book = Accrual

| | | Balance Current Period |
|---|---|---|
| 1934-0000 | Discount-Deferred Fees | -1,391,969.55 |
| 1998-9999 | TOTAL OTHER ASSETS | 34,125,757.09 |
| 1999-9999 | **TOTAL ASSETS** | **64,551,154.62** |
| 2100-0000 | CURRENT LIABILITIES | |
| 2110-0000 | Accounts Payable | 51,335.99 |
| 2120-0000 | Mezz Interest Payable | 482,951.45 |
| 2130-0000 | Other Liabilities | 2,197,668.95 |
| 2142-0000 | Loan from Property | 82,000.00 |
| 2145-0000 | Due to Related Party | 2,799,967.55 |
| 2150-0000 | PAYROLL LIABILITIES | |
| 2190-0000 | Payroll Suspense | 0.00 |
| 2198-9999 | TOTAL PAYROLL LIABILITIES | 0.00 |
| 2199-9999 | TOTAL CURRENT LIABILITIES | 5,613,923.94 |
| 2300-0000 | NOTES PAYABLE | |
| 2310-0000 | Placement Agreements | 7,664,667.20 |
| 2325-0000 | Note Payable-Accrued Rent | 467,377.76 |
| 2339-9999 | TOTAL NOTES PAYABLE | 8,132,044.96 |
| 2500-0000 | BANK LOANS | |
| 2510-0000 | First Regional Bank LOC1 | 15,000,000.00 |
| 2511-0000 | First Regional Bank LOC2 | 3,000,000.00 |
| 2520-0000 | Wachovia LOC1 | 3,555,685.00 |
| 2599-9999 | TOTAL BANK LOANS | 21,555,685.00 |
| 2999-9999 | **TOTAL LIABILITIES** | **35,301,653.90** |
| 3000-0000 | EQUITY | |
| 3040-0000 | Distributions to Owners | -7,571,233.85 |
| 3050-0000 | Contributions from Owners | -3,265,000.00 |
| 3200-0000 | Retained Earnings | 40,085,734.57 |
| 3998-9999 | **TOTAL EQUITY** | **29,249,500.72** |
| 3999-9999 | **TOTAL LIABILITIES & EQUITY** | **64,551,154.62** |

000235 000078

**Income Statement**

Period = Jan 2010-Dec 2010

Book = Accrual

|  |  | Year to Date |
|---|---|---|
| 4000-0000 | **INCOME** | |
| 4060-0000 | Leasing Commissions | 10,808.68 |
| 4070-0000 | Disposition Fees | 1,250.00 |
| 4160-0000 | Miscellaneous Income | 1,790.40 |
| 4200-0000 | Interest Income | 3.10 |
| 4210-0000 | Interest Income-Intercompany | 324,840.04 |
| 4250-0000 | Interest Income-Discounts(fees) | 1,326,081.32 |
| 4450-0000 | LLC Distributions | 105,740.89 |
| 4999-9999 | **TOTAL INCOME** | **1,770,514.43** |
| 6000-0000 | **EXPENSES** | |
| 6010-0000 | PERSONNEL COSTS | |
| 6011-0000 | Wages | |
| 6015-0000 | Base Salary | 186,931.87 |
| 6030-0000 | Bonus-Transaction | 7,960.00 |
| 6031-0000 | Bonus-Year End | 6,000.00 |
| 6039-0000 | Total Wages | 200,891.87 |
| 6040-0000 | Employer Taxes & Insurance | |
| 6041-0000 | Employer FICA Taxes | 12,441.22 |
| 6042-0000 | Employer Medicare Taxes | 2,909.65 |
| 6043-0000 | Employer FUTA Taxes | 112.00 |
| 6044-0000 | Employer SUI Taxes | 868.00 |
| 6046-0000 | Worker's Compensation | 879.15 |
| 6047-0000 | Total Employer Taxes & Insurance | 17,210.02 |
| 6050-0000 | Employee Benefits | |
| 6051-0000 | Employee Health Care | 121,629.27 |
| 6053-0000 | Employee Dental | 10,708.00 |
| 6056-0000 | Employee Disability | 4,118.13 |
| 6057-0000 | Employee Life Insurance | 3,983.88 |
| 6060-9999 | Total Employee Benefits | 140,439.28 |
| 6065-0000 | Other Employee Costs | |
| 6069-0000 | Payroll Service | 3,875.37 |
| 6071-0000 | Employee Benefit Plan Expense | -5,535.80 |
| 6077-0000 | Misc Employee Costs | 939.93 |
| 6079-9999 | Total Other Employee Costs | -720.50 |
| 6080-0000 | Outside Services | |
| 6081-0000 | Outside Services | 56,603.85 |
| 6082-0000 | Outside Services (RD) | -2,000.00 |
| 6083-0000 | Outside Services/Consulting (temp) | 20,498.94 |
| 6085-0000 | Total Outside Services | 75,102.79 |
| 6090-0000 | Guaranteed Payments | 216,600.00 |
| 6099-9999 | TOTAL PERSONNEL COSTS | 649,523.46 |
| 6100-0000 | EQUITY RAISE COMMISSION | |
| 6111-0000 | In House Brokers | 1,000.00 |
| 6120-9999 | TOTAL EQUITY RAISE COMMISSION | 1,000.00 |
| 6202-0015 | Investor Promotion (General) | 880.65 |
| 6202-9999 | Investor Relations | 880.65 |
| 6204-0010 | Sponsorship/Space Rental | 2,023.41 |
| 6204-9999 | Conventions & Seminars | 2,023.41 |
| 6206-0020 | Web Site Links & Banner Ads | -1,657.14 |
| 6206-0030 | Hosting Services | 2,067.00 |
| 6206-9999 | Advrtsg (Web/Electronic/Video) | 409.86 |
| 6212-0015 | Signs/Banners | 299.62 |
| 6212-9999 | Printing | 299.62 |
| 6218-0030 | Miscellaneous RD Support | -1,600.00 |
| 6218-9999 | Regional Director Support | -1,600.00 |
| 6299-9999 | TOTAL ADVERTISING & MARKETING | 2,013.54 |
| 6311-0000 | Office Rent | 27,525.00 |

## Income Statement

Period = Jan 2010-Dec 2010

Book = Accrual

| | | Year to Date |
|---|---|---|
| 6317-0000 | Office Repairs | 95.00 |
| 6319-0000 | Office Keys & Locks | 2.80 |
| 6320-0000 | Storage | 4,196.40 |
| 6321-0000 | Plants/Interior Design | -250.00 |
| 6325-0000 | Parking-Reserved Space | 13,881.87 |
| 6326-0000 | Parking-Non Reserved Space | 5,568.00 |
| 6327-0000 | Parking-Visitor | 368.00 |
| 6329-9999 | Total Occupancy Cost | 51,387.07 |
| 6400-0000 | Office Supplies | |
| 6401-0000 | Office Supplies-General | 2,159.96 |
| 6403-0000 | Computer Supplies | 282.05 |
| 6410-0000 | Total Office Supplies | 2,442.01 |
| 6425-0000 | Computer Expense | |
| 6427-0000 | Computer Equipment | 708.21 |
| 6429-0000 | Computer Contract | 299.40 |
| 6433-0000 | Computer Software/Warranty | 8,044.62 |
| 6435-0000 | Computer Misc Supplies | 1,571.10 |
| 6439-0000 | Office Internet | 1,192.35 |
| 6441-0000 | Home Office Internet | 1,322.51 |
| 6450-0000 | Total Computer Expense | 13,138.19 |
| 6500-0000 | Printing & Copy Expense | |
| 6515-0000 | Copy Machine Contract | 4,724.57 |
| 6517-0000 | Copy Machine Repair & Maint. | -7,467.74 |
| 6520-0000 | Total Printing & Copy Expense | -2,743.17 |
| 6530-0000 | Telephone Expenses | |
| 6532-0000 | Telephone-Office Local | 4,806.13 |
| 6538-0000 | Telephone-Mobile | 291.22 |
| 6540-0000 | Telephone-Blackberry | 8,921.17 |
| 6542-0000 | Telephone-Repair & Maint. | 50.64 |
| 6544-0000 | Telephone-Equipment & Supplies | 50.98 |
| 6550-0000 | Total Telephone Expenses | 14,120.14 |
| 6560-0000 | Postage & Shipping | |
| 6562-0000 | Postage | 4,261.72 |
| 6564-0000 | Postage Machine | 766.55 |
| 6566-0000 | Federal Express | 538.10 |
| 6570-0000 | Messenger | 13.63 |
| 6580-0000 | Total Postage & Shipping | 5,580.00 |
| 6600-0000 | Misc Office Expense | |
| 6605-0000 | Dues & Subscriptions | 7,003.08 |
| 6610-0000 | Donations | 1,050.00 |
| 6615-0000 | Filing Fees | 2,311.86 |
| 6620-0000 | Bank Charges | 30.00 |
| 6625-0000 | Moving | 1,500.00 |
| 6690-0000 | Total Misc Office Expense | 11,894.94 |
| 6700-0000 | Insurance | |
| 6700-1010 | Insurance-D&O | 39,718.60 |
| 6700-1020 | Insurance-E&O | 109.30 |
| 6700-1050 | Insurance-Other | 5,882.80 |
| 6700-9999 | Total Insurance | 45,710.70 |
| 6749-9999 | TOTAL OFFICE ADMIN. EXPENSES | 141,529.88 |
| 6750-0000 | TRAVEL & ENTERTAINMENT | |
| 6750-1000 | Automobile Expenses | |
| 6750-1010 | Auto Allowance | 20,318.23 |
| 6750-1020 | Auto Gas Expense | 6,238.70 |
| 6750-1050 | Total Automobile Expenses | 26,556.93 |
| 6755-0000 | Lodging | 2,743.45 |
| 6760-0000 | Meals | 20,569.11 |

## Income Statement

Period = Jan 2010-Dec 2010

Book = Accrual

| | | Year to Date |
|---|---|---|
| 6765-0000 | Transportation | 6,727.22 |
| 6782-0000 | Client Entertainment-Meals | 141.36 |
| 6785-0000 | Memberships | 5,160.89 |
| 6786-0000 | Employee Meal & Lunches | 1,133.84 |
| 6787-0000 | Office Meals/Parties | 200.23 |
| 6799-9999 | TOTAL TRAVEL & ENTERTAINMENT | 63,233.03 |
| 6800-0000 | PROFESSIONAL SERVICES | |
| 6810-0000 | Accounting Fees | 41,259.32 |
| 6820-0000 | Accounting Consulting | -1,000.00 |
| 6840-0000 | Legal Fees-Corporate | 208,326.86 |
| 6855-0000 | Other Professional Services | -18,961.25 |
| 6899-9999 | TOTAL PROFESSIONAL SERVICES | 229,624.93 |
| 6900-0000 | PROPERTY/ACQUISITION EXPENSE | |
| 6902-0000 | Due Diligence Expenses | -4,400.00 |
| 6907-0000 | Property Expenses | -2,122.29 |
| 6910-9999 | TOTAL PROPERTY/ACQUISITION EXPENSE | -6,522.29 |
| 6952-0000 | Local Business Taxes | 1,328.34 |
| 6956-0000 | Personal Property Taxes | 198.78 |
| 6958-0000 | Fines & Penalties | 3,498.34 |
| 6970-0000 | TOTAL BUSINESS TAXES & LICENSE | 5,025.46 |
| 6999-9999 | **TOTAL OPERATING EXPENSES** | **1,085,428.01** |
| 8000-0000 | DEBT SERVICE | |
| 8100-0000 | Interest Expense | 500.00 |
| 8110-0000 | Interest Expense-Line of Credit | 1,885,125.00 |
| 8130-0000 | Interest Expense-PA | 210,650.15 |
| 8140-0000 | Interest Expense-Wachovia Line | 180,898.03 |
| 8150-0000 | Interest Expense-Mezzanine | 330,757.11 |
| 8299-9999 | TOTAL DEBT SERVICE | 2,607,930.29 |
| 8800-9999 | TOTAL EXPENSES | 3,693,358.30 |
| 8900-9999 | **NET OPERATING INCOME/LOSS** | **-1,922,843.87** |
| 9000-0000 | OTHER INCOME (EXPENSES) | |
| 9100-0000 | Depreciation Expense | 52,153.66 |
| 9455-0000 | State Income Taxes | 1,600.00 |
| 9500-9999 | TOTAL OTHER INCOME (EXPENSES) | 53,753.66 |
| 9899-9999 | **NET INCOME/LOSS** | **-1,976,597.53** |

# EXHIBIT 4

000239 000082

Secured California Investments, Inc. (9800)

## Balance Sheet (With Period Change)

Period = Dec 2009

Book = Accrual

| | | Balance<br>Current Period |
|---|---|---:|
| 1000-0000 | ASSET | |
| 1100-0000 | CASH | |
| 1111-0000 | Operating Cash 1 | 30,218.08 |
| 1112-0000 | Operating Cash 2 | 5,100.00 |
| 1159-9999 | TOTAL CASH | 35,318.08 |
| 1200-0000 | ACCOUNTS RECEIVABLE | |
| 1210-0000 | Accounts Receivable | 0.00 |
| 1249-9999 | TOTAL ACCOUNTS RECEIVABLE | 0.00 |
| 1250-0000 | DUE FROM AFFILIATES | |
| 1255-0000 | Due from shareholders/members | 175,000.00 |
| 1299-9999 | TOTAL DUE FROM AFFILIATES | 175,000.00 |
| 1300-0000 | NOTES RECEIVABLE | |
| 1320-0000 | Notes Receivable-Related Party | 8,186,987.70 |
| 1338-0000 | Discount-Notes Receivable | 0.00 |
| 1339-9999 | TOTAL NOTES RECEIVABLE | 8,186,987.70 |
| 1400-0000 | LOANS RECEIVABLE | |
| 1450-0000 | Loans to LLC's | 94,079.70 |
| 1499-9999 | TOTAL LOANS RECEIVABLE | 94,079.70 |
| 1750-0000 | INVESTMENTS IN LLC's | |
| 1755-0000 | Capital Contributions | 13,911,705.94 |
| 1760-0000 | Capital Distributions | -1,016,862.47 |
| 1770-9999 | TOTAL INVESTMENTS IN LLC'S | 12,894,843.47 |
| 1800-0000 | FIXED ASSETS | |
| 1830-0000 | Furniture & Fixtures | 122,500.00 |
| 1835-0000 | A/D-Furniture & Fixtures | -122,500.00 |
| 1840-0000 | Office/Computer Equipment | 157,159.68 |
| 1845-0000 | A/D-Office Equipment | -157,159.68 |
| 1855-9999 | TOTAL FIXED ASSETS (NET) | 0.00 |
| 1899-0000 | OTHER ASSETS | |
| 1932-0000 | Credit Enhancement Fee Receivable | 503,750.00 |
| 1936-0000 | Discount-Credit Enhancement Fees | 0.00 |
| 1998-9999 | TOTAL OTHER ASSETS | 503,750.00 |
| 1999-9999 | **TOTAL ASSETS** | **21,889,978.95** |
| 2100-0000 | CURRENT LIABILITIES | |
| 2110-0000 | Accounts Payable | 5,372.43 |
| 2130-0000 | Other Liabilities | 0.00 |
| 2132-0000 | Other Liabilities-Intercompany | 345,168.05 |
| 2145-0000 | Due to Related Party | 10,486,499.02 |
| 2199-9999 | TOTAL CURRENT LIABILITIES | 10,837,039.50 |
| 2300-0000 | NOTES PAYABLE | |
| 2310-0000 | Placement Agreements | 638,459.00 |
| 2320-0000 | Notes Payable | 3,216,675.00 |
| 2339-9999 | TOTAL NOTES PAYABLE | 3,855,134.00 |
| 2999-9999 | **TOTAL LIABILITIES** | **14,692,173.50** |
| 3000-0000 | EQUITY | |
| 3010-0000 | Common Stock | 1,000.00 |
| 3020-0000 | Additional Paid In Capital | 465,534.00 |
| 3040-0000 | Distributions to Owners | -5,092,875.13 |
| 3050-0000 | Contributions from Owners | -500,000.00 |
| 3200-0000 | Retained Earnings | 12,324,146.58 |
| 3998-9999 | **TOTAL EQUITY** | **7,197,805.45** |
| 3999-9999 | **TOTAL LIABILITIES & EQUITY** | **21,889,978.95** |

000240 000083

Secured California Investments, Inc. (9800)

## Income Statement

Period = Jan 2009-Dec 2009

Book = Accrual

|  |  | Year to Date |
|---|---|---:|
| 4000-0000 | **INCOME** | |
| 4060-0000 | Leasing Commissions | 1,752.27 |
| 4160-0000 | Miscellaneous Income | 23,196.59 |
| 4250-0000 | Interest Income-Discounts(fees) | 12,932.66 |
| 4255-0000 | Interest Income-Discount(notes) | 595,251.26 |
| 4450-0000 | LLC Distributions | 152,175.62 |
| 4531-0000 | Gain/(Loss)-Investments | -115,473.27 |
| 4999-9999 | **TOTAL INCOME** | **669,835.13** |
| 6000-0000 | **EXPENSES** | |
| 6010-0000 | PERSONNEL COSTS | |
| 6065-0000 | Other Employee Costs | |
| 6073-0000 | Education & Training | 90.00 |
| 6079-9999 | Total Other Employee Costs | 90.00 |
| 6080-0000 | Outside Services | |
| 6081-0000 | Outside Services | 4,600.00 |
| 6085-0000 | Total Outside Services | 4,600.00 |
| 6099-9999 | TOTAL PERSONNEL COSTS | 4,690.00 |
| 6560-0000 | Postage & Shipping | |
| 6566-0000 | Federal Express | 19.01 |
| 6580-0000 | Total Postage & Shipping | 19.01 |
| 6600-0000 | Misc Office Expense | |
| 6615-0000 | Filing Fees | 1,329.60 |
| 6690-0000 | Total Misc Office Expense | 1,329.60 |
| 6749-9999 | TOTAL OFFICE ADMIN. EXPENSES | 1,348.61 |
| 6800-0000 | PROFESSIONAL SERVICES | |
| 6810-0000 | Accounting Fees | 15,823.16 |
| 6840-0000 | Legal Fees-Corporate | 3,027.82 |
| 6899-9999 | TOTAL PROFESSIONAL SERVICES | 18,850.98 |
| 6952-0000 | Local Business Taxes | 689.52 |
| 6954-0000 | License/Permits | 295.00 |
| 6956-0000 | Personal Property Taxes | 6,072.81 |
| 6970-0000 | TOTAL BUSINESS TAXES & LICENSE | 7,057.33 |
| 6999-9999 | **TOTAL OPERATING EXPENSES** | **31,946.92** |
| 8000-0000 | DEBT SERVICE | |
| 8120-0000 | Interest Expense-Intercompany | 345,168.05 |
| 8130-0000 | Interest Expense-PA | 31,129.58 |
| 8299-9999 | TOTAL DEBT SERVICE | 376,297.63 |
| 8800-9999 | TOTAL EXPENSES | 408,244.55 |
| 8900-9999 | **NET OPERATING INCOME/LOSS** | **261,590.58** |
| 9000-0000 | OTHER INCOME (EXPENSES) | |
| 9455-0000 | State Income Taxes | -21,928.19 |
| 9500-9999 | TOTAL OTHER INCOME (EXPENSES) | -21,928.19 |
| 9899-9999 | **NET INCOME/LOSS** | **283,518.77** |

Secured California Investments, Inc. (9800)
## Balance Sheet (With Period Change)
Period = Dec 2010
Book = Accrual

| | Balance<br>Current Period |
|---|---:|
| 1000-0000 ASSET | |
| 1100-0000 CASH | |
| 1111-0000    Operating Cash 1 | 1,281.65 |
| 1112-0000    Operating Cash 2 | 0.00 |
| 1159-9999 TOTAL CASH | 1,281.65 |
| 1250-0000 DUE FROM AFFILIATES | |
| 1255-0000    Due from shareholders/members | 175,000.00 |
| 1299-9999 TOTAL DUE FROM AFFILIATES | 175,000.00 |
| 1300-0000 NOTES RECEIVABLE | |
| 1320-0000    Notes Receivable-Related Party | 8,186,987.70 |
| 1339-9999 TOTAL NOTES RECEIVABLE | 8,186,987.70 |
| 1400-0000 LOANS RECEIVABLE | |
| 1450-0000    Loans to LLC's | 94,079.70 |
| 1499-9999 TOTAL LOANS RECEIVABLE | 94,079.70 |
| 1750-0000 INVESTMENTS IN LLC's | |
| 1755-0000    Capital Contributions | 9,223,941.18 |
| 1760-0000    Capital Distributions | -208,974.08 |
| 1770-9999 TOTAL INVESTMENTS IN LLC'S | 9,014,967.10 |
| 1800-0000 FIXED ASSETS | |
| 1830-0000    Furniture & Fixtures | 122,500.00 |
| 1835-0000    A/D-Furniture & Fixtures | -122,500.00 |
| 1840-0000    Office/Computer Equipment | 157,159.68 |
| 1845-0000    A/D-Office Equipment | -157,159.68 |
| 1855-9999 TOTAL FIXED ASSETS (NET) | 0.00 |
| 1899-0000 OTHER ASSETS | |
| 1932-0000    Credit Enhancement Fee Receivable | 503,750.00 |
| 1998-9999 TOTAL OTHER ASSETS | 503,750.00 |
| 1999-9999 **TOTAL ASSETS** | **17,976,066.15** |
| 2100-0000 CURRENT LIABILITIES | |
| 2110-0000    Accounts Payable | 10,105.42 |
| 2132-0000    Other Liabilities-Intercompany | 670,008.09 |
| 2145-0000    Due to Related Party | 10,951,991.62 |
| 2199-9999 TOTAL CURRENT LIABILITIES | 11,632,105.13 |
| 2300-0000 NOTES PAYABLE | |
| 2310-0000    Placement Agreements | 0.00 |
| 2320-0000    Notes Payable | 3,216,675.00 |
| 2339-9999 TOTAL NOTES PAYABLE | 3,216,675.00 |
| 2999-9999 **TOTAL LIABILITIES** | **14,848,780.13** |
| 3000-0000 EQUITY | |
| 3010-0000    Common Stock | 1,000.00 |
| 3020-0000    Additional Paid In Capital | 465,534.00 |
| 3040-0000    Distributions to Owners | -5,092,875.13 |
| 3050-0000    Contributions from Owners | -500,000.00 |
| 3200-0000    Retained Earnings | 8,253,627.15 |
| 3998-9999 **TOTAL EQUITY** | **3,127,286.02** |
| 3999-9999 **TOTAL LIABILITIES & EQUITY** | **17,976,066.15** |

000242 000085

Secured California Investments, Inc. (9800)

# Income Statement

Period = Jan 2010-Dec 2010

Book = Accrual

|  |  | Year to Date |
|---|---|---|
| 4000-0000 | **INCOME** | |
| 4030-0000 | Loan Fees | 89,665.00 |
| 4060-0000 | Leasing Commissions | 17,790.46 |
| 4070-0000 | Disposition Fees | 232,041.10 |
| 4160-0000 | Miscellaneous Income | 3,511.25 |
| 4450-0000 | LLC Distributions | 141,226.32 |
| 4532-0000 | Gain/(Loss) on Sale | -3,887,941.73 |
| 4999-9999 | **TOTAL INCOME** | **-3,403,707.60** |
| 6000-0000 | **EXPENSES** | |
| 6010-0000 | PERSONNEL COSTS | |
| 6080-0000 | Outside Services | |
| 6081-0000 | Outside Services | 1,350.00 |
| 6084-0000 | Outside Services - (WIP) | 250.00 |
| 6085-0000 | Total Outside Services | 1,600.00 |
| 6099-9999 | TOTAL PERSONNEL COSTS | 1,600.00 |
| 6100-0000 | EQUITY RAISE COMMISSION | |
| 6111-0000 | In House Brokers | 281,766.10 |
| 6114-0000 | Finder's Fee | 20,600.00 |
| 6120-9999 | TOTAL EQUITY RAISE COMMISSION | 302,366.10 |
| 6208-0030 | Misc. Advertising Production | 110.00 |
| 6208-9999 | Advertising Production | 110.00 |
| 6299-9999 | TOTAL ADVERTISING & MARKETING | 110.00 |
| 6400-0000 | Office Supplies | |
| 6401-0000 | Office Supplies-General | 1,042.90 |
| 6410-0000 | Total Office Supplies | 1,042.90 |
| 6560-0000 | Postage & Shipping | |
| 6566-0000 | Federal Express | 63.84 |
| 6580-0000 | Total Postage & Shipping | 63.84 |
| 6600-0000 | Misc Office Expense | |
| 6605-0000 | Dues & Subscriptions | 658.00 |
| 6615-0000 | Filing Fees | 1,668.50 |
| 6690-0000 | Total Misc Office Expense | 2,326.50 |
| 6749-9999 | TOTAL OFFICE ADMIN. EXPENSES | 3,433.24 |
| 6800-0000 | PROFESSIONAL SERVICES | |
| 6810-0000 | Accounting Fees | 22,382.75 |
| 6899-9999 | TOTAL PROFESSIONAL SERVICES | 22,382.75 |
| 6952-0000 | Local Business Taxes | 126.75 |
| 6954-0000 | License/Permits | 300.00 |
| 6956-0000 | Personal Property Taxes | 9,139.45 |
| 6970-0000 | TOTAL BUSINESS TAXES & LICENSE | 9,566.20 |
| 6999-9999 | **TOTAL OPERATING EXPENSES** | **339,458.29** |
| 8000-0000 | DEBT SERVICE | |
| 8120-0000 | Interest Expense-Intercompany | 324,840.04 |
| 8130-0000 | Interest Expense-PA | 913.50 |
| 8299-9999 | TOTAL DEBT SERVICE | 325,753.54 |
| 8800-9999 | TOTAL EXPENSES | 665,211.83 |
| 8900-9999 | **NET OPERATING INCOME/LOSS** | **-4,068,919.43** |
| 9000-0000 | OTHER INCOME (EXPENSES) | |
| 9455-0000 | State Income Taxes | 1,600.00 |
| 9500-9999 | TOTAL OTHER INCOME (EXPENSES) | 1,600.00 |
| 9899-9999 | **NET INCOME/LOSS** | **-4,070,519.43** |